1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Josh Konecky (SBN 182897)
Leslie H. Joyner (SBN 262705)
Nathan Piller (SBN 300569)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel:  (415) 421-7100
Fax:  (415) 421-7105
jkonecky@schneiderwallace.com
ljoyner@schneiderwallace.com
npiller@schneiderwallace.com


Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSEPH KIMBO, an individual; on behalf of himself and all others similarly situated , <br><br> Plaintiff, <br><br> vs. <br><br> MXD GROUP, INC., a California corporation; RYDER SYSTEM, INC., a Florida Corporation; and DOES 1-10, inclusive, <br><br> Defendants. | Case No.: 2:19-CV-00166-WBS-KJN <br><br> **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **Date:** August 3, 2020 <br> **Time:** 1:30 p.m. <br> **Location:** Courtroom 5, 14th Floor |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Plaintiff Joseph Kimbo ("Plaintiff") hereby moves this Court for the relief as follows:

1.      To preliminarily approve the Stipulated Joint Settlement Agreement (the "Settlement Agreement") between Plaintiff and Defendants Ryder Last Mile, Inc. (f/n/a MXD Group, Inc.) and Ryder System, Inc. ("Defendants");

2.      To certify under Federal Rule of Civil Procedure 23(a) & (b)(3), for settlement purposes only, a Class comprised of all Motor Carrier Class Members and Non-Carrier Class Members, except the Motor Carriers and Non-Carriers that performed delivery services at the warehouse located at or out of 21508 Baker Parkway, City of Industry, California 91789.[1]  Motor Carrier Class Members and Non-Carrier Class Members are defined as follows:

*Motor Carrier Class Members*: All owners of all motor carriers who directly contracted with Defendants in their individual capacity or through a business entity and provided transportation services to Defendants in California at any time from December 12, 2014 through the earlier of preliminary approval or July 26, 2020.

The Motor Carrier Class Members include (1) all motor carrier owners responsible for the day-to-day operations of their businesses that engaged one or more workers to operate their commercial motor vehicles to deliver goods; and (2) all motor carrier owners that also performed delivery services as the driver of their commercial motor vehicles.

*Non-Carrier Class Members*: All individuals who did not contract with Ryder Last Mile, Inc. (f/k/a MXD Group, Inc.) and are non-owner drivers and helpers authorized to provide transportation services for Defendants in California at any time from December 12, 2014 through the earlier of preliminary approval or July 26, 2020.  The

---

[1] The reason for this exclusion is that there is another case, *Espinoza v. Williams-Sonoma, Inc., et al.*, Los Angeles Superior Court Case No. BC693245, filed on or about February 13, 2018, currently pending in the Los Angeles Superior Court in front of Judge Kenneth R. Freeman, which also involves Defendant Ryder Last Mile, Inc. f/k/a MXD Group, Inc.  That case brings analogous claims on behalf of individuals who currently provide and formerly provided transportation services to defendants out of the warehouse located at 21508 Baker Parkway, City of Industry, California at any time from February 13, 2014, and continuing while the action is pending.  In *Espinoza*, a hearing on the plaintiff's motion for preliminary approval of a proposed settlement is set for September 29, 2020.  The claims of the individuals who have worked out of the City of Industry location are being addressed in the proposed *Espinoza* settlement, rather than in this proposed Settlement.

Non-Carrier Class includes drivers and helpers engaged by motor carrier companies to operate their commercial motor vehicles and perform delivery services for Defendants in connection with contracts Defendants had with the owners of the motor carrier companies.

3.      To appoint named Plaintiff as Settlement Class Representative and Plaintiff's attorneys as Settlement Class Counsel;

4.      To appoint Heffler Claims Group LLC as the Settlement Administrator;

5.      To approve the proposed notice to be distributed to Class Members under Federal Rule of Civil Procedure 23(c)(2) and (e)(1);

6.      To set a fairness hearing consistent with the schedule for class notice, objections, disputes, and requests for exclusions, as set forth in this Motion.

This motion is based on the accompanying memorandum of points and authorities; the Settlement Agreement attached as Exhibit 1 to the Declaration of Joshua Konecky and the Proposed Notice of Class Action and PAGA Settlement (attached as Exhibit 1 to the Settlement Agreement); the Declaration of Joshua Konecky; such oral argument as may be heard by the Court; and all other papers on file in this action.

Respectfully submitted,

Dated: July 1, 2020          SCHNEIDER WALLACE
                             COTTRELL KONECKY LLP


                             /s/ *Joshua G. Konecky*
                             Joshua G. Konecky
                             Counsel for Plaintiff

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.   SUMMARY OF THE CASE AND SETTLEMENT .......................................3

III.  KEY TERMS OF THE PROPOSED SETTLEMENT ...................................5

IV.   ARGUMENT .....................................................................................................8

    A.   The Settlement Class Meets the Criteria for Certification Under FRCP 23 ..... 8

        1.   The elements of Rule 23(a) are satisfied ....................................8

        2.   The elements of Rule 23(b)(3) are satisfied ...........................11

    B.   Overview of the Class Action Settlement Process ........................... 12

    C.   The Settlement Should be Preliminarily Approved ........................ 13

        1.   The Standards for Preliminary Approval ...............................13

        2.   The Proposed Settlement Meets the Preliminary Approval Standards .................13

    D.   The Court should order dissemination of the proposed class notice ........ 23

        1.   The Settlement Agreement provides for the best method of notice practicable under the circumstances ..........................23

        2.   The proposed form of notice adequately informs class members of the litigation and their rights in connection with the settlement ..................24

    E.   The Court should set a schedule for final approval ........................ 24

V.    CONCLUSION ................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Adoma v. Univ. of Phoenix, Inc.*
913 F. Supp. 2d 964 (E.D. Cal. 2012) ................................................................ 17

*Amchem Prods., Inc. v. Windsor*
521 U.S. 591 (1997) ............................................................................... 10, 11

*Brown v. Hain Celestial Grp.*, Inc.
2016 WL 631880 (N.D. Cal. 2016) ....................................................................... 15

*Carter v. Anderson Merchandisers, LP*
2010 WL 144067 (C.D. Cal. 2010) ....................................................................... 14

*Chun-Hoon v. McKee Foods Corp.*
716 F. Supp. 2d 848 (N.D. Cal. 2010) ............................................................... 14

*Churchill Vill. L.L.C. v. Gen. Elec.*
361 F.3d 566 (9th Cir. 2004) ........................................................................... 13

*Class Plaintiffs v. City of Seattle*
955 F.2d 1268 (9th Cir. 1992) .................................................................... 13, 14

*Eddings v. Health Net, Inc.*
2013 WL 169895 (C.D. Cal. 2013) ..................................................................... 13

*Edwards v. Aramark Unif. & Career Apparel, LLC*
2016 WL 236241 (N.D. Ill. 2016) ...................................................................... 19

*Fernandez v. Victoria Secret Stores, LLC*
2008 WL 8150856 (C.D. Cal. 2008) .................................................................... 15

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) ............................................................. 9, 10, 11, 14

*In re Heritage Bond Litig.*
2005 WL 1594403 (C.D. Cal. 2005) .................................................................... 16

*In re Synocor ERISA Litig.*
516 F.3d 1095 (9th Cir. 2008) ......................................................................... 14

*In re Tableware Antitrust Litig.*
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................ 14

*In re: Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*
618 F.3d 988 (9th Cir. 2010) .......................................................................... 23

*Khanna v. Intercon Sec. Sys., Inc.*
2014 WL 1379861 (E.D. Cal. Apr. 8, 2014) ...................................................... 17

*Montoya v. 3PD, Inc.*
2015 WL 1469752 (D. Ariz. 2015) .................................................................... 19

*Nat'l Rural Telecomm's Coop v. Directv, Inc.*
221 F.R.D. 523 (C.D. Cal. 2004) .................................................................. 16, 18

*Officers for Justice v. Civil Serv. Comm'n*
    688 F.2d 615 (9th Cir. 1982) ...................................................................................... 13, 16

*Ontiveros v. Zamora*
    2014 WL 3057506 (E.D. Cal. July 7, 2014) .................................................................. 17

*Rodriguez v. West Publ'g Corp.*
    563 F.3d 948 (9th Cir. 2009) ........................................................................................ 22

*Smith v. CRST Van Expedited, Inc.*
    2013 WL 163293 (S.D. Cal. 2013) ............................................................................... 23

*Van Brokhorst v. Safeco Corp.*
    529 F.2d 943 (9th Cir. 1976) ........................................................................................ 14

*Van Vranken v. Atlantic Richfield Co.*
    901 F. Supp. 294 (N.D. Cal. 1995) ............................................................................... 22

*Villalpando v. Exel Direct Inc.*
    303 F.R.D. 588 (N.D. Cal. 2014) .................................................................................. 11

*Weeks v. Kellogg Co.*
    2013 WL 6531177 (C.D. Cal. 2013) ........................................................................ 14, 22

*Wren v. RGIS Inventory Specialists* 256 F.R.D. 180 (N.D. Cal. 2009) ................................ 12

**Rules**

Fed. R. Civ. P. 23 (a)(3) .................................................................................................... 10

Fed. R. Civ. P. 23(a)(1) ....................................................................................................... 8

Fed. R. Civ. P. 23(a)(2) ....................................................................................................... 9

Fed. R. Civ. P. 23(a)(4) ..................................................................................................... 10

Fed. R. Civ. P. 23(c) .............................................................................................. 2, 23, 24

Fed. R. Civ. P. 23(e) ............................................................................................ 12, 14, 23

**Other Authorities**

Newberg on Class Actions
    § 11.22, *et seq*. (4th ed. 2002) ........................................................................... 13, 14, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Joseph Kimbo seeks preliminary approval of a proposed $5,000,000 non-reversionary, class-action settlement to resolve this wage and hour case brought on behalf of individuals performing local delivery, driving and related services for Defendants Ryder Last Mile (f/k/a MXD Group, Inc.) and Ryder System, Inc. (collectively, "Defendants").  The gravamen of the claims is that Defendants misclassified the class members as "independent contractors," rather than employees.  Plaintiff alleges that Defendants used this classification to deny the class members their rights as employees, such as the right to reimbursement for job-related expenses and the rights to minimum wage and overtime.  Defendants deny they misclassified the class members or that they owe the class members any reimbursements or other payments.

The proposed Settlement represents an excellent result for the class members on Plaintiff's disputed claims.  Class members who participate in the settlement ("Settlement Class Members") will receive substantial monetary payments and the benefit of expeditious resolution without the delay of further litigation.

The proposed settlement also would ensure that the recovery is distributed to Settlement Class Members in reasonable proportion to the estimated value of their individual claims. Settlement Class Members will share in the recovery on a pro rata basis based on the number of calendar workweeks they were authorized to provide transportation services to Defendants during the class period.  Further, the Motor Carrier Class Members bore the most financial risk and potential damages, including but not limited to unreimbursed expenses and (the "Motor Carrier" subclass), and therefore will have their workweeks weighted more than those who worked solely as Non-Carrier Class Members that inherently incurred less financial risk and potential damages, including expense reimbursements. As explained below, this tailoring of the distribution formula to mirror the comparative value of the claims between the Motor Carrier Class Members and Non-Carrier Class Members also reflects the reasonableness of the proposed settlement.

The class members will <u>not</u> need to submit claim forms to receive a check, which will be

1  sent automatically to Settlement Class Members who do not opt-out.  In addition to these direct and
2  automatic payments, Settlement Class Members who had to pay claims to third parties based on
3  liabilities occurring in the scope of their regular work during the class period, which Plaintiff
4  maintains would have been the responsibility of Defendants had the class members been classified
5  as "employees," will also be eligible to obtain reimbursement from a portion of the settlement set
6  aside to pay for these losses, by submitting documentation of the costs actually incurred and/or an
7  enforceable judgment against them.  Finally, the settlement reasonably allocates $150,000.00 as
8  civil penalties under the Private Attorneys General Act (PAGA), of which 75% will be paid to the
9  LWDA.

10      None of the $5,000,000.00 will revert back to Defendants.  Any residual remaining in the
11  Reserve Fund after the payments to all Settlement Class Members will be paid to the designated *cy*
12  *pres* beneficiary, St. Christopher's Fund, a non-profit organization that provides financial assistance
13  to drivers who have been injured on the job or are ill.  The Gross Settlement Amount does not
14  include the employer's share of payroll taxes which will be separately paid by Defendants.

15      The process for reaching the proposed settlement was also informed and reasonable.  First,
16  Plaintiff and his counsel did not enter into settlement negotiations without first reviewing extensive
17  documentation and data, and preparing, *inter alia*, a liability and exposure analysis.  Plaintiff and
18  his counsel also vetted the strengths and weakness of the claims through pre-discovery
19  investigation, putative class member interviews, and by drawing from their experience in
20  *Villalpando v. Exel Direct, Inc,* Case No. 3:12-cv-04137-JCS (N.D. Cal.), an analogous class action
21  case Plaintiff's counsel litigated against Defendants' previous iteration.[2]  *Villalpando* addressed
22  similar legal issues and presented analogous facts and claims.  That case settled after extensive
23  investigation, discovery, motion practice, and pretrial proceedings—all of which informed

24  _____

25  [2] After the liability period in the *Villalpando* case, Plaintiff contends that the business now owned
   by Defendants (f/k/a Exel Direct, Inc.) changed its name and some of its operating policies relevant
26  to the "independent contractor" versus "employee" issue.  Plaintiff maintains that those policy
   changes were not adequate to make the class members *bona fide* independent contractors or to
27  protect them against the harms that occur as a result of misclassification, whereas Defendants
   maintain that the class members are properly classified as independent contractors.

28

Plaintiff's evaluation here.  The parties and counsel then conducted their negotiations at arms-length, with the assistance of a highly regarded mediator experienced in the area of wage-and-hour class actions, Antonio Piazza.  Further, Plaintiff's counsel brought substantial experience and expertise in wage and hour class actions to the negotiation process.  As discussed in the Declaration of Joshua Konecky (submitted herewith), Plaintiff's counsel submits that the benefits of the proposed settlement for the class are substantial as weighed against the potential exposure and the risks and delays of continued litigation.

In sum, the proposed settlement satisfies all the criteria for settlement approval under Fed. R. Civ. P. 23, and easily falls within the range of reasonableness for preliminary approval. Accordingly, Plaintiff requests that the Court preliminarily approve the proposed settlement, certify the proposed settlement class, approve distribution of notice of the proposed settlement, and set a final approval hearing.

## II.    SUMMARY OF THE CASE AND SETTLEMENT

In the spring of 2018, a group of motor carrier owners contacted and met with Plaintiff's counsel regarding complaints they had about the terms of their compensation and work arrangements with Defendants.  Declaration of Joshua G. Konecky In Support of Motion for Preliminary Approval ("Konecky Decl.") at ¶ 8.  Plaintiff Joseph Kimbo was one of these individuals.  *Id*.  These complaints were similar to those Plaintiff's counsel investigated in the matter of *Villalpando v. Exel Direct, Inc*., Case No. 3:12-cv-04137-JCS (N.D. Cal.), a prior class action against the previous iteration of Defendants.  *Id*.; *see* note 2, *supra*.

On December 12, 2018, Plaintiff brought a Class Action Complaint in the Sacramento County Superior Court.  [ECF 1-2].  Plaintiff's complaint alleged violations of California law, including that Defendants misclassified the individuals who transport and deliver furniture, appliances, and other retail items as independent contractors, and as a result denied them the rights and protections afforded by the California Labor Code and the Industrial Welfare Commission Wage Order No. 9.  The Complaint also alleged that Defendants engaged in unfair competition in violation Business & Professions Code §§ 17200, *et seq*., and sought statutory penalties pursuant

to the Private Attorneys' General Act of 2004 (PAGA).  On January 25, 2019, Defendants removed the matter to this Court.  [ECF 1].

On May 17, 2019, the parties conducted their initial Rule 26(f) conference. Konecky Decl. at ¶ 11.  In the same timeframe, the parties met and conferred regarding the possibility of exploring an early resolution and agreed to schedule a private mediation.  *Id.*  On May 31, 2019, the parties notified the Court that they had agreed to mediation and requested a stay of the proceedings pending mediation.  *Id.*  On June 4, 2019, the Court issued an order staying this action in all respects pending the mediation.  *Id.*

In the weeks leading up to the mediation, Defendants provided class data showing when individuals were authorized to provide services, routes driven during the liability period, and other information informally requested by Plaintiff to evaluate the potential alleged damages and engage in meaningful settlement discussions.  *Id.* at ¶ 12.  This data assisted Plaintiffs in evaluating the strengths and weaknesses of the claims and in preparing an exposure analysis for mediation.  *Id.* at ¶¶ 12-13.  Counsel also prepared a mediation brief examining the evidence as well as evaluating the legal claims and defenses, drawing upon its experience in previous cases (including the *Villalpando* case) to prepare a liability analysis tailored to the particular facts at issue here.  *Id* at ¶ 13.  Counsel vetted the claims through rigorous legal analysis, both on the class certification and merits issues.  *Id.*

On December 9, 2019, the parties engaged in a full-day mediation before Mediator Antonio Piazza, an experienced and well-regarded mediator in this area of law.  *Id.* at ¶¶ 14-15.  The mediation was successful.  *Id* at ¶ 15.  Plaintiff and Defendants agreed on the principal terms of a settlement and executed a Memorandum of Understanding ("MOU") to memorialize their agreement.  *Id.*  On January 21, 2020, the parties filed a Joint Status Report informing the Court that they had reached a settlement to propose to the Court.  [ECF 17].  Over the past several months, the parties negotiated the remaining details of the settlement and finalized a long-form settlement agreement and notice to the class, among the other settlement documents that Plaintiff now submits to the Court.  Konecky Decl. at ¶ 16.

### III.   KEY TERMS OF THE PROPOSED SETTLEMENT

Under the Settlement Agreement, Ryder will pay $5,000,000 to resolve this litigation ("Gross Settlement Amount").  Konecky Decl., Exh. 1 (Settlement Agreement and proposed Notice).  This entire amount will be disbursed pursuant to the terms of the Settlement Agreement, and none of it will revert to Defendants.  Exh. 1 to Konecky Decl., Settlement Agreement at ¶¶ 2, 15, 42, 78-89.

The key terms of the Settlement Agreement include:

- Gross Settlement Amount: The Gross Settlement Amount is $5,000,000.  It is the total sum Defendants agree to pay in exchange for Plaintiff's and the Settlement Class Members' releases to fully and finally settle this matter.  It does not include the employer's portion of any payroll taxes owed to the government authorities as a result of the settlement payments, which Defendants will pay in addition to the Gross Settlement Amount.  Settlement Agreement, at ¶¶ 15, 100-102.

- No Reversion: All settlement funds will be paid out, and none will revert to Defendants. *Id.* at ¶¶ 2, 15, 42, 78-89.

- Released Class Claims: The Released Class Claims with respect to the Settlement Class Members are limited to the wage and hour claims that were pled or could have been pled based on the alleged facts in the Complaint and pre-complaint letter to the California Labor Workforce Development Agency (LWDA). *Id.* at ¶ 99.

- Settlement Class:  The Settlement Class Members consist of all Motor Carrier Class Members and Non-Carrier Class Members who do not submit a timely and valid Opt Out.  As used herein,. "Motor Carrier Class Members" includes all individuals who contracted directly with Defendants as individuals or through a formal business entity that did not submit a timely and valid Opt Out.  Non-Carrier Class Members" includes all individuals engaged by the motor carriers to help operate their commercial motor vehicles and perform delivery services for Defendants. *Id.* at ¶¶ 18, 20.  Defendants estimate approximately 310 individuals that are Motor Carrier Class Members and approximately 640 individuals that are Non-Carrier Class Members.[3]  Defendants' records also indicate that there were approximately 238,743 different routes were driven during the Class Period.

- Net Settlement Amount: The Net Settlement Amount is the amount that remains and

---

[3] Defendants also estimate approximately 110 additional Non-Carriers who operated out of the City of Industry warehouse location that is excluded from this Action.  These individuals are class members in the case of *Espinoza v. Williams-Sonoma, Inc., et al.*, Los Angeles Superior Court Case No. BC693245, and will be able to participate in a settlement recently reached in that case assuming it is approved.  Defendants are confirming the extent to which any of these Non-Carriers covered by the *Espinoza* case worked routes assigned to the Motor Carriers who are part of this Action.  To the extent such overlap occurred, the parties anticipate that it would be limited and infrequent.  Nonetheless, the Non-Carriers covered by the *Espinoza* case still would be able to participate in this Action, but only for those specific dates that they worked on a route covered by this Action.

that shall be paid to Settlement Class Members, after the following amounts are subtracted: (1) the fees and costs of the third party administrator charged with administering the settlement (estimated to be approximately $39,831.00); (2) The $150,000 PAGA Payment to be paid to the California LWDA (75% of which will be paid to the LWDA and the remaining 25% of which shall be paid to the PAGA Group, the subset of Class Members who worked for Defendants during the PAGA Period); (3) $125,000.00 to be put aside in the Reserve Fund in the event there are Settlement Class Members who are not identified until after the initial mailing of settlement checks, but who are eligible to participate in the settlement; (4) any service award approved by the Court for the Class Representative, Mr. Kimbo; and (5) any attorneys' fees and costs approved by the Court. *Id*. at ¶ 19.

- <u>Direct Payments to Settlement Class Members / No Claim Forms</u>:  Settlement Class Members who do not opt out of the Settlement will <u>not</u> need to submit claims to receive their pro-rata settlement payment.  Rather, Individual Settlement Payments (i.e., settlement checks) will be automatically sent to all class members for whom a valid address can be located either through Defendants' records, and/or by the Settlement Administrator through the National Change of Address database (NCOA).  *Id.* at ¶¶ 65-66; Declaration of Mark Rapazzini, representative of Settlement Administrator Heffler Claims Group ("Rapazzini (Admin) Decl."), at ¶ 6.

- <u>Distribution Formula</u>: Each Settlement Class Member's individual share of the Settlement will be proportional to the number of weeks the class member worked for Defendants during the applicable time period, in comparison to the aggregate number of weeks all Settlement Class Members combined worked for Defendants during the same period. Settlement Agreement, at ¶¶ 68, 81; Konecky Decl. at ¶ 22. Additionally, the workweeks for Motor Carrier Class Members will be calculated at 4 times the Workweek Payment Rate for Class Members whereas the workweeks for Non-Carrier Class Members shall be calculated at 1 times the Workweek Payment Rate for Class Members.  Settlement Agreement, at ¶ 81(d); Konecky Decl. at ¶ 23.  As discussed below, the parties allocated the workweeks in this fashion to account for the relative strength and value of the Motor Carrier Class Members' and Non-Carrier Class Members' claims.  The exact formula is set forth in the Settlement Agreement as well as the proposed class Notice.  Settlement Agreement, at ¶¶ 80, 81; proposed Notice to Class, Exhibit 1 to Settlement Agreement.

- <u>Reserve Fund</u>: 2.5% of the Settlement Fund will be placed in a Reserve Fund. Settlement Agreement, at ¶¶ 42, 81(a), 88.  The purpose of the Reserve Fund is to have money left over to pay for any late or unexpected claims (e.g. from class members who for unanticipated reasons may not have been on the class list prepared by Defendants, or who may not have been located through the initial notice process).  The Reserve Fund also will include the amount of any checks that are sent but remain uncashed after 60 days.  After expiration of the 60-day period, the Reserve Fund will be used to pay unanticipated or late claims.  Any residual still remaining after this will be donated to the Parties' designated *cy pres* beneficiary.

- <u>PAGA Payment</u>: the Parties have agreed to pay to the California Labor and Workforce Development Agency ("LWDA") and the PAGA Group in connection with the California Labor Code Private Attorneys General Act of 2004, California Labor Code Sections 2698, *et seq.* ("PAGA").  *Id.* at ¶ 28.  The Parties have agreed that One

Hundred and Fifty Thousand Dollars and No Cents ($150,000.00) of the Gross Settlement Amount will be allocated to the resolution of all claims arising under PAGA. Pursuant to Labor Code Section 2699(i), it would be distributed as follows: 25%, or $37,500, to the PAGA Group and 75%, or $112,500, to the LWDA. *Id.*

- <u>Claims Compensation Fund</u>: $100,000.00 of the Net Settlement Fund will be placed in the Claims Compensation Fund to be used to compensate Motor Carrier Class Members who have had to personally pay costs, charges, fees, or expenses on claims made against them by third parties arising out of providing transportation and delivery services for Defendants in California during the Class Period. Settlement Agreement, at ¶ 81(c). Plaintiff maintains that any such claims would have been the responsibility of Defendants had the Class Members been classified as employees. Any Motor Carrier Class Member who makes a claim from the Claims Compensation Fund, must submit documentation of the costs actually incurred and/or an enforceable judgment against them in connection with the claims made against them by third parties arising from providing delivery services to Defendants. This particular component of the Settlement Agreement is discussed in more detail in Section C.2.c, *infra*.

- <u>Tax Allocation</u>: The proposed tax allocation for the Individual Settlement Payments reflects Plaintiff's counsel's assessment that the strongest and most valuable claims relate to expense reimbursement under Labor Code 2802, penalties and interest. Specifically, the proposed tax allocation is as follows: (a) Forty Percent (40%) of the amount of each Individual Settlement Payment shall be allocated to expense reimbursement; (b) Forty Percent (40%) of the amount of each Individual Settlement Payment shall be allocated to alleged penalties and interest; and (c) Twenty Percent (20%) of the amount of each Individual Settlement Payment shall be allocated to the unpaid wage claims. In addition, the PAGA Payment Shares will be allocated entirely as penalties. Settlement Agreement, at ¶ 84.

- <u>Service Award</u>: The Settlement provides that Plaintiff may seek a service payment to the Class Representative, not to exceed $15,000 (subject to Court approval), which Defendants will not oppose. *Id*. at ¶ 93. The proposed service payment is approximately 0.3% of the Settlement.

- <u>Attorney's Fees and Costs</u>: Plaintiff's attorneys' fees and costs are included in the gross settlement amount of $5,000,000. The Settlement provides that Defendants will not oppose a fee application of up to twenty-five percent (25%) of the Gross Settlement Fund, and costs not to exceed $20,000.00. *Id*. at ¶ 94. Plaintiff will make a separate motion for attorneys' fees and costs under Rule 23(h), on a date to be set by the Court.

- <u>Notice of Class Action and PAGA Settlement</u>: The proposed Notice sets forth in plain terms, a statement of case, the terms of Settlement, the approximate amount of attorneys' fees, costs, and the service award being sought, an explanation of how the settlement allocations are calculated, each class member's own credited workweeks, total class member workweeks, as well as a means by which class members may make a preliminary calculation of the approximate amount of money they would receive in the event all class members participate in the settlement. *See* proposed Notice to Class, Exhibit 1 to Settlement Agreement (Exh. 1 to Konecky Decl.). The Notice to the Class will be translated into Spanish, and both the English and Spanish versions shall be mailed to the Settlement Class Members. Settlement Class members will be notified by first

class mail of the settlement, and by email where available. Settlement Agreement, at ¶ 65; Rapazzini (Admin) Decl. at ¶¶ 6-7. Heffler Claims Group, the Parties' selected Settlement Administrator, will undertake its best efforts to ensure that the notice is provided to the current addresses of class members, including by conducting a national change of address search and re-mailing the notice to updated addresses. Settlement Agreement, at ¶ 66; Rapazzini (Admin) Decl. at ¶¶ 6-7. The Settlement Administrator also will set up a website posting the Notice to the Class and other important case documents. Rapazzini (Admin) Decl. at ¶ 8.

- <u>Right to Object</u>. The Notice shall state that Settlement Class Members who wish to object to the Settlement must mail to the Settlement Administrator a written statement of objection ("Notice of Objection") by the Response Deadline, which is 45 days following the date the Settlement Administrator mails the Notice of Class Action and PAGA Settlement to Class Members. Settlement Agreement, at ¶¶ 74-76. Class Members who submit a timely Notice of Objection will have a right to appear at the Final Approval/Fairness Hearing to have their objections heard by the Court. *Id.*

- <u>Right to Opt Out</u>. The Notice shall state that Class Members who wish to exclude themselves from the Settlement Class and Settlement must submit a written Request for Exclusion to the Settlement Administrator by the 45-day Response Deadline. *Id.* at ¶ 70. Any Class Member who submits a completed, signed, and timely written Opt Out shall no longer be a member of the Class, shall be barred from objecting to this Settlement, will not be entitled to any recovery under the Settlement and will not be bound by the terms of the Settlement or have any right to object, appeal or comment thereon, except that Class Members who are in the PAGA Group will still receive his or her PAGA Payment Share and will release the Released PAGA Claims. *Id.*

- <u>Right to Challenge Defendants' Workweek Records</u>. Class Members will have the opportunity, should they disagree with Defendant's records regarding the dates of employment stated on their Class Notice, to provide documentation and/or an explanation to show contrary employment dates. If there is a dispute, the Settlement Administrator will investigate the dispute, requesting information from Defendants as necessary and determining whether an adjustment is warranted. *Id.* at ¶ 92. The Settlement Administrator shall determine the eligibility for, and the amounts of, any Individual Settlement Payments under the terms of this Agreement. *Id.* The Settlement Administrator's determination of the eligibility for and amount of any Individual Settlement Payment shall be binding upon the Settlement Class Member and the Parties. *Id.*

## IV.   ARGUMENT

### A.   The Settlement Class Meets the Criteria for Certification Under FRCP 23

#### 1.   The elements of Rule 23(a) are satisfied

##### a)   Rule 23(a)(1): Numerosity

The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members would be "impracticable." *See* Fed. R. Civ. P. 23(a)(1). Here, there are more than 900 class members, all of whom are identifiable from Defendants' records. This easily satisfies

1  numerosity under Fed. R. Civ. P. 23(a)(1).  *See, e.g.*, *Rodriguez v. Penske Logistics,* LLC, 2017

2  U.S. Dist. LEXIS 152379, at *13 (E.D. Cal. Sept. 19, 2017) (citing *Rannis v. Recchia*, 380 Fed.

3  Appx. 646, 651 (9th Cir. 2010) for the proposition that numerosity is generally satisfied by 40 class

4  members).

5                              *b)*        *Rule 23(a)(2): Commonality*

6         Rule 23(a) also requires "questions of law or fact common to the class."  Fed. R. Civ. P.

7  23(a)(2).  The Ninth Circuit permissively construes the commonality requirement such that the

8  "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core

9  of salient facts coupled with disparate legal remedies within the class."  *Hanlon v. Chrysler Corp*.,

10  150 F.3d 1011, 1019 (9th Cir. 1998).  Plaintiff meets the criteria of Rule 23(a)(2) because the claims

11  of the putative class members turn upon answers to overarching common questions regarding

12  Defendants' policies and procedures that are capable of class-wide resolution for settlement

13  purposes.

14         The central common question in this case, from which all liability flows, is whether

15  Defendants misclassified the putative class members as independent contractors under California

16  law.   Courts in this Judicial District regularly hold that misclassification claims meet the

17  commonality requirement on preliminary approval.  *See, e.g.*, *Singh v. Roadrunner Intermodal*

18  *Servs.*, 2018 U.S. Dist. LEXIS 89308, at *26-*27 (E.D. Cal. May 25, 2018) (finding Plaintiff met

19  the commonality requirement when addressing a motion for preliminary approval in a

20  misclassification case in the trucking industry); *McCulloch v. Baker Hughes Inteq Drilling Fluids,*

21  *Inc.*, 2017 U.S. Dist. LEXIS 78367, at *20-*21 (E.D. Cal. May 23, 2017) (Noting in an order on a

22  motion for preliminary approval that "[t]he common contention central to class-wide resolution,

23  here, is whether defendants 'improperly classified [the class] as independent contractors and failed

24  to pay required overtime" and finding Plaintiff met the commonality requirement); *see also*

25  *Dynamex Operations W. v. Super. Ct.*, 4 Cal. 5th 903 (2018) (seminal California Supreme Court

26  case in the misclassification context upholding class certification in analogous case brought on

27  behalf of delivery drivers).

28

---

The common questions raised by the putative class members, include: whether they have been misclassified as independent contractors; and whether, as a result, Defendants denied them the benefits and protections to which they were entitled under the California Labor Code and IWC Wage Order No. 9.  Because all members of the proposed Settlement Class were subject to the same policies, and assert the same types of injury arising from the same conduct by Defendants, these common questions establish Rule 23(a) commonality.

*c)*       *Rule 23(a)(3): Typicality*

A representative plaintiff must establish that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23 (a)(3).  This is a permissive standard that is met so long as the representative claims "are reasonably coextensive with those of absent class members." *Hanlon*, 150 F.3d at 1020.  Here, the named Plaintiff seeking to represent the proposed Settlement Class satisfies the typicality requirement because he asserts the same types of injuries arising from the same conduct by Defendants as the absent class members. All class members, including Motor-Carrier Class Members and Non-Carrier Class Members, performed the same or similar delivery work for Defendants, but did not receive employment benefits or employment protections from Defendants.

*d)*       *Rule 23(a)(4): Adequacy of Representation*

Rule 23 also requires that "the representative parties fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement is satisfied where, as here, the class representative (1) has common, and not antagonistic, interests with unnamed class members; and (2) will vigorously prosecute the interests of the class through qualified counsel. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997); *Hanlon,* 150 F.3d at 1021.  Here, the named Plaintiff shares common injuries with the class and is typical of class members because he performed the same delivery work for Defendants as the other class members and was classified by Defendants as an independent contractor.  His interests are aligned with those of the other class members.  Furthermore, Plaintiff's counsel are well-qualified and committed to vigorously prosecuting the class claims.  Konecky Decl. at ¶¶ 3-6.

1        2.      The elements of Rule 23(b)(3) are satisfied

2        Having met the four prerequisites for class certification in Rule 23(a), Plaintiff submits that

3   the proposed Settlement Class also satisfies Rule 23(b)(3).  Rule 23(b)(3) certification is proper

4   when common questions "predominate over any questions affecting only individual members" and

5   class resolution is "superior to other available methods for the fair and efficient resolution of the

6   controversy."  Fed. R. Civ. P. 23(b)(3).  Both Rule 23(b)(3)'s predominance and superiority

7   requirements are satisfied for purposes of certifying the proposed Settlement Class.

8                a)      *Common Questions Predominate*

9        "The Rule 23(b)(3) predominance inquiry tests whether proposed class [is] sufficiently

10  cohesive to warrant adjudication by representation."  *Amchem Prods. Inc. v. Windsor,* 521 U.S.

11  591, 623 (1997).  "When common questions present a significant aspect of the case and they can

12  be resolved for all members of the class in a single adjudication, there is clear justification for

13  handling the dispute on a representative rather than an individual basis."  *Hanlon,* 150 F.3d at 1022.

14  Here, the claims brought by the proposed Settlement Class all arise from the same conduct—

15  Defendants' classification of all of the putative class members as independent contractors, and the

16  common core of policies governing the class members' work, which applied to all members of the

17  proposed Settlement Class.   Accordingly, the predominance requirement is met because the

18  threshold question as to all of Plaintiff's claims—whether the putative class members are employees

19  or independent contractors—is susceptible to common proof.  *See Villalpando v. Exel Direct Inc.*,

20  303 F.R.D. 588, 608 (N.D. Cal. 2014) (granting class certification in highly analogous action

21  against prior iteration of Defendants).  In addition, the elements of the specific wage and hour

22  claims asserted by Plaintiff lend themselves to class treatment because of the common policies and

23  practices that apply to all drivers.  *See id.*

24       For these reasons, the issues raised by Plaintiffs' misclassification claims are well-suited for

25  class treatment.  *See O'Connor v. Uber Techs., Inc.*, 2019 U.S. Dist. LEXIS 54608, at *17 (N.D.

26  Cal. Mar. 29, 2019) (noting that "every (or nearly every) consideration under the California

27  common-law test of employment c[ould] be adjudicated with common proof on a classwide basis"

28

before the seminal case *Dynamex*, 4 Cal. 5th 903, and that "the misclassification question is arguably more amenable to classwide resolution" after that case).  Courts in the Ninth Circuit routinely grant class certification and/or class-wide adjudication of the merits on analogous independent contractor misclassification claims.  *See, e.g.*, *Villalpando*, 303 F.R.D. at 608-09 (finding class certification in analogous class action against prior iteration of Defendants here); *Villalpando v. Exel Direct Inc*., 2015 U.S. Dist. LEXIS 118065, at *176 (N.D. Cal. Sep. 3, 2015) (finding, on a class basis that highly-analogous class of delivery drivers working for prior iteration of Defendants were misclassified as independent contractors); *Alexander v. FedEx Ground Package System, Inc*., 765 F.3d 981, 988 (2014) (finding on a class-wide basis, after a bench trial, that analogous class of delivery drivers were misclassified as independent contractors); *Ruiz v. Affinity Logistics Corp*., 754 F.3d 1093, 1099 (9th Cir. 2014) (same, at summary judgment); *see also Singh*, 2018 U.S. Dist. LEXIS 89308, at *21-*32 (finding predominance for settlement purposes in analogous case); *McCulloch*, 2017 U.S. Dist. LEXIS 78367, at *20-*21 (same).

### b)   A Class Action is Superior

Rule 23(b)(3)'s final requirement is "that the class action be superior to other methods of adjudication."  This requirement is satisfied because there is no indication that class members seek to individually control their cases, that individual litigation is already pending in other forums, or that this particular forum is undesirable for any reason. Fed. R. Civ. P. 23(b)(3)(A)-(D).  In addition, the alternative of hundreds of individual actions "is not realistic."  *See Wren v. RGIS Inventory Specialists,* 256 F.R.D. 180, 210 (N.D. Cal. 2009).  Accordingly, certification of the Settlement Class is superior to any other method of resolving this matter, since it will promote economy, expediency, and efficiency.

### B.   Overview of the Class Action Settlement Process

A class action settlement like the one proposed here must be approved by the Court to be effective.  *See* Fed. R. Civ. P. 23(e).  The process for court approval is comprised of three principal steps:

1.   A preliminary approval hearing, at which the court considers whether the

---

proposed settlement is within the range of reasonableness possibly meriting final approval;

2.     Dissemination of notice of the proposed settlement to class members for comment; and

3.     A formal "fairness hearing," or final approval hearing, at which the Court decides whether the proposed settlement should be approved as fair, adequate, and reasonable to the class.

*See* Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004).  This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.  *See* Newberg on Class Actions, § 11.22, *et seq*. (4th ed. 2002) ("*Newberg*").

Plaintiff asks the Court to take the first step in the settlement approval process and grant preliminary approval of the settlement.  Plaintiff further requests that the Court order dissemination of notice to class members, and establish a schedule for the final approval process.

**C.     The Settlement Should be Preliminarily Approved**

1.     The Standards for Preliminary Approval

At this preliminary approval stage, the Court determines whether the proposed settlement "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval," such that it is worthwhile to give the class notice of the settlement and proceed to a formal fairness hearing.  *Eddings v. Health Net, Inc.*, 2013 WL 169895, * 2 (C.D. Cal. Jan. 16, 2013); *see also* 4 *Newberg*, § 11.25 (4th ed. 2002).  The proposed settlement here meets all these criteria.

2.     The Proposed Settlement Meets the Preliminary Approval Standards

The law favors the compromise and settlement of class-action suits.  *See, e.g., Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  The Ninth Circuit recognizes the "overriding public interest in settling and quieting

litigation . . . particularly . . . in class action suits …" *Van Brokhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Weeks v. Kellogg Co.*, 2013 WL 6531177, at *10 (C.D. Cal. Nov. 23, 2013) (quoting *In re Synocor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)) ("'[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'").

"[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants and their strategies, positions, and proof." *Hanlon*, 150 F.3d at 1026 (internal citations and quotations omitted). In exercising such discretion, the Court should give "proper deference to the private consensual decision of the parties . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027 (internal citations omitted); Fed. R. Civ. P. 23(e).

This determination involves a balancing of several factors, including: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; [and] the extent of discovery completed" among other factors. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 850-51 (N.D. Cal. 2010) (quoting *Class Plaintiffs*, 955 F.2d at 1291).

At the preliminary approval stage, the Court need only find that the proposed settlement is within the "range of reasonableness" such that dissemination of notice to the class, and the scheduling of a fairness hearing, are appropriate. *Newberg* § 11.25; *see also Carter v. Anderson Merchandisers, LP*, 2010 WL 144067, at *4 (C.D. Cal. Jan. 7, 2010); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007). Preliminary approval of a proposed class action settlement is appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of

1   possible approval[.]"   *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.   As discussed

2   below, the instant settlement falls within the "range of reasonableness" for preliminary approval.

     *a)*  *The Settlement is entitled to a presumption of fairness because it is*

        *the product of serious, informed and non-collusive negotiations*

5     Where a settlement is the product of arms-length negotiations conducted by experienced

6   class counsel and follows sufficient discovery, the Court begins its analysis with a presumption that

7   the settlement is fair and reasonable.   *See Newberg* § 11.41; *Brown v. Hain Celestial Grp.*, Inc.,

8   2016 WL 631880, at *5 (N.D. Cal. Feb. 17, 2016); *see also Fernandez v. Victoria Secret Stores,*

9   *LLC*, 2008 WL 8150856, at *4 (C.D. Cal. July 21, 2008).   At this stage, so long as the settlement

10  falls into the range of possible approval, the presumption applies and the settlement should be

11  preliminarily approved.

12    The Settlement was reached after informed, arms-length settlement negotiations supervised

13  by a well-respected mediator experienced in wage-and-hour class action cases, Antonio Piazza.

14  Konecky Decl. at ¶¶ 14-15.   Before the mediation, counsel vetted the claims through rigorous legal

15  analysis, both on the class certification and merits issues.   *Id.* at ¶¶ 12-13.   Counsel also evaluated

16  class data provided by Defendants showing the number of workweeks and routes, which allowed

17  for further vetting of the claims and preparation of an exposure analysis.   *Id.* at ¶ 12.   Counsel also

18  drew upon their extensive experience litigating, trying, and settling complex wage and hour class

19  actions, including independent contractor misclassification cases similar to this one—including

20  *Villalpando v. Exel Direct, Inc.*, *supra*.   *Id.* at ¶¶ 3-6, 13.   The parties then participated in a day-

21  long mediation before a very experienced and highly regarded mediator.   *Id.* at ¶¶ 14, 15.   Although

22  respectful, the negotiations were rigorous and at arms-length.   *Id.* at ¶ 15.

23    Accordingly, the fact that qualified and well-informed counsel endorse the proposed

24  settlement as being fair, reasonable, and adequate weighs heavily in favor of approval.   *See Hain*

25  *Celestial Grp.* 2016 WL 631880, at *5.

     *b)*  *The Settlement provides a substantial benefit to Class Members and*

        *has no obvious deficiencies*

A proposed settlement is not to be measured against a hypothetical ideal result that might have been achieved.  *See, e.g., In re Heritage Bond Litig.*, 2005 WL 1594403, at * 2 (C.D. Cal. June 10, 2005) (quoting *Officers for Justice*, 688 F.2d at 625) (a proposed settlement should not "'be judged against a hypothetical or speculative measure of what might have been achieved.'"); *Nat'l Rural Telecomm's Coop v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.").

The Settlement provides a very beneficial result for the Class.  As discussed above, even after estimated attorneys' fees and costs, the proposed service award, the LWDA payment, and the estimated costs of settlement administration, there will be an estimated $3,437,669 for distribution to the Settlement Class Members.[4]  Konecky Decl. at ¶ 19.  There are approximately 310 Motor Carrier Class Members and an estimated 640 members of the Non-Carrier Class to date.  *Id.* at ¶ 17.[5]  Under the distribution formula valuing Motor Carrier Class Member claims four times as much

---

[4] The "Net Settlement Amount" is defined in the Settlement Agreement to mean "the amount of money remaining after Class Counsel's attorneys' fees, costs and expenses, any Service Award to the Class Representative, settlement administration costs and expenses, PAGA payment, and Reserve Fund."  *See* Settlement Agreement at ¶ 19.  Plaintiffs will be seeking attorneys' fees of $1,250,000 (25% of the Gross Settlement Amount) and up to $20,000 in reimbursement of out-of-pocket costs; the maximum service award Plaintiff will seek is $15,000; the estimated settlement administration costs and expenses are $39,831.00; and the proposed Reserve Fund is $125,000 (2.5% of the Gross Settlement Amount).  *See id.* at ¶¶ 19, 42, 45, 48, 79, 81(a), 91, 93, 94.  In addition, $150,000 of the Gross Settlement Amount will be allocated to the resolution of claims arising under PAGA, with 75% of this amount ($112,500) being paid to the LWDA and the remaining $37,500 being distributed to the PAGA Group (the subset of Settlement Class Members who worked for Defendants within the limitations period for the PAGA claims.)  *Id.* at ¶ 28. The Reserve Fund of $125,000 will be paid to either Settlement Class Members or the *cy pres* beneficiary.  Thus, the total amount available for the Settlement Class Members is $3,562,669, although the initial amount to be distributed before payments from the Reserve Fund is $3,437,669.

[5] As stated above, there also are additional Non-Carriers who operated primarily out of Defendants' City of Industry location, some of whom may also have worked a small number of routes for Defendants out of locations other than the City of Industry on an infrequent, irregular basis. These individuals are class members in the case of *Espinoza v. Williams-Sonoma, Inc., et al*., Los Angeles Superior Court Case No. BC693245, and will be able to participate in the settlement in that case if it is approved.

1  as Non-Carrier Class Member claims, Plaintiff's counsel estimates that Motor Carrier Class
2  Members will receive an average share of approximately $8,871 and Non-Carrier Class Members
3  will receive an average share of approximately $1,074.  *Id.* at ¶ 29.[6]  As explained in further detail
4  in Section C.2.c, *infra,* the claims of the Motor Carrier Class Members are of substantially higher
5  value because they are the Settlement Class Members who have the lion's share of expense
6  reimbursement claims under Labor Code 2802.  *Id.* at ¶ 23-25.  Not only do these expense
7  reimbursement claims carry higher damages amounts, but they are not subject to the exemption and
8  pre-emption defenses that Defendants have asserted for the overtime and meal and rest period
9  claims.  *Id.* at ¶ 23.

10  These average recoveries compare favorably to wage-and-hour class action settlements in
11  this Circuit.  *See, e.g., Osegueda v. N. Cal. InAlliance*, 2020 U.S. Dist. LEXIS 7107, at *10 (E.D.
12  Cal. Jan. 15, 2020) (preliminary approval of a wage and hour class action settlement with an
13  approximate recovery of $328.06 per class member); *Garnett v. ADT, LLC*, 2016 U.S. Dist. LEXIS
14  84006, at *9 (E.D. Cal. June 28, 2016) (approving a class action settlement in an employment case
15  of approximately $1.6 million to be distributed among a class of 831 people); *Ontiveros v. Zamora*,
16  2014 WL 3057506, at *14 (E.D. Cal. July 7, 2014) (observing that average recovery of $6,000 was
17  "a generous amount", and citing cases approving lower per-class member averages of $609.91 and
18  $1,000.00); *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 982 (E.D. Cal. 2012) (reasoning
19  that average recovery of over $2,000 per Plaintiff was a "favorable" result); *Khanna v. Intercon*
20  *Sec. Sys., Inc.*, 2014 WL 1379861, at *12 (E.D. Cal. Apr. 8, 2014).

21  Additionally, the Settlement provides the Class Members the opportunity, should they
22  disagree with Defendant's records regarding the number of workweeks each Class Member worked,
23  to provide documentation and/or an explanation to show contrary dates.  Settlement Agreement, at

---

25  [6] As discussed above, individual shares also will depend on the Settlement Class Member's total
26  workweeks during the relevant time period. An estimated of each Settlement Class Member's
individual share will be provided in the Notice of Settlement, and will be tailored to each individual,
27  based on their total workweeks and whether they are a Motor Carrier or Non-Carrier. *See* proposed
Notice to Class, Exhibit 1 to Settlement Agreement (Exh. 1 to Konecky Decl.)

¶ 69, 92.  If there is a dispute, the Settlement Administrator will investigate the dispute, requesting information from Defendants as necessary and making a final determination of whether any additional amount is owed.  *Id.* at ¶ 92.  Class Members will also be given the opportunity to object to the settlement and to appear at the Final Approval/Fairness Hearing to have their objections heard by the Court.  Settlement Class Members will further have the opportunity to opt-out of the settlement should they so desire.  *Id.* at ¶ 70.  These procedural safeguards are explained in the Notice of Class Action and PAGA Settlement to the Class (attached as Exhibit 1 to the Settlement Agreement.)

The potential risks attending further litigation also support preliminary approval.  Courts have long recognized the inherent risks and "vagaries of litigation," and emphasized the comparative benefits of "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation."  *Nat'l Rural Telecomm,* 221 F.R.D. at 526.  Proceeding to trial (and potential appeals) could add years and possibly a decade to the resolution of this case.  Instead of having to wait many years for relief, Settlement Class Members will receive payments in a reasonably prompt timeframe.

Here, even if Plaintiff had continued to litigate this case, there is no guarantee that Plaintiff would have been able to achieve class certification or demonstrate that the drivers had been misclassified as independent contractors.  The possibility of any class recovery at all would be erased if Plaintiff was unable to achieve either of these prerequisites.

Moreover, developments in the law after this case was filed created substantial risks to Plaintiff's chances of securing a strong recovery.  For example, on December 21, 2018, the Federal Motor Carrier Safety Administration (FMCSA) determined that California's meal and rest period claims are preempted as to property-carrying commercial motor vehicle drivers covered by the FMCSA's hours of service regulations.  *See* Order Granting Petition for Determination of Preemption, 83 Fed. Reg. 67470, 67470 (Dec. 28, 2018) (docket No. FMCSA-2018-0304) (https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/regulations/440601/california-meal-and-rest-break-rules-preemption-determination.pdf).  The Ninth Circuit is currently considering

1    this issue on appeal.  *See, e.g.*, *Cal. Labor Comm'r v. FMCSA* (9th Cir. Dkt. No. 19-703290); *Int'l*

2    *Brotherhood of Teamsters et al. v.* FMCSA (9th Cir. Dkt. No. 19-73488).   If this appeal is

3    unsuccessful, Plaintiffs' meal and rest period claims could have been wiped out entirely.

4           As another example, district courts have held that analogous workers were precluded from

5    asserting claims for overtime because they were exempt from receiving overtime pay under the

6    Motor Carrier Act exemption.  *See, e.g., Antemate v. Estenson Logistics, LLC*, 2017 U.S. Dist.

7    LEXIS 184502, at *21-*22 (C.D. Cal. Nov. 7, 2017), Montoya *v. 3PD, Inc.*, 2015 WL 1469752, at

8    *5 (D. Ariz. Mar. 31, 2015); *Edwards v. Aramark Unif. & Career Apparel, LLC*, 2016 WL 236241,

9    at *13 (N.D. Ill. Jan. 19, 2016).

10          Considered against the risks of continued litigation, the potential for appeals even if Plaintiff

11   and the Class were successful, the strong possibility of years of delay, and the importance of the

12   employment rights at issue and a speedy recovery to the Settlement Class Members, the totality of

13   relief provided under the proposed Settlement is more than adequate and well within the range of

14   reasonableness.

15                         *c)       The distribution formula is reasonable*

16          The distribution formula takes into account objective data, including the time period worked

17   by each of member of the class, their routes driven, and whether they are Motor Carriers or Non-

18   Carriers.  Konecky Decl. at ¶¶ 21-23.  Following these datapoints, the distribution formula fairly

19   and reasonably compensates Settlement Class Members in accordance with the relative strengths

20   and weaknesses of their individual claims, in two key respects.

21          First, Settlement Class Member's share will increase or decrease proportionally based on the

22   number of workweeks he or she has in comparison to the workweeks of all the Settlement Class

23   Members combined.  *Id.* at ¶ 22.  Thus, the Settlement Class Members' respective shares will

24   increase or decrease proportionally based on the amount of time worked during the liability period.

25   The Settlement Class Members' tenures performing delivery work for Defendants during the

26   liability period is a reasonable proxy for the amount of alleged damages they incurred.  *Id.*

27          Second, the workweeks for "Motor Carrier Class" members will be calculated at 4 times the

28

Workweek Payment Rate for Settlement Class Members as a whole whereas the workweeks for Non-Carrier Class Members shall be calculated at 1 times the Workweek Payment Rate for Settlement Class Members as a whole. Settlement Agreement, at ¶ 81(d); Konecky Decl. at ¶ 23. This formula reflects the reality that the Motor Carrier Class Members have claims for unreimbursed expenses and unlawful deductions that are of significantly higher value than the claims of the Non-Carrier Class Members. Konecky Decl. at ¶ 23. Motor Carrier Class Members contracted directly with Defendants and incurred and/or had substantial expenses deducted from their pay. *Id*. In contrast, Non-Carriers are by definition not "Motor Carriers," and generally are not responsible for such costs. *Id*. The Non-Carriers do not contract directly with Defendants and are not paid directly by Defendants, nor do they have money deducted from their compensation by Defendants. *Id*. While the Non-Carriers are similarly situated to the Motor Carriers with respect to the delivery services they perform, the underlying misclassification issue, and the wage claims they assert, the Non-Carriers have significantly less damages because the Motor Carriers were the ones who tended to incur the unreimbursed expenses. *Id*.

This formula also reflects the reality that unreimbursed expenses are one of the most significant harms flowing from misclassification. *Id.* at ¶ 24. The burden of having to bear onerous costs such as daily fuel costs, truck repairs, insurance, and the like is often the most serious injury resulting from misclassification. *Id*. When passed from the hiring entity to the driver, these expenses can outpace the drivers' pay, leading to debt and other financial difficulties. *See Id.*

The comparatively stronger claims for unreimbursed expenses and unlawful deductions for the Motor Carrier Class Members has a significant impact on the overall value of their claims vis a vis the claims of the Non-Carrier Class Members. *Id.* at ¶ 25. Indeed, the bulk of the damages flowing from independent contractor misclassification typically derive from violations of California Labor Code §§ 221, 223, 400-410, and 2802, and IWC wage order No. 9, §8, which prohibit employers from deducting their own business expenses from employee compensation and require employers to reimburse their employees for out-of-pocket expenditures of the same. *See id*. The relatively large proportion of damages attributable to unreimbursed expenses and unlawful

1    deductions in these types of cases results from the relatively high costs of business in the local

2    delivery industry—such as fuel, maintenance, insurance, and tools—when borne by individual

3    workers. *Id*. at ¶ 24. This differential was reflected in the exposure analysis Plaintiffs prepared for

4    the mediation, which calculated that Defendants' potential exposure to the Class Members as a

5    whole for the unreimbursed expenses and unlawful deductions claims was approximately three and

6    a third times more than Defendants' potential exposure to the class for the claims concerning unpaid

7    wages and missed meal and rest periods. *Id*. at ¶ 25. This differential is *before* taking into

8    consideration the fact that Defendants can assert pre-emption and exemption defenses against the

9    overtime and meal and rest period claims, but not the expense reimbursement and wage deduction

10   claims. *Id*. While both Motor Carrier Class Members and Non-Carrier Class Members have

11   overtime and meal and rest period claims, Non-Carrier Class Members generally do not have claims

12   for unreimbursed expenses and/or unlawful deductions, as discussed above.

13           Thus, the expense reimbursement and wage deduction claims, which predominantly belong

14   to the Motor Carriers, have significantly more value both in terms of their raw value, as well as

15   their likelihood of success when considering the procedural defenses available to Defendants. *Id*.

16           Furthermore, the Claims Compensation Fund component of the proposed Settlement is

17   necessary and appropriate to ensure that the settlement funds are distributed in a fair and reasonable

18   manner. As discussed above, the Claims Compensation Fund is intended to remedy harms to

19   Settlement Class Members from having to personally pay costs, charges, fees, or expenses on claims

20   made against them arising out of providing transportation and delivery services for Defendants in

21   California during the Class Period. *Id*. at ¶ 26. The gravamen of Plaintiffs' case is that Defendants'

22   independent contractor classification scheme obscures the true nature of its relationship with its

23   drivers by labeling them as independent businesses rather than employees. *Id*. This obscuring of

24   the work relationship can result in legal claims being made against Settlement Class Members

25   through no fault of their own, that Plaintiff contends should properly have been directed at

26   Defendants. *Id*. To participate in the Claims Compensation Fund, Class Members will need to

27   show documentation of them paying such claims to third parties and/or that they have an

28

1  enforceable judgment against them.  *Id.* at ¶ 27.

2       Additionally, the parties' designated *cy pres* beneficiary, St. Christopher's Fund, is an

3  appropriate selection because its mission of providing financial assistance to truck drivers who have

4  been injured on the job or are ill aligns with the remedial aims of this case and the California Labor

5  Code, and addresses similar harms for a similar group of workers.  *See* Konecky Decl. at ¶ 32; Exh.

6  3 to Konecky Decl.  This mission also directly addresses the particular harms facing drivers during

7  the COVID-19 pandemic.  Konecky Decl. at ¶ 32.

8       Further, the service award Plaintiff Kimbo intends to seek is reasonable and appropriate and

9  does not unreasonably favor him over other Settlement Class Members.  *Id*. at ¶¶ 48-49.  Service

10  awards "are intended to compensate class representatives for work done on behalf of the class, to

11  make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to

12  recognize their willingness to act as a private attorney general."  *Rodriguez v. West Publ'g Corp.*,

13  563 F.3d 948, 958-59 (9th Cir. 2009); *see also Weeks*, 2013 WL 6531177, at *34.  The factors

14  courts use in determining whether to authorize a service award include: "'1) the risk to the class

15  representative in commencing suit, both financial and otherwise; 2) the notoriety and personal

16  difficulties encountered by the class representative; 3) the amount of time and effort spent by the

17  class representatives; 4) the duration of the litigation[;] and 5) the personal benefit (or lack thereof)

18  enjoyed by the class representative as a result of the litigation.'"  *Van Vranken v. Atlantic Richfield

19  Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

20       Plaintiff will seek a service award of no more than $15,000.  Plaintiff intends to seek this by

21  separate motion to be heard at the final approval hearing.  In that motion, Plaintiff will document

22  why the amount is reasonable.  Preliminarily, Plaintiff also notes here that the service award he will

23  seek is within the range approved by courts in the Ninth Circuit.  *See, e.g.*, *Watson v. Tennant Co.*,

24  2020 U.S. Dist. LEXIS 48918, at *18 (E.D. Cal. Mar. 20, 2020) ($25,000.00 service fee deemed

25  appropriate); *Brawner v. Bank of Am. N.A.*, 2016 U.S. Dist. LEXIS 4975, at *14-*16 (N.D. Cal.

26  Jan. 14, 2016) (approving $15,000.00 service award); *Horn v. Bank of America, N.A.,* 2014 WL

27  1455917, at *8 (S.D. Cal., Apr. 14, 2014) (approving incentive payment of $25,000.00); *Smith v.*

28

*CRST Van Expedited, Inc.*, 2013 WL 163293, at *6 (S.D. Cal., Jan. 14, 2013) (approving incentive payments $15,000 to each of three plaintiffs).  In the meantime, Plaintiff proposes that the full motion to support the service award be filed approximately two weeks into the notice period.

Plaintiff's counsel also will be filing a separate motion for attorneys' fees and costs pursuant to Federal Rule 23(h).  Plaintiff will be seeking attorneys' fees of $1,250,000, which is 25% of the Gross Settlement Amount and thus fully in line with the Ninth Circuit's 25% benchmark.  He also will be seeking approximately $20,000 in out-of-pocket costs.  Plaintiff proposes that he file his motion for attorneys' fees and costs within two weeks of the mailing of the class notice to afford class members a full opportunity to review and comment on it.  *See In re: Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988, 991 (9th Cir. 2010).

In sum, given the favorable terms of the settlement and the manner in which these terms were negotiated, the proposed settlement should be preliminarily viewed as a fair, reasonable, and adequate compromise of the issues in dispute.  The Court should therefore grant preliminary approval of the settlement, order dissemination of notice to the Settlement Class for comment, and proceed to a formal fairness hearing.

**D.      The Court should order dissemination of the proposed class notice**

1.      <u>The Settlement Agreement provides for the best method of notice practicable under the circumstances</u>

The federal rules require that before finally approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e).  Where the class is certified pursuant to Rule 23(b)(3), the notice must be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

The parties have agreed on a notice plan that would provide class members with individual notice by first class mail.  Settlement Agreement at ¶ 65; Rapazzini (Admin) Decl. at ¶ 6.  Notice will also be sent by e-mail where available. Settlement Agreement at ¶ 65; Rapazzini (Admin) Decl. at ¶ 7. The Notice will be translated from English to Spanish and be sent to class members in both

1   English and Spanish. *Id*. at ¶¶ 6-7.  In addition, the Settlement Administrator will establish a website

2   where Class Members can access the Notice and other important case documents.  *Id*. at ¶ 8.

3   Plaintiff requests that the Court approve this method of notice as the best practicable under the

4   circumstances.  *See, e.g., Rannis v. Recchia*, 380 F. App'x. 646, 650 (9th Cir. 2010) (finding mailed

5   notice to be the best notice practicable where reasonable efforts were taken to ascertain class

6   members' addresses).  Plaintiff further requests that the Court appoint Heffler Claims Group LLC

7   to serve as Settlement Administrator. The qualifications of Heffler Claims Group LLC are described

8   in the Declaration of Mark Rapazzini, filed herewith.  *See* Rapazzini (Admin) Decl. at ¶¶ 1-2.

9           2.        The proposed form of notice adequately informs class members of the

10                 litigation and their rights in connection with the settlement

11         The notice provided to class members should "clearly and concisely state in plain, easily

12   understood language" the nature of the action; the class definition; the class claims, issues, or

13   defenses; that the class member may appear through counsel; that the court will exclude from the

14   class any member who requests exclusion; the time and manner for requesting exclusion; and the

15   binding effect of a class judgment on class members.  Fed. R. Civ. P. 23(c)(2)(B).

16         The form of the notice proposed by the parties complies with the requirements of Rule 23

17   and is substantially similar to those encouraged by the Federal Judicial Center.  *See* proposed Notice

18   to Class, Exhibit 1 to Settlement Agreement.  It clearly and accurately informs class members of

19   the material terms of the settlement and their rights pertaining to it, including the right to opt out

20   from or object to the settlement.  *Id*.  The notice also will be tailored for each individual and provide

21   the class member's dates of work, total workweeks, and a method by which the class member may

22   calculate an estimate of his or her settlement share in the event that all class members participate in

23   the settlement.  *Id*.  Plaintiff thus requests that the Court approve the form of notice.

24       **E.**    **The Court should set a schedule for final approval**

25         The next steps in the settlement approval process are to notify the class of the proposed

26   settlement, allow class members an opportunity to file any objections or opt-out, and hold a final

27   approval hearing.  Toward those ends, the parties propose the following schedule:

28

| Deadline for Defendants to provide updated class list to Settlement Administrator | 30 calendar days after entry of Preliminary Approval |
| --- | --- |
| Deadline for Settlement Administrator to mail Notice of Settlement | 21 calendar days after provision of class list to Settlement Administrator (51 days after entry of Preliminary Approval) |
| Deadline for Plaintiff to file brief in support of attorneys' fees application | 7 calendar days after class notice is mailed (58 days after entry of Preliminary Approval) |
| Last day for Class Members to file any requests for exclusions, objections or disputed claim amounts | 45 calendar days from date notice is mailed (96 days after entry of Preliminary Approval) |
| Settlement Administrator to provide update to class counsel regarding requests for exclusion, disputed amounts, and claims made for Claims Compensation Fund | 55 calendar days from date notice mailed (106 days after entry of Preliminary Approval) |
| Deadline for Plaintiff to file motion for final approval of class action settlement | [TO BE SET BY COURT] |
| Deadline for Plaintiff to file motions for service awards | [TO BE SET BY COURT] |
| Final Fairness Hearing and hearing on Plaintiff's motion for fees, costs and service awards | [TO BE SET BY COURT] |

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the accompanying Proposed Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement, conditionally certifying the settlement classes, appointing Plaintiff as class representative and his attorneys as class counsel, directing dissemination of the class notice, and setting a hearing for the purpose of deciding whether to grant final approval of the settlement.


Dated:  July 1, 2020                         */s/ Joshua G. Konecky*
                                              Joshua G. Konecky
                                               SCHNEIDER WALLACE
                                              COTTRELL KONECKY LLP
                                              Attorneys for Plaintiffs

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that on July 1, 2020, I electronically filed the foregoing document with the

3

Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing

4

to all CM/ECF participants.

5

6

*/s/ Joshua G. Konecky*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28