Josh Konecky (SBN 182897)
Leslie H. Joyner (SBN 262705)
Nathan Piller (SBN 300569)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel:  (415) 421-7100
Fax:  (415) 421-7105
jkonecky@schneiderwallace.com
ljoyner@schneiderwallace.com
npiller@schneiderwallace.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSEPH KIMBO, an individual; on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>  vs.<br><br>MXD GROUP, INC., a California corporation; RYDER SYSTEM, INC., a Florida Corporation; and DOES 1-10, inclusive,<br><br>     Defendants. | Case No.: 2:19-CV-00166-WBS-KJN<br><br>**DECLARATION OF JOSHUA KONECKY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date:** August 3, 2020<br>**Time:** 1:30 p.m.<br>**Location:** Courtroom 5, 14th Floor |

I, JOSHUA KONECKY, declare as follows:

1.    I am one of the attorneys of record for Plaintiff in the above-captioned case.  I am familiar with the file, the documents, and the history related to this case.  The following statements are based on my personal knowledge and review of the files and, if called on to do so, I could and would testify competently thereto.

2.    I am submitting this Declaration in support of Plaintiff's motion for preliminary approval of the proposed class action settlement and conditional certification of a settlement class under Rule 23 of the Federal Rules of Civil Procedure.  A true and correct copy of the Stipulated Joint Settlement Agreement is attached to this Declaration as Exhibit 1.  The proposed class notice, subject to court approval and formatting by the Settlement Administrator, is attached as Exhibit 1 to the Joint Settlement Agreement.

## **EXPERIENCE OF COUNSEL**

3.    I have been counsel for Plaintiff and the proposed plaintiff class throughout this case. I am a partner at Schneider Wallace Cottrell Konecky LLP, which is a leading private plaintiff firm in employment and civil-rights class actions.   More details on the work, experience and accomplishments of the firm can be found at www.schneiderwallace.com, and on the Firm Profile, attached hereto as Exhibit 2.

4.    I personally have represented plaintiffs in employment, civil rights and employment class actions since I began practicing law in 1997.  For the first five years, my practice focused exclusively on disability access class actions.  Since approximately 2002, I have been representing plaintiffs in employment class actions, with a focus on wage and hour cases.  I have been named by the Daily Journal as a top labor and employment attorney in California and I have been on the Northern California Super Lawyers list every year since 2011.

5.    Over the past several years, I have litigated several wage and hour class actions on the specific issue of independent contractor misclassification of individuals in the same or similar industry as Defendants MXD Group, Inc. ("MXD") and Ryder System, Inc. ("RYDER").   For example, I was lead counsel in the analogous class action against Defendants' previous iteration, Exel Direct, Inc., *Villalpando v. Exel Direct Inc.* Case No. 3:12-cv-04137-JCS (N.D. Cal.).  That

case addressed a similar misclassification problem as the one at issue here.  On September 3, 2015, the United States District Court for the Northern District of California granted summary judgment in favor of the plaintiffs in *Villalpando* on Exel's independent contractor defense, and ruled that the Class Members were employees as a matter of law.  *Villalpando*, 2015 WL 5179486, at *51 (N.D. Cal. Sept. 3, 2015).   Since the ruling in *Villalpando*, the business changed its "independent contractor" model to a "carrier" model, and then ultimately changed ownership to Ryder System, Inc. (the principal defendant here).   As discussed in more detail below, our analysis of the Defendants' carrier model is that it does not adequately remedy the problems caused by the previous "independent contractor" model, but in many ways is a continuation of that model.  Defendants, however, maintain that the changes since the busines operated as Exel Direct were material and that the individuals who provide delivery services through the current carrier model are properly classified as independent businesses, rather than employees of Defendants.  Notwithstanding this dispute, our work in the *Villalpando* has helped to inform our work in the instant case and our analysis of the reasonableness of the settlement terms here.   Additionally, I have extensively litigated many other independent contractor misclassification cases and have successfully tried one such case involving transportation workers to judgment in favor of the plaintiff class.   My experience with all these cases has sharpened my ability to understand, explore and evaluate the factual and legal issues that arise in independent contractor misclassification cases, as well as the benefits and risks of reaching a settlement as opposed to proceeding with litigation and trial.

6.     As I mentioned above, my firm is also a leading plaintiff and employment class action firm.  Our partners and attorneys have litigated major wage and hour class actions, have won several prestigious awards, and sit on important boards and committees in the legal community.   The Recorder has listed our firm as one of the "top 10 go-to plaintiffs' employment firms in Northern California."  The Firm Profile attached as Exhibit 2 contains some representative cases and attorney profiles.

## CASE BACKGROUND AND PROCEDURAL HISTORY

7.     Defendant Ryder operates a "local delivery service," which makes deliveries of

furniture, appliances, and other retail items on behalf of Defendants' clients. Before Ryder acquired the business, it was known as "MXD," also a named defendant in this case. The information we have obtained during the case indicates that throughout the class period, approximately 310 individuals have contracted individually or through a formal business entity to provide local delivery services to either MXD and/or Ryder in California (not including those working out of City of Industry, which has been carved out of the class definition in this case because the individuals providing services from that location are class members in another case). These individuals are referred to as "Motor Carriers" in the Settlement. In addition, there are approximately 640 individuals in California who have been authorized to assist the Motor Carriers with their work (other than those working out of City of Industry). These individuals are called "non-carriers" in the Settlement. They do not contract directly with Defendants, but instead are "hired" and paid by the so-called Motor Carriers.

8.    In the spring of 2018, I was contacted by a group of Defendants' drivers regarding complaints they had about the terms of their compensation and work arrangements with Defendants. I met with them personally in a group setting on two occasions and had individual conversations telephonically on various other occasions. Plaintiff Joseph Kimbo was one of these individuals. The complaints were similar to those we investigated in the matter of *Villalpando v. Exel Direct, Inc.*, Case No. 3:12-cv-04137-JCS (N.D. Cal.), discussed above.

9.    On December 12, 2018, we filed the class action complaint in this matter in the Sacramento County Superior Court. The complaint alleges that Defendants were denying employment rights and benefits to the individuals performing its deliveries by misclassifying them as independent contractors, rather than employees. Specifically, the complaint brought claims under the California Labor Code, and the California Industrial Welfare Commission wage orders, for unreimbursed expenses, unlawful deductions, missed meal and rest periods, unpaid overtime, unpaid minimum wage and straight time, unfair competition, and statutory penalties for inaccurate wage statements and the failure to timely pay all wages due. *See* Complaint [ECF 1-2] at ¶¶ 1-3, 11-16, and 85-181. Plaintiff also asserted claims under the Private Attorneys General Act of 2004

("PAGA"), California Labor Code section 2699 *et seq.*, and the Business and Professions Code sections 17200 *et seq.*, based on the same allegations. *See id.* at ¶¶ 182-192.

10.    On January 24, 2019, Defendants filed their Answer and Affirmative Defenses to Plaintiff's Complaint.  On January 25, 2019, Defendants removed the action to this Court.  [ECF 1].  Defendants vigorously denied these allegations and steadfastly maintained that their policies and practices complied with applicable law.

11.    On May 17, 2019, the parties conducted their initial Rule 26(f) conference.  In the same timeframe, we met and conferred with counsel for Defendants regarding the possibility of exploring an early resolution and agreed to schedule a private mediation.  On May 31, 2019, the parties notified the Court that they had agreed to mediation and requested a stay of the proceedings pending mediation.  On June 4, 2019, the Court issued an order staying this action in all respects pending the mediation.

12.    In the weeks leading up to the mediation, Defendants provided us with data showing the approximate number of workweeks and routes driven during the liability period.  This data assisted us in evaluating the strengths and weaknesses of the claims and in preparing a liability and exposure analysis for mediation.

13.    To prepare for the mediation, we reviewed Defendants' data, as well as the extensive documentation we already had from the analogous *Villalpando* case discussed above.  We reviewed data imported to excel spreadsheets that enabled us to run damages calculations for the putative class on the class claims.  We also prepared mediation briefs examining the evidence as well as evaluating the legal claims and defenses.  We drew upon our experience in previous cases to prepare a liability and exposure analysis that would be tailored to the particular facts at issue here.  We vetted the claims through rigorous legal analysis, both on the class certification and merits issues.  We came to the mediation with a well-informed understanding of the disputed factual and legal issues that would be in play if the case were litigated and tried.

14.    On December 9, 2019, we engaged in mediation before Mediator Antonio Piazza, an experienced mediator in this area of law.  My co-counsel Nate Piller and I were present at the

mediation, as was Mr. Kimbo, who personally attended.  Defendants' corporate representatives with authority and attorneys were also present.

15.     The mediation was rigorous and conducted at arms-length.  The mediator, Mr. Piazza, explored and challenged the parties and counsel on many issues.  With the assistance of Mr. Piazza, Plaintiff and Defendants ultimately were able to find a resolution and agree on the principal terms of a settlement.   At the close of full day of negotiations, we executed a Memorandum of Understanding ("MOU") to memorialize the agreement.

16.     On January 21, 2020, the parties filed a Joint Status Report informing the Court that they had reached a settlement to propose to the Court.  Over the past several months, we have negotiated the remaining details of the settlement and worked with Defense counsel to prepare a long-form settlement agreement and notice to the class, among other settlement documents that Plaintiff now submits to the Court.

## VALUE AND TERMS OF THE SETTLEMENT

17.     There are an estimated 310 Motor Carrier Class Members and 640 Non-Carrier Class Members who were authorized to work Defendants' routes in California between December 12, 2014 and the present.

18.     The Motor Carrier Class comprises individuals who entered into contracts with Defendants, purchased, financed or borrowed trucks to use to provide the transportation services for Defendants, were responsible for the fuel, insurance, truck maintenance and repair costs and other business necessities, and made deliveries for Defendants.   The Motor Carriers received their compensation directly from Defendants as 1099 income, but were not reimbursed by Defendants for the business expenses they incurred.  The Non-Carrier Class comprises individuals who assisted Motor Carrier Class members, such as by riding beside the driver in a truck and assisting with drop-off and installation, or driving a truck belonging to a Motor Carrier.

19.     The proposed settlement is for a non-reversionary gross settlement fund of $5,000,000.00.  We estimate that the amount that will be made available for payments to class members will be approximately $3,437,669.00, after the following amounts are subtracted: (1) the

fees and costs of the third party administrator charged with administering the settlement (estimated to be approximately $39,831.00); (2) The LWDA payment of $112,500 (75% of the $150,000 PAGA Payment)[1]; (3) $125,000.00 of the Gross Settlement Amount to be put aside in the Reserve Fund in the event there are Settlement Class Members who are not identified until after the initial mailing of settlement checks, but who are eligible to participate in the settlement; (4) any service award approved by the Court for the Class Representative, Mr. Kimbo (up to maximum of $15,000); and (5) any attorneys' fees and costs approved by the Court (Plaintiff will seek the 25% benchmark for fees ($1,250,000) and approximately $20,000 in costs).

20.   As I explain above, the Settlement Class consists of two subclasses:  (1) a "Motor Carrier" subclass consisting of individuals who contracted directly with Defendants as individuals or through a formal business entity; and (2) a "Non-Carrier" subclass consisting of individuals engaged by the motor carriers to help operate their commercial motor vehicles and perform delivery services for Defendants.  Defendants' records indicate that both subclasses combined worked a total of approximately 238,743 routes for the time period from January 7, 2014 through the present.

21.   The individual settlement award for each class member will be greater or smaller than the average depending upon two objective factors that are set forth in the distribution formula.

22.   The first factor is the number of weeks the person worked for Defendants during the class period.  (The class period begins on December 12, 2014 and ends on the earlier of preliminary approval or July 26, 2020.)  As shown in the distribution formula, each Settlement Class Member's share will increase or decrease proportionally based on the number of workweeks he or she has in comparison to the workweeks of all the class members combined.  We believe this is an objective, reasonable measure because the value of an individual's claim will tend to increase proportionally with his or her length of service (e.g. a class member who works twice as long will tend to use twice as much fuel, work twice as many hours, etc.).

---

[1] $150,000 of the Gross Settlement Amount will be allocated to the resolution of claims arising under PAGA, with 75% of this amount ($112,500) being paid to the LWDA and the remaining $37,500 being distributed to the PAGA Group (the subset of Settlement Class Members who worked for Defendants within the limitations period for the PAGA claims).

23.     The second factor for the distribution formula is that each workweek for a Motor Carrier Class Member will be counted four times as much as each workweek for a Non-Carrier Class Member.  This formula reflects the reality that the Motor Carrier Class Members have claims for unreimbursed expenses and unlawful deductions that are of significantly higher value than the claims of the Non-Carrier Class Members.  Motor Carrier class members contracted directly with Defendants and were responsible for incurring the truck, fuel, insurance, maintenance, repair and other costs that arise directly from being a "carrier."  Defendants deduct some of these costs directly from the Motor Carrier's pay, while the Motor Carriers incur other cost from their own pockets.  In contrast, Non-Carriers are by definition not "carriers," and generally are not responsible for such costs.  The Non-Carriers do not contract directly with Defendants and are not paid directly by Defendants, nor do they have money deducted from their compensation by Defendants.  While the Non-Carriers are similarly situated to the Motor Carriers with respect to the delivery services they perform, the underlying misclassification issue, and the wage claims they assert, the Non-Carriers have significantly less damages because the Motor Carriers were the ones who tended to incur the unreimbursed expenses.  Moreover, not only do these expense reimbursement claims carry higher damages amounts, but they are not subject to the pre-emption and exemption defenses that Defendants have asserted for the overtime and meal and rest period claims (discussed below).

24.     This formula reflects the reality that unreimbursed expenses are one of the most significant harms flowing from misclassification.  The burden of having to bear onerous costs such as daily fuel costs, truck repairs, insurance, and the like is often the most serious injury resulting from misclassification.  When passed from the hiring entity to the individual driver, these expenses can outpace the drivers' pay, leading lead to serious debt and other financial difficulties.

25.     In our damages analysis for the mediation in this case, we calculated that Defendants' potential exposure to the class as a whole for the unreimbursed expenses and unlawful deductions claims was approximately three and a third times more than Defendants' potential exposure to the class for the claims concerning unpaid wages and missed meal and rest periods.  This differential is *before* taking into consideration the fact that Defendants can assert pre-emption defenses against

the overtime and meal and rest period claims, but not the expense reimbursement and wage deduction claims.  (I discuss these pre-emption risks in Paragraphs 42-43 below.)  Thus, the expense reimbursement and wage deduction claims, which predominantly belong to the Motor Carriers, have significantly more value both in terms of their raw value, as well as their likelihood of success when considering the procedural defenses available to Defendants.

26.    Additionally, the proposed Settlement provides for a Claims Compensation Fund of $100,000.00.  The Claims Compensation Fund is intended to remedy harms to Motor Carrier class members who have had to personally pay costs, charges, fees, or expenses and/or or have an enforceable judgment against them on claims made against them arising out of providing transportation and delivery services for Defendants in California during the Class Period.  The gravamen of Plaintiffs' case is that Defendants' independent contractor classification scheme obscures the true nature of its relationship with its drivers by labeling them as independent businesses rather than employees.  This obscuring of the work relationship can result in legal claims being made against Motor Carrier Class Members that Plaintiff contends would have been properly directed at Defendants, had the Motor Carriers Class Members been classified as employees.  The Claims Compensation Fund is designed to remedy this alleged harm.

27.    To participate in the Claims Compensation Fund, Settlement Class Members will need to show documentation that they actually paid such claims to third parties and/or that they have an enforceable judgment against them requiring them to do so.

28.    The distribution formula described above is objective and straightforward to administer.  In addition, the workweeks to input into the formula for each Settlement Class Member will come directly from Defendants' records.  Moreover, as explained in the Settlement Agreement and proposed Class Notice, Class Members will receive notice of the number of workweeks credited to them and will have an opportunity to challenge Defendants' records if they do not believe the workweeks shown are accurate.

29.    Under the distribution formula, valuing Motor Carrier Class Member claims four times as much as Non-Carrier Class Member claims, we estimate that members of the Motor Carrier Class

will receive an average share of approximately $8,871 and members of the Non-Carrier Class will receive an average share of approximately $1,074.

30.     Given the strengths of the claims, the risks of litigation and delay, Defendants' potential exposure, and the results of other comparable litigation, we believe that the proposed Settlement provides a strong result for the Class.

31.     In addition, Settlement Class Members who do not opt into the settlement will have a release that is limited to just those wage and hour claims that were pled or could have been pled based on the facts alleged in the Complaint and LWDA notice.

32.     The proposed settlement also provides that there will be no reversion of any of the $5,000,000.00 gross settlement fund to Defendants.  To the extent there is any residual, it will be donated to the designated *cy pres* beneficiary, St. Cristopher's Fund.  St. Christopher's Fund's mission to provide financial assistance to truck drivers who have been injured on the job or are ill aligns with the remedial aims of this case and the California Labor Code, and addresses the similar harms for a similar group of workers.  This mission also directly addresses the harms facing drivers during the COVID-19 pandemic.  A description of St. Christopher Fund's history is attached hereto as Exhibit 3.

33.     The proposed Settlement also protects class members by establishing a "Reserve Fund," which is an amount set aside to handle late or unanticipated claims by Settlement Class Members who do not receive notice in the initial mailing.  For example, despite both sides' diligence, occasionally after notice of a class action settlement, the parties discover a small number of individuals who for whatever reason were not identified in the defendant's records.  To ensure that valid claims resulting from these or other unanticipated circumstances can be paid, the Settlement allocates $125,000.00 of the gross settlement amount into a reserve to pay them.  While all identified class members will be sent checks promptly after the settlement goes final, the reserve will remain open for 60 days after the check cashing deadline in the event late or unexpected claims are made.  Any unclaimed funds in the Reserve Fund, if any, will go to the designated *cy pres.*

34.     The case also alleged claims under California's Private Attorneys' General Act

(PAGA), California Labor Code section 2699 *et seq*.  Under the PAGA, private individuals step into the shoes of the Labor Commissioner to pursue claims for civil penalties, with 75% of the penalties paid to the Labor and Workforce Development Agency (LWDA) and another 25% to be paid to the aggrieved employees.  Here, the parties have allocated a substantial amount of $150,000.00 for the PAGA claims, with 75% of it earmarked for the California Labor Workforce Development Agency.

35.   In sum, given the complex nature of this dispute, the number of factual, legal, and procedural issues contested, and the risks and delays of continued litigation, we believe that this is a strong result for the class.

## NOTICE OF PROPOSED SETTLEMENT

36.   Class Members will be notified of the settlement by first class mail, and where available, by email.  The parties have agreed to request that the Court appoint Heffler Claims Group LLC ("Heffler"), as the Settlement Administrator.  Heffler is a well-qualified Settlement Administrator, as demonstrated by the separate declaration being submitted by its representative, Mark Rapazzini.

37.   The Settlement Administrator will undertake its best efforts to ensure that the notice is sent to the most current mailing address of each Class Member.  Defendants will provide the Settlement Administrator with a list of all Class Members and their most recently known mailing addresses, telephone numbers and email addresses.  The Settlement Administrator will then conduct a national change of address search before the mailing as well as skip tracing and remailing for any notices returned as undeliverable.  The Settlement Administrator also will send the notice by email where an email address is known.  As discussed in the Declaration of Mark Rapazzini, Heffler Claims Group LLC estimates that administration expenses for the settlement will be approximately $39,831.00.

38.   The class notice will provide, among other things, a description of the case; the total settlement amount and how it will be allocated (including information about Plaintiff's motion for attorneys' fees and costs and how to review it); the procedures for opting out of the settlement, objecting to the settlement, and disputing settlement calculations; and an explanation of how the

settlement allocations among will be calculated.  Each notice also will be individually tailored to provide the Class Member's own workweeks, as well as the formula to make a preliminary calculation of the approximate amount of money they will receive in the event all Class Members participate in the settlement.  The proposed notice of class action settlement is attached as Exhibit 1 to the Settlement Agreement.

## DESIGNATED *CY PRES* BENEFICIARY

39.    The designated *cy pres* beneficiary is St. Christopher's Fund, described in paragraph 32 above and in Exhibit 3 hereto.

## STRENGTHS, RISKS, AND COMPLEXITIES OF THE CASE

40.    In reaching the Settlement, we worked with Mr. Kimbo to weigh the value of the proposed Settlement against the risks of class certification, demonstrating class liability, proving damages, responding to appeals, the possibility that developments in the law could harm Plaintiff's position during the pendency of any appeals, as well as the consequences of further delay to Class Members.

41.    While we remained confident in, and committed to, the merits of Plaintiff's case throughout the litigation and settlement process, we also were realistic regarding the risks at each stage going forward.  First, the parties would have engaged in a lengthy and complex motion practice.  This would have included the risks of having class certification denied in whole or in part.  Assuming success on class certification, there would be further motion practice (including motions for summary judgment), and the likelihood of a class action trial on some or all issues.  This would have carried substantial risks for both sides on the overarching liability questions of whether Defendants misclassified all the Class Members, and if so, the extent of the underlying wage and hour violations.

42.    Additionally, developments in the law after this case was filed created substantial risks to Plaintiff's chances of securing a strong recovery.  For example, on December 21, 2018, the Federal Motor Carrier Safety Administration (FMCSA) determined that California's meal and rest period claims are preempted as to property-carrying commercial motor vehicle drivers covered by

the FMCSA's hours of service regulations.  *See* Order Granting Petition for Determination of Preemption, 83 Fed. Reg. 67470, 67470 (Dec. 28, 2018) (docket No. FMCSA-2018-0304, available at:   https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/regulations/440601/california-meal-and-rest-break-rules-preemption-determination.pdf).   The Ninth Circuit is currently considering this issue on appeal.  *See, e.g.*, *Cal. Labor Comm'r v. FMCSA* (9th Cir. Dkt. No. 19-703290); *Int'l Brotherhood of Teamsters et al. v.* FMCSA (9th Cir. Dkt. No. 19-73488).   If this appeal is unsuccessful, Plaintiffs' meal and rest period claims could have been wiped out entirely had they proceeded with the litigation.

43.    As another example, Plaintiff's claims for overtime pay may have been subject to an exemption defense.  Indeed, district courts have held that drivers traveling in the stream of interstate commerce cannot recover for overtime violations under the Motor Carrier Act exemption.  *See, e.g., Antemate v. Estenson Logistics, LLC*, 2017 U.S. Dist. LEXIS 184502, at *21-*22 (C.D. Cal. Nov. 7, 2017); *Montoya v. 3PD, Inc.*, 2015 WL 1469752, at *5 (D. Ariz. Mar. 31, 2015); *Edwards v. Aramark Unif. & Career Apparel, LLC*, 2016 WL 236241, at *13 (N.D. Ill. Jan. 19, 2016).  Here, the Contractors were not driving across state lines, but their packages were moving across states. Despite this distinction and our belief that the exemption does not legally affect the Contractors here, there were risks that counseled in favor of weighing the expense reimbursement claims more heavily, and of settling the case.

44.    In addition, assuming Plaintiff prevailed on liability as to one or more of his claims, the measure of damages still would have been hotly contested.  Indeed, even if Plaintiff prevailed on some or all of his claims, the measure of damages presented further risk.

45.    Furthermore, one or more appeals would be certain given the nature of this case. Assuming we prevailed on class certification and liability, Defendants likely would appeal any number of determinations regarding class action status, liability, evidentiary rulings, and damages, causing potentially years of further delay.  Throughout it all, Defendants would maintain that they properly classified the Class Members as independent contractors and paid them sufficiently under California law.

46.     Based on our experience in this case and other wage and hour class actions (including other recent independent contractor misclassification cases), it is our judgment that litigating this case through trial and likely appeals would have required 10,000 or more hours of attorney and paralegal time (per side) and hundreds of thousands of dollars of out-of-pocket expenses.  This additional investment of resources may have caused the parties to become more entrenched in their positions, making the case more difficult to settle at a later stage.   These very practical considerations confirm our judgment, as experienced class action attorneys in cases such as this, that the proposed settlement provides fair value and an excellent result for the class.

47.     In sum, the result after trial and appeals was highly uncertain, except for the fact that it would potentially mean years of delay.  While it is possible that Plaintiff could have won more than the current settlement value, it is also possible he could have won less (in either current value or absolute terms), or nothing at all.  In contrast, the total settlement amount of $5,000,000.00 will result in definite, immediate and substantial recoveries for the individual Settlement Class Members and the class overall.  The proposed Settlement, therefore, offers a guaranteed, significant value to the Settlement Class Members that fairly and reasonably accounts for the very real risks and delays of continued litigation, protracted discovery battles, motion practice, trial, and appeal.

## PROPOSED SERVICE AWARD

48.     Plaintiff Joseph Kimbo devoted his time and provided an invaluable service to the prosecution of this case.  He worked with counsel regularly, and provided important information, documents, and insight regarding Defendants' policies and practices.  He traveled to San Francisco for the Mediation and participated in the settlement efforts.  He personally attended meetings with other class members in Sacramento.  Plaintiff also has agreed to a release that is broader than the class release.

49.     The Settlement permits Plaintiff to seek service awards in an amount not more than $15,000.  We believe that this amount fairly reflects Plaintiff's risks and his contributions to achieve this settlement on behalf of the class.  This will be further discussed when Plaintiff files his motion for a service award and supporting declaration in connection with the final fairness hearing.

**ATTORNEYS' FEES AND COSTS**

50.     Pursuant to Fed. R. Civ. P. 23(h), we intend to file a separate motion for attorneys' fees and costs on a date to be set by the Court.  The separate motion for attorneys' fees and costs will provide analysis as to the reasonableness of the fees and costs sought and show how they fall within the range of fees awarded in similar class action cases.

**EXHIBITS**

51.     Attached hereto as Exhibit 1 is a true and correct copy if the Class Action Settlement Agreement between Plaintiff and Defendants in this case.  The proposed class notice to be mailed to class members upon court approval and formatting by the Settlement Administrator is attached as Exhibit 1 to the Settlement Agreement.

52.     Attached hereto as Exhibit 2 is a true and correct copy of a document entitled "Schneider Wallace Cottrell Konecky, LLP Firm Profile."

53.     Attached hereto as Exhibit 3 is a description of St. Christopher Fund's history.


I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct and based on my personal knowledge.

Executed on July 1, 2020, in Philadelphia, Pennsylvania.


                                        /s/ Joshua G. Konecky
                                        Joshua G. Konecky

# EXHIBIT 1

Joshua Konecky, SBN 182897
Leslie H. Joyner, SBN 262705
Nathan B. Piller, SBN 300569
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone:  (415) 421-7100
Facsimile:  (415) 421-7105
jkonecky@schneiderwallace.com
ljoyner@schneiderwallace.com

Attorneys for Plaintiff

Mara D. Curtis (SBN 268869)
mcurtis@reedsmith.com
Michael R. Kleinmann (SBN 293741)
mkleinmann@reedsmith.com
Brittany M, Hernandez (SBN 299044)
mcurtis@reedsmith.com
REED SMITH LLP
355 South Grand Avenue
Suite 2800
Telephone: +1 213 457 8000
Facsimile: + 1 213 457 8080

Attorneys for Defendants
RYDER LAST MILE, INC. (f/k/a MXD
GROUP, INC.) and RYDER SYSTEM, INC.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSEPH KIMBO, an individual; on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MXD GROUP, INC., a California corporation; RYDER SYSTEM, INC., a Florida Corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 2:19-CV-00166-WBS-KJN<br><br>**CLASS ACTION SETTLEMENT AGREEMENT** |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

This Class Action Settlement Agreement ("Agreement") is made by and between Plaintiff JOSEPH KIMBO ("Plaintiff") and Defendants RYDER LAST MILE, INC. (f/k/a MXD GROUP, INC.) and RYDER SYSTEM, INC. ("Ryder" or "Defendants") (collectively, "the Parties") with regard to the lawsuit originally filed against Defendants styled *Joseph Kimbo, an individual on behalf of himself and all others similarly situated v. MXD Group, Inc., et al.* in the Sacramento County Superior Court Case No. 34-2018-00246338, and thereafter removed to the United States District Court for the Eastern District of California Case No. 2:19-CV-00166-WBS-KJN (the "Civil Action").

## THE SETTLEMENT

1.      Subject to the Court's approval pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff and Defendants have agreed to settle the Civil Action upon the terms and conditions and for the consideration set forth in this Agreement.

2.      A summary of the terms of the Agreement is as follows:

- Ryder shall pay a settlement amount of Five Million Dollars and No Cents ($5,000,000.00), referred to herein as the Gross Settlement Amount, which shall be inclusive of all Individual Settlement Payments to Settlement Class Members, PAGA Payment Share to the PAGA Group Members, attorneys' fees and expenses (not to exceed 25% of the Gross Settlement Amount in attorneys' fees, plus reasonable out-of-pocket costs) to be paid to Class Counsel, the employee portions of all required payroll withholdings and taxes, any Class Representative Service Award, settlement administration costs and expenses, payment to the California Labor Workforce Development Agency ("LWDA") pursuant to the California Labor Code Private Attorneys General Act of 2004 ("PAGA"), and any and all penalty amounts to be paid regardless of the recipient.  In no event shall Defendants be required to pay more than the Gross Settlement Amount under this Agreement. In no event shall any portion of the Gross Settlement Amount revert to Defendants.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- The Class consists of all Motor Carrier Class Members and Non-Carrier Class Members, except the Motor Carriers and Non-Carriers that only performed delivery services at the warehouse located at or out of 21508 Baker Parkway, City of Industry, California 91789 during the Class Period.  All Settlement Class Members shall receive an Individual Settlement Payment in accordance with paragraphs 16 and 81 below of the Agreement.

- The Settlement Administrator shall be Heffler Claims Group LLC.  From the Gross Settlement Amount, settlement administration fees in a reasonable amount shall be paid to the Settlement Administrator.  Settlement administration fees are estimated to be approximately Thirty-Nine Thousand Eight Hundred and Thirty-One Dollars and No Cents ($39,831.00).  If the actual cost of settlement administration is less or more than the amount approved by the Court, those funds shall be added to or subtracted from the Net Settlement Amount.

- From the Gross Settlement Amount, the Class Representative may seek from the Court a Service Award not to exceed Fifteen Thousand Dollars and No Cents ($15,000.00), which Defendants shall not oppose.

- From the Gross Settlement Amount, One Hundred and Fifty Thousand Dollars and No Cents ($150,000.00) shall be allocated to penalties under the California Labor Code Private Attorneys General Act of 2004, California Labor Code Sections 2698, *et seq.* ("PAGA"), 75% of which (*i.e.,* One Hundred and Twelve Thousand and Five Hundred Dollars and No Cents ($112,500.00)) shall be paid by the Settlement Administrator directly to the California Labor and Workforce Development Agency ("LWDA").  The remaining Thirty-Seven Thousand and Five Hundred Dollars and No Cents ($37,500.00) shall be distributed to the PAGA Group.  If it should later be determined by the Court that an additional amount is needed to effectuate a

1  full and complete release of all PAGA claims, the amount shall be deducted

2  from the Gross Settlement Amount.

3  •  Class Counsel may seek attorneys' fees of up to One Million Two Hundred

4  and Fifty Thousand Dollars and No Cents ($1,250,000.00), which is twenty-

5  five percent (25%) of the Gross Settlement Amount and costs of up to Twenty

6  Thousand Dollars and No Cents ($20,000.00), which Defendants shall not

7  oppose.

8  **DEFINITIONS**

9  Unless otherwise defined herein, capitalized terms used in this Agreement shall have the meanings

10  set forth below:

11  3.  "Civil Action" means the lawsuit filed against Defendants in the case styled *Joseph*

12  *Kimbo, et al. v. MXD Group, Inc., et al.*, United States District Court for the Eastern District of

13  California, Case No. 2:19-CV-00166-WBS-KJN.

14  4.  "Class", "Classes", "Class Member" or "Class Members" means all Motor Carrier

15  Class Members and all Non-Carrier Class Members.   The Class excludes Motor Carrier Class

16  Members and Non-Carrier Class Members that only performed delivery services at the warehouse

17  located at 21508 Baker Parkway, City of Industry, California 91789 during the Class Period.

18  5.  "Class Counsel" means Joshua Konecky, Leslie H. Joyner, and Nathan B. Piller at

19  Schneider Wallace Cottrell Konecky LLP.

20  6.  "Class Period" means December 12, 2014 through the earlier of preliminary approval

21  or July 26, 2020.

22  7.  "Class Representative" or "Plaintiff" means plaintiff Joseph Kimbo.

23  8.  "Complaint" means the complaint filed on December 12, 2018 in the Sacramento

24  County Superior Court, styled *Joseph Kimbo, an individual on behalf of himself and all others*

25  *similarly situated v. MXD Group, Inc., et al.* in the Sacramento County Superior Court Case No. 34-

26  2018-00246338, and thereafter removed to the United States District Court for the Eastern District of

27  California Case No. 2:19-CV-00166-WBS-KJN.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

9.      "Court" means the United States District Court for the Eastern District of California.

10.     "Defendants" means Defendants Ryder Last Mile, Inc. (f/n/a MXD Group, Inc.) and Ryder System, Inc.

11.     "Defense Counsel" means Mara D. Curtis and Brittany M. Hernandez of Reed Smith LLP.

12.     "Effective Date" means the first date upon which all of the following events have occurred:

(i)     this Agreement has been executed by all Parties and by Class Counsel and Defense Counsel;

(ii)    the Court has preliminarily approved the Settlement;

(iii)   notice has been properly given to Class Members;

(iv)    the Court has held a Final Fairness and Approval Hearing and entered the Final Order and Judgment approving the Settlement; and

(v)     in the event no appeal is filed, then thirty (30) days after the entry of the Final Order and Judgment, or, if an appeal is filed, upon the final dismissal of the appeal, writ or other appellate proceeding opposing this Agreement.  In this regard, it is the intention of the Parties that the Settlement shall not become effective until the Court's order approving the Settlement has become completely final, and there is no timely recourse by an appellant or objector who seeks to contest the Settlement.

13.     "Final Fairness and Approval Hearing" means the hearing to be requested by Plaintiff and conducted by the Court after the filing by Plaintiff of an appropriate motion and following appropriate notice to Class Members giving Class Members an opportunity to opt out from the Class and Settlement or to object to the Settlement, at which time Plaintiff shall request that the Court finally approve the fairness, reasonableness and adequacy of the terms and conditions of the Settlement, enter the Final Order and Judgment, and take other appropriate action.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

14.     "Final Order and Judgment" means the order and judgment to be issued and entered by the Court upon granting final approval of the Settlement and this Agreement as binding upon the Parties and the Settlement Class Members who do not properly and timely submit a written Opt Out, substantially in the form attached as **Exhibit 3**, or as subsequently modified with the approval of counsel for all Parties.

15.     "Gross Settlement Amount" means the maximum amount of Five Million Dollars and No Cents ($5,000,000.00) (not including the employer's share of payroll taxes on the portion of the Individual Settlement Payments that constitute payments for alleged wage claims, which shall be submitted by Defendants to the Settlement Administrator in addition to the Gross Settlement Amount), that Defendants shall be required to pay under this Agreement, which shall be inclusive of all Individual Settlement Payments to Settlement Class Members, PAGA Payment Shares to the PAGA Group, Reserve Fund, attorneys' fees and costs, Settlement Administration Costs, Service Award to the Class Representative, and payment to the California Labor Workforce Development Agency ("LWDA") pursuant to the California Labor Code Private Attorneys General Act of 2004 ("PAGA"), and employees' share of payroll taxes on any portion of the Individual Settlement Payments to the Settlement Class Members that constitute wages.

16.     "Individual Settlement Payment" means the gross amount that shall be paid to each Settlement Class Member based on the distribution formula described in paragraph 81 below.  If a Class Member is also in the PAGA Group, then the individual shall also receive a PAGA Payment Share.

17.     "Initial Distribution" means within thirty (30) days of the Effective Date, Settlement Class Members will be mailed checks for their Individual Settlement Payments and PAGA Payment Shares, if applicable, and checks shall remain negotiable through the Check Cashing Deadline as described in paragraphs 86-87 below.

18.     "Motor Carrier Class Member" or "Motor Carrier Class Members" means the owners of all motor carriers that directly contracted with Defendants in their individual capacity or through a business entity and provided transportation services to Defendants in California at any time from

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

December 12, 2014 through the earlier of preliminary approval or July 26, 2020.   Motor Carrier

Class Members includes (1) all motor carrier owners responsible for the day-to-day operations of

their businesses that engaged one or more workers to operate their commercial motor vehicles to

deliver goods; and (2) all motor carrier owners that also performed delivery services as the driver of

their commercial motor vehicles.

19.     "Net Settlement Amount" means the amount of money remaining after Class

Counsel's attorneys' fees, costs and expenses, any Service Award to the Class Representative,

settlement administration costs and expenses, PAGA Payment, and Reserve Fund.

20.     "Non-Carrier Class Member" or "Non-Carrier Class Members" means all individuals

who did not contract with Ryder Last Mile, Inc. (f/k/a MXD Group, Inc.) and are non-owner drivers

and helpers authorized to provide transportation services for Defendants in California at any time

from December 12, 2014 through the earlier of preliminary approval or July 26, 2020..   Non-Carrier

Class Members includes drivers and helpers engaged by motor carrier companies to operate their

commercial motor vehicles and perform delivery services for Defendants in connection with

contracts Defendants had with the owners of the motor carrier companies.

21.     "Notice of Class Action and PAGA Settlement" or "Notice" means the form attached

hereto as **Exhibit 1** or whichever form is approved by the Court that shall be mailed to the Class

Members to inform them of the terms of this Agreement and their rights and options related thereto.

Upon approval by the Court, the Settlement Administrator shall translate the Notice of Class Action

and PAGA Settlement into Spanish, and both the English and Spanish versions shall be mailed to the

Class Members.

22.     "Objection" means a Class Member's written objection to the Settlement.  Any

Objection shall be in the form described in paragraphs 74-76 below.

23.     "Opt Out" means a written request that a Class Member may submit to be excluded

from the Class and the Settlement.  Any Opt Out shall be in the form described in paragraph 70

below.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

24.     "PAGA Group", "PAGA Group Member" or "PAGA Group Members" means all PAGA Motor Carrier Group Members and all PAGA Non-Carrier Group Members. The PAGA Group excludes PAGA Motor Carrier Group Members and PAGA Non-Carrier Group Members that only performed delivery services at the warehouse located at 21508 Baker Parkway, City of Industry, California 91789 between August 16, 2017 through the earlier of preliminary approval or July 26, 2020..

25.     "PAGA Letter" means the notice of alleged Labor Code violations that Joseph Kimbo caused to be sent to the LWDA pursuant to Labor Code Section 2699.3(l) on or about August 16, 2018.

26.     "PAGA Motor Carrier Group Members" means all Motor Carrier Class Members who provided transportation services to Defendants in California at any time from August 16, 2017 through the earlier of preliminary approval or July 26, 2020..

27.     "PAGA Non-Carrier Group Members" means all Non-Carrier Class Members who provided transportation services for Defendants in California at any time from August 16, 2017 through through the earlier of preliminary approval or July 26, 2020.

28.     "PAGA Payment" means the amount that the Parties have agreed to pay to the California Labor and Workforce Development Agency ("LWDA") and the PAGA Group in connection with the California Labor Code Private Attorneys General Act of 2004, California Labor Code Sections 2698, *et seq.* ("PAGA").  The Parties have agreed that One Hundred and Fifty Thousand Dollars and No Cents ($150,000.00) of the Gross Settlement Amount will be allocated to the resolution of all claims arising under PAGA.  Pursuant to Labor Code Section 2699(i), it shall be distributed as follows: 25%, or $37,500, to the PAGA Group and 75%, or $112,500, to the LWDA. If it should later be determined by the Court that an additional amount is needed to effectuate a full and complete release of all Released PAGA Claims, the amount shall be deducted from the Gross Settlement Amount.

29.      "PAGA Payment Share" means the gross amount that shall be paid to each PAGA Group Member for his/her total PAGA Workweeks for Motor Carrier Group Members or total

PAGA Workweeks for Non-Carrier Group Members.  The PAGA Payment Share shall be calculated as described in paragraph 81 below.

30.     "PAGA Period" means the period between August 16, 2017 through the earlier of preliminary approval or July 26, 2020..

31.     "PAGA Workweek(s) for Motor Carrier Group Members" means the total number of calendar weeks that each PAGA Motor Carrier Group Member was authorized to provide transportation services to Defendants in California, from August 16, 2017 through the earlier of preliminary approval or July 26, 2020.

32.      "PAGA Workweek(s) for Non-Carrier Group Members" means the total number of calendar weeks that each PAGA Non-Carrier Group Member was authorized to provide transportation services to Defendants in California from August 16, 2017 through the earlier of preliminary approval or July 26, 2020..

33.     "Parties" means Plaintiff and Defendants.

34.     "Preliminary Approval Order" means the order to be issued by the Court approving and authorizing the mailing of the Notice by the Settlement Administrator, setting the date of the Final Fairness and Approval Hearing and granting preliminary approval of the Settlement set forth in this Stipulation, among other things, substantially in the form attached as **Exhibit 2**, or as subsequently modified with the approval of counsel for all Parties.

35.     "Proof of Costs" means document(s) that a Class Member may submit to the Settlement Administrator to show that he or she is entitled to payment from the Claims Compensation Fund.  Adequacy of Proof of Costs submitted will be evaluated by Class Counsel, Defense Counsel, and the Settlement Administrator.  In the event of a disagreement, the Settlement Administrator will make the final decision.

36.     "Proof of Work" means document(s) that a Class Member may submit to the Settlement Administrator to show that he or she is entitled to payment based upon a different number of Qualifying Motor Carrier Workweeks or Qualifying Non-Carrier Workweeks and/or different number of PAGA Workweeks for Motor Carrier Group Members or PAGA Workweeks for Non-

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  Carrier Group Members than the number(s) calculated by the Settlement Administrator based upon

2  Defendants' data.  Adequacy of the Proof of Work submitted will be evaluated by Class Counsel,

3  Defense Counsel, and Settlement Administrator.  In the event of a disagreement, the Settlement

4  Administrator will make the final decision.

5      37.    "Qualifying Motor Carrier Workweeks" means the total number of calendar weeks

6  that each Motor Carrier Class Member was authorized to provide transportation services to

7  Defendants in California during the Class Period.

8      38.    "Qualifying Non-Carrier Workweeks" means the total number of calendar weeks that

9  each Non-Carrier Class Member was authorized to provide transportation services to Defendants in

10  California during the Class Period.

11      39.    "Released Class Claims" are defined in paragraph 99 below.

12      40.    "Released PAGA Claims" are defined in paragraph 100 below.

13      41.    "Released Parties" means Defendants Ryder Last Mile, Inc. (f/k/a MXD Group, Inc.)

14  and Ryder System, Inc. and each of their respective present and former parents, affiliates, divisions

15  and subsidiaries, acquired companies, and each of their respective present and former directors,

16  officers, shareholders, agents, representatives, employees, partners, attorneys, insurers, predecessors,

17  successors, assigns, affiliated companies and entities and any individual or entity that could be

18  jointly liable with any of the foregoing.

19      42.    "Reserve Fund" means an allocation of One Hundred and Twenty-Five Thousand

20  Dollars ($125,000.00) from the Gross Settlement Amount that the Parties have agreed to set aside in

21  order to make payments to individuals who were not originally identified as Class Members, but

22  who are Class Members and who are identified as Class Members before the Reserve Fund is paid to

23  the *cy pres* recipient as set forth below.  The Parties agree that the Reserve Fund will be maintained

24  by the Settlement Administrator for sixty (60) days following expiration of the Check Cashing

25  Deadline set forth in paragraph 88.  The Settlement Administrator will distribute any remaining

26  money in the Reserve Fund not allocated after sixty (60) days following expiration of the check

27  cashing deadline to St. Christopher's Fund (https://truckersfund.org) as the *cy pres* recipient.

28

43.      "Response Deadline" means the forty-five (45) day period following the date the Settlement Administrator mails the Notice of Class Action and PAGA Settlement to Class Members within which any Class Member may: (a) submit a written Opt Out to be excluded from the Class and this Settlement; (b) submit an Objection; and/or (c) submit Proof of Work documentation.

44.      "Ryder" means defendants Ryder Last Mile, Inc. (f/k/a MXD Group, Inc.) and Ryder System, Inc.

45.      "Service Award" means any payment to the Class Representative for his service to the Class and his individual release as set forth in paragraph 93, which is in addition to whatever payments he may otherwise be entitled to as a Settlement Class Member.

46.      "Settlement" means the final and complete disposition of the Civil Action as provided for in this Agreement and all Exhibits hereto.

47.      "Settlement Administrator" means Heffler Claims Group LLC.

48.      "Settlement Administration Costs" means the reasonable costs and fees of administration of this Settlement to be paid to the Settlement Administrator from the Gross Settlement Amount, including, but not limited to:  (i) translating into Spanish, printing and mailing and re-mailing (if necessary) of Notices of Class Action and PAGA Settlement to Class Members; (ii) preparing and submitting to Settlement Class Members, PAGA Group, and government entities all appropriate tax filings and forms; (iii) computing the amount of and distributing Individual Settlement Payments, PAGA Payment Shares, Class Representative Service Award, and Class Counsel Attorneys' Fees, Costs and Expenses; (iv) processing and validating Opt Outs; (v) establishing a Qualified Settlement Fund, as defined by the Internal Revenue Code; and (vi) calculating and remitting to the appropriate government agencies all employer and employee tax obligations arising from the Settlement and preparing and submitting filings required by law in connection with the payments required by the Settlement.

49.      "Settlement Class Members" means Plaintiff and all other Motor Carrier Class Members and Non-Carrier Class Members who do not submit a timely and valid Opt Out under the process described in paragraph 70 below.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

50.     "Workweek Payment Rate for the Class Members" means the result derived from the division of the Net Settlement Amount by the total number of Qualifying Motor Carrier Workweeks and Qualifying Non-Carrier Workweeks for all Settlement Class Members during the Class Period, as described in paragraph 81 below.

51.     "Workweek Payment Rate for the PAGA Group" means the result derived from the division of the PAGA Payment allocated to the PAGA Group by the total number of PAGA Workweeks for Motor Carrier Group Members and PAGA Workweeks for Non-Carrier Group Members during the PAGA Period, as described in paragraph 81 below.

**BACKGROUND**

52.     On December 12, 2018, Plaintiff filed the above-referenced Complaint in the Sacramento Superior Court against Defendants.  Through the Complaint, Plaintiff, a former driver (on behalf of himself and all others similarly situated), sought damages, restitution, penalties, pre- and post-judgment interest, costs, attorneys' fees, and any other relief deemed appropriate by the Court on the basis of the allegations, inter alia, that Defendants: (1) failed to reimburse business expenses; (2) unlawfully deducted compensation to cover certain ordinary business expenses; (3) failed to pay minimum wages; (4) failed to pay regular rate for all hours worked; (5) failed to pay overtime compensation; (6) failed to provide off-duty and compliant meal periods, or compensation in lieu; (7) failed to provide paid, off duty or compliant rest periods, and/or compensation in lieu thereof; (8) failed to keep accurate payroll records; (9) failed to provide accurate itemized wage statements; (10) failed to pay all wages due upon termination of employment; (11) engaged in unfair competition in violation Business & Professions Code §§ 17200, *et seq*.; and (12) statutory penalties pursuant to PAGA.

53.     Defendants deny each of the allegations of the Complaint and the PAGA Letter, deny that Defendants have any liability for the claims of Plaintiff, the putative class he purports to represent or any allegedly aggrieved employee, and denies that Plaintiff, the putative class he purports to represent or any allegedly aggrieved employee is entitled to any relief.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

54.     Class Counsel and Defense Counsel have extensive experience in litigating wage and hour class actions in California.  Class Counsel and Defense Counsel have vigorously litigated the Civil Action since its inception.

55.     On December 4, 2019, Plaintiff and Defendants engaged in mediation before Mediator Antonio Piazza, an experienced mediator in this area of law.  In advance of mediation, Defendants produced data and information informally requested by Plaintiff to evaluate potential alleged damages and engage in meaningful settlement discussions, including but not limited to, routing data for the nine (9) California locations encompassed in the Civil Action.  The routing data indicated that there were approximately 217,787 different routes for the time period from January 7, 2014 through October 9, 2019.  The mediation was successful and Plaintiff and Defendants agreed on the principal terms of a settlement and executed a Memorandum of Understanding ("MOU") to memorialize their agreement.  The MOU is superseded in all respects by this Agreement upon execution by Plaintiff and Defendants.

56.     This Agreement is made in compromise of and embraces all claims against any of the Released Parties as enumerated in paragraphs 99-100 below, including , but not limited to, all wage and hour claims, rights, demands, liabilities, causes of action, and theories of liability of every nature and description, whether known or unknown, that were or could have been alleged against Defendants or any of the Released Parties arising out of or based on the facts alleged in the Complaint and PAGA Letter.

57.     Plaintiff and Defendants enter into this Agreement contingent only upon approval by the Court.  Because the settled matter is a putative class action, this Agreement must receive preliminary and final approval by the Court.  Should the Court, or any other court taking jurisdiction of this matter, decline to approve all material aspects of the Settlement or make any ruling substantially altering the material terms of the Settlement, the Settlement shall be voidable and unenforceable as to Plaintiff and Defendants, at the option of any party.  If, but only if, one or more of the requirements of the immediately preceding sentence is met, any party may exercise his, her or its option to void this Settlement by giving notice, in writing, to the other Parties and to the Court at

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

any time before final approval by the Court of this Settlement.  For purposes of this provision, the attorneys' fees and costs to Class Counsel and the Net Settlement distribution formulas set forth in paragraphs 79 and 81 below, are not material terms and may be modified by the Parties and/or the Court if necessary or appropriate to achieve final approval of the Settlement.  In the event that the Effective Date, as defined herein, does not occur, this Agreement shall be deemed null and void *ab initio* and shall be of no force or effect whatsoever, and shall not be referred to or utilized for any purpose.  Defendants deny all of Plaintiff's claims and all class and representative claims as to liability and damages.  Defendants expressly reserve all rights to challenge any and all such claims and allegations upon all procedural and factual grounds, including the assertion of all defenses, if the Effective Date of the Settlement does not occur.  Likewise, Plaintiff expressly reserves all rights to pursue, amend, dismiss or otherwise dispose of the claims covered under this Settlement, including but not limited to seeking damages, restitution, fees, expenses, interest and/or any other monetary amount in excess of the Gross Settlement Amount set forth above for the claims included in the Civil Action or for any other claims Plaintiff may have against Defendants, in the event the Effective Date of the Settlement does not occur.

58.    Plaintiff and Class Counsel have concluded, after taking into account the sharply disputed factual and legal issues involved in the Civil Action, the risks attending further prosecution, and the substantial benefits to be received pursuant to settlement as set forth in this Agreement, that settlement on the terms set forth herein is in the best interest of Plaintiff and the Class, and is fair and reasonable.

59.    Similarly, Defendants have concluded, after taking into account the sharply disputed factual and legal issues involved in the Civil Action, the risks and expense attending further litigation, and its desire to put the controversy to rest, that settlement on the terms set forth herein is in their best interest and is fair and reasonable.

60.    This Settlement contemplates (i) entry of an order preliminarily approving the Settlement, (ii) distribution of the Notice of Class Action and PAGA Settlement to Class Members, and (iii) entry of a Final Order and Judgment of the Settlement.  The Court shall retain jurisdiction

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

over the Civil Action and Parties for purposes of enforcing the Settlement and resolving any disputes relating to the Settlement.

### SETTLEMENT APPROVAL AND IMPLEMENTATION PROCEDURE

#### Preliminary Approval of Settlement

61.    As soon as practicable, Class Counsel shall submit this Agreement to the Court for its preliminary approval.  Plaintiff shall also move the Court to enter a Preliminary Approval Order and to conditionally certify the Class for purposes of this Settlement only.  The submission shall also include admissible evidence as may be required for the Court to determine that this Settlement is fair, adequate and reasonable, as required by Rule 23 of the Federal Rules of Civil Procedure.  The submission shall also include the proposed Notice of Class Action and PAGA Settlement in the form attached hereto as Exhibit 1, and a proposed order granting preliminary approval of Settlement, which shall, among other things, set a Final Fairness and Approval Hearing date.  Pursuant to Cal. Labor Code 2699(l)(2), Class Counsel also shall submit this Agreement to the Labor Workforce and Development Agency at the same time that it is submitted to the Court.  Plaintiff and Defendants agree that the conditional certification of the Class for settlement purposes only is in no way an admission by any of the Released Parties that class certification would otherwise be proper.

#### Notice to Class Members and PAGA Group

62.    Following the Court's order granting preliminary approval of this Settlement, the Settlement Administrator shall disseminate the Notice of Class Action and PAGA Settlement in the form attached hereto as Exhibit 1 to the Class Members, with any modifications to non-material terms required by the Court and/or any modifications agreed to by the Parties and approved by the Court.

#### Cooperation

63.    The Parties agree to cooperate with each other to accomplish the terms of this Settlement, including, but not limited to, the timely execution of such documents and such other acts as may be reasonably necessary to implement the terms of this Settlement.  Neither the Parties nor any of their attorneys or agents shall solicit or encourage any Class Members to exclude themselves

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

from the Settlement or to object to the Settlement.  The Parties to the Settlement shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by Court order, or otherwise, to effectuate this Settlement and the terms set forth herein.

**Notice of Class Action and PAGA Settlement by Mail & Email**

64.     Delivery of the Class Data.  "Class Data" means a complete list of all Class Members that Defendants will diligently and in good faith compile from their records.  The Class Data will include the following information from Defendants' records all to the extent available: each Class Member's full name, most recent mailing address and telephone number, social security number, most recent e-mail address, Qualifying Motor Carrier Workweeks or Qualifying Non-Carrier Workweeks and PAGA Workweeks for Motor Carrier Group Members or PAGA Workweeks for Non-Carrier Group Members.  Defendants shall provide the Settlement Administrator with the Class Data no later than thirty (30) calendar days after the Court grants preliminary approval of the Settlement.  The Class Data shall only be used by the Settlement Administrator for the purpose of calculating the Individual Settlement Payments and PAGA Payment Shares and notifying Class Members of the Settlement.  The Class Data shall be disclosed to Class Counsel only as necessary to allow them to fulfill their fiduciary duties to the Class and investigate issues that may arise with respect to payments to be made to Class Members and/or PAGA Group Members, so long as notice and an opportunity to object is provided to Defendants through their counsel of record.  If such notice is provided to Defendants by the Settlement Administrator and Class Counsel, Defendants shall have three business day to object to such disclosure.  If Defendants object to such disclosure, counsel for the parties will meet and confer in good faith to resolve the objection.  If the objection cannot be resolved, the dispute will be brought to the Court within five calendar days from the objection in a joint letter brief not to exceed two pages for resolution.  The Class Data shall not be disclosed to the Class Representative, or any other Class Members or PAGA Group, without written consent of Defendants or by order of the Court.  The Settlement Administrator shall not use the Class Data or any information contained therein for any purpose other than to administer the Settlement in accordance with this Agreement.  The Settlement Administrator shall be responsible

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  for following all privacy laws and taking appropriate steps to ensure that Class Members' personal

2  information is safeguarded and protected from improper disclosure or use.

3    65.    Within twenty-one (21) days of receiving the Class Data from Defendants pursuant to

4  paragraph 64 above, the Settlement Administrator shall mail by First-Class United States mail, and

5  email to the extent email addresses are available, the Notice of Class Action and PAGA Settlement

6  to each Class Member, all in English and Spanish, using the most recent address available to the

7  Settlement Administrator for mail and email delivery.  The Notice of Class Action and PAGA

8  Settlement will be in the form attached hereto as Exhibit 1 to the Class Members, with any

9  modifications to non-material terms required by the Court and/or any modifications agreed to by the

10 Parties and approved by the Court.

11   66.    Confirmation of Contact Information.  Prior to mailing the Notice of Class Action and

12 PAGA Settlement, the Settlement Administrator will perform a search based on the National Change

13 of Address Database for information to update and correct for any known or identifiable address

14 changes.  Any Notices of Class Action and PAGA Settlement returned to the Settlement

15 Administrator as non-deliverable on or before the Response Deadline will be sent promptly via

16 regular First-Class U.S. Mail to the forwarding address affixed thereto, and the Settlement

17 Administrator will indicate the date of such re-mailing on the Notice of Class Action and PAGA

18 Settlement.  If no forwarding address is provided, the Settlement Administrator will promptly

19 attempt to determine the correct address using reasonable address search tools / skip tracing, and will

20 then perform a single re-mailing.  With regard to any Class Member whose Notice of Class Action

21 and PAGA Settlement is returned as non-deliverable, and for whom the Settlement Administrator is

22 unable to determine a reliable address using reasonable and customary methods, the Settlement

23 Administrator will place their Individual Settlement Payment and PAGA Payment Share in the

24 Reserve Fund.  Their Individual Settlement Payment and PAGA Payment Share will be maintained

25 by the Settlement Administrator in the Reserve Fund on behalf of the Class Member for sixty (60)

26 days following expiration of the Check Cashing Deadline.  In such event, the Class Member shall

27 nevertheless remain bound by the terms of the Settlement and the Final Order and Judgment.

28

1   67.    Pursuant to the Class Action Fairness Act, the Settlement Administrator will also

2   provide notice of this Settlement to the Office of the Attorneys General of the United States and of

3   all states where Class Members currently reside.

4   **Distribution Formula and Opportunity to Contest Workweeks**

5   68.    The Notice of Class Action and PAGA Settlement shall be individually tailored for

6   each Class Member to set forth the number of Qualifying Motor Carrier Workweeks applicable to

7   the Motor Carrier Class Member or Qualifying Non-Carrier Workweeks applicable to the Non-

8   Carrier Class Member.  If the Class Member is also in the PAGA Group, the Notice shall also set

9   forth the number of PAGA Workweeks for Motor Carrier Group Members or PAGA Workweeks for

10  Non-Carrier Group Members. The Notice shall also provide the estimated Workweek Payment Rate

11  for Class Members and formula for calculating Individual Settlement Payments such that the Motor

12  Carrier Class Member or Non-Carrier Class Member may readily calculate an estimated Individual

13  Settlement Payment that he or she will receive under this Settlement if the Court grants final

14  approval of the Settlement.  If the Class Member is also in the PAGA Group, the Notice shall also

15  provide the estimated Workweek Payment Rate for the PAGA Group and formula for calculating the

16  PAGA Payment Shares such that the PAGA Group may readily calculate an estimated PAGA

17  Payment Share that he or she will receive under this Settlement if the Court grants final approval of

18  the Settlement.  The Notice also shall notify the Class Members that governmentally-mandated tax

19  withholdings shall be deducted from a portion of his or her Individual Settlement Payment, as

20  described in paragraph 84 below.

21  69.    If the Motor Carrier Class Member or Non-Carrier Class Member wishes to contest

22  the number of Qualifying Motor Carrier Workweeks or Qualifying Non-Carrier Workweeks

23  assigned to him or her by the Settlement Administrator, or PAGA Motor Carrier Group Member or

24  PAGA Non-Carrier Group Member wishes to contest the number of PAGA Workweeks for Motor

25  Carrier Group Members or PAGA Workweeks for Non-Carrier Group Members assigned to him or

26  her by the Settlement Administrator, the Class Member must submit Proof of Work to inform the

27  Settlement Administrator of the basis for contesting any of the assigned workweeks. In the case of

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

the Class Member's death or incapacity, this may be submitted by the Class Member's authorized representative. To be accepted, the Class Member's Proof of Work contesting the data must: (1) be sufficient to allow identification of the Class Member's full name, address, and the last four digits of his or her Social Security Number (for identification purposes only); (2) state, in writing, the reasons why he or she believes an additional amount is owed; (3) be signed by the Class Member or his or her legal representative; and (4) be postmarked on or before the Response Deadline.  As used herein, Proof of Work also includes document(s) such as settlement statements, payment history reports, invoices, 1099s, tax returns, or other records that a Class Member may have that show his or her total workweeks with Defendants. As this is not a claims-made Settlement, Class Members need not submit anything, Class Members shall still be bound by this Agreement and shall release all Released Class Claims and Released PAGA Claims unless they submit a completed, signed and timely Opt Out.

## Opt Out

70.     Any Class Member seeking to be excluded from the Class and this Settlement shall submit a written Opt Out to the Settlement Administrator.  The written Opt Out must: (1) contain the name, address, and the last four digits of the Social Security Number of the person requesting exclusion; (2) state the Class Member's request to exclude himself or herself from the Settlement and to opt out of the Settlement; (3) be signed by the Class Member or his or her lawful representative; and (4) be postmarked by the Response Deadline and returned to the Settlement Administrator at the specified address.  Any Class Member, who submits a completed, signed and timely written Opt Out shall no longer be a member of the Class, shall be barred from participating in this Settlement at Final Approval, by appeal, or otherwise, shall be barred from objecting to this Settlement, and shall receive no benefit from this Settlement, except that Class Members who are in the PAGA Group will still receive his or her PAGA Payment Share and will release the Released PAGA Claims.  Any untimely or incomplete Opt Out shall be considered null and void.  If a Class Member submits both a completed, signed and timely Proof of Work or Proof of Costs and a completed, signed and timely Opt Out, the Opt Out shall be deemed invalid, and the Class Member

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    shall be a Settlement Class Member and participate in this Settlement.  The Settlement Administrator

2    shall notify Class Counsel and Defense Counsel of the number of timely opt-outs within seven (7)

3    days after the Response Deadline.

4           71.     If more than five percent (5%) of the Class Members opt out of the Settlement by

5    submitting completed, signed and timely written Opt Out, Defendants shall have the right in their

6    sole discretion to rescind and void this Settlement by giving written notice to Class Counsel within

7    ten (10) business days after the Settlement Administrator informs the Parties that the opt out rate

8    exceeded five percent (5%).  If Defendants exercise their right to rescind and void this Settlement

9    under this paragraph, Defendants shall pay any and all reasonable costs and expenses incurred by the

10   Settlement Administrator.

### Declaration of Compliance

12          72.     As soon as practicable, but no later than ten (10) days following the close of the

13   Response Deadline, the Settlement Administrator shall provide Class Counsel and Defense Counsel

14   with a declaration attesting to completion of the notice process set forth in this Agreement, the

15   number and names of opt outs, and a summary of any disputes raised by any Class Members.  This

16   declaration shall be filed with the Court by Class Counsel along with a motion requesting final

17   approval of the Settlement.

### Sufficient Notice

19          73.     The Parties agree that compliance with the procedures described in this Agreement

20   constitutes due and sufficient notice to Class Members of this Settlement and the Final Fairness and

21   Approval Hearing, and satisfies the requirements of due process, and that nothing else shall be

22   required of Plaintiff, Class Counsel, Defendants, Defense Counsel, or the Settlement Administrator

23   to provide notice to Class Members of the Settlement and the Final Fairness and Approval Hearing.

### Objections to Settlement

25          74.     Any Class Member wishing to object to this Settlement shall inform the Court, Class

26   Counsel, and Defense Counsel in writing of his or her intent to object by following the procedure set

27   forth in the Notice of Class Settlement no later than the Response Deadline.  Any Objection must:

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   (1) state the Class Member's full name, address, and the last four digits of his or her Social Security

2   Number (for identification purposes only); (2) state the grounds for the objection; (3) be signed by

3   the Class Member or his or her lawful representative; and (4) be postmarked on or before the

4   Response Deadline and returned to the Settlement Administrator.

5   75.   Any Class Member who fails to file a timely written Objection shall be foreclosed

6   from objecting to this Settlement, and/or appealing any order approving the Settlement and/or

7   judgment, unless otherwise ordered by the Court.

8   76.   Class Counsel and Defense Counsel shall file any responses to any written Objections

9   submitted to the Court in accordance with this Agreement at least seven (7) days before the Final

10   Fairness and Approval Hearing, or on another date set by the Court.

11   **Final Fairness and Approval Hearing**

12   77.   On the date set forth by the Court for the Final Fairness and Approval Hearing in the

13   order granting preliminary approval of the Settlement, a Final Fairness and Approval Hearing shall

14   be held before the Court in order to consider and determine: (i) whether the Court should give this

15   Settlement final approval; (ii) whether the Court should approve Class Counsel's application for

16   attorneys' fees, costs and expenses and any Service Award to Plaintiff; and (iii) to hear any timely

17   objections to the Settlement.  At the Final Fairness and Approval Hearing, Plaintiff, Class Counsel,

18   Defendants, and Defense Counsel shall ask the Court to give final approval to this Settlement.  If the

19   Court grants final approval of the Settlement, the Settlement Administrator shall post notice of final

20   judgment on its website within seven (7) calendar days of entry of the Final Order and Judgment.

21   Class Counsel shall submit a copy of the Final Order and Judgment to the LWDA within ten (10)

22   days after entry of the Final Order and Judgment in accordance with California Labor Code section

23   2699(l)(3).

24   **Settlement Payment Procedures**

25   Payments under this Agreement shall be made by the Settlement Administrator as follows:

26   78.   Settlement Class Members shall be paid exclusively from the Net Settlement Amount.

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

79.     The Parties have agreed to pay the LWDA and PAGA Group One Hundred and Fifty Thousand Dollars ($150,000) of the Gross Settlement Amount apportioned 25% or $37,500, to the PAGA Group and 75% or $112,500 to the LWDA.  All Class Members that are also in the PAGA Group will be paid a PAGA Payment Share that shall be calculated based upon the total PAGA Workweeks for Motor Carrier Group Members or total PAGA Workweeks for Non-Carrier Group Members as described below in paragraph 83.  The PAGA Payment Share are payments for the Released PAGA Claims.

80.     Plaintiff and Defendants recognize and agree that the asserted claims in the Civil Action are difficult to quantify with precision and certainty for any given year, or at all, and are subject to differing calculations and formulas.  Plaintiff and Defendants agree that the formulas for allocating Individual Settlement Payments to Settlement Class Members and PAGA Payment Shares to PAGA Group Members provided herein are reasonable and that the Individual Settlement Payments and PAGA Payment Shares are designed to provide a fair settlement, despite the uncertainties of the amounts alleged to be owed to Settlement Class Members and PAGA Group Members and the calculation of them.  Distribution amongst Settlement Class Members are based on Qualifying Motor Carrier Workweeks or Qualifying Non-Carrier Workweeks, is fair and reasonable here where Parties do not possess records showing actual workweeks Class Members worked.  Further, distribution amongst PAGA Group is based on PAGA Workweeks for Motor Carrier Group Members or PAGA Workweeks for Non-Carrier Group Members.  Plaintiff and Defendants have agreed that the distribution to each Settlement Class Member and the PAGA Group shall be determined as set forth in paragraphs 81 below.

81.     The Individual Settlement Payment to each Settlement Class Member shall be determined based on the number of Qualifying Motor Carrier Workweeks or Qualifying Non-Carrier Workweeks, payment from the Claims Compensation Fund (if applicable), as well as other factors that can be objectively determined and are reasonably related to the strengths, risks, and potential damages associated with the claims of the Class Members.  The distribution formula is as follows:

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1       (a)     First, One Hundred and Twenty-Five Thousand Dollars ($125,000.00) which

2 equates to two-and-one half percent (2.5%) of the Gross Settlement Amount will be set aside in a

3 Reserve Fund as set forth in paragraph 88

4       (b)     Second, Thirty-Seven Thousand Five Hundred Dollars ($37,500) shall be

5 divided among the PAGA Group Members proportionally.   PAGA Payment Shares to the PAGA

6 Group Members shall be determined based on the number of PAGA Workweeks for Motor Carrier

7 Group Members and PAGA Workweeks for Non-Carrier Group Members during the PAGA Period.

8 The $37,500 PAGA Payment shall be divided by the total number of PAGA Workweeks for Motor

9 Carrier Group Members times 4 and PAGA Workweeks for Non-Carrier Group Members times 1 for

10 the PAGA Group Members during the PAGA Period.  The result of this division shall yield a

11 Workweek Payment Rate for the PAGA Group.

12       (i)     The gross amount of each PAGA Motor Carrier Group Member's

13 PAGA Payment Share shall be calculated by multiplying the number of PAGA Workweeks for

14 Motor Carrier Group Members applicable to that individual times 4 times the Workweek Payment

15 Rate for the PAGA Group.

16       (ii)     The gross amount of each PAGA Non-Carrier Group Member's

17 PAGA Payment Share shall be calculated by multiplying the number of PAGA Workweeks for Non-

18 Carrier Group Members applicable to that individual times 1 times the Workweek Payment Rate for

19 the PAGA Group.

20       (c)     Third, One Hundred Thousand Dollars ($100,000) of the Net Settlement

21 Amount shall be placed into a Claims Compensation Fund to be used to compensate Class Members

22 who have had to personally pay costs, charges, fees, or expenses (collectively "costs") on claims

23 made against them arising out of providing transportation and delivery services for Defendants in

24 California during the Class Period.  Payments from the Claims Compensation Fund shall be part of

25 the Individual Settlement Payment to Class Members who qualify.  For a Class Member to share in

26 this Claims Compensation Fund, he or she must provide Proof of Costs to the Settlement

27 Administrator evidencing that: (a) he or she was responsible for a claim(s) made against him or her

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

arising out of providing transportation and delivery services to Defendants in California during the Class Period; (b) he or she paid the costs on a claim(s) and/or has an enforceable judgment against him or her to pay such costs; and (c) the amount paid and/or of the judgment.[1]  This proof must be submitted in writing to the Settlement Administrator before expiration of the Response Deadline. Funds from the Claims Compensation Fund will be distributed as follows:

(i)     If the total amount of costs on claim(s) submitted to the Claims Compensation Fund is equal to or less than One Hundred Thousand Dollars ($100,000), then each Class Member who submitted a claim to the Claims Compensation Fund will receive the actual amount of the costs on claim(s) as reflected in his or her Proof of Work submitted to the Settlement Administrator.  In addition, if the total amount of costs on claim(s) submitted to the Claims Compensation Fund is less than One Hundred Thousand Dollars ($100,000), then the amount remaining in the Claims Compensation Fund shall be added to the Net Settlement and distributed as set forth in paragraph 81(d) below.

(ii)    If the total amount of costs on claim(s) submitted to the Claims Compensation Fund is greater than One Hundred Thousand Dollars ($100,000), then each Class Member who submitted a claim to the Claims Compensation Fund will receive a pro-rata amount of the Claims Compensation Fund.  The pro-rata amount shall be calculated by dividing the Class Member's total costs of claims evidenced in his or her Proof of Work by the total amounts of costs of claims submitted by all Class Members which will yield a percentage value.  The Class Member shall receive that percentage value of the total Claims Compensation Fund.

(d)     Finally, the Net Settlement Amount shall be divided among all Settlement Class Members proportionally. Individual Settlement Payments to each Settlement Class Member shall be determined based on the number of his or her Qualifying Motor Carrier Workweeks or Qualifying Non-Carrier Workweeks during the Class Period.  The Net Settlement Amount shall be divided by the total number of Qualifying Non-Carrier Workweeks times 4 and Qualifying Motor

---

[1] In the event of an unpaid judgment, the Settlement Administrator shall make the check payable to the payee of the underlying judgment, on behalf of the Settlement Class Member.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  Carrier Workweeks times 1 for all Settlement Class Members during the Class Period.[2]  The result

2  of this division shall yield a Workweek Payment Rate for Class Members.

3             (i)    The gross amount of each Motor Carrier Class Member's Individual

4  Settlement Payment shall be calculated by multiplying the number of Qualifying Motor Carrier

5  Workweeks applicable to that Settlement Class Member times 4 times the Workweek Payment Rate

6  for Class Members.   Governmentally-required employee tax withholdings shall be deducted from

7  that portion of each Individual Settlement Payment allocated as wages.

8             (ii)   The gross amount of each Non-Carrier Class Member's Individual

9  Settlement Payment shall be calculated by multiplying the number of Qualifying Non-Carrier

10 Workweeks applicable to that Settlement Class Member times 1 times the Workweek Payment Rate

11 for Class Members.    Governmentally-required employee tax withholdings shall be deducted from

12 that portion of each Individual Settlement Payment allocated as wages.

13       82.    Within ten (10) business days after the Effective Date, Defendants shall transmit the

14 Gross Settlement Amount to the Settlement Administrator.  Within fifteen (15) business days after

15 the Effective Date, the Settlement Administrator shall transmit to Class Counsel the attorneys' fees,

16 costs and expenses approved by the Court, shall transmit to the Class Representative his Service

17 Award approved by the Court, shall transmit to the LWDA the payment pursuant to PAGA, shall

18 mail an Individual Settlement Payment to each Settlement Class Member, and PAGA Payment Share

19 to each PAGA Group Member.

20       83.    Individual Settlement Payments and PAGA Payment Shares shall be made by check

21 and shall be made payable to each Settlement Class Member and the PAGA Group as set forth in

22 this Agreement.  Under no circumstances shall the Settlement Administrator distribute checks to

23 Settlement Class Members and/or the PAGA Group until all timely objections, opt-outs, and

24 workweek disputes have been considered, calculated, and accounted for, and the Class Counsel fees

25

26

27 [2] This differential is based on the liability and damages analyses performed by Class Counsel, which formed the basis of Class Counsel's mediated negotiations.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  and expenses, costs of the Settlement Administrator, and a Service Award have been calculated and

2  accounted for.

3      84.    The Individual Settlement Payments are payments for all Released Class Claims for

4  the Settlement Class Members.  The PAGA Payment Shares are payments for the Released PAGA

5  Claims for the PAGA Group.  The Individual Settlement Payments for Settlement Class Members

6  shall be allocated as follows: (a) Twenty Percent (20%) of the amount of each Individual Settlement

7  Payment shall be allocated to their respective unpaid wage claims and shall be paid net of all

8  applicable employment taxes, including any federal, state, and/or local in issue tax withholding

9  requirements and the employee share of FICA taxes; (b) Forty Percent (40%) of the amount of each

10 Individual Settlement Payment shall be allocated to expense reimbursement and shall not be subject

11 to withholding; and (c) Forty Percent (40%) of the amount of each Individual Settlement Payment

12 shall be allocated to alleged penalties and interest and shall not be subject to withholding.  PAGA

13 Payment Shares will be allocated entirely as penalties and will be included on an IRS Form 1099 to

14 the PAGA Group.

15     (a)    Each Settlement Class Member, the PAGA Group, Class Counsel, and Class

16 Representative shall be responsible for remitting to state and/or federal taxing authorities any

17 applicable taxes which may be owed on the portion of any payment received pursuant to this

18 Agreement, except as provided by this Agreement.

19     (b)    The Settlement Administrator shall be authorized to establish a Qualified

20 Settlement Fund ("QSF") pursuant to Internal Revenue Service ("IRS") rules and regulations in

21 which the Gross Settlement Amount shall be placed and from which payments required by the

22 Settlement shall be made.  The Settlement Administrator shall apply for its own Employer

23 Identification Number ("EIN") for the QSF and shall use its own EIN for reporting payroll

24 withholdings to the appropriate state and federal tax authorities with respect to each Individual

25 Settlement Payment and shall transmit the required employers' and employees' share of the required

26 withholdings applicable to the amount allocated to alleged unpaid wages, to the appropriate state and

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

federal tax authorities.  The Settlement Administrator shall establish a settlement fund that meets the requirements of a QSF under US Treasury Regulation section 468B-1.

85.     It is expressly understood and agreed that the receipt of an Individual Settlement Payment and/or PAGA Payment Share shall not entitle any Class Member and/or the PAGA Group to compensation or benefits under any company bonus, contest or other compensation or benefit plan or agreement in place during the applicable Class Period nor applicable PAGA Period, nor shall it entitle any Class Member and/or the PAGA Group to any increased retirement, 401(k) or matching benefits, or deferred compensation benefits.  The Parties agree that any Individual Settlement Payment made to Settlement Class Members and any PAGA Payment Share made to the PAGA Group under the terms of this Agreement shall not represent any modification of previously credited length of service or other eligibility criteria under any bonus plan, employee pension benefit plan or employee welfare plan sponsored by any of the Released Parties, or to which any of the Released Parties are required to make contributions.  Further, any Individual Settlement Payment and PAGA Payment Share paid under this Agreement shall not be considered evidence of compensation in any year for purposes of determining eligibility for, or benefit accrual within, any employee pension benefit plan or employee welfare benefit plan sponsored by any of the Released Parties or to which any of the Released Parties are required to make contributions.  It is the Parties' intent that the Individual Settlement Payment and PAGA Payment Share provided for in the Agreement are the sole payments to be made by Defendants to the Settlement Class Members and the PAGA Group, and that the Settlement Class Members and the PAGA Group are not entitled to any new or additional compensation or benefits as a result of having received the Individual Settlement Payment and PAGA Payment Share, notwithstanding any contrary terms in any agreement, contract, benefit or compensation plan document that might have been in effect during the applicable Class Period and PAGA Period.

86.     <u>Initial Distribution of Individual Settlement Payments and Unclaimed Funds.</u> Settlement Class Members will be mailed checks for their Individual Settlement Payments and PAGA Payment Shares within 30 days of the Effective Date, except that checks will not be sent to

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   Settlement Class Members whose Notice of Class Action and PAGA Settlement is returned as non-

2   deliverable and for whom the Settlement Administrator is unable to determine a reliable address

3   using reasonable and customary methods.  Rather, the Individual Settlement Payments and PAGA

4   Payment Shares corresponding to Settlement Class Members who cannot be located, if any, will be

5   placed in the Reserve Fund.  Notwithstanding, such Settlement Class Member shall remain bound by

6   the Settlement's Released Class Claims and Released PAGA Claims.

7          87.    Check Cashing Deadline. Individual Settlement Payment checks and PAGA Payment

8   Share checks shall remain negotiable for 150 days from the date of mailing the Initial Distribution.

9   This limitation will be printed on the face of each check.  The value of any checks that remain

10  uncashed after this 150-day deadline will be placed in the Reserve Fund.

11         88.    Reserve Fund.  All individuals who were not originally included in the Class Data but

12  request participation and are confirmed to be Class Members after the Initial Distribution of

13  Individual Settlement Payments may request payments from the Reserve Fund.  The Reserve Fund

14  shall remain open for 60 days following the Check Cashing Deadline.

15                (a)    The Settlement Administrator will determine the validity of any such requests

16  for payments from the Reserve Fund and the amount, if any, to pay after consultation with the

17  Parties.  The Settlement Administrator will consider any relevant information submitted by the Class

18  Member, Defendants, or Class Counsel.  Defendants' records will be presumed correct, but the

19  Settlement Administrator will evaluate the evidence submitted and will make the final decision as to

20  the merits of the claim and will provide the individuals determined to be Class Members with a

21  Notice.  The Settlement Administrator will calculate the amount of any payments to Class Members

22  from the Reserve Fund based on the distribution formula set forth in paragraph 81, as if the

23  Settlement Class Member was included during the Initial Distribution of Individual Settlement

24  Payments and promptly mail the Settlement Class Member an Individual Settlement Payment check,

25  including any PAGA Payment Share, that shall remain negotiable for sixty (60) days after the Check

26  Cashing Deadline.

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(b)     If the Reserve Fund is exhausted, Defendants have no obligation to make a payment to the Class Members who submit claims but were not originally included in the Class Data.  The Reserve Fund shall remain open for sixty (60) days after the Check Cashing Deadline. Thereafter, no further requests for payment from the Reserve Fund shall be accepted for any reason and the Reserve Fund will be closed.  The Settlement Administrator will distribute any remaining money in the Reserve Fund to a *cy pres* beneficiary approved by the Court.  The Parties will propose St. Christopher Fund (https://truckersfund.org) as the *cy pres* recipient.   If the Court does not approve St. Christopher Fund, then the Parties will meet and confer in good faith to agree upon an alternate *cy pres* recipient(s).

(c)     Notwithstanding the above, valid claims made before the mailing deadline for Individual Settlement Payments shall be funded exclusively out of the Net Settlement Amount in accordance with paragraph 81, the previously unidentified Class Member's information shall be included in the Class Data, and he or she shall be promptly sent a Notice.

89.     A Settlement Class Member and/or member of the PAGA Group who does not cash his or her check within the 150-day time frame set forth above or, for Class Members receiving payment from the Reserve Fund, sixty (60) days after the Check Cashing Deadline, shall nevertheless remain bound by the Settlement's Released Class Claims and Released PAGA Claims. Notwithstanding the foregoing, the Settlement's Released Class Claims does not include any individual claim under Section 16(b) of the FLSA, 29 U.S.C. 216(b), as to a Settlement Class Member who does not opt-in to the Settlement by cashing, depositing or endorsing his or her Individual Settlement Payment check, to the extent that opting-in is required to release such FLSA claims.

**The Settlement Administrator**

90.     The Settlement Administrator shall administer the Settlement, including, but not limited to: (i) translating the Notice of Class Action and PAGA Settlement into Spanish; (ii) printing, mailing and emailing (to the extent email addresses are available), in both English and Spanish, the Notice of Class Action and PAGA Settlement; (iii) performing NCOA searches, skip tracing, and re-

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    mailing (as necessary) of the Notice of Class Action and PAGA Settlement pursuant to paragraphs

2    65-66 above; (iv) receiving Opt Outs and Objections from Class Members; (v) preparing and

3    submitting to Settlement Class Members and government entities all appropriate tax filings and

4    forms; (vi) computing the amount of and distributing Individual Settlement Payments, PAGA

5    Payment Share, Service Award, and Class Counsel attorneys' fees and costs; (vii) processing and

6    validating Opt Outs and Objections; (viii) processing and resolving, after consultation with the

7    Parties, any timely Proof of Work for disputes submitted by Class Members as to their workweeks or

8    costs of claims (ix) processing and resolving, after consultation with the Parties, any timely requests

9    for payment from the Reserve Fund; (x) establishing a QSF, as defined by the Internal Revenue

10   Code; and (xi) calculating and remitting to the appropriate government agencies all employer and

11   employee payroll tax obligations arising from the Settlement and preparing and submitting filings

12   required by law in connection with the payments required by the Settlement.

13          91.     Settlement administration fees in a reasonable amount shall be paid to the Settlement

14   Administrator from the Gross Settlement Amount.  Settlement administration fees are estimated to

15   be approximately Thirty-Nine Thousand Eight Hundred and Thirty-One Dollars and No Cents

16   ($39,831.00).  If the actual cost of settlement administration is less or more than the amount

17   approved by the Court, those funds shall be added to or subtracted from the Net Settlement Amount

18   for allocation to Settlement Class Members.  All costs associated with settlement administration

19   shall come out of the Gross Settlement Amount.

20   **Resolution of Disputes Over Qualifying Workweeks, PAGA Workweeks, Individual Settlement**

21                        **Payments, and/or PAGA Payment Share**

22          92.     In calculating the Individual Settlement Payment for each Class Member and PAGA

23   Payment Share for each member of the PAGA Group, Defendants' records regarding Qualifying

24   Motor Carrier Workweeks of Motor Carrier Class Members, Qualifying Non-Carrier Workweeks of

25   Non-Carrier Class Members, PAGA Workweeks for PAGA Motor Carrier Group Members and

26   PAGA Workweeks Non-Carrier Group Members shall be presumed to be correct.  Any Class

27   Member and/or member of the PAGA Group who disagrees with Defendants' determination of his

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  or her or its Qualifying Motor Carrier Workweeks or Qualifying Non-Carrier Workweeks and/or

2  PAGA Workweeks for Motor Carrier Group Members or PAGA Workweeks for Non-Carrier Group

3  Members as indicated on his or her or its Notice of Class Action and PAGA Settlement may dispute

4  that calculation to the Settlement Administrator as set forth in paragraphs 36 and 69  above.

5  Defendants' determination shall be presumed accurate.  The Settlement Administrator shall

6  investigate the dispute, requesting information from Defendants as necessary and make the final

7  determination of whether any additional amount is owed.  All such challenges must be postmarked

8  within the Response Deadline.  In no case shall a dispute result in a payment by Defendants in

9  excess of the Gross Settlement Amount.

10                                     **Service Award**

11          93.      From the Gross Settlement Amount, the Class Representative may seek approval

12  from the Court of a Service Award not to exceed Fifteen Thousand Dollars and No Cents

13  ($15,000.00) for serving as a Class Representative, which Defendants shall not oppose.

14          **Payment of Class Counsel Attorneys' Fees, Costs and Expenses**

15          94.      Class Counsel shall apply to the Court at the Final Fairness and Approval Hearing for

16  an award of attorneys' fees not to exceed the amount of One Million Two Hundred Fifty Thousand

17  Dollars and No Cents ($1,250,000.00), which is Twenty-Five Percent (25%) of the Gross Settlement

18  Amount, plus an award of costs not to exceed the amount Twenty Thousand Dollars ($20,000), both

19  of which shall be paid out of the Gross Settlement Amount.  Class Counsel and Defendants agree

20  that such awards of attorneys' fees and costs are reasonable under the circumstances.  Nothing in this

21  Agreement shall restrict Plaintiff's or Class Counsel's ability to appeal any decision by the Court to

22  award less than the requested attorneys' fees and costs or Class Representative Service Award.  Any

23  order relating to the award of attorney's fees, costs or Class Representative Service Award, or any

24  appeal from any order relating thereto or reversal or modification thereof, will not operate to

25  terminate or cancel this Agreement.  If the amount of, Service Award, attorneys' fees and/or costs

26  awarded by the Court is less than the requested amounts, the difference shall serve to increase the

27  Net Settlement Amount to be distributed to Settlement Class Members as part of their Individual

28

Settlement Payments.  Nothing in this Agreement will require Defendants to pay more than the Gross Settlement Amount under any circumstances.

**Taxes and Withholding and Indemnification**

95.     The Settlement Administrator shall be responsible for ensuring that all tax obligations associated with the Settlement are timely paid to the appropriate governmental taxing authorities. The Settlement Administrator's responsibilities include the following:

(i)      filing all federal, state and local employment tax returns, income tax returns, and any other tax returns associated with the taxes,

(ii)     timely and proper filing of all required federal, state and local information returns (*e.g.*, 1099s, W-2s, etc.),

(iii)    completion of any other steps necessary for compliance with any tax obligations applicable to Settlement Payments under federal, state and/or local law, and

(iv)     authorized to establish a QSF pursuant to IRS rules and regulations in which the Gross Settlement Amount shall be placed and from which payments required by the Settlement shall be made. establishing

96.     The Settlement Administrator shall determine the amount of any tax withholding to be deducted from each Settlement Class Member's Individual Settlement Payment.  All such tax withholdings shall be remitted by the Settlement Administrator to the proper governmental taxing authorities.

97.     Each party to this Agreement acknowledges and agrees that:

(i)      No provision of this Agreement and no written communication or disclosure between or among the Parties or their attorneys and other advisers is or was intended to be, nor shall any such communication or disclosure constitute or be construed or be relied upon as, tax advice within the meaning of United State Treasury Department Circular 230 (31 CFR Part 10, as amended);

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(ii)   He, she or it (a) has relied exclusively upon his, her or its own, independent legal and tax advisers for advice (including tax advice) in connection with this Agreement, (b) has not entered into this Agreement based upon the recommendation of any other party or any attorney or advisor to any other party, and (c) is not entitled to rely upon any communication or disclosure by any attorney or adviser to any other party to avoid any tax penalty that may be imposed on him or her or it; and

(iii)  No attorney or adviser to any other party has imposed any limitation that protects the confidentiality of any such attorney's or adviser's tax strategies (regardless of whether such limitation is legally binding) upon disclosure by him or her of the tax treatment or tax structure of any transaction, including any transaction contemplated by this Agreement.

98.   The Individual Settlement Payment received by Settlement Class Members and PAGA Payment Share received by the PAGA Group shall be reported by the Settlement Administrator, as required, to the state and federal taxing authorities on IRS forms 1099 and W-2 or similar forms.  Each Settlement Class Member and the PAGA Group Member shall be responsible for paying all applicable state, local, and federal income taxes on all amounts the Settlement Class Member and the PAGA Group receives pursuant to this Agreement.

## RELEASED CLAIMS

99.   <u>Released Class Claims with Respect to the Settlement Class Members.</u>  Providing there is final approval of this Settlement, then as of the date that Defendants transmit the Gross Settlement Amount to the Settlement Administrator, each Settlement Class Member, individually and on behalf of their respective successors, assigns, agents, attorneys, executors, heirs and personal representatives and/or their affiliated business entities (if any), shall fully and finally release and discharge the Released Parties, and each of them from the Released Class Claims.  The Released Class Claims with respect to the Settlement Class Members are all wage and hour claims, rights, demands, liabilities, causes of action, and theories of liability, whether known or unknown, that were

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

or could have been alleged against any of the Released Parties arising out of, in connection with, or based on the facts alleged in the Complaint and/or the PAGA Letter.  This includes, but may not be limited to, misclassification, failure to pay wages including, but not limited to, overtime wages and minimum wages, failure to provide meal and rest periods, unpaid compensation or premium pay arising out of missed, late, on-duty and/or short meal and/or rest periods, failure to pay wages semi-monthly at designated times, failure to reimburse for business expenses, failure to pay wages upon termination and failure to provide accurate itemized wage statements, conversion, penalties, damages, interest, costs or attorneys' fees, and related violations of any other state or federal law, whether for economic damages, non-economic damages, liquidated or punitive damages, restitution, tort, contract, equitable relief, injunctive or declaratory relief, to the extent necessary to effect a full and complete release of the Released Class Claims, that are related or derivative of the claims related in this paragraph including, but not limited to, all wage and hour claims under any common laws, the Fair Labor Standards Act ("FLSA"), Cal. Code of Regulations, Title 8, Sections 11000, *et seq.*, Wage Order 9 or any other applicable Wage Order, California Labor Code Sections 96-98.2, *et seq.*, 200-204, 208, 210, 216, 218.5, 218.6, 221-224, 225.5, 226, 226.3, 226.7, 226.8, 229, 400-410, 510, 511, 512, 515, 551, 552, 558, 1174, 1174.5, 1175, 1194-1197.1, 1198, 1199, 2800, 2802, 2804, 3294 and 3336 and any related provisions, the California Code of Civ. Proc. Section 1021.5, and/or the California Business & Professions Code Sections 17200, *et seq.*, provided they were or could have been alleged against any of the Released Parties arising out of, in connection with, or based on the facts alleged in the Complaint and/or the PAGA Letter   This release shall extend to all such claims accrued during the Class Period.  Notwithstanding the foregoing, Released Class Claims do not include any individual claim under Section 216(b) of the FLSA, 29 U.S.C. § 216(b), as to a Settlement Class Member who does not opt-in to the Settlement by cashing, depositing, or endorsing his or her Individual Settlement Payment check, to the extent that opting-in is required to release such FLSA claims.

100.   <u>Released PAGA Claims with Respect to the PAGA Group</u>.  Providing there is final approval of this Settlement, then as of the date that Defendants transmit the Gross Settlement

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  Amount to the Settlement Administrator, Plaintiff on behalf of himself, the State of California, and

2  each PAGA Group Member, shall fully and finally release and discharge the Released Parties, and

3  each of them from the Released PAGA Claims, which shall extend to claims for civil penalties

4  applicable to Plaintiff and each PAGA Group Member individually and on behalf of their respective

5  successors, assigns, agents, attorneys, executors, heirs and personal representatives and/or their

6  affiliated business entities (if any).  The Released PAGA Claims means all wage and hour claims,

7  rights, demands, liabilities, causes of action, and theories of liability of every nature and description

8  under the California Labor Code Private Attorneys General Act of 2004, Labor Code Sections 2698,

9  *et seq.*, that were or could have been alleged against any of the Released Parties arising out of, in

10  connection with, or based on the facts alleged in the Complaint, and/or the PAGA Letter, including

11  but not limited to, all claims for penalties for violation of any state law, for misclassification, failure

12  to pay wages including, but not limited to, overtime wages and minimum wages, failure to provide

13  meal and rest periods, unpaid compensation or premium pay arising out of missed, late, on-duty

14  and/or short meal and/or rest periods, failure to pay wages semi-monthly at designated times, failure

15  to reimburse for business expenses, failure to pay wages upon termination and failure to provide

16  accurate itemized wage statements, conversion, penalties, costs or attorneys' fees, to the extent

17  necessary to effect a full and complete release of such Released PAGA Claims, including all claims

18  for penalties based on the Cal. Code of Regulations, Title 8, Sections 11000, *et seq.*, Wage Order 9

19  or any other applicable Wage Order, California Labor Code Sections 96-98.2, *et seq.*, 200-204, 208,

20  210, 216, 218.5, 218.6, 221-224, 225.5, 226, 226.3, 226.7, 226.8, 229, 400-410, 510, 511, 512, 515,

21  551, 552, 558, 1174, 1174.5, 1175, 1194-1197.1, 1198, 1199, 2800, 2802, 2804, 3294 and 3336 and

22  any related provisions.  This release shall extend to all such claims accrued during the PAGA Period.

23  This release shall be binding on the PAGA Group regardless of whether they submit a valid Opt Out

24  from the Class.

25      101.   <u>Release by Plaintiff</u>.  Providing there is final approval of this Settlement, then as of

26  the date that Defendants transmit the Gross Settlement Amount to the Settlement Administrator,

27  Plaintiff, for himself, his successors, assigns, agents, executors, heirs and personal representatives,

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

spouse and attorneys, and any and all of them, voluntarily and with the advice of counsel, waives

and releases any and all claims, obligations, demands, actions, rights, causes of action, and liabilities

against any of the Released Parties of whatever kind and nature, character, and description, whether

in law or equity, whether sounding in tort, contract, federal, state and/or local law, statute, ordinance,

regulation, constitution, common law, or other source of law or contract, whether known or

unknown, and whether anticipated or unanticipated, including all claims arising from or relating to

any and all acts, events and omissions occurring prior to the date of final approval of this Agreement

including, but not limited to, all claims which relate in any way to his alleged engagement or with

the termination of his alleged engagement with the Released Parties and/or his provision of services

to the Released Parties during the Class Period.  Plaintiff further releases all unknown claims against

any of the Released Parties, covered by California Civil Code Section 1542, which states: **"A**

**general release does not extend to claims that the creditor or releasing party does not know or**

**suspect to exist in his or her favor at the time of executing the release and that, if known by**

**him or her, would have materially affected his or her settlement with the debtor or released**

**party."**  Notwithstanding the provisions of section 1542, and for the purpose of implementing a full

and complete release and discharge of all of his Released Claims, Plaintiff expressly acknowledges

that this Settlement is intended to include in its effect, without limitation, all Released Claims which

Plaintiff does not know or suspect to exist in his favor at the time of execution hereof, and that the

Settlement contemplates the extinguishment of all such Released Claims.

## LIMITATIONS ON USE OF THIS SETTLEMENT

### No Admission

102.    Neither the acceptance nor the performance by Defendants of the terms of this

Agreement nor any of the related negotiations or proceedings are or shall be claimed to be, construed

as, or deemed a precedent or an admission by Defendants of the truth of any allegations in the

Complaint or the PAGA Letter.

### Non-Evidentiary Use

103.    Defendants deny that they have failed to comply with the law in any respect, or have any liability to anyone based on the claims asserted in the Civil Action.  Plaintiff expressly acknowledges that this Agreement is entered into for the purpose of compromising highly disputed claims and that nothing herein is an admission of liability, wrongdoing, or the propriety of class or representative treatment by Defendants.  Neither the Agreement nor any document prepared in connection with the Settlement may be admitted in any proceeding as an admission by Defendants. Notwithstanding this paragraph, any and all provisions of this Agreement may be admitted in evidence and used in any proceeding to enforce the terms of this Agreement, or in defense of any claims released or barred by this Agreement.

### Nullification

104.    If the Court for any reason does not approve this Settlement, this Agreement shall be considered null and void and the Parties to this Agreement shall stand in the same position, without prejudice, as if the Agreement had been neither entered into nor filed with the Court.

105.    Invalidation of any material portion of this Agreement shall invalidate this Agreement in its entirety unless the Parties agree in writing that the remaining provisions shall remain in full force and effect.

### MISCELLANEOUS PROVISIONS

### No Inducements

106.    Plaintiff and Defendants acknowledge that they are entering into this Settlement as a free and voluntary act without duress or undue pressure or influence of any kind or nature whatsoever, and that neither Plaintiff nor Defendants have relied on any promises, representations or warranties regarding the subject matter hereof other than as set forth in this Agreement.

### No Prior Assignment

107.    The Parties represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   entity any portion of any liability, claim, demand, action, cause of action or rights herein released

2   and discharged except as set forth herein.

### Construction

3

4       108.    The Parties agree that the terms and conditions of this Agreement are the result of

5   lengthy, intensive arm's-length negotiations between the Parties and their counsel, and this

6   Agreement shall not be construed in favor of or against any Party by reason of the extent to which

7   any Party or his or its counsel participated in the drafting of this Agreement.

### California Law

8

9       109.    All terms of this Agreement and its exhibits shall be governed and interpreted by and

10  according to the laws of the State of California, without giving effect to any conflict of law

11  principles or choice of law principles.

### Captions and Interpretations

12

13      110.    Paragraph titles or captions contained herein are inserted as a matter of convenience

14  and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any

15  provision hereof.

### Incorporation of Exhibits

16

17      111.    All exhibits to this Agreement are incorporated by reference and are a material part of

18  this Agreement.  Any notice, order, judgment, or other exhibit that requires approval of the Court

19  must be approved without material alteration from its current form in order for this Agreement to be

20  enforceable.

### Modification

21

22      112.    This Agreement may not be changed, altered, or modified, except in a writing signed

23  by the Parties, and approved by the Court.  This Agreement may not be discharged except by

24  performance in accordance with its terms or by a writing signed by the Parties.

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**Reasonableness of Settlement**

113.    Plaintiff represent that this is a fair, reasonable, and adequate settlement and have arrived at this settlement through arms-length negotiations, taking into account all relevant factors, present and potential.

**Integration Clause**

114.    This Agreement contains the entire agreement between the Parties relating to the Settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged herein.  No rights hereunder may be waived except in writing.

**Binding On Assigns**

115.    This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

**No Prevailing Party**

116.    Except as otherwise provided for in this Agreement, no Party shall be considered a prevailing party and each Party shall bear its or his own attorney fees and costs.  Subject to Court approval, Defendants shall not contest Plaintiff's entitlement to attorneys' fees and costs by virtue of executing this Agreement, nor of the amounts sought pursuant to Paragraphs 2 and 94, above.

**Class Counsel Signatories**

117.    It is agreed that because the members of the Class are numerous, it is impossible or impractical to have each member of the Class execute this Agreement.  The Notice of Class Action and PAGA Settlement shall advise all Class Members of the binding nature of the Agreement, and the Agreement shall have the same force and effect as if this Agreement were executed by each member of the Class.

**Counterparts**

118.    This Agreement, and any amendments hereto, may be executed in any number of counterparts, each of which when executed and delivered shall be deemed to be an original and all of

1   which taken together shall constitute but one and the same instrument.  Fax and pdf signatures shall

2   be as valid as original signatures.

3   **Waiver of Right to Object**

4   119.    By signing this Agreement, Plaintiff, on behalf of the Class, allegedly aggrieved

5   employees and himself, agrees to be bound by its terms.  Plaintiff further agree not to request to be

6   excluded from the Class or Settlement and agree not to object to any of the terms of the Agreement.

7   Any request for exclusion from the Settlement by Plaintiff or any Objection by Plaintiff shall be void

8   and of no force and effect.  Likewise, Defendants agree to be bound by the terms of this Settlement

9   and agree not to object to any of the terms of the Agreement.

10  **Administration Costs if Settlement Fails**

11  120.    If the Settlement is not finally approved by the Court, any costs incurred by the

12  Settlement Administrator shall be paid equally by the Parties (half by Plaintiff and/or Class Counsel

13  and half by Defendants).

14  **Final Order and Judgment**

15  121.    Upon final approval of the Settlement, a Final Order and Judgment shall be entered

16  by the Court which shall, among other things:

17  (i)    Grant final approval to the Settlement as fair, reasonable, adequate, in good

18         faith and in the best interests of the Class as a whole, and order the Parties to

19         carry out the provisions of this Agreement.

20  (ii)   Adjudge that the Settlement Class Members of the Settlement are conclusively

21         deemed to have released the Released Parties from the Released Class Claims,

22         as more specifically set forth above.

23  (iii)  Adjudge that the PAGA Group is conclusively deemed to have released the

24         Released Parties from the Released PAGA Claims and are no longer

25         aggrieved employees for any PAGA Claims that have accrued during the

26         PAGA Period, as more specifically set forth above.

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(iv)    Prohibit and permanently enjoin each Settlement Class Member of the Settlement from pursuing in any fashion against any of the Released Parties any and all of the Released Class Claims.

(v)     Prohibit and permanently enjoin each member of the PAGA Group of the Settlement from pursuing in any fashion against any of the Released Parties any and all of the Released PAGA Claims.

(vi)    Reserve continuing jurisdiction as provided herein.

**Limitations on Disclosure**

122.    Plaintiff and Defendants agree that (except for purposes of enforcement) they shall not respond substantively to any press inquiry and shall not issue any press release or initiate communications with the press regarding the Settlement.  Neither Class Counsel, Defendants' counsel nor the Parties shall utilize this Settlement for purposes of marketing themselves or in any political advertising.  Notwithstanding the above, Class Counsel may communicate to any court the terms of the Settlement for purposes of conditional class certification, and for preliminary approval and final approval of the Settlement.

123.    This Agreement, the Settlement, and any proceedings or actions or negotiations in connection therewith shall be deemed settlement communications covered by California Evidence Code Sections 1152 and 1154, Federal Rule of Evidence 408, and any other similar provisions or law, and shall not be construed as an admission of truth of any allegation or the validity of any cause of action or claim asserted or of any liability therein.

IN WITNESS WHEREOF, this Agreement is executed by the Parties and their duly authorized attorneys, as of the day and year herein set forth.

1

DATED: ___7/01/2020___                    _____
                                          JOSEPH KIMBO
2

3

4
                                          _____
5   DATED: ___7/01/2020___                Heather Gatley (Jul 1, 2020 12:12 EDT)

                                          RYDER LAST MILE, INC. (f/k/a "MXD GROUP,
6                                         INC.") and RYDER SYSTEM, INC.

7                                         By: ___Heather Gatley_____

8

9   **APPROVED AS TO FORM AND CONTENT:**

10

11  DATED: ___July 1, 2020___             SCHNEIDER WALLACE COTTRELL
                                          KONECKY WOTKYNS
12

13
                                          By_____
14                                        Joshua Konecky
                                          Attorneys for Plaintiff JOSEPH KIMBO
15

16

17  DATED: ___July 1, 2020___             REED SMITH LLP

18

19                                        By_____
                                          Mara D. Curtis
20                                        Attorneys for Defendants RYDER LAST MILE, INC.
                                          (f/k/a "MXD GROUP, INC.") and RYDER SYSTEM,
21                                        INC.

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# Exhibit 1

NOTICE OF CLASS ACTION AND PAGA SETTLEMENT

*Joseph Kimbo v. MXD Group, Inc., et al.,*

United States District Court for the Eastern District of California, Case no. 2:19-cv-00166-wbs-kjn

**IF YOU ARE OR WERE A MOTOR CARRIER OWNER WHO DIRECTLY CONTRACTED WITH AND PROVIDED TRANSPORTATION SERVICES TO RYDER LAST MILE, INC. (f/k/a MXD GROUP, INC.) AND RYDER SYSTEM, INC. IN CALIFORNIA IN YOUR INDIVIDUAL CAPACITY OR THROUGH A BUSINESS ENTITY AT ANY TIME FROM DECEMBER 12, 2014 THROUGH [THE EARLIER OF PRELIMINARY APPROVAL OR JULY 26, 2020], THIS CLASS ACTION SETTLEMENT MAY AFFECT YOUR LEGAL RIGHTS.**

**IF YOU DID NOT CONTRACT WITH RYDER LAST MILE, INC. (f/k/a MXD GROUP, INC.) AND ARE A NON-OWNER DRIVER AND/OR HELPER ENGAGED BY MOTOR CARRIER COMPANIES TO OPERATE THEIR COMMERCIAL MOTOR VEHICLES AND AUTHORIZED TO PROVIDE TRANSPORTATION SERVICES FOR RYDER LAST MILE (f/k/a MXD GROUP, INC.) AND RYDER SYSTEM, INC. AT ANY TIME FROM DECEMBER 12, 2014 THROUGH [THE EARLIER OF PRELIMINARY APPROVAL OR JULY 26, 2020], THIS CLASS ACTION MAY AFFECT YOUR LEGAL RIGHTS.**

**PLEASE READ THIS NOTICE CAREFULLY.**

*A federal court authorized this notice. This is not a solicitation from a lawyer. You are not being sued.*

A proposed class action settlement (the "Settlement") has been reached in the above-captioned action (the "Civil Action") pending in the United States District Court for the Eastern District of California (the "Court") between Plaintiff Joseph Kimbo ("Plaintiff") and Defendants Ryder Last Mile, Inc. (f/k/a MXD Group, Inc.) and Ryder System, Inc. ("Defendants").

The purpose of this Notice of Class Action and PAGA Settlement ("Notice") is to briefly describe the Civil Action, and to inform you of your rights and options in connection with it and the proposed Settlement. The proposed Settlement will resolve all claims in the Civil Action. It is important that you read this Notice carefully as your rights may be affected by the Settlement.

AS A CLASS MEMBER, YOU ARE ELIGIBLE TO RECEIVE AN INDIVIDUAL SETTLEMENT PAYMENT AND WILL BE BOUND BY THE RELEASED CLASS CLAIMS DESCRIBED IN THIS NOTICE AND THE SETTLEMENT AGREEMENT FILED WITH THE COURT, UNLESS YOU SUBMIT A VALID AND TIMELY WRITTEN OPT OUT TO BE EXCLUDED FROM THE CLASS AND THE SETTLEMENT.

IN ADDITION, THIS PROPOSED SETTLEMENT RELEASES CLAIMS UNDER THE PRIVATE ATTORNEYS GENERAL ACT (PAGA). UNDER THE PROPOSED SETTLEMENT, PAYMENTS WILL BE MADE TO CLASS MEMBERS WHO ARE WITHIN THE LIMITATIONS PERIOD FOR THE PAGA CLAIMS. AS DISCUSSED IN SECTION 7, BELOW, THESE INDIVIDUALS ARE CALLED THE "PAGA GROUP." IF YOU ARE IN THE PAGA GROUP, YOU ARE ELIGIBLE TO RECEIVE A PAGA PAYMENT SHARE UNDER THE SETTLEMENT AND WILL BE BOUND BY THE RELEASED PAGA CLAMS DESCRIBED IN THIS NOTICE AND THE SETTLEMENT AGREEMENT FILED WITH COURT. YOU CANNOT REQUEST TO BE EXCLUDED FROM THE RELEASE OF RELEASED PAGA CLAIMS, REGARDLESS OF WHETHER YOU SUBMIT A VALID OPT OUT FROM THE CLASS.

1

Questions? Call [number] or Visit [web address]

■ Your legal rights are affected whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **DO NOTHING AND AUTOMATICALLY RECEIVE AN INDIVIDUAL SETTLEMENT PAYMENT** | **To receive a payment from the Settlement, you do NOT have to do anything. You will receive compensation, but lose rights to sue separately.**<br><br>If you do nothing, you will be considered a Settlement Class Member and will receive a proportionate share of the settlement.  You will be bound by the terms of the Settlement and also give up any rights to pursue a separate legal action against Defendants and/or any of the Released Parties for the same or similar legal claims in this lawsuit as detailed in the Released Class Claims and Released PAGA Claims. |
| **SUBMIT PROOF OF COSTS FOR PAYMENT FROM THE CLAIMS COMPENSATION FUND** | **If you are a Class Member who has had to personally pay costs, charges, fees, or expenses (collectively "costs") and/or has an enforceable judgment on claims made against you arising out of providing transportation and delivery services for Ryder Last Mile, Inc. (f/k/a MXD Group, Inc.) and Ryder System, Inc. in California between December 12, 2014 through [the earlier of preliminary approval or July 26, 2020], you may be eligible to share in the Claims Compensation Fund.**<br><br>To share in the Claims Compensation Fund, you must provide Proof of Work to the Settlement Administrator before expiration of the Response Deadline showing that: (a) you had one or more claim(s) made against you arising out of work performed in connection with making deliveries for Ryder Last Mile, Inc. (f/k/a MXD Group, Inc.) and Ryder System, Inc.; (b) you paid the costs on one or more claim(s) and/or have an enforceable judgment against you to pay such costs; and (c) the amount paid and/or the enforceable judgment. The Claims Compensation Fund will be distributed as described below and the amount paid to each Motor Carrier Class Member shall be a supplemental payment that will be added to his or her Individual Settlement Payment check. |
| **ASK TO BE EXCLUDED** | **To exclude yourself from the Class and Settlement, you must send a written request to be excluded ("Opt Out") to the Settlement Administrator, as described below.**<br><br>If you ask to be excluded from the Class and Settlement, you will not receive an Individual Settlement Payment, will not be a member of the Settlement Class, and you will be foreclosed from making an Objection whether in writing, orally, by appeal or otherwise. However, you will retain the right to file a separate legal action.  Please be aware that there are time limits for you to file a claim separately.<br><br>As discussed in Section 7, below, please also be aware that the Released PAGA Claims with respect to the PAGA Group are binding on the PAGA Group regardless of a valid Opt Out from the Class.  If you are in the PAGA Group, you will still receive your PAGA Payment Share and will release the Released PAGA Claims even if you ask to be excluded from the Settlement. |
| **OBJECT TO THE SETTLEMENT** | **Tell the Court why you don't like the Settlement.**<br><br>If you believe the Settlement is unfair or you do not agree with the Settlement in any respect, you may object to the Settlement by submitting a written objection to the Settlement Administrator as explained below.  You must remain a member of the lawsuit to object to the Settlement.  This means you cannot object to the Settlement if you also are asking to Opt Out. |

■ These rights and options—**and the deadlines to exercise them—**are explained in this Notice.

2

Questions? Call [number] or Visit [web address]

- ■ The Court in charge of this case still has to decide whether to grant final approval of the Settlement. The payments described in this notice will be made to you only if the Court approves the Settlement and after all appeals, if any, are resolved. The Court has not ruled on the merits of the Plaintiff's claims or Defendants' defenses.

3

Questions? Call [number] or Visit [web address]

## CONTENTS

**BASIC INFORMATION**...............................................................................................**4**
    **1.**  Why Did I Get This Notice? ....................................................................... 4
    **2.**  What Is This Lawsuit About? ...................................................................... 5
    **3.**  Why Is This A Class Action?...................................................................... 5
    **4.**  Why Is There A Settlement? ....................................................................... 5
**WHO IS IN THE SETTLEMENT** ............................................................................**6**
    **5.**  How Do I Know If I Am Part Of The Settlement? ..................................... 6
**THE SETTLEMENT BENEFITS—WHAT YOU GET** .........................................**6**
    **6.**  What Does the Settlement Provide?............................................................ 6
    **7.**  How Will The Settlement Money Be Split Up?.......................................... 7
    **8.**  How Much Of The Settlement Will I Receive? .......................................... 9
    **9.**  What If The Information About My Workweeks Printed On This Notice Is Incorrect? ...9
    **10.**  How Are Settlement Payments Reported For Tax Purposes?..................... 10
    **11.**  What Am I Giving Up To Stay In The Class And Get Compensation?........ 10
**EXCLUDING YOURSELF FROM THE SETTLEMENT** ...................................**12**
    **12.**  How Do I Exclude Myself From This Settlement?.................................... 12
    **13.**  If I Don't Exclude Myself, Can I Sue Later? ........................................... 12
    **14.**  If I Exclude Myself, Can I Get The Benefits Of This Settlement? ........... 12
**THE LAWYERS REPRESENTING YOU** .............................................................**12**
    **15.**  Do I Have A Lawyer In This Case?.......................................................... 12
    **16.**  Should I Get My Own Lawyer? ............................................................... 13
    **17.**  How Will The Lawyers Be Paid?............................................................. 13
    **18.**  Will There Be A Service Award To The Named Plaintiff? ...................... 13
**SUPPORTING OR OBJECTING TO THE SETTLEMENT** ..............................**13**
    **19.**  How Do I Tell The Court That I Like Or Don't Like The Settlement? ...... 13
    **20.**  What Is The Difference Between Objecting And Excluding Myself?........ 14
**THE COURT'S FAIRNESS HEARING** ...............................................................**14**
    **21.**  When And Where Will The Court Decide To Approve The Settlement?.... 14
    **22.**  Do I Have To Come To The Hearing?....................................................... 14
    **23.**  May I Speak At The Hearing? .................................................................. 14
**IF YOU DO NOTHING** .........................................................................................**14**
    **24.**  What Happens If I Do Nothing At All? .................................................... 14
**GETTING MORE INFORMATION**......................................................................**15**
    **25.**  Are There More Details About The Settlement? ...................................... 15
    **26.**  How Do I Get More Information? ............................................................ 15

## BASIC INFORMATION

**1.**    **Why Did I Get This Notice?**

You got this notice because Defendants' records indicate that you are or were a motor carrier owner who directly contracted with and provided transportation services to Ryder Last Mile, Inc. (f/k/a MXD Group, Inc.) and Ryder System, Inc. in California in your individual capacity or through a business entity at any time from December 12, 2014 through [the earlier of preliminary approval or July 26, 2020].  If you did not contract with Ryder Last Mile, Inc. (f/k/a MXD Group, Inc.), you are receiving this notice because Defendants' records indicated that you are a non-owner driver and/or helper engaged by motor carrier companies to operate their commercial motor vehicles and authorized to provide transportation services for Ryder Last Mile, Inc. (f/k/a MXD Group, Inc.) and Ryder System, Inc. in California at any time from December 12, 2014 through [the earlier of preliminary approval or July 26, 2020].

This Notice was sent to you because you have a right to know about a proposed settlement of the class action lawsuit and about your options before the Court decides whether to approve the Settlement.  If the Court approves the Settlement, you

4

will receive the monetary payments described in this Notice unless you decide to exclude yourself from this class Settlement (although you will still receive your PAGA Payment Share if you are in the PAGA Group).  Payments will not be made until after objections or appeals, if any, are resolved.

This Notice explains the lawsuit, the Settlement, your legal rights, available benefits, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Eastern District of California and the case is known as *Kimbo, et al. v. MXD Group Inc and Ryder System Inc.*, Case No. 19-CV-00166-WBS.  The person who brought the case is called the Plaintiff, and the companies sued in this Civil Action, Ryder Last Mile, Inc. (f/k/a MXD Group, Inc.) and Ryder System, Inc. are called the Defendants.

## 2.      What Is This Lawsuit About?

On December 12, 2018, Plaintiff filed a proposed class action Complaint in the Sacramento County Superior Court, alleging that the delivery drivers that transported and delivered consumer goods in California were wrongly classified as independent contractors instead of employees.  Based on this allegation, the Complaint brought the following legal claims against Defendants: (1) failure to reimburse business expenses; (2) unlawfully deducted compensation to cover certain ordinary business expenses; (3) failure to pay minimum wages; (4) failure to pay regular rate for all hours worked; (5) failure to pay overtime compensation; (6) failure to provide off-duty and complaint meal periods, or compensation in lieu thereof; (7) failure to provide paid, off-duty or compliant rest periods, and/or compensation in lieu thereof; (8) failure to keep accurate payroll records; (9) failure to provide accurate itemized wage statements; (10) failure to pay all wages due upon termination of employment; (11) unfair competition; and (12) violation of Labor Code §§ 2698, *et seq*.  Plaintiff sought damages, restitution, civil penalties, and statutory penalties, pre-and post-judgment interest, costs, and attorneys' fees.

Defendants expressly deny each of the allegations of the Complaint and PAGA letter and expressly deny any wrongdoing or liability to Plaintiff, the putative class he purports to represent, or any allegedly aggrieved employee.  Defendants contend that their conduct has been lawful at all times relevant and further contend that Plaintiff's claims do not have merit, do not meet the requirements for class certification, and deny that Plaintiff, the putative class he purports to represent, or any allegedly aggrieved employee are entitled to any relief.

## 3.      Why Is This A Class Action?

In a class action lawsuit, one or more persons, called Class Representatives, sue on behalf of other people who may have similar claims.  All the Class Members form a Class.  One court resolves the issues for all Class Members.

## 4.      Why Is There A Settlement?

The Court did not decide in favor of Plaintiff or Defendants.

This Settlement is a compromise reached after good faith, arm's length negotiations between Plaintiff and Defendants (the "Parties"), through their attorneys, and is not an admission of liability on the part of Defendants.  Both sides agree that in light of the risks and expenses associated with continued litigation, this Settlement is fair, adequate and reasonable.  Plaintiff also believes this Settlement is in the best interests of all Class Members.

The Court granted preliminary approval of the Settlement on <<INSERT PRELIMINARY APPROVAL DATE>>.  At that time, the Court also preliminarily approved the Plaintiff to serve as the Class Representative, and the law firm of Schneider Wallace Cottrell Konecky LLP to serve as Class Counsel.

//

//

## WHO IS IN THE SETTLEMENT

---

**5.      How Do I Know If I Am Part Of The Settlement?**

---

The people who may be eligible for payments under the Settlement are called "Class Members." The Court has certified, for settlement purposes only, the following class (the "Class") that includes all Motor Carrier Class Members and Non-Carrier Class Members.  The Class excludes Motor Carrier Class Members and Non-Carrier Class Members that only performed delivery services at the warehouse located at or out of 21508 Baker Parkway, City of Industry, California 91789 during the Class Period.  "Motor Carrier Class Members" means the owners of all motor carriers who directly contracted with Defendants in their individual capacity or through a business entity and provided transportation services to Defendants in California at any time from December 12, 2014 through [the earlier of preliminary approval or July 26, 2020].  The Motor Carrier Class Members includes (1) all motor carrier owners responsible for the day-to-day operations of their businesses that engaged one or more workers to operate their commercial motor vehicles to deliver goods; and (2) all motor carrier owners that also performed delivery services as the driver of their commercial motor vehicles.

"Non-Carrier Class Members" means all individuals who did not contract with Ryder Last Mile, Inc. (f/k/a MXD Group, Inc.) and are non-owner drivers and helpers authorized to provide transportation services for Defendants in California at any time from December 12, 2014 through [the earlier of preliminary approval or July 26, 2020].  The Non-Carrier Class Members includes drivers and helpers engaged by motor carrier companies to operate their commercial motor vehicles and perform delivery services for Defendants in connection with contracts Defendants had with the owners of the motor carrier companies.

The PAGA Group includes all Motor Carrier Class Members ("PAGA Motor Carrier Group Members") and Non-Carrier Class Members ("PAGA Non-Carrier Group Members") who provided transportation services to Defendants in California at any time from August 16, 2017 through [the earlier of preliminary approval or July 26, 2020].  The PAGA Group excludes PAGA Motor Carrier Group Members and PAGA Non-Carrier Group Members that only performed delivery services at the warehouse located at 21508 Baker Parkway, City of Industry, California 91789 between August 16, 2017 through [the earlier of preliminary approval or July 26, 2020]

You are receiving this Notice because Defendants' records indicate you meet one of the class definitions.  If you are still not sure whether you meet one of these class definitions, please call [number].

## THE SETTLEMENT BENEFITS—WHAT YOU GET

---

**6.      What Does the Settlement Provide?**

---

Subject to the Court's final approval, the terms of the Settlement are as follows:

**Gross Settlement Amount.**

Defendants will pay a total Gross Settlement Amount of Five Million Dollars and no cents ($5,000,000) to resolve this case. This total Settlement amount will provide for and be inclusive of the following:  (1) Individual Settlement Payments to be paid directly to Settlement Class Members (i.e, Class Members who do not request to Opt Out and exclude themselves from the Class and the Settlement); (2) an allocated One Hundred and Twenty-Five Thousand Dollars ($125,000) which equates to 2.5% of the Gross Settlement Amount that will be set-aside in a Reserve Fund to pay to Settlement Class Members who may not be identified until after the Initial Distribution of Individual Settlement Payments; (3) an allocated amount of One Hundred Thousand Dollars that shall be placed in the Claims Compensation Fund to be used to compensate Settlement Class Members who have had to personally pay costs, charges, fees, or expenses (collectively "costs") and/or have an enforceable judgment against them on claims made against them arising out of providing transportation and delivery services for Defendants in California during the Class Period; (4) the costs and fees of administration of this Settlement to be paid to the Settlement Administrator, currently estimated to be approximately $40,000; (5) the PAGA Payment, consisting of a $112,500 payment to the California Labor and Workforce Development Agency ("LWDA") and $37,5000 payment to the PAGA Group for civil penalties under the Private Attorneys General Act; (6) any Service Award to the Class Representative of up to $15,000, subject to approval by the Court; (7) attorneys' fees of twenty-five percent (25%) the total

6

Settlement amount, plus reimbursement of costs (not to exceed $20,000), subject to approval by the Court; and (8) the employee portions of all required withholdings/taxes.  In no event will Defendants be required to pay more than the Gross Settlement Amount for the claims under the terms of the Settlement and in no event shall any portion revert to Defendants.

**Net Settlement Amount.**

The amount of the total Settlement that will be set aside to make the Individual Settlement Payments to the Class Members is called the "Net Settlement Amount."  The Net Settlement Amount will be distributed on a pro rata basis to each Class Member, who does not Opt Out of the Settlement, based on the number of Qualifying Motor Carrier Workweeks or Qualifying Non-Carrier Workweeks during which the Settlement Class Members was authorized to provide transportation services to Defendants, between December 12, 2014 through [the earlier of preliminary approval or July 26, 2020], as well as other objective factors related to the strengths, risks, and potential damages associated with the claims of each Class Member. The distribution formula is described in Sections 7 & 8 below.

You do **NOT** have to file a claim form to receive your proportionate payment under the Settlement.  However, as discussed in section 7 below, for a Class Member to share in the Claims Compensation Fund, he or she **MUST** provide Proof of Costs to the Settlement Administrator.  The Claims Compensation Fund exists to compensate Settlement Class Members who have had to personally pay costs, charges, fees, or expenses (collectively "costs") and/or has an enforceable judgment against them on claims made against them arising out of providing transportation and delivery services for Defendants in California between December 12, 2014 through [the earlier of preliminary approval or July 26, 2020].  If you did not have to personally pay such costs, charges, fees, or expenses, there is no reason to provide a Proof of Costs.  Whether or not you provide a Proof of Costs, you still will receive your proportionate Individual Settlement Payment under the Settlement (unless you submit a valid and timely Opt Out).

## 7.    How Will The Settlement Money Be Split Up?

a.   Automatic, Individual Settlement Payments based on your proportionate share of workweeks

The Net Settlement Amount shall be divided among all Settlement Class Members proportionally. Individual Settlement Payments to each Settlement Class Member shall be determined based on the number of his or her Qualifying Motor Carrier Class Workweeks or Qualifying Non-Carrier Class Workweeks during the Class Period.  The Net Settlement Amount shall be divided by the total number of Qualifying Non-Carrier Class Workweeks times 4 and Qualifying Motor Carrier Class Workweeks times 1 for all Settlement Class Members during the Class Period. This division is based on Class Counsel's assessment of the difference in unreimbursed job-related expenses incurred by Motor Carrier Class Members, compared to Non-Carrier Class Members, plus the relative strengths and risks for the claims of the Motor Carrier Class Members in comparison to the claims of the Non-Carrier Class Members. The result of this division shall yield a Workweek Payment Rate for Class Members.

(i)     The gross amount of each Motor Carrier Class Member's Individual Settlement Payment shall be calculated by multiplying the number of Qualifying Motor Carrier Workweeks applicable to that Settlement Class Member times 4 times the Workweek Payment Rate for Class Members.   Governmentally-required employee tax withholdings and employer payroll taxes shall be deducted from that portion of each Individual Settlement Payment allocated as wages.

(ii)    The gross amount of each Non-Carrier Class Member's Individual Settlement Payment shall be calculated by multiplying the number of Qualifying Non-Carrier Workweeks applicable to that Settlement Class Member times 1 times the Workweek Payment Rate for Class Members. Governmentally-required employee tax withholdings and employer payroll taxes shall be deducted from that portion of each Individual Settlement Payment allocated as wages.

**\*\*\*You do NOT have to do anything to receive a payment.  If the Settlement is approved by the Court, Settlement Class Members will be mailed checks for their Individual Settlement Payments and PAGA Payment Shares (if applicable), which shall remain negotiable for 150-days from the date of mailing.  The value of any checks that remain uncashed after this 150-day deadline will be placed in the Reserve Fund.  If your check is lost or misplaced**

**before the expiration of the 150-day period after the Initial Distribution, you should contact the Settlement Administrator immediately to request a replacement check and cash the check before the Check Cashing Deadline.**

b.   Reserve Fund

The Parties agreed to allocate One Hundred and Twenty-Five Thousand Dollars ($125,000.00) which equates to 2.5% of the Gross Settlement Amount that will be set-aside in order to make payments to individuals who were not originally identified as Class Members, but who are Class Members and who are identified as Class Members before the Reserve Fund is paid to the *cy pres* recipient as set forth below.  The Settlement Administrator will maintain the Reserve Fund for sixty (60) days following expiration of the Check Cashing Deadline (i.e., 150-days after Individual Settlement Payments and PAGA Payment Shares, if applicable are mailed).  Class Members receiving payment from the Reserve Fund must cash his or her check within sixty days of the expiration of the Check Cashing Deadline.  The Settlement Administrator will distribute any remaining money in the Reserve Fund not allocated after sixty (60) days following expiration of the Check Cashing Deadline to St. Christopher's Fund as the *cy pres* recipient.

c.   PAGA Payment Share

Thirty-Seven Thousand Five Hundred Dollars ($37,500) shall be divided among the PAGA Group Members proportionally.  PAGA Payment Shares to the PAGA Group Members shall be determined based on the number of PAGA Workweeks for Motor Carrier Group Members and PAGA Workweeks for Non-Carrier Group Members during the PAGA Period.  The $37,500 PAGA Payment shall be divided by the total number of PAGA Workweeks for Motor Carrier Group Members times 4 and PAGA Workweeks for Non-Carrier Group Members times 1 for the PAGA Group Members during the PAGA Period.  The result of this division shall yield a Workweek Payment Rate for the PAGA Group.

    (i)    The gross amount of each PAGA Motor Carrier Group Member's PAGA Payment Share shall be calculated by multiplying the number of PAGA Workweeks for Motor Carrier Group Members applicable to that individual times 4 times the Workweek Payment Rate for the PAGA Group.

    (ii)    The gross amount of each PAGA Non-Carrier Group Member's PAGA Payment Share shall be calculated by multiplying the number of  PAGA Workweeks for Non-Carrier Group Members applicable to that individual times 1 times the Workweek Payment Rate for the PAGA Group.

d.   The Claims Compensation Fund

In addition to your Individual Settlement Payment based on the number of your Qualifying Motor Carrier Workweeks, as described above, and PAGA Payment Share if applicable, Class Members may also request a share of the Claims Compensation Fund.  One Hundred Thousand Dollars ($100,000) shall be placed into a Claims Compensation Fund to be used to compensate Settlement Class Members who have had to personally pay costs, charges, fees, or expenses (collectively "costs") and/or have an enforceable judgment against them on claims made against them arising out of providing transportation and delivery services for Defendants in California at any time from December 12, 2014 through [the earlier of preliminary approval or July 26, 2020].  Funds from the Claims Compensation Fund will be distributed as follows:

To qualify to share in this Claims Compensation Fund, you must provide Proof of Costs to the Settlement Administrator evidencing that (a) you had one or more claim(s) made against you arising out of providing transportation and delivery services to Defendants in California during the Class Period; (b) you paid the costs on one or more claim(s) and/or have an enforceable judgment against you to pay such costs; and (c) the amount paid and/or the judgment.  This proof must be submitted in writing to the Settlement Administrator before **[insert date 45 days from Notice]**.  Please mail your submission to:

*Kimbo, et al. v. MXD Group Inc and Ryder System Inc.,*
c/o Settlement Administrator
[address]
[address]

If the total amount of Proof of Costs submitted to the Settlement Administrator for payment from the Claims Compensation

8

Fund is equal to or less than One Hundred Thousand Dollars ($100,000), then each Settlement Class Member who submitted Proof of Costs to the Claims Compensation Fund will receive the actual amount of the costs on claim(s) evidenced in the Proof of Costs submitted to the Settlement Administrator.  In addition, if the total amount of Proof of Costs for costs on claim(s) submitted to the Claims Compensation Fund is less than One Hundred Thousand Dollars ($100,000), then the amount remaining in the Claims Compensation Fund shall be added to the Net Settlement and distributed as set forth above. If the total amount of Proof of Costs for costs on claims submitted to the Claims Compensation Fund is greater than One Hundred Thousand Dollars ($100,000), then each Settlement Class Member who submitted Proof of Costs to the Claims Compensation Fund will receive a pro-rata amount of the Claims Compensation Fund.  The pro-rata amount shall be calculated by dividing the Settlement Class Member's total amounts of costs on claims evidenced by the Proof of Costs submitted by all Settlement Class Members who submit Proof of Costs, which will yield a percentage value.  The Settlement Class Member shall receive that percentage value of the total Claims Compensation Fund.

**<u>***You MUST submit Proof of Costs in writing to the Settlement Administrator no later than [insert date 45 days from notice] to be eligible to receive a share of the Claims Compensation Fund.***</u>**

**8.      How Much of The Settlement Will I Receive?**

As explained in Section 7 above, Settlement Class members will receive a proportionate share of the Settlement based on the number of Adjusted Qualifying Motor Carrier Workweeks or Qualifying Non-Carrier Workweeks during which the Settlement Class Members were authorized to provide transportation services to Defendants in California from December 12, 2014 through [the earlier of preliminary approval or July 26, 2020].

According to Defendants' records, you are a member of the [Motor Carrier Class [or] Non-Carrier Class] ("Class Member") [and in the PAGA Group]

**Defendants' records reflect that you have <<_____>> Qualifying [Motor Carrier Class [or] Non-Carrier Class] Workweeks as a Class Member during the Class Period (December 12, 2014 through [the earlier of preliminary approval or July 26, 2020].  The estimated Workweek Payment Rate for [Motor Carrier Class Members or Non-Carrier Class Members] is <<_____>>.**

**Based on this information, your estimated Individual Settlement Payment is <<_____>>.  Please note that because tax withholdings and payments must be made with respect to a portion of this gross amount, your net payment will be less than your gross share.**

**Defendants' records reflect that you have <<_____>> PAGA Workweeks for [Motor Carrier Group Members or Non-Carrier Group Members] during the PAGA Period (August 16, 2017 through [the earlier of preliminary approval or July 26, 2020]).  The estimated PAGA Workweek Payment Rate for [Motor Carrier Group Members or Non-Carrier Group Members] is <<_____>>.**

**Based on this information, your estimated PAGA Payment Share is <<_____>>.  Please note that because tax withholdings and payments must be made with respect to a portion of this gross amount, your net payment will be less than your gross share.**

Please be aware that this amount is only an estimate. You will need to speak with an accountant or other tax professional about any tax implications of your Settlement check.

**9.      What If The Information About My Workweeks Printed On This Notice Is Incorrect?**

The workweek information Defendants provided for you is presumed to be accurate.  If you disagree with the number of eligible workweeks printed in Section 8 above, you may dispute it.  If you dispute the number of workweeks shown in Defendants' records, you must inform the Settlement Administrator in writing of the basis for contesting any of the assigned workweeks and timely submit any Proof of Work that you may have no later than **[insert date 45 days from notice]**.  "Proof of Work" means document(s) (such as settlement statements, payment history reports, invoices, 1099s, tax returns, or other records showing your total workweeks with Defendants) that a Class Member may submit to the Settlement Administrator

9

to show that he or she is entitled to payment based upon a different number of Qualifying Motor Carrier Class Workweeks or Qualifying Non-Carrier Class Workweeks and/or different number of PAGA Workweeks for Motor Carrier Group members or PAGA Workweeks for Non-Carrier Group Members than the numbers calculated by the Settlement Administrator based on Defendants' data.  If you wish to contest or dispute the number of eligible workweeks printed above, you must submit Proof of Work contesting the data.  To be accepted, the Proof of Work must: (1) be sufficient to allow identification of your full name, address, and the last four digits of your Social Security Number (for identification purposes only); (2) state, in writing, the reasons why you believe an additional amount is owed; (3) be signed by you or your legal representative; and (4) be postmarked on or before the Response Deadline and returned to the Settlement Administrator. Please mail your Proof of Work to:

*Kimbo, et al. v. MXD Group Inc and Ryder System Inc.,*
c/o Settlement Administrator
[address]
[address]

Defendants' records and determination will be presumed correct.  Nonetheless, the Settlement Administrator will review any Proof of Work submitted, investigate the dispute, consult with Defendants' Counsel and Class Counsel as necessary and make a final determination of whether any additional amount is owed.

## 10.    How Are Settlement Payments Reported For Tax Purposes.

For Settlement Class Members, the Individual Settlement Payments shall be allocated for tax purposes as follows: (a) Twenty Percent (20%) of the amount of each Individual Settlement Payment shall be allocated to their respective alleged unpaid wage claims and shall be paid after deduction of all applicable employment taxes, including any federal, state, and/or local in issue tax withholding requirements and the employee share of FICA taxes; (b) Forty Percent (40%) of the amount of each Individual Settlement Payment shall be allocated to expense reimbursement and shall not be subject to withholding; and (c) Forty Percent (40%) of the amount of each Individual Settlement Payment shall be allocated to alleged penalties and interest and shall not be subject to withholding.  PAGA Payment Shares will be allocated entirely as penalties and will be included on an IRS Form 1099 to the PAGA Group.

The employee portion of all applicable income and payroll taxes will be the responsibility of the Settlement Class Members. Neither Class Counsel nor Defendant's Counsel intend anything contained in this Notice to constitute advice regarding taxes or taxability.  The tax issues for each Settlement Class Member may be unique to him or her, and each Settlement Class Member may wish to consult a tax advisor concerning the tax consequences of the payments received under the Settlement.

You will need to speak with an accountant or other tax professional about any tax implications of your Settlement check.

## 11.    What Am I Giving Up To Stay In The Class And Get Compensation?

You do need not submit anything to receive compensation under the Settlement.  Unless you submit a signed and timely Opt Out, you will be bound by this Settlement and will release all Released Class Claims and Released PAGA Claims.  This means that, if you do not submit a valid Opt Out from the Class, you can't sue, continue to sue, or be part of any other lawsuit or adjudicatory proceeding making any of the same allegations made in *this* Action against Defendants and any other Released Party (defined below) for the Released Class Claims that accrued between December 12, 2014 and [the earlier of preliminary approval or July 26, 2020] (defined below) and Released PAGA Claims that accrued between August 16, 2017 and [the earlier of preliminary approval or July 26, 2020] (defined below).    It also means that all of the Court's orders in this Action will apply to you and legally bind you.

If you are in the PAGA Group, you will still receive your PAGA Payment Share and will release the Released PAGA Claims regardless of a valid Opt Out from the Class.  A judgment in a PAGA case is binding not only on the named plaintiff but also on the government agencies and any "aggrieved employee" that is not a party to the proceeding.  Accordingly, subject to Court approval of the Settlement, Plaintiff binds the PAGA Group and the state of California to the settlement and binds all potentially "aggrieved employees", even those not a party to the proceeding, as well as the government, with respect to

10

civil penalties alleged in the action.  Here, subject to Court approval of the Settlement, Plaintiff, on behalf of the state of California and the PAGA Group, releases all Released PAGA Claims, which means that the PAGA Group is prevented from filing future PAGA claims based on the same alleged violations for the same time period.

<u>Released Class Claims with Respect to the Settlement Class Members</u>.  Providing there is final approval of this Settlement, then as of the date that Defendants transmit the Gross Settlement Amount to the Settlement Administrator, each Settlement Class Member, individually and on behalf of their respective successors, assigns, agents, attorneys, executors, heirs and personal representatives and/or their affiliated business entities (if any), shall fully and finally release and discharge the Released Parties, and each of them from the Released Class Claims.  The Released Class Claims with respect to the Settlement Class Members are all wage and hour claims, rights, demands, liabilities, causes of action, and theories of liability, whether known or unknown, that were or could have been alleged against any of the Released Parties arising out of, in connection with, or based on the facts alleged in the Complaint and/or the PAGA Letter.  This includes, but may not be limited to, misclassification, failure to pay wages including, but not limited to, overtime wages and minimum wages, failure to provide meal and rest periods, unpaid compensation or premium pay arising out of missed, late, on-duty and/or short meal and/or rest periods, failure to pay wages semi-monthly at designated times, failure to reimburse for business expenses, failure to pay wages upon termination and failure to provide accurate itemized wage statements, conversion, penalties, damages, interest, costs or attorneys' fees, and violations of any other state or federal law, whether for economic damages, non-economic damages, liquidated or punitive damages, restitution, tort, contract, equitable relief, injunctive or declaratory relief, to the extent necessary to effect a full and complete release of the Released Class Claims, including but not limited to, all wage and hour claims under any common laws, the Fair Labor Standards Act ("FLSA"), Cal. Code of Regulations, Title 8, Sections 11000, *et seq.*, Wage Order 9 or any other applicable Wage Order, California Labor Code Sections 96-98.2, *et seq.*, 200-204, 208, 210, 216, 218.5, 218.6, 221-224, 225.5, 226, 226.3, 226.7, 226.8, 229, 400-410, 510, 511, 512, 515, 551, 552, 558, 1174, 1174.5, 1175, 1194-1197.1, 1198, 1199, 2800, 2802, 2804, 3294 and 3336 and any related provisions, the California Code of Civ. Proc. Section 1021.5, and/or the California Business & Professions Code Sections 17200, *et seq.*, provided they were or could have been alleged against any of the Released Parties arising out of, in connection with, or based on the facts alleged in the Complaint and/or the PAGA Letter.  This release shall extend to all such claims that accrued between December 12, 2014 and [the earlier of preliminary approval or July 26, 2020].  Notwithstanding the foregoing, Released Class Claims do not include any individual claim under Section 216(b) of the FLSA, 29 U.S.C. § 216(b), as to a Settlement Class Member who does not opt-in to the Settlement by cashing, depositing, or endorsing his or her Individual Settlement Payment check, to the extent that opting-in is required to release such FLSA claims.

<u>Released PAGA Claims with Respect to the PAGA Group</u>.  Providing there is final approval of this Settlement, then as of the date that Defendants transmit the Gross Settlement Amount to the Settlement Administrator, Plaintiff on behalf of himself, the State of California, and each PAGA Group Member shall fully and finally release and discharge the Released Parties, and each of them from the Released PAGA Claims, which shall extend to claims for civil penalties applicable to Plaintiff and each PAGA Group Member individually and on behalf of their respective successors, assigns, agents, attorneys, executors, heirs and personal representatives and/or their affiliated business entities (if any).  The Released PAGA Claims means all claims, rights, demands, liabilities, causes of action, and theories of liability of every nature and description under the California Labor Code Private Attorneys General Act of 2004, Labor Code Sections 2698, *et seq.*, whether known or unknown, that were or could have been alleged against any of the Released Parties arising out of, in connection with, or based on the facts alleged in the Complaint, and/or PAGA Letter, including but not limited to, all claims for civil penalties for violation of the California Labor Code for misclassification, failure to pay wages including, but not limited to, overtime wages and minimum wages, failure to provide meal and rest periods, unpaid compensation or premium pay arising out of missed, late, on-duty and/or short meal and/or rest periods, failure to pay wages semi-monthly at designated times, failure to reimburse for business expenses, failure to pay wages upon termination and failure to provide accurate itemized wage statements, conversion, penalties, costs or attorneys' fees, to the extent necessary to effect a full and complete release of the Released PAGA Claims, including all claims for penalties based on the Cal. Code of Regulations, Title 8, Sections 11000, *et seq.*, Wage Order 9 or any other applicable Wage Order, California Labor Code Sections 96-98.2, *et seq.*, 200-204, 208, 210, 216, 218.5, 218.6, 221-224, 225.5, 226, 226.3, 226.7, 226.8, 229, 400-410, 510, 511, 512, 515, 551, 552, 558, 1174, 1174.5, 1175, 1194-1197.1, 1198, 1199, 2800, 2802, 2804, 3294 and 3336 and any related provisions.  This release shall extend to all such claims accrued between August 16, 2017 and [the earlier of preliminary approval or July 26, 2020].  This

11

release shall be binding on the PAGA Group regardless of whether they submit a valid Opt Out from the Class.

<u>Released Parties</u> means Defendants Ryder Last Mile, Inc. (f/k/a MXD Group, Inc.) and Ryder System, Inc. and each of their respective present and former parents, affiliates, divisions and subsidiaries, acquired companies, and each of their respective present and former directors, officers, shareholders, agents, representatives, employees, partners, attorneys, insurers, predecessors, successors, assigns, affiliated companies and entities and any individual or entity that could be jointly liable with any of the foregoing.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

**12.     How Do I Exclude Myself From This Settlement?**

If you want to be excluded from the Class and Settlement, you must send a written Opt Out by U.S. mail (or express mail carrier) to the Settlement Administrator clearly saying want to be excluded from the Settlement Class in *Kimbo, et al. v. MXD Group Inc and Ryder System Inc.*, Case No. 19-CV-00166-WBS.  Your Opt Out must be postmarked on or before **[insert date 45 days from notice]**, to:

*Kimbo, et al. v. MXD Group Inc and Ryder System Inc.*,
c/o Settlement Administrator
[address]
[address]

You cannot exclude yourself on the phone or by e-mail.  For an Opt Out to be valid, it must (1) contain the name, address, and the last four digits of the Social Security Number of the person requesting exclusion (for identification purposes only); (2) state your request to exclude yourself from the Settlement; (3) be signed by you or your lawful representative; and (4) be postmarked on or before **[insert date 45 days from notice]** and submitted to the Settlement Administrator at the address specified above.  The postmark date will be the exclusive means to determine whether an Opt Out has been timely submitted.

Any Class Member, who submits a completed, signed and timely written Opt Out shall not be a member of the Settlement Class, shall be barred from participating in this Settlement, shall be barred from objecting to this Settlement, and shall receive no benefit from this Settlement, except that Class Members who are in the PAGA Group will still receive his or her PAGA Payment Share and will release the Released PAGA Claims even if they Opt Out.  **However, if you request to Opt Out be aware that there will be a time limit to bring your claims that may expire.**  Any untimely or materially incomplete Opt Out may be considered null and void.

**13.     If I Don't Exclude Myself, Can I Sue Later?**

No.  Unless you exclude yourself, you give up the right to sue Defendants for the claims that this Settlement resolves as described in Section 11 above.  You can still sue for other claims, just not for those claims that this Settlement resolves.

**14.     If I Exclude Myself, Can I Get The Benefits Of This Settlement?**

No.  If you exclude yourself from the Settlement Class, you won't get payments or benefits from this Settlement, except that if you are in the PAGA Group, you will still receive a PAGA Payment Share and will release the Released PAGA Claims.

## THE LAWYERS REPRESENTING YOU

**15.     Do I Have A Lawyer In This Case?**

The Court has decided that the law firm of Schneider Wallace Cottrell Konecky LLP is qualified to represent you and all Settlement Class Members.  The law firm is called "Class Counsel."  If you want to be represented by your own lawyer, you may hire one at your own expense.

12

Questions? Call [number] or Visit [web address]

**16.     Should I Get My Own Lawyer?**

If you remain in the Class, you will be represented by Class Counsel.  You do not need to hire your own lawyer because Class Counsel is working on your behalf.  But, if you want your own lawyer, you may hire one at your own expense.

**17.     How Will The Lawyers Be Paid?**

Class Counsel will ask the Court for attorneys' fees of twenty-five percent (25%) of the total Gross Settlement Amount.  Class Counsel will also seek reimbursement from the Gross Settlement Amount of actual expenses they incurred in pursuing the lawsuit, such as filing fees, mediation fees, and travel expenses.  Class Counsel will file an application to the Court no later than [insert date] setting forth their actual hours worked and attorneys' fees and expenses they will be seeking from the total settlement amount for their work on behalf of the Class Members.  You can obtain a copy of Class Counsel's application for attorneys' fees and expenses after [insert date] by visiting the website [insert web address] or by contacting Class Counsel at (415) 421-7100.

**18.     Will There Be A Service Award To The Named Plaintiff?**

The Settlement also provides that Plaintiff may seek a service award of up to $15,000, subject to Court approval.  The service award is intended to compensate the Plaintiff who greatly helped the case by starting the lawsuit, investing time to assist with Counsel's investigation and presentation of the case, and appearing in person at the mediation to help negotiate the Settlement. You can obtain a copy of this application after [insert date] by visiting the website [insert web address] or by contacting Class Counsel at (415) 421-7100.

## SUPPORTING OR OBJECTING TO THE SETTLEMENT

**19.     How Do I Tell The Court That I Like Or Don't Like The Settlement?**

If you are a Settlement Class Member, you can tell the Court that you object to the Settlement or any aspect of it that you think is not fair, reasonable or adequate in any way, and think the Court should not approve it.  You can also tell the Court that you like the Settlement, and that it should be approved.  The Court will consider your views.

You can't ask the Court to order a different settlement; the Court can only approve or reject this Settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue.

To object, you will need to send a written objection to the Settlement Administrator, Heffler Claims Group, LLC. saying that you object to the settlement in *Kimbo, et al. v. MXD Group Inc and Ryder System Inc.*, Case No. 19-CV-00166-WBS.   All objections and supporting papers must (1) state the Class Member's full name, address, and the last four digits of his or her Social Security Number (for identification purposes only); (2) state the grounds for the objection; (3) be signed by you or your  lawful representative; and (4) be postmarked on or before **[insert date 45 days from notice]** and returned to the Settlement Administrator at:

*Kimbo, et al. v. MXD Group Inc and Ryder System Inc.*,
c/o Settlement Administrator
[address]
[address]

If you intend to appear at the fairness hearing through counsel, please state the identity of any attorneys representing you who will appear at the fairness hearing.

If you do not submit a written objection to the proposed Settlement or the application of Class Counsel for attorneys' fees, expenses, and Service Awards in accordance with the deadline and procedure set forth above, you will waive your right to object to the Settlement, be heard at the fairness hearing and to appeal from any order or judgment of the Court concerning the matter.

If the Court approves the Settlement despite your Objection, you will be bound by all of the terms of the Settlement in the same way as Settlement Class Members who do not object, including without limitation, the release and discharge of the

13

Released Class Claims, and you will still be mailed a check for your Individual Settlement Payment.  If you do not submit an Objection in the manner provided in this Notice, you will be deemed to have waived any Objection to the Settlement, and will be foreclosed from making an Objection whether in writing, orally, by appeal or otherwise.

**20.     What Is The Difference Between Objecting And Excluding Myself?**

Objecting is simply telling the Court that you do not like something about the Settlement.  You can object only if you stay in the Settlement Class.  Excluding yourself is telling the Court that you do not want to be part of the Settlement Class and the Settlement.  If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

**21.     When And Where Will The Court Decide Whether To Approve The Settlement?**

The Court will hold a fairness hearing on _____, 2020 at _____, in Courtroom 5, 14th Floor, United States District Court for the Eastern District of California, Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, CA 95814.  The Final Approval Hearing may be continued without further notice to Class Members.  At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them.  The Judge may listen to people who have previously asked in writing to speak at the hearing.  The Judge may also decide how much to pay Class Counsel or whether to approve the requested Service Award for the named Plaintiff.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long it will take for the Court to make its decision.

If you do not object in the manner provided above, you shall be deemed to have approved the Settlement and to have waived any objections, and shall be forever foreclosed from objecting to the fairness or adequacy of the proposed Settlement, including the plan of distribution, the payment of attorneys' fees and costs, the Service Award to the Class Representative, the PAGA Payment, or any other aspect of the Settlement.

**22.     Do I Have To Come To The Hearing?**

No.  You are not required to attend the Final Approval Hearing to receive an Individual Settlement Payment and PAGA Payment (if applicable).  Class Counsel will answer questions that the Judge may have.  But you are welcome to come at your own expense.  If you file an objection, you do not have to come to court to talk about it.  As long as you postmark your written objection on time, the Court will consider it.  You may pay your own lawyer to attend the hearing, but it is not necessary.

**23.     May I Speak At The Hearing?**

If you do not exclude yourself, you may ask the Court's permission to speak at the hearing about the proposed Settlement or the application of Plaintiff's counsel for attorneys' fees, expenses and Service Award.  To do so, you must send a letter saying that it is your intention to appear at the fairness hearing in *Kimbo, et al. v. MXD Group Inc and Ryder System Inc.*, Case No. 19-CV-00166-WBS.  The letter must state the position you intend to present at the hearing, state the identities of all attorneys who will represent you (if any), and include your full name, address, telephone number, and signature.  You must send your notice to the address identified in Section 18, such that it is *postmarked* no later than **[insert date 45 days from notice].**

## IF YOU DO NOTHING

**24.     What Happens If I Do Nothing At All?**

If you do nothing, you will receive the Settlement payments if the Court approves the Settlement.

//

//

Questions? Call **[number]** or Visit **[web address]**

## GETTING MORE INFORMATION

**25.     Are There More Details About The Settlement?**

This notice summarizes the proposed Settlement. For the precise terms and conditions of the Settlement, please see the Settlement agreement available at [website] or contact class counsel at (415) 421-7100.  You may also access the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Eastern District of California, Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, CA 95814 between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**26.     How Do I Get More Information?**

You can receive more information about this litigation and Settlement by calling [number] or visiting the website [website].

*You must inform the Settlement Administrator of any change of address to ensure receipt of your Individual Settlement Payment and PAGA Payment Share if applicable.*

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

Questions? Call [number] or Visit [web address]

*Kimbo, et al. v. MXD Group Inc and Ryder System Inc.*
c/o Settlement Administrator
[Address]
[Address]

POSTAGE

<<FirstName>> <<MI>> <<LastName>>
<<Address>>
<<Address2>>
<<City>>, <<ST>> <<ZIP>>-<<ZIP4>>

# EXHIBIT 2

# Schneider Wallace Cottrell Konecky llp

# Firm Profile

Schneider Wallace Cottrell Konecky LLP is a national litigation law firm founded in 1993 that handles complex legal claims.  It has offices in the San Francisco Bay Area, Texas and Arizona. The firm maintains a nationwide practice and its attorneys have litigated throughout the country. The firm handles numerous class actions in the area of employment, disability access, civil rights and consumer protections.  It also specializes in ERISA and financial investment litigation on behalf of both individual and institutional investors.  The firm's class action practice focuses on impact litigation with a goal of remedying systemic violations of the law in employment, civil rights, public accommodations, consumer fraud, and breaches of fiduciary duties in ERISA and public retirement plan cases.

A partial list of class actions in which the firm and its attorneys have been appointed class counsel includes:

Disability Rights

- *Willits v. City of Los Angeles,* Case No. CV 10-05782 CBM (RZx) (C.D. Cal.) (disability access class action on behalf of people with mobility disabilities that resulted in class action settlement for $1.4 billion in injunctive relief for remedying physical access barriers in the City's pedestrian rights of way, the largest systemic disability access settlement in United States history).

- *Bates v. United Parcel Service*, 465 F.3d 1069 (9th Cir. 2006) (a first of its kind national disability discrimination class action on behalf of deaf employees of UPS, which resulted in a partial settlement of $5.8 million and, after a trial on the remaining claims, a liability verdict in favor of the Plaintiff class that was appealed and later settled).

- *Ortiz v. Home Depot USA, Inc.,* Case No. 5:09-cv-03485-LHK (N.D. Cal.) (an (innovative class action settlement creating new procedures for providing sign language interpreters, accessible technology and effective interactive process to deaf workers).

- *National Federation of the Blind, et al., v. Target Corp.*, 582 F.Supp.2d 1185 (N.D. Cal. 2007) (nationwide disability rights class action resulting in settlement for broad injunctive relief requiring Target Corporation to design its website to be accessible to blind individuals using screen access software and a class damages fund of $6 million, the largest damages fund in any class action brought on behalf of the blind).

- *Cherry v. The City College of San Francisco,* No. C 04-04981 WHA (N.D.Cal.) (disability access class action on behalf of people with mobility disabilities that resulted in a stipulated judgment requiring the College to make architectural and other access changes valued at over $20 million at numerous campuses of City

College).

- *Lopez, et al. v. San Francisco Unified School District*, Case No. C 99-3260 SI (N.D. Cal.) (disability access class action on behalf of mobility-impaired students in the San Francisco Unified School District, which resulted in a stipulated judgment requiring the District to make architectural and other access changes valued at over $400 million).

Discrimination

- *Satchell v. FedEx Express, Inc.*, Case No. 03-02659 SI (N.D. Cal.) ($55.5 million class action settlement addressing race discrimination within FedEx and covering nearly 24,000 class members).

- *Singleton v. Regents of the University of California* (gender discrimination class action against Lawrence Livermore National Laboratory for disparities in pay and promotion resulting in class action settlement of $10.6 million).

Civil Rights

- *Carlson v. eHarmony,* Case No. BC 371958 (Los Angeles County Superior Court) (class action settlement requiring Internet dating site to change policies and ensure equal access to gays and lesbians as well as establishing a damages fund of $2 million to pay full statutory damages to class members under the California Unruh Civil Rights Act).

Minimum Wage and Overtime

- *Villalpando v. Exel Direct, Inc.,* Case No. 3:12-cv-04137 JCS, 2015 WL 5179486 (N.D. Cal.) (class action settlement for $13,500,000 on behalf of 386 individuals alleging denial of employment rights and benefits achieved after court granted summary judgment in favor of the certified plaintiff class on the issue of whether they were misclassified as "independent contractors" instead of "employees").

- *Mitchel v. Acosta Sales & Marketing,* Case No. 2:11-CV-01796 GAF (OPx) (C.D.Cal.) (collective and class action settlement of $9,900,000 to resolve off-the-clock overtime claims on behalf of approximately 4,500 part time and 1,500 full time merchandisers under the Fair Labor Standards Act and California law).

- *Sosa v. Dreyer's Grand Ice Cream, Inc.,* Case No. RG08424366 (Alameda County Superior Court) (class action settlement of $13.5 million for unpaid donning and doffing time and noncompliant meal periods, resulting in average settlement awards of $8,500 each for the nonexempt workers at Dreyer's facility in Bakersfield, California).

- *Bond-Hatch v. Quest Diagnostics, Inc.,* Case No. CGC-06-450274 (California Superior Court, County of San Francisco) (class action settlement of $9 million for

2

off-the-clock and missed meal and rest breaks for approximately 4,000 phlebotomists).

- *Hollands v. Lincare,* Case No. CGC07-465052 (San Francisco County Superior Court) ($3.4 million class settlement providing average individual awards of over $10,000 for approximately 200 class members based on alleged misclassification for overtime).

- *Piper, et al. v. RGIS,* Case Nos. 06-05778 and 07-00032) (N.D. Cal.) (class settlement requiring injunctive relief and $27 Million settlement fund to remedy off-the-clock and meal period violations on behalf of FLSA opt-in and Rule 23 opt out class covering approximately 62,000 class members).

- *Chau v. CVS RX Services, Inc.*, Case No. BC349224) (Los Angeles County Superior Court) ($19.75 million class action settlement for failure to pay overtime and provide meal and rest periods to nearly 2,000 pharmacists).

- *Holliman v. Kaiser Foundation Health Plan* (Alameda Superior Court) (Fair Labor Standards Act class action on behalf of health plan employees for unpaid overtime wages that resulted in a $9 million class settlement).

- *Elkin v. Six Flags* (Los Angeles Superior Court) (California wage and hour class action on behalf of amusement park employees for failure to provide adequate breaks and failure to compensate for "off-the clock" work, which resulted in a $14 million settlement).

- *Herring v. Hewitt Associates, LLC*, Case No. 06-cv-00267 (D.N.J.) ($4.9 million class action settlement for overtime misclassification of over 1,000 benefits analysts).

- *Jimenez v. Perot Systems Corp.*, Case No. RG07335321 (Alameda County Superior Court) ($5.8 million class action settlement for miscalculation of overtime exemption on behalf of nearly 2,000 hospital technology workers).

- *Gomez v. Perot Systems Corp.,* Case No. CV0803337 (Alameda County Superior Court) (final approval of $3 million class action settlement for failure to pay on-call time to approximately 1,300 hospital technical workers).

- *Reed v. CALSTAR,* Case No. RG04155105 (Alameda County Superior Court) (final approval of $3.5 million class action settlement on behalf of a class of 113 flight nurses for improper on-duty meal periods and failure to pay overtime).

- *Lenahan v. Sears* (Alameda Superior Court) (Fair Labor Standards Act class action on behalf of product repair service technicians for unpaid wages, which resulted in a $15 million settlement).

Consumer Fraud

- *Labrador v. Seattle Mortgage Co* (statewide consumer fraud case alleging that defendant systematically violated federal reverse mortgage program consumer protection regulations by charging improper loan-related fees, resulting in $4 million settlement).

- *Rosa v. Morrison Homes* (statewide construction defect case, certified as a class action on behalf of more than 400 home owners alleging that Morrison Homes failed to construct their homes in compliance with applicable building codes and standards).

- *Syran v. Lexis Nexis* (nationwide class action brought for violations of the Fair Credit Reporting Act on behalf of individuals whose personal information was disclosed, which resulted in extensive changes to Lexis' security procedures in addition to a monetary settlement of $2.8 million).

- *Eagan v. AXA Equitable Life Insurance Co.* (nationwide class action under ERISA on behalf of a class of retired insurance agents and other employees seeking the restoration of retiree health care benefits. The case settled on a class wide basis for significant monetary relief and a limitation on the company's ability to amend the heath care benefit plan for retirees).

- *Glass Dimensions, Inc.  v. State Street Bank & Trust Co.* (ERISA class action brought on behalf of a nationwide class of 1,790 retirement plans alleging that State Street violated its fiduciary duties by setting and receiving excessive compensation in connection with its securities lending program).

- *Healy  v. Cox Communications, Inc.* (antitrust class action brought on behalf of Cox subscribers in the Oklahoma City metropolitan area alleging that Cox illegally tied rentals of its set top boxes to subscriptions to its digital cable services).

- *Bilewicz v. FMR LLC, et al.* and *Yeaw v. FMR LLC* (ERISA class action on behalf of a nationwide class of participants in the defendants' profit sharing plan, alleging that defendants' breached their fiduciary duties and engaged in ERISA-prohibited transactions in making decisions with respect to selecting, removing, replacing and monitoring the Plan's investments, resulting in a $12 million dollar settlement).

**PARTNERS' PROFILES**

**Todd M. Schneider** – Mr. Schneider founded the firm in 1993.  Having received his J.D. degree in 1990, Mr. Schneider has spent his entire career representing plaintiffs in complex litigation.  He has litigated cases successfully around the country, in both trial and appellate courts.  He recently argued a case in the United States Supreme Court, and he has tried numerous consumer class actions to verdict.

4

Mr. Schneider is a national leader in the plaintiff's bar.  Named by his peers as a Trial Lawyer of the Year in California and a two-time finalist for Consumer Attorney of the Year, he is past President and serves on the Board of Directors of the San Francisco Trial Lawyers Association, and has served on the Board of Governors and was the Vice President of the Consumer Attorneys of California.

Mr. Schneider is a frequent lecturer and regularly appears as a panelist at continuing legal education seminars.  For each year that the list has been published, Mr. Schneider was been named a Super Lawyer in the area of "class actions and mass torts" by Northern California Super Lawyers magazine.

***Guy Wallace*** – Guy Wallace is a 1993 graduate of the Harvard Law School.  He began his career in public interest law, and was the recipient of a Skadden Arps Fellowship.  He has extensive experience in class action impact litigation on behalf of persons with disabilities and other protected classes, as well as consumer litigation.  He is a frequent lecturer on disability law issues and class action impact litigation, and he has authored various publications on those topics.  He has been named as a "Super Lawyer" by Northern California Super Lawyers magazine for every year since 2009.

Mr. Wallace serves as a member of the Board of Directors of The San Francisco Trial Lawyers Association.  He has also served as a member of the Board of Directors of the Bar Association of San Francisco, and on the Board of Directors of Disability Rights California.

Mr. Wallace practices in the areas of civil rights, employment and consumer rights.  He is a recognized specialist in class action litigation. His expertise includes both disability access and employment class action cases. Mr. Wallace lectures and writes extensively about the practice of impact litigation. Mr. Wallace received his B.A. from Harvard College in 1989.  He has been a wheelchair user since the age of 16 as the result of a spinal injury.  Mr. Wallace has been a partner at SWCKW since 2000.

***Carolyn Cottrell*** – Ms. Cottrell is a partner with Schneider Wallace Cottrell Konecky LLP and has been a member of the firm since 1995.  Ms. Cottrell has spent her legal career advocating for the rights of individuals who have been subjected to underpayment of wages, discrimination, harassment and retaliation.  She has litigated hundreds of class actions and individual claims including wage and hour, employment discrimination and civil rights actions.

In 2010, Ms. Cottrell was honored as a "Top Woman Litigator" by the Daily Journal.  In 2012 she was nominated for "Woman Trial Lawyer of the Year" by the Consumer Attorneys of California.  She also serves on the Board of Directors of the San Francisco Trial Lawyers Association.  Ms. Cottrell is a member of the State Bar of California, the San Francisco Trial Lawyers Association, Public Justice, the Consumer Attorneys of California and the California Employment Lawyers Association.  She earned her Bachelor's degree from the University of California and received her law degree from the University of Pacific, McGeorge School of Law.

***Joshua Konecky*** – Joshua Konecky is a litigator, mediator and partner at Schneider Wallace Cottrell Konecky LLP. He has litigated numerous class action cases in the areas of employment, disability, and consumer law.  In 2013, the Daily Journal named him as one of the top labor and employment attorneys in California.  In 2012, his firm was listed as one of the "top 10 go-to plaintiffs' employment firms in Northern California" by the Recorder Legal Paper.  Mr. Konecky has been on the Northern California Super Lawyers list every year since 2011.  He has authored publications on employment law, disability access and class actions, and lectures on these subjects as well.   He is a contributing editor to the Rutter Group "Claims and Defenses" treatise.

Mr. Konecky sits on the Board of Directors for Legal Aid at Work and Disability Rights Advocates.  He also serves on the Mandatory Settlement Conference Panel for the Superior Court of California in San Francisco.

Mr. Konecky holds a J.D. from New York University School of Law (1995), a B.A. from Haverford College (1990), and 42 hours of formal mediation training at the Straus Institute for Dispute Resolution at Pepperdine University School of Law (2011).

He is a former U.S. Fulbright Scholar, Skadden Public Interest Law Fellow, and judicial law clerk for U.S. District Court Judge Lawrence K. Karlton.

# EXHIBIT 3

Paste your Google Webmaster Tools verification code here

 

# Our History

## What is the St. Christopher Fund?

The St. Christopher Truckers Development and Relief Fund (SCF) is a 501(c)(3), truck driver charity that helps over-the-road/regional semi-truck drivers and their families when an illness or injury, occurring within the last year, has caused them to be out of work. The SCF is also working to provide programs that will benefit professional drivers and the trucking industry.

## The Missions

To help over-the-road/regional semi-truck drivers and their families when an illness or injury has recently caused them to be out of work. Assistance may be in the form of direct payment to providers for household living expenses such as, rent/mortgage, utilities, vehicle payments and insurance.  The SCF provides all applicants with information on how to negotiate price reductions with medical providers and hospitals.  We normally do NOT pay medical bills.

To provide health and wellness programs for drivers in hopes to prevent some medical illnesses.  Some of these programs include health challenges, smoking cessation, and free flu, shingles and pneumonia vaccines.

## Why was it started?

Studies have shown that more than 70% of the 3.5 million professional truck drivers in the U.S. have one or more serious health problems such as obesity, diabetes, sleep disorders and cardiovascular disease. Truck drivers also lack the same access to health that most Americans enjoy.

Access is limited because drivers work irregular hours, spend long-durations away from home, and are unable to navigate side streets and parking lots in their trucks to get to a clinic, pharmacy or hospital. Compounding the problem is the fact that more than one-third of truck drivers do not have health insurance.

The unfortunate result of these circumstances is that drivers are often unable to get treatment in the early stages of disease, allowing the condition to progress to a much more severe state. Minor illnesses become severe, leading to hospitalization and disability. The driver then may lose his/her commercial drivers license and become unable to work. This creates a downward spiral that leads to extreme financial hardship.

## Who Started SCF?

After witnessing hundreds of truck drivers and their families struggle to survive as a result of illnesses and injuries, Dave Nemo, host of the Dave Nemo Show, and his partner Michael Burns, were compelled to take action. They found a willing partner in Dr. John McElligott ("Dr. John"). Together, they launched a truck driver charity to come to the aid of professional semi-truck drivers in need. The organization was incorporated as a not-for-profit organization in 2007.  The SCF helped their first driver in 2008.

| Search |
| --- |

## Recent Posts

Mack Trucks Partners with Life is Good to #ThankATrucker

The Importance of WATER

Vitamin C for Immune Health – What is Good, Better, & Best

The Importance of Positive Mental Health

St. Christopher Truckers Relief Fund Receives $100,000 Donation from Progressive Insurance

## Categories

News

Stories

Tips in the Truck

Trucker Health

Videos

## Donate Online

The SCF helps semi-truck drivers and their families who have financial needs due to current medical problems. If you'd like to help our cause, please consider donating.



## Become a Sponsor

*Download Our Media Kit*

## Latest News

- Mack Trucks Partners with Life is Good to #ThankATrucker
- The Importance of WATER
- Vitamin C for Immune Health – What is Good, Better, & Best
- The Importance of Positive Mental Health
- St. Christopher Truckers Relief Fund Receives $100,000 Donation from Progressive Insurance

## Search Site

| | Search |
| --- | --- |

## Read More

- News
- Stories
- Tips in the Truck
- Trucker Health
- Videos

## Follow Us



© 2017 St. Christopher Truckers Relief Fund | Site by **Pixelized Designs** | **State Nonprofit Disclosures**