1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11

12   JOSEPH KIMBO, an individual; on      No. 2:19-cv-00166 WBS KJN
     behalf of himself and all others
13   similarly situated,

14              Plaintiff,

                                          MEMORANDUM AND ORDER RE:
15        v.                              MOTION FOR PRELIMINARY
                                          APPROVAL OF CLASS ACTION
16   MXD GROUP, INC., a California        SETTLEMENT
     corporation; RYDER SYSTEM, INC.,
17   a Florida Corporation; and DOES
     1-10, inclusive,
18
                Defendants.
19

20                        ----oo0oo----

21          Plaintiff Joseph Kimbo, individually and on behalf of

22   all other similarly situated employees, brought this putative

23   class action against defendants MXD Group, Inc. and Ryder System,

24   Inc. (collectively, "defendants") alleging various violations of

25   the California Labor Code.  (Compl. (Docket No. 1-2).)  Before

26   the court is plaintiff's unopposed motion for preliminary

27   approval of a class action settlement.  (Mot. for Prelim.

28
                               1

1   Approval (Docket No. 26).)

2   I.   <u>Factual and Procedural Background</u>

3          Defendants operate a local delivery service, which

4   makes deliveries of furniture, appliances, and other items on

5   behalf of defendants' retail clients.  (Decl. of Joshua Konecky

6   ("Konecky Decl.") ¶ 7 (Docket No. 26-2).)  Defendants relied upon

7   two different kinds of drivers to make deliveries: (1)

8   individuals who contracted directly with defendants ("motor

9   carriers") and (2) individuals who were engaged by other

10  companies to operate their commercial motor vehicles and perform

11  discrete delivery services for defendants ("non-carriers").  (<u>Id.</u>

12  ¶ 20.)

13         Plaintiff worked as a motor carrier delivery driver for

14  defendants until March 2018.  (Compl. ¶ 22.)  Defendants retained

15  extensive control over the way the drivers performed their

16  duties, controlling the drivers' schedules, routes, customers,

17  and equipment.  (<u>Id.</u> ¶ 6.)  Defendants tracked and monitored the

18  drivers' movements throughout the day to ensure they were

19  adhering to the delivery schedule, and while making deliveries,

20  drivers had to wear defendants' uniforms or the uniforms of

21  defendants' clients.  (<u>Id.</u> ¶ 8.)  If the drivers failed to abide

22  by the provided delivery schedule, defendants reserved the right

23  to discipline the drivers by reducing their work assignment

24  and/or terminating them from service.  (<u>Id.</u>)  Drivers were paid a

25  flat rate for each delivery and were forced to sign a non-compete

26  agreement prohibiting them from directly or indirectly soliciting

27  business from any of defendants' customers for three years

28  following their employment with defendants.  (<u>Id.</u> ¶¶ 9, 45.)

1    In spring of 2018, plaintiff and other motor carriers

2    met with plaintiff's counsel regarding complaints they had about

3    the terms of their compensation and work arrangements with

4    defendants.  (Mot. for Preliminary Approval at 3.)  Plaintiff

5    initially brought this action against defendants in Sacramento

6    Superior Court challenging defendants' policies of: (1)

7    misclassifying drivers as independent contractors, instead of

8    employees; (2) failing to reimburse plaintiff and the class for

9    necessary and reasonable business expenses; (3) making unlawful

10   deductions from plaintiff's and the class' wages; (4) failing to

11   provide, authorize, permit and/or make available meal and rest

12   periods to plaintiff and the class as required by California law;

13   (5) denying plaintiff and the class full compensation for all

14   hours worked; (6) failing to pay plaintiff and the class minimum

15   wage; (7) failing to pay plaintiff and the class overtime and

16   double time; (8) failing to provide plaintiff and the class with

17   accurate, itemized wage statements; and (9) failing to timely pay

18   plaintiff and the class full wages upon termination or

19   resignation.  (Compl. ¶ 13.)  Defendants timely removed the case

20   to this court in January 2019.  (Docket No. 1.)  Following

21   removal, the parties engaged in mediation proceedings, producing

22   the settlement agreement before the court today.

23   II.  Discussion

24   Federal Rule of Civil Procedure 23(e) provides that

25   "[t]he claims, issues, or defenses of a certified class may be

26   settled . . . only with the court's approval."  Fed. R. Civ. P.

27   23(e).  "To vindicate the settlement of such serious claims,

28   however, judges have the responsibility of ensuring fairness to

1  all members of the class presented for certification." Staton v.

2  Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).  "Where [] the

3  parties negotiate a settlement agreement before the class has

4  been certified, settlement approval requires a higher standard of

5  fairness and a more probing inquiry than may normally be required

6  under Rule 23(e)." Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035,

7  1048 (9th Cir. 2019) (citation and internal quotations omitted).

8       The approval of a class action settlement takes place

9  in two stages.  In the first stage, "the court preliminarily

10 approves the settlement pending a fairness hearing, temporarily

11 certifies a settlement class, and authorizes notice to the

12 class." Ontiveros v. Zamora, No. 2:08-567 WBS DAD, 2014 WL

13 3057506, at *2 (E.D. Cal. July 7, 2014).  In the second, the

14 court will entertain class members' objections to (1) treating

15 the litigation as a class action and/or (2) the terms of the

16 settlement agreement at the fairness hearing.  Id.  The court

17 will then reach a final determination as to whether the parties

18 should be allowed to settle the class action following the

19 fairness hearing.  Id.  Consequently, this order "will only

20 determine whether the proposed class action settlement deserves

21 preliminary approval and lay the groundwork for a future fairness

22 hearing." See id. (citations omitted).

23      A.   Class Certification

24      To be certified, the putative class must satisfy both

25 the requirements of Federal Rule of Civil Procedure 23(a) and

26 (b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir.

27 2013).  Each will be discussed in turn.

28           1.   Rule 23(a)

4

1          In order to certify a class, Rule 23(a)'s four

2    threshold requirements must be met: numerosity, commonality,

3    typicality, and adequacy of representation.  Fed. R. Civ. P.

4    23(a).  "Class certification is proper only if the trial court

5    has concluded, after a 'rigorous analysis,' that Rule 23(a) has

6    been satisfied."  Wang v. Chinese Daily News, Inc., 737 F.3d 538,

7    542-43 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes,

8    564 U.S. 338, 351 (2011)).

9                    i.   Numerosity

10         While Rule 23(a)(1) requires that the class be "so

11   numerous that joinder of all members is impracticable," Fed. R.

12   Civ. P. 23(a)(1), it does not require "a strict numerical cut-

13   off."  McCurley v. Royal Seas Cruises, Inc., 331 F.R.D. 142, 167

14   (S.D. Cal. 2019) (Bashant, J.) (citations omitted).  Generally,

15   "the numerosity factor is satisfied if the class compromises 40

16   or more members."  Id. (quoting Celano v. Marriott Int'l, Inc.,

17   242 F.R.D. 544, 549 (N.D. Cal. 2007)).  Here, there are more than

18   900 class members, all of whom are identifiable from defendants'

19   records.  (Mot. for Preliminary Approval at 8.)  Accordingly, the

20   numerosity element is satisfied.

21                   ii.  Commonality

22         Next, Rule 23(a) requires that there be "questions of

23   law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).

24   Rule 23(a)(2) is satisfied when there is a "common contention . .

25   . of such a nature that it is capable of classwide resolution --

26   which means that determination of its truth or falsity will

27   resolve an issue that is central to the validity of each one of

28   the claims in one stroke."  Wal-Mart Stores, 564 U.S. at 350.

1   "Plaintiffs need not show that every question in the case, or

2   even a preponderance of questions, is capable of classwide

3   resolution.  So long as there is 'even a single common question,'

4   a would-be class can satisfy the commonality requirement of Rule

5   23(a)(2)."  <u>Wang</u>, 737 F.3d at 544 (citing <u>id.</u>).

6        The settlement class consists of two subclasses,

7   reflective of the two types of drivers defendants used to carry

8   out deliveries: (1) a "motor carrier" subclass consisting of

9   individuals under contract with the defendant directly and (2) a

10  "non-carrier" subclass consisting of individuals under contract

11  with other entities who were tasked with performing services for

12  defendants.  (Konecky Decl. ¶ 20.)  Plaintiff's counsel estimates

13  that motor carrier class members will receive an average of

14  approximately $8,871, while non-carrier class members will

15  recover approximately $1,074.  (<u>Id.</u> ¶ 29.)  The actual recovery

16  each class members will receive, however, will be distributed on

17  a pro rata basis in proportion to the number of calendar

18  workweeks during which they were authorized to provide

19  transportation services to defendants during the class period.

20  (Mot. for Preliminary Approval at 1.)

21        Despite the difference in recovery between the two

22  classes, "the presence of individual damages cannot, by itself,

23  defeat class certification."  <u>Leyva</u>, 716 F.3d at 514 (quoting

24  <u>Wal-Mart Stores</u>, 564 U.S. at 362).  Here, the claims implicate

25  common questions of law and fact because they were all premised

26  on the defendants' same policies, regardless of subclass.

27  Generally, "challeng[ing] a policy common to the class as a whole

28  creates a common question whose answer is apt to drive the

1  resolution of the litigation." Ontiveros, 2014 WL 3057506, at

2  *5.  Accordingly, these common questions of law and fact satisfy

3  Rule 23(a)'s commonality requirement.

### iii. Typicality

5       Rule 23(a) further requires that the "claims or

6  defenses of the representative parties [be] typical of the claims

7  or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The test

8  for typicality is "whether other members have the same or similar

9  injury, whether the action is based on conduct which is not

10  unique to the named plaintiffs, and whether other class members

11  have been injured by the same course of conduct."  Sali v. Corona

12  Reg'l Medical Ctr., 909 F.3d 996, 1006 (9th Cir. 2018) (quoting

13  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)).

14  Here, the named plaintiff satisfies the typicality requirement.

15  The work performed by the class members and the work performed by

16  plaintiff is the same, and they share the same injuries from

17  being misclassified as independent contractors rather than

18  employees.  Accordingly, the typicality requirement is satisfied.

### iv. Adequacy of Representation

20       Finally, Rule 23(a) requires that "the representative

21  parties will fairly and adequately protect the interests of the

22  class."  Fed. R. Civ. P. 23(a)(4).  Rule 23(a)(4) "serves to

23  uncover conflicts of interest between named parties and the class

24  they seek to represent" as well as the "competency and conflicts

25  of class counsel."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591,

26  625, 626 n.20 (1997).  The court must consider two factors: (1)

27  whether the named plaintiff and his counsel have any conflicts of

28  interest with other class members and (2) whether the named

1  plaintiff and his counsel will vigorously prosecute the action on

2  behalf of the class.   In re Hyundai and Kai Fuel Economy Litig.,

3  926 F.3d 539, 566 (9th Cir. 2019) (quoting Hanlon v. Chrysler

4  Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)).

5                    a.   Conflicts of Interest

6        The first portion of the adequacy inquiry considers

7  whether plaintiff's interests are aligned with those of the

8  class.  "[A] class representative must be part of the class and

9  possess the same interest and suffer the same injury as the class

10  members."  Amchem, 521 U.S. at 625-26 (internal modifications

11  omitted).

12        In most respects, the named plaintiff's interests

13  appear to be aligned with those of the class for the reasons set

14  forth above.  (See generally Compl.)  Plaintiff served as a

15  driver for defendants and was classified as an independent

16  contractor rather than an employee during his tenure.  (Id. ¶

17  22.)  Despite the many similarities, plaintiff alone stands to

18  benefit for his participation in this litigation by receiving an

19  incentive award of $15,000.  (Mot. for Preliminary Approval at

20  22.)  The use of an incentive award raises the possibility that a

21  plaintiff's interest in receiving that award will cause his

22  interests to diverge from the class's in a fair settlement.

23  Staton, 327 F.3d at 977-78.  Consequently, the court must

24  "scrutinize carefully the awards so that they do not undermine

25  the adequacy of the class representatives."  Radcliffe v.

26  Experian Info. Sys., Inc., 715 F.3d 1157, 1163 (9th Cir. 2013).

27        Plaintiff's counsel estimates that motor carrier class

28  members will receive an average of approximately $8,871, while

1    non-carrier class members will receive approximately $1,074.

2    (Konecky Decl. ¶ 29.)   Plaintiff's proposed award of $15,000

3    represents substantially more.   However, incentive awards "are

4    intended to compensate class representatives for work done on

5    behalf of the class, to make up for financial or reputational

6    risk undertaken in bringing the action, and, sometimes, to

7    recognize their willingness to act as a private attorney

8    general."  Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958-59

9    (9th Cir. 2009).   Indeed, the Ninth Circuit has consistently

10   recognized incentive awards are "fairly typical" way to

11   "compensate class representatives for work done on behalf of the

12   class" or "to make up for financial or reputational risk

13   undertaken in bringing the action."   Id.

14          Here, a $15,000 incentive payment appears appropriate

15   at this stage.   The payment represents 0.3% of the total

16   settlement amount.   Plaintiff's counsel represents that the named

17   plaintiff has spent significant amounts of time to bring this

18   case, providing counsel with important documents, information,

19   and insight regarding defendants' policies and practices.

20   (Konecky Decl. ¶ 48.)   Other courts have awarded similar

21   incentive awards in analogous cases.   See, e.g., Villalpando v.

22   Exel Direct Inc., No. 3:12-cv-04137-JCS, 2016 WL 7785852, at *2

23   (N.D. Cal. Dec. 9, 2016) (awarding each named plaintiff $15,000

24   following misclassification suit).   While the incentive award

25   does not appear to create a conflict of interest, the court

26   emphasizes this finding is only a preliminary determination.

27   Plaintiff represents he will formally seek the incentive award

28   through a separate motion, to be heard at the final approval

1  hearing.  (Mot. for Preliminary Approval at 22.)  At that time,

2  plaintiff should be prepared to present further evidence of

3  plaintiff's substantial efforts taken as a class representative

4  to better justify the discrepancy between the award and those of

5  the unnamed class members.

6                    b.   Vigorous Prosecution

7            The second portion of the adequacy inquiry examines the

8  vigor with which the named plaintiff and his counsel have pursued

9  the class's claims.  "Although there are no fixed standards by

10  which 'vigor' can be assayed, considerations include competency

11  of counsel and, in the context of a settlement-only class, an

12  assessment of the rationale for not pursuing further litigation."

13  Hanlon, 150 F.3d at 1021.

14            Here, class counsel states he is an experienced

15  employment and class action litigator fully qualified to pursue

16  the interests of the class.  (Konecky Decl. ¶¶ 3-6.)  Class

17  counsel represents that he has litigated several wage and hour

18  class actions on the specific issue of independent contractor

19  misclassification and was the lead counsel in an analogous class

20  action against the same defendants in the Northern District of

21  California.  (Id. ¶ 5 (citing Villalpando, 2016 WL 7740832, at

22  *2-3.)

23            Furthermore, before participating in an arms-length

24  mediation, class counsel prepared mediation briefs and vetted his

25  clients' claims through rigorous legal analysis.  (Id. ¶¶ 13-15.)

26  Following a full day of negotiations, the parties executed a

27  Memorandum of Understanding memorializing their agreement.  (Id.

28  ¶ 15.)  Counsel's experience, coupled with the careful vetting of

                              10

1    his client's claims, suggest that he is well-equipped to handle

2    this case.  Accordingly, the court finds that plaintiff and

3    plaintiff's counsel are adequate representatives of the class.

4              2.   Rule 23(b)

5              After fulfilling the threshold requirements of Rule

6    23(a), the proposed class must satisfy the requirements of one of

7    the three subdivisions of Rule 23(b).  Leyva, 716 F.3d at 512.

8    Plaintiff seeks provisional certification under Rule 23(b)(3),

9    which provides that a class action may be maintained only if "the

10   court finds that questions of law or fact common to class members

11   predominate over questions affecting only individual members" and

12   "that a class action is superior to other available methods for

13   fairly and efficiently adjudicating the controversy."  Fed. R.

14   Civ. P. 23(b)(3).  The test of Rule 23(b)(3) is "far more

15   demanding," than that of Rule 23(a).  Wolin v. Jaguar Land Rover

16   N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting Amchem,

17   521 U.S. at 623-24).

18             i.   Predominance

19             "The predominance analysis under Rule 23(b)(3) focuses

20   on 'the relationship between the common and individual issues' in

21   the case and 'tests whether proposed classes are sufficiently

22   cohesive to warrant adjudication by representation.'"  Wang, 737

23   F.3d at 545 (quoting Hanlon, 150 F.3d at 1022).  However,

24   plaintiff is not required to prove that the predominating

25   question will be answered in his favor at the class certification

26   stage.  Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455,

27   468 (2013).

28             Here, the claims brought by the proposed settlement

class all arise from defendants' same conduct.  For example, all

class members were erroneously classified as independent

contractors rather than employees.  (Konecky Decl. ¶ 9.)  This

policy serves as a common fact uniting plaintiff's individual

claims and the class claims.  Common questions of law include,

inter alia, whether defendants' policies and practices are in

violation of California Business and Professions Code § 17200;

whether, as employees, drivers were entitled to minimum wage and

overtime payments; and whether, as employees, drivers were

entitled to reimbursement for expenses, meal breaks and rest

periods, or premiums if those meal and rest periods were not

provided.  (See generally Compl. ¶ 81.)  The class claims thus

demonstrate a "common nucleus of facts and potential legal

remedies" that can properly be resolved in a single adjudication.

See Hanlon, 150 F.3d at 1022.  Accordingly, the court finds

common questions of law and fact predominate over questions

affecting only individual class members.

> ii.  Superiority

Rule 23(b)(3) sets forth four non-exhaustive factors

that courts should consider when examining whether "a class

action is superior to other available methods for fairly and

efficiently adjudicating the controversy."  Fed. R. Civ. P.

23(b)(3).  They are: "(A) the class members' interests in

individually controlling the prosecution or defense of separate

actions; (B) the extent and nature of any litigation concerning

the controversy already begun by or against class members; (C)

the desirability or undesirability of concentrating the

litigation of the claims in the particular forum; and (D) the

1    likely difficulties in managing a class action." Id.  Factors

2    (C) and (D) are inapplicable because the parties settled this

3    action before class certification.  See Syed v. M-I LLC, No.

4    1:14-cv-00742 WBS BAM, 2019 WL 1130469, at *6 (E.D. Cal. Mar. 12,

5    2019) (citation omitted).  Therefore, the court will focus

6    primarily on facts (A) and (B).

7         Rule 23(b)(3) is concerned with the "vindication of the

8    rights of groups of people who individually would be without

9    effective strength to bring their opponents into court at all."

10   Amchem, 521 U.S. at 617.  When class members' individual recovery

11   is relatively modest, the class members' interests generally

12   favors certification.  Zinser v. Accufix Res. Inst., Inc., 253

13   F.3d 1180, 1190 (9th Cir. 2001).  Again, plaintiff's counsel

14   estimates that motor carrier class members will receive

15   approximately $8,871, while non-carrier class members will

16   receive approximately $1,074.  (Konecky Decl. ¶ 29.)  These

17   anticipated sums, while modest in light of the $5,000,000

18   recovery, represent a strong result for the class given the

19   strength of the claims, the risks of litigation and delay, and

20   the defendants' potential exposure.  (Id. ¶ 30.)  The amount of

21   recovery represents more than individual class members would

22   likely receive if they were to bring the case on their own.

23   Accordingly, this factor weighs in favor of certification.

24        Factor (B), concerning the "extent and nature of the

25   litigation," is "intended to serve the purpose of assuring

26   judicial economy and reducing the possibility of multiple

27   lawsuits."  Zinser, 253 F.3d at 1191 (quoting 7A Charles Alan

28   Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and

1   Procedure § 1780 at 568-70 (2d ed. 1986)).  Here, defendants

2   submitted a notice that they are involved in a substantially

3   similar case pending before the Los Angeles Superior Court.  (See

4   Notice of Related Case (Docket No. 2).)  Plaintiff did not

5   discuss this case in his motion for preliminary approval.  (See

6   Mot. for Preliminary Approval at 12.)  While the court finds the

7   number of potential plaintiffs makes individual resolution of

8   these claims untenable, plaintiff is advised to address why the

9   case before the Los Angeles Superior Court does not detract from

10  judicial economy in its motion for final approval.

11                3.   Rule 23(c)(2) Notice Requirements

12              If the court certifies a class under Rule 23(b)(3), it

13  "must direct to class members the best notice that is practicable

14  under the circumstances, including individual notice to all

15  members who can be identified through reasonable effort."  Fed.

16  R. Civ. P. 23(c)(2)(B).  Actual notice is not required, but the

17  notice provided must be "reasonably certain to inform the absent

18  members of the plaintiff class."  Silber v. Mabon, 18 F.3d 1449,

19  1454 (9th Cir. 1994) (citation omitted).

20              The parties have jointly agreed to use Heffler Claims

21  Group LLC ("Heffler") to serve as the Settlement Administrator.

22  (Decl. of Mark Rapazzini ("Rapazzini Decl.") ¶¶ 1-2 (Docket No.

23  26-1).)  Heffler has extensive experience in class action

24  matters, providing administration services in more than 1,000

25  cases.  (Id. ¶ 2.)  Pursuant to the notice plan, Heffler will

26  receive and process the class list data within thirty days of the

27  court's order granting preliminary approval.  (Id. ¶ 3.)

28              "Notice is satisfactory if it 'generally describes the

1   terms of the settlement in sufficient detail to alert those with

2   adverse viewpoints to investigate and to come forward and be

3   heard.'"  See Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566,

4   575 (9th Cir. 2004).  The notice will provide, among other

5   things, a description of the case; the total settlement amount

6   and how it will be allocated (including information about

7   plaintiff's motion for attorney's fees); the procedures for

8   opting out or objecting to the settlement; and the individual

9   class member's share.  (Konecky Decl. ¶ 38.)  Heffler will

10  translate the notice from English to Spanish and will provide

11  both translations in its notice to class members.  (Id. ¶¶ 4, 7.)

12  All class members will receive individual notice by first class

13  mail and/or through email, if class members' email addresses are

14  available.  (Id. ¶¶ 6-7.)  Heffler will also create a settlement

15  website and a toll-free number for class members to ask questions

16  and learn more about the settlement.  (Id. ¶¶ 8-9.)

17       The system set forth in the Settlement Agreement is

18  reasonably calculated to provide notice to class members and

19  inform class members of their options under the agreement.

20  Accordingly, the manner of notice and the content of notice is

21  sufficient to satisfy Rule 23(c)(2)(B).

22       B.   Rule 23(e): Fairness, Adequacy, and Reasonableness of
          Proposed Settlement
23

24       Because the proposed class preliminarily satisfies the

25  requirements of Rule 23, the court must consider whether the

26  terms of the parties' settlement appear fair, adequate, and

27  reasonable.  See Fed. R. Civ. P. 23(e)(2).  To determine the

28  fairness, adequacy, and reasonableness of the agreement, the

15

1  court must consider "a number of factors," including:

2      Strength of the plaintiff's case; the risk, expense,
       complexity, and likely duration of further litigation;
3      the risk of maintaining class action status throughout
       the trial; the amount offered in settlement; the
4      extent of discovery completed and the stage of the
       proceedings; the experience and views of counsel; the
5      presence of a governmental participant; and the
       reaction of the class members to the proposed
6      settlement.

7  Hanlon, 150 F.3d at 1026.  Many of these factors cannot be

8  considered until the final fairness hearing; accordingly, the

9  court's review will be confined to resolving any "'glaring

10 deficiencies' in the settlement agreement."  Syed, 2019 WL

11 1130469, at *7 (citations omitted).

12          1.   Negotiations of the Settlement Agreement

13          Counsel for both sides appear to have diligently

14 pursued settlement after thoughtfully considering the strength of

15 their arguments and potential defenses.  As previously discussed,

16 the parties participated in an arms-length mediation before an

17 experienced mediator, Antonio Piazza, on December 9, 2019.

18 (Konecky Decl. ¶¶ 13-15.)  Following a full day of negotiations,

19 the parties executed a Memorandum of Understanding memorializing

20 their agreement.  (Id. ¶ 15.)  Given the plaintiff's

21 sophisticated representation and the parties' representation that

22 the settlement reached was the product of arms-length bargaining,

23 the court does not question that the proposed settlement is in

24 the best interest of the class.  See Fraley v. Facebook, Inc.,

25 966 F. Supp. 2d 939, 942 (N.D. Cal. 2013) (holding that a

26 settlement reached after informed negotiations "is entitled to a

27 degree of deference as the private consensual decision of the

28 parties" (citing Hanlon, 150 F.3d at 1027)).

1                    2.   Amount Recovered and its Distribution

2              In determining whether a settlement agreement is

3       substantively fair to class members, the court must balance the

4       value of expected recovery against the value of the settlement

5       offer.  See In re Tableware Antitrust Litig., 484 F. Supp. 2d

6       1078, 1080 (N.D. Cal. 2007).  Here, plaintiff's counsel estimates

7       that motor carrier class members will receive an average of

8       approximately $8,871, while non-carrier class members will

9       receive an average of approximately $1,074.  (Konecky Decl. ¶

10      29.)  Plaintiff's counsel represents that, given the strength of

11      plaintiff's claims and defendants' potential exposure, the

12      settlement and resulting distribution provides a strong result

13      for the class.  (Id. ¶ 30.)  While the settlement amount

14      represents "more than the defendants feel those individuals are

15      entitled to" and will potentially be "less than what some class

16      members feel they deserve," the settlement offers class members

17      the prospect of some recovery, instead of none at all.  See

18      Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628

19      (9th Cir. 1982).  In light of the claims at issue and the

20      defendants' potential exposure, the court finds that the

21      substance of the settlement is fair to class members and thereby

22      "falls within the range of possible approval."  See Tableware,

23      484 F. Supp. 2d at 1079.

24                    3.   Attorney's Fees and Costs

25              "Under the 'common fund' doctrine, 'a litigant or a

26      lawyer who recovers a common fund for the benefit of persons

27      other than himself or his client is entitled to a reasonable

28      attorney's fee from the fund as a whole.'"  Staton, 327 F.3d at

                                    17

1   969 (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)).

2   If a negotiated class action settlement includes an award of

3   attorney's fees, then the court "ha[s] an independent obligation

4   to ensure that the award, like the settlement itself, is

5   reasonable, even if the parties have already agreed to an

6   amount." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d

7   935, 941 (9th Cir. 2011).

8        The Ninth Circuit has recognized two different methods

9   for calculating reasonable attorney's fees in common fund cases:

10  the lodestar method or the percentage-of-recovery method. Id. at

11  941-42.  In the lodestar method, courts multiply the number of

12  hours the prevailing party expended on the litigation by a

13  reasonable hourly rate. Id.  Under the percentage-of-recovery

14  method, courts typically delineate 25% of the total settlement as

15  the fee. Hanlon, 150 F.3d at 1029.  However, courts may adjust

16  this figure if the record reflects "special circumstances

17  justifying a departure." Bluetooth, 654 F.3d at 942.  Where, as

18  here, the settlement has produced a common fund for the benefit

19  of the entire class, courts have discretion to use either method.

20  Id. at 942 (citing In re Mercury Interactive Corp., 618 F.3d 988,

21  992 (9th Cir. 2010)).

22       Plaintiff's counsel has represented that they will be

23  filing a separate motion for attorney's fees and costs pursuant

24  to Federal Rule 23(h) for $1,250,000 in fees and $20,000 in

25  costs.  (Mot. for Preliminary Approval at 23.)  This amount

26  represents 25% of the $5,000,000 gross settlement amount.  (Id.)

27  The court will defer consideration of the reasonableness of

28  counsel's fees until the fee motion is filed.  Class counsel is

18

1   cautioned that the reasons for the attorney's fees should be

2   explained further in that motion.   Factors considered in

3   examining the reasonableness of the fee may include: (1) whether

4   the results achieved were exceptional; (2) risks of litigation;

5   (3) non-monetary benefits conferred by the litigation; (4)

6   customary fees for similar cases; (5) the contingent nature of

7   the fee and financial burden carried by counsel; and (6) the

8   lawyer's "reasonable expectations, which are based on the

9   circumstances of the case and the range of fee awards out of

10  common funds of comparable size."   See Vizcaino v. Microsoft

11  Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002).   A lodestar cross-

12  check, including the hours worked by each attorney, paralegal,

13  and case manager multiplied by their hourly rate, is also a

14  valuable means by which to check the reasonableness of requested

15  fees.   In the event that class counsel cannot demonstrate the

16  reasonableness of the requested attorney's fee, the court will be

17  required to reduce the fee to a reasonable amount or deny final

18  approval of the settlement.   See id. at 1047.

19        IT IS THEREFORE ORDERED that plaintiff's motion for

20  preliminary certification of a conditional settlement class and

21  preliminary approval of the class action settlement (Docket No.

22  23) be, and the same hereby is, GRANTED.

23        IT IS FURTHER ORDERED THAT:

24   (1) the following class be provisionally certified for the

25  purpose of settlement:

26        (a) all motor carrier owners who directly contracted

27  with defendants in his or her individual capacity or through a

28  business entity and provided transportation services to

19

1   Defendants in California at any time from December 12, 2014

2   through the earlier of July 26, 2020 or the date of this Order

3   ("motor carrier class") and

4           (b) all individuals who did not contract with

5   defendants and are non-owner drivers and helpers authorized to

6   provide transportation services for defendants in California at

7   any time from December 12, 2014 through the earlier of July 26,

8   2020 or the date of this Order ("non-carrier class").

9   In the event that the proposed settlement is not consummated for

10  any reason, the conditional certification shall be of no further

11  force or effect and shall be vacated without further action or

12  order of this court;

13      (2) the proposed settlement is preliminarily approved as

14  fair, just, reasonable, and adequate to the members of the

15  settlement class, subject to further consideration at the final

16  fairness hearing after distribution of notice to members of the

17  settlement class;

18      (3) for purposes of carrying out the terms of the settlement

19  only:

20          (a) Joseph Kimbo is appointed as the representative of

21  the settlement class and is provisionally found to be an adequate

22  representative within the meaning of Federal Rule of Civil

23  Procedure 23;

24          (b) the law firm of Schneider Wallace Cottrell Konecky

25  LLP is provisionally found to be a fair and adequate

26  representative of the settlement class and is appointed as class

27  counsel for the purposes of representing the settlement class

28  conditionally certified in this Order;

1       (4) Heffler Claims Group, LLC is appointed as the settlement
2   administrator;

3       (5) the form and content of the proposed Notice of Class
4   Action Settlement (Konecky Decl., Ex. 1) is approved, except to
5   the extent that it must be updated to reflect dates and deadlines
6   specified in this Order;

7       (6) no later than thirty (30) days from the date this Order
8   is signed, defendants' counsel shall provide the names and
9   contact information of all settlement class members to Heffler
10  Claims Group, LLC;

11      (7) no later than twenty-one (21) days from the date
12  defendants submit the contact information to Heffler Claims
13  Group, LLC, it shall mail a Notice of Class Action Settlement to
14  all members of the settlement class;

15      (8) no later than forty-five (45) days from the date this
16  Order is signed, any member of the settlement class who intends
17  to object to, comment upon, or opt out of the settlement shall
18  mail written notice of that intent to Heffler Claims Group, LLC
19  pursuant to the instructions in the Notice of Class Action
20  Settlement;

21      (9) a final fairness hearing shall be held before this court
22  on Monday, December 14, 2020, at 1:30 p.m. in Courtroom 5 to
23  determine whether the proposed settlement is fair, reasonable,
24  and adequate and should be approved by this court; to determine
25  whether the settlement class's claims should be dismissed with
26  prejudice and judgment entered upon final approval of the
27  settlement; to determine whether final class certification is
28  appropriate; and to consider class counsel's applications for

1  attorney's fees, costs, and an incentive award to plaintiff.  The

2  court may continue the final fairness hearing without further

3  notice to the members of the class;

4      (10) no later than twenty-eight (28) days before the final

5  fairness hearing, class counsel shall file with this court a

6  petition for an award of attorney's fees and costs.  Any

7  objections or responses to the petition shall be filed no later

8  than fourteen (14) days before the final fairness hearing.  Class

9  counsel may file a reply to any objections no later than seven

10  (7) days before the final fairness hearing;

11      (11) no later than twenty-eight (28) days before the final

12  fairness hearing, class counsel shall file and serve upon the

13  court and defendants' counsel all papers in support of the

14  settlement, the incentive award for the class representative, and

15  any award for attorney's fees and costs;

16      (12) no later than twenty-eight (28) days before the final

17  fairness hearing, Heffler Claims Group, LLC shall prepare, and

18  class counsel shall file and serve upon the court and defendants'

19  counsel, a declaration setting forth the services rendered, proof

20  of mailing, a list of all class members who have opted out of the

21  settlement, a list of all class members who have commented upon

22  or objected to the settlement;

23      (13) any person who has standing to object to the terms of

24  the proposed settlement may appear at the final fairness hearing

25  in person or by counsel and be heard to the extent allowed by the

26  court in support of, or in opposition to, (a) the fairness,

27  reasonableness, and adequacy of the proposed settlement, (b) the

28  requested award of attorney's fees, reimbursement of costs, and

1   incentive award to the class representative, and/or (c) the

2   propriety of class certification.  To be heard in opposition at

3   the final fairness hearing, a person must, no later than ninety

4   (90) days from the date this Order is signed, (a) serve by hand

5   or through the mails written notice of his or her intention to

6   appear, stating the name and case number of this action and each

7   objection and the basis therefore, together with copies of any

8   papers and briefs, upon class counsel and counsel for defendants,

9   and (b) file said appearance, objections, papers, and briefs with

10  the court, together with proof of service of all such documents

11  upon counsel for the parties.

12          Responses to any such objections shall be served by

13  hand or through the mails on the objectors, or on the objector's

14  counsel if there is any, and filed with the court no later than

15  fourteen (14) calendar days before the final fairness hearing.

16  Objectors may file optional replies no later than seven (7)

17  calendar days before the final fairness hearing in the same

18  manner described above.  Any settlement class member who does not

19  make his or her objection in the manner provided herein shall be

20  deemed to have waived such objection and shall forever be

21  foreclosed from objecting to the fairness or adequacy of the

22  proposed settlement, the judgment entered, and the award of

23  attorney's fees, costs, and an incentive award to the class

24  representative unless otherwise ordered by the court;

25      (14) pending final determination of whether the settlement

26  should be ultimately approved, the court preliminarily enjoins

27  all class members (unless and until the class member has

28  submitted a timely and valid request for exclusion) from filing

23

or prosecuting any claims, suits, or administrative proceedings

regarding claims to be released by the settlement.

Dated:  August 6, 2020

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

24