Joshua G. Konecky (SBN 182897)
Leslie H. Joyner (SBN 262705)
Nathan Piller (SBN 300569)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel:  (415) 421-7100
Fax:  (415) 421-7105
jkonecky@schneiderwallace.com
ljoyner@schneiderwallace.com
npiller@schneiderwallace.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH KIMBO, an individual; on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>MXD GROUP, INC., a California corporation; RYDER SYSTEM, INC., a Florida Corporation; and DOES 1-10, inclusive,<br><br>    Defendants. | Case No.: 2:19-CV-00166-WBS-KJN<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:  February 8, 2021**<br>**Time:  1:30 p.m.**<br>**Location: Courtroom 5, 14th Floor** |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on February 8, 2021 at 1:30 p.m., or as soon thereafter as the parties may be heard, Plaintiff will move, and hereby does move, this Court for an Order awarding Class Counsel reasonable attorneys' fees of $1,250,000.00 (25% of the common settlement fund of $5,000,000), plus reimbursement of actual out of pocket costs of $15,525.10. Plaintiffs' fee request is for the Ninth Circuit benchmark and well within the range of attorneys' fee awarded to Plaintiffs' counsel in comparable wage and hour class actions in the Ninth Circuit and California courts. Plaintiffs' out-of-pocket costs are documented, reasonable and recoverable under applicable law as well.

Pursuant to the Joint Stipulation of Settlement and Release ("Settlement Agreement") (Dkt. No. 26-2) and California wage and hour law, including but not limited to California Labor Code §§ 225.5, 226(e), 1194(a), 2802, 2699, and Federal Rule of Civil Procedure 54, Plaintiffs are authorized to apply for an award of reasonable attorneys' fees and costs. Defendants Ryder Last Mile, Inc. (f/n/a MXD Group, Inc.) and Ryder System, Inc. ("Defendants") do not oppose Plaintiff's Counsel's requested amount of fees and costs.

This motion is based on the accompanying Memorandum of Points and Authorities; the Declaration of Joshua Konecky, and the exhibits attached thereto; such oral argument as may be heard by the Court; and all other papers on file in this action.

Respectfully submitted,

Dated:  November 19, 2020

SCHNEIDER WALLACE
COTTRELL KONECKY LLP

/s/ *Joshua G. Konecky*

Joshua G. Konecky
Counsel for Plaintiffs

## **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................1

II.  OVERVIEW OF COUNSEL'S WORK ON THIS CASE ........................................2

III. LEGAL BASIS FOR AN AWARD OF ATTORNEYS' FEES AND COSTS........................6

    A.   Entitlement to attorneys' fees ........................................................................6

    B.   The methods for evaluating attorneys' fees in common fund cases ................................7

    C.   The percentage method is particularly appropriate in common fund cases......................7

    D.   The benchmark approach ........................................................................8

    E.   The "lodestar-multiplier" crosscheck ................................................................8

IV.  THE BENCHMARK FEE OF 25% OF THE TOTAL SETTLEMENT AMOUNT
    IS FAIR AND REASONABLE UNDER THE COMMON FUND DOCTRINE....................9

    A.   The substantial benefit provided to the Class justifies the fee award requested..............9

    B.   The risks presented by the contingent nature of the recovery and complex
       nature of the case justify the fee award requested ........................................................10

    C.   The requested fees are well within the range of attorneys' fee awarded in
       similar wage and hour class action settlements ..............................................................12

    D.   The "Lodestar-Multiplier" cross-check confirms the reasonableness of the fee
       award........................................................................................................13

        1.   Counsel's time was reasonably spent ................................................14

        2.   Counsel's hourly rates are within the market range and have been
           consistently approved by the courts ..........................................................15

        3.   A multiplier is warranted ......................................................17

V.   PLAINTIFF'S REQUESTED COST REIMBURSEMENTS ARE REASONABLE.............20

VI.  CONCLUSION........................................................................................................21

# TABLE OF AUTHORITIES

## Cases

*Amaral v. Cintas Corp. No. 2*
163 Cal.App.4th 1157 (2008) .......................................................................................... 11

*Barbosa v. Cargill Meat Sols. Corp.*
297 F.R.D. 431 (E.D. Cal. 2013) ..................................................................................... 13

*Been v. O.K. Industries, Inc.*
2011 WL 4478766 (E.D. Okla. 2011) ....................................................................... 14, 18

*Blum v. Stenson*
465 U.S. 886 (1984) ........................................................................................................ 15

*Boeing Co. v. Van Gemert*
444 U.S. 472 (1980) .................................................................................................... 7, 20

*Camacho v. Bridgeport Fin., Inc.*
523 F.3d 973 (9th Cir. 2008) ........................................................................................... 15

*Chalmers v. City of L.A.*
796 F.2d 1205 (9th Cir. 1986)
amended by
808 F.2d 1373 (9th Cir. 1987) ......................................................................................... 20

*Cifuentes v. Ceva Logistics U.S., Inc*
2017 U.S. Dist. LEXIS 176279 (S.D. Cal. 2017) ............................................................ 13

*Cooley v. Indian River Transp. Co*
2019 U.S. Dist. LEXIS 79587 (E.D. Cal. 2019) ................................................... 10, 12, 13

*Fischel v. Equitable Life Assurance Soc'y of U.S.*
307 F.3d 997 (9th Cir. 2002) ...................................................................................... 11, 17

*Garnett v. ADT, LLC*
2016 U.S. Dist. LEXIS 84006 (E.D. Cal. 2016) .............................................................. 10

*Graham v. DaimlerChrysler Corp.*
34 Cal.4th 553 (2004) ..................................................................................................... 18

*Hensley v. Eckerhart*
461 U.S. 424 (1983) ........................................................................................................ 15

*Horsford v. Bd. of Trustees of California State Univ.*
132 Cal. App. 4th 359 (2005) .......................................................................................... 17

*In re Bluetooth Headset Prods. Liab. Litig.*
654 F.3d 935 (9th Cir. 2011) ............................................................................................. 7

*In re HPL Tech., Inc. Sec. Litig.*
366 F. Supp. 2d 912 (N.D. Cal. 2005) ............................................................................... 9

*In re Media Vision Tech. Sec. Litig.*
913 F.Supp. 1362 (N.D. Cal. 1996) ................................................................................. 20

*In re NASDAQ Market-Makers Antitrust Litig.*
  187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................ 14, 18

*In re NCAA Ath. Grant-In-Aid Cap Antitrust Litig.*
  2017 U.S. Dist. LEXIS 201108 (N.D. Cal. 2017) .................................... 14, 18

*In re Portal Software, Inc. Secs. Litig.*
  2007 U.S. Dist. LEXIS 88886 (N.D. Cal. 2007) ........................................ 8, 9

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc*
  2018 U.S. Dist. LEXIS 80219 (N.D. Cal. 2018) ...................................... 14, 18

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*
  2018 U.S. Dist. LEXIS 80219 (N.D. Cal. 2018) .......................................... 14

*Jones v. Dominion Res. Servs*
  601 F.Supp. 2d 756 (W.Va. 2009) ............................................................ 14, 17

*Ketchum v. Moses*
  24 Cal. 4th 1122 (2001) ...............................................................13, 17, 18, 19

*Knisley v. Network Assocs.*
  312 F.3d 1123 (9th Cir. 2002) ........................................................................ 7

*Lealao v. Beneficial Cal., Inc.*
  82 Cal.App.4th 19 (2000) .......................................................................... 18, 19

*Monterrubio v. Best Buy Stores, L.P.*
  291 F.R.D. 443 (E.D. Cal. 2013) ................................................................... 7

*Nwabueze v. AT&T, Inc.*
  2013 WL 6199596 (N.D.Cal. 2013) ............................................................... 8

*Ontiveros v. Zamora*
  2014 U.S. Dist. LEXIS 91964 (E.D. Cal. 2014) .................................... 10, 13

*Osegueda v. N. Cal. InAlliance*
  2020 U.S. Dist. LEXIS 7107 (E.D. Cal. 2020) ..................................... 10, 12

*Paul, Johnson, Alston & Hunt v. Graulty*
  886 F.2d 268 (9th Cir. 1989) .......................................................................... 7

*Rabin v. Concord Assets Group*
  1991 WL 275757 (S.D.N.Y. 1991).......................................................... 14, 18

*Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*
  779 F.3d 934 (9th Cir. 2015) .......................................................................... 7

*Romero v. Producers Dairy Foods, Inc.*
  2007 WL 3492841 (E.D. Cal. 2007)............................................................. 13

*Rutti v. Lojack Corp.*
  2012 U.S. Dist. LEXIS 107677 (C.D. Cal. 2012).......................................... 20

*Schiller v. David's Bridal, Inc.*
  2012 U.S. Dist. LEXIS 80776 (E.D. Cal. 2012)............................................. 8

*Serrano v. Priest*
  20 Cal.3d 25 (1977) ................................................................................. 18, 19

*Six (6) Mexican Workers v. Ariz. Citrus Growers*
  904 F.2d 1301 (9th Cir.1990) ............................................................................................. 8

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) ......................................................................................... 7, 20

*Sutter Health Uninsured Pricing Cases*
  171 Cal. App. 4th 495 (2009) ........................................................................................ 8, 9

*Vasquez v. Coast Valley Roofing*
  266 F.R.D. 482 (E.D. Cal. 2010) ...................................................................................... 13

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)
*cert. denied*, 537 U.S. 1018 (2002) ............................................................................. passim

*Watson v. Tennant Co.*
  2020 U.S. Dist. LEXIS 166823 (E.D. Cal. 2020) ......................................... 2, 8, 12, 13

*Wershba v. Apple Computer, Inc.*
  91 Cal.App.4th 224 (2001) ........................................................................................ 14, 17


**Federal Statutes**
29 U.S.C. § 216(b) .............................................................................................................. 20

**Rules**
Fed Rule Civ. Proc. 23(h) .................................................................................................... 6

Fed. Rule Civ. Proc. 54(d)(1) ............................................................................................ 20

Fed. Rule Civ. Proc. 54(d)(2)(A) ....................................................................................... 20

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiff, Joseph Kimbo, respectfully submits this application for an award of reasonable attorneys' fees and costs to compensate Plaintiff's Counsel for the skillful work they undertook on a completely contingent basis to achieve a highly beneficial class action settlement.

The proposed class action settlement, which the Court preliminarily approved on August 6, 2020 (Dkt. No. 30), establishes a non-reversionary common settlement fund of $5,000,000.  This will bring swift and meaningful relief to numerous modest-wage workers who, as a practical matter, lack the means to bring individual suits to assert their rights.

The average _net_ settlement awards are estimated to be approximately $8,871 per individual for the members of the Motor Carrier Class and approximately $1,074 per individual for the members of the Non-Carrier Class.  These are the _net_ amounts after deducting the attorneys' fees and costs sought in this motion, the settlement administration fees, the proposed service award to the named Plaintiff, the reserve fund set aside to cover any late or unanticipated claims, and the contribution to the California Labor and Workforce Development Agency (LWDA).[1]  Settlement class members with longer tenures working for Defendants will receive far more than these averages.  This recovery compares very favorably with average recoveries in other wage-and-hour settlements in this Judicial District. _See supra_, Section IV.A. below. The Settlement also brings the class members immediate relief without the extensive delays that come from years of litigation and possible appeals.

As detailed further below, Plaintiff's Counsel worked skillfully and diligently to achieve this

---

[1] As explained in Plaintiff's Motion for Preliminary Approval (Dkt. No. 26), there are approximately 310 individuals who are members of the Motor Carrier Class and approximately 640 individuals who are members of the Non-Carrier Class. As further explained, the claims of the Motor Carrier Class Members are of substantially higher value because they are the Settlement Class Members who have the lion's share of expense reimbursement claims under Labor Code 2802. Konecky PA Decl. (Dkt. No. 26-2) at ¶ 23-25. Not only do these expense reimbursement claims carry higher damages amounts, but they are not subject to the exemption and pre-emption defenses that Defendants have asserted for the overtime and meal and rest period claims. _Id_. at ¶ 23.

excellent outcome for the members of the settlement classes.  Indeed, it was only through extensive investigation, discovery, legal research, negotiation and a full-day mediation that Plaintiff's Counsel were able to secure the evidence and present the legal arguments that persuaded Defendants to ultimately agree to the class-wide relief.

When Plaintiff and his Counsel agreed to take this case as a class action, the result was not certain.  As discussed below, it presented many risks and potential roadblocks that could have resulted in little or no recovery for the Class or the attorneys. Nonetheless, Counsel accepted the case on a wholly contingent fee basis, pursuing it with skill and diligence before achieving the strong result now before this Court.  As a result of Counsel's advocacy and willingness to proceed in the face of substantial risk, Class Members will receive a meaningful recovery without having to wait through considerably more years of litigation and attendant delays.

Plaintiff requests attorneys' fees of $1,250,000, which is 25% the $5,000,000 settlement amount.  This request is well within the accepted range for comparable cases.  As this Court recently noted, "a review of California cases . . . reveals that courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fun[d] under $10 million." *Watson v. Tennant Co*., No. 2:18-cv-02462 WBS DB, 2020 U.S. Dist. LEXIS 166823, at *17 (E.D. Cal. Sep. 10, 2020) (citations omitted).  Here, Plaintiffs' fee request is amply supported by the excellent results achieved, skill of counsel in achieving them, risks undertaken in bringing the case, and the other factors that inform the determination of reasonable fee awards.  As further discussed below, Plaintiffs' fee request also is reasonable under the lodestar-multiplier cross-check method.  The out-of-pocket costs and expenses also are reasonable and well-documented. For these reasons and as further discussed below, Plaintiff respectfully requests that the Court grant the Motion.

## II.   OVERVIEW OF COUNSEL'S WORK ON THIS CASE

In the fall of 2017, Plaintiff's Counsel began investigating complaints from drivers about the terms of their compensation and work arrangements with Defendants. Declaration of Joshua G. Konecky ("Konecky Decl.") at ¶ 10. As part of the investigation, Plaintiff's Counsel met with a

group of motor carrier owners in Sacramento on September 7, 2017 and November 16, 2017. *Id.* Before and after these meetings Counsel spent significant time speaking with Mr. Kimbo and other drivers to ascertain the legal merit of the complaints as well as the extent to which they presented common questions of fact and law. *Id.* These complaints were similar to those Plaintiff's Counsel litigated in the matter of *Villalpando v. Exel Direct, Inc.*, Case No. 3:12-cv-04137-JCS (N.D. Cal.), a prior class action against the previous iteration of Defendants. *Id.* Counsel also conducted thorough research regarding Ryder/MXD and their operations, to identify the responsible entities and the extent to which policies and practices may have changed since the earlier case and in light of the transition of the company to Ryder. *Id.* at ¶ 11. This investigation and commitment to the pre-litigation process was well worth the effort because it enabled Plaintiff to home in on pertinent practices and to develop a solid legal strategy from the start. *Id.*

Plaintiff's counsel did not take on the case lightly.  They knew from previous experience that cases challenging the classification of truck drivers as independent contractors are often vigorously litigated. *Id.* at ¶¶ 50-60. This includes contested motions for class certification, motions for summary judgment on employer-status, motions for summary judgment on liability, and evidentiary disputes concerning the way to prove-up damages on a class basis, among other things. *Id.* Counsel also knew from contemporaneous research that the legal landscape is evolving and uncertain as to whether claims for overtime and the denial of meal and rest periods might ultimately be preempted by the Federal Motor Carrier Act and/or the Federal Motor Carrier Safety Administration Regulations. *Id.* The exemption questions are still hotly debated. *Id.*  at ¶ 53.

Despite these challenges, Counsel believed in the merit of the case and began drafting the initial complaint. *Id.* at ¶ 68. The drafting process was time-consuming and meticulous, requiring multiple interviews with Mr. Kimbo and the other drivers who had reached out to Plaintiff's Counsel, as well as follow-up research regarding Ryder Last Mile, Inc. (f/n/a MXD Group, Inc.) and Ryder System, Inc. and their various locations and operations. Konecky Decl. at ¶¶ 10-12.

On August 16, 2018, Plaintiff submitted a letter to Labor and Workforce Development Agency (LWDA) providing notice of the law enforcement action for civil penalties under Private

Attorneys' General Act of 2004, California Labor Code section 2699 *et seq*. (PAGA). Konecky Decl. at ¶ 12. The complaint was filed on December 12, 2018 in Sacramento Superior Court alleging violations of California law, including that Defendants misclassified the individuals who transport and deliver furniture, appliances, and other retail items as independent contractors, and as a result denied them the rights and protections afforded by the California Labor Code and the Industrial Welfare Commission Wage Order No. 9. *Id*. The Complaint also alleges that Defendants engaged in unfair competition in violation Business & Professions Code §§ 17200, *et seq*., and seeks statutory penalties pursuant to PAGA.

On January 25, 2019, Defendants filed their answer to the Complaint and removed the matter to this Court. (Dkt. No. 1). Following removal, Plaintiff's counsel analyzed Defendants' amount in controversy presentation and conducted further research to evaluate whether there was a basis for remand. Konecky Decl. at ¶¶ 13-14. While Plaintiff ultimately did not move for remand, this investigation enabled further vetting the value of the claims and gathering additional information regarding Defendants and their operations. *Id*.

On February 19, 2020, Plaintiff's Counsel reached out to Defense Counsel to schedule the parties' initial Rule 26(f) conference. Konecky Decl. at ¶ 15. In early March of 2019, Plaintiff prepared requests for production of documents and special interrogatories for service on Defendants. *Id*. At the same time, Plaintiff's Counsel also responded to a number of inquiries from drivers in light of evidence preservation letters, which Defendants sent to the putative class members. *Id*.

On May 17, 2019, the parties conducted their initial Rule 26(f) conference. Konecky Decl. at ¶ 16. On May 28, 2019, the parties filed a joint status report, wherein Defendant vigorously denied Plaintiff's allegations.  (Dkt No. 12 at 3-4, 11.) Despite their differing positions, the parties also indicated a willingness to pursue mediation.  *Id*. at 5-8, 10-11.

On May 31, 2019, the parties filed a proposed order staying proceedings pending mediation and continuing the pretrial scheduling conference (Dkt No. 13), which the Court signed on June 4, 2019.  (Dkt. No. 14).  The Court subsequently extended deadlines further to allow the parties to

1    thoroughly prepare for their mediation.  (Dkt No. 15, 16).  In July of 2019, Plaintiff's Counsel

2    revised the formal discovery requests previously prepared to focus on the categories of documents

3    and other information they needed to prepare for a productive mediation.  Konecky Decl. at ¶ 18.

4    The mediation discovery sought class data and related information including the number of delivery

5    drivers classified by Defendants as independent contractors; the number of assistant or secondary

6    drivers and/or helpers associated with each driver; and the total number of workweeks, piece rates,

7    renumeration; the amount of deductions made to gross earnings; and the total miles driven, among

8    other data. *Id*. at ¶ 19. Plaintiff further sought Defendants' policies, procedures, standards and

9    guidelines as they pertained to the drivers during the liability period, such as training materials,

10   customer service and delivery standards, and timesheets, driver logs, delivery manifests and other

11   information that tracks how the drivers spend their time. *Id*. At the same time, Plaintiff's Counsel

12   worked with the named Plaintiff to identify documents and information in Plaintiff's possession for

13   production to Defendants. *Id*. at ¶ 20.

14       On October 30, 2019, Defendants provided Class Counsel with data in advance of the

15   mediation, which due to the size of the files was transmitted through an FTP sharefile link. Konecky

16   Decl. at ¶ 21. In addition, Counsel prepared a detailed mediation brief examining the evidence as

17   well as evaluating the legal claims and defenses and came to the mediation with a well-informed

18   understanding of the disputed factual and legal issues that would be in play if the case were litigated

19   and tried. *Id*. at ¶ 22.

20       On December 9, 2019, the parties engaged in mediation before Mediator Antonio Piazza, an

21   experienced mediator in this area of law. Konecky Decl. at ¶ 23.  For Plaintiff, Joshua Konecky,

22   Nathan Piller, and Plaintiff Joseph Kimbo attended. *Id*. Defendants' corporate representatives with

23   authority and Defendants' attorneys were also present.  The mediation was rigorous and conducted

24   at arms-length. *Id*. at ¶ 24. The mediator challenged the parties and counsel on many issues. *Id*.

25   With Mr. Piazza's assistance, the parties ultimately were able to find a resolution and agree on the

26   principal terms of a settlement. *Id*. At the close of a full day of negotiations, the parties executed a

27   Memorandum of Understanding to memorialize the agreement.  *Id*.

28

On January 21, 2020, the parties filed a joint status report informing the Court they had reached a settlement to propose to the Court. (Dkt. No. 17). Over the next several months, the parties negotiated the remaining details of the settlement. Konecky Decl. at ¶ 25. Plaintiff's Counsel was thorough and diligent in conferring with Defendants' Counsel by phone and email, working through remaining terms and points of contention, exchanging drafts, and preparing a long-form settlement agreement and notice to the class, among other settlement documents that Plaintiff subsequently submitted to the court. *Id.*

On July 2, 2020, Plaintiff filed the motion for preliminary approval of the proposed class action settlement. *Id.* at ¶ 26. On August 6, 2020, the Court filed its Order (1) certifying the class for settlement purposes; (2) preliminarily approving the class settlement; (3) approving the class notice; and (4) scheduling the final approval hearing. (Dkt No. 30). Following preliminary approval, the parties worked with the settlement administrator to resolve issues that arose with respect to the class data provided by Defendants and other administrative matters that impacted the issuance of notice. (*See* Dkt No. 33)

Following resolution of these administrative matters, notice was issued on November 13, 2020. The court-approved settlement notice informs the Class of the nature of the case, the terms of the settlement, and the allocation formula for calculating individual settlement shares, among other pertinent details. (Dkt. No. 26-2, at pp.60-74). It also is tailored to provide each Class Member with his or her qualifying workweeks and estimated settlement shares. *Id.* at p. 68 (Notice at p.9). It further informs Class Members of the specific amount in attorneys' fees and costs that Plaintiff's Counsel now seek. *Id.* at p. 72 (Notice at p.13). And, the settlement notice informs Class Members of how they can request a copy of this motion for attorneys' fees and costs. *Id.*

## III.   LEGAL BASIS FOR AN AWARD OF ATTORNEYS' FEES AND COSTS

### A.   Entitlement to attorneys' fees

Federal Rule of Civil Procedure 23(h) provides, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). If a negotiated class action settlement includes an award of attorneys' fees, that fee award must be evaluated in the overall context of the settlement. *Knisley v.*

*Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002); *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013) (England, J.).

**B.      The methods for evaluating attorneys' fees in common fund cases**

Where a settlement produces a common fund for the benefit of the entire class there are two methods of calculating attorneys' fees: (1) the lodestar/multiplier method, and (2) the percentage of recovery method. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The Court can choose either method and/or conduct a cross-check using both methods. *Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 949 (9th Cir. 2015); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under the lodestar method, courts multiply the number of hours the prevailing party expended on the litigation by a reasonable hourly rate. *Bluetooth*, 654 F.3d at 941. Under the percentage method, the court may award class counsel a percentage of the common fund recovered for the class. *Id*. at 942.

**C.      The percentage method is particularly appropriate in common fund cases**

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorney's fees from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Ninth Circuit routinely awards attorneys' fees pursuant to the common fund approach "[b]ecause the benefit to the class is easily quantified in common-fund settlements" and avoids the "often more time-consuming task of calculating the lodestar." *In re Bluetooth v. Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). The common fund approach is an appropriate method for awarding attorneys' fees because it "ensures that each member of the winning party contributes proportionately to the payment of attorneys' fees." *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003). Under this approach, Class Members who have accepted the benefits from a common fund recovery, also accept their fair *pro-rata* responsibility to contribute towards the attorneys' fees and costs that created the fund in the first place. *Id*. Specifically, "the common fund doctrine is properly applied if (1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). These requirements are met where "each member of a certified

class has an undisputed and mathematically ascertainable claim to part of a lump-sum [settlement] recovered on his behalf." *Id.*

### D.     The benchmark approach

The Ninth Circuit has approved a "benchmark" percentage of 25%, and courts may adjust this figure upwards or downwards if the record shows "'special circumstances' justifying a departure." *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002) (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.1990)). However, as this Court has observed, upward adjustments are common, as "courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fun[d] under $10 million." *Watson v. Tennant Co*., No. 2:18-cv-02462 WBS DB, 2020 U.S. Dist. LEXIS 166823, at *17 (E.D. Cal. Sep. 10, 2020) (citations omitted).

In deciding whether to maintain or depart from the 25% benchmark, a district court may take into account "the result achieved, the risk involved in the litigation, the skill required and quality of work by counsel, the contingent nature of the fee, awards made in similar cases, and the lodestar crosscheck." *Nwabueze v. AT&T, Inc.,* No. 3:09–1529 SI, 2013 WL 6199596, at *10 (N.D.Cal. Nov. 27, 2013). Here, under the terms of the settlement Plaintiff is seeking attorneys' fees at the benchmark: 25% of the $5,000,000 common fund, which is $1,250,000.

### E.     The "lodestar-multiplier" crosscheck

Courts frequently cross-check a percentage fee request with the lodestar analysis. *See, e.g., Schiller v. David's Bridal, Inc*., No. 1:10-cv-00616-AWI-SKO, 2012 U.S. Dist. LEXIS 80776, at *55 (E.D. Cal. June 11, 2012) (citing *Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 512 (2009).

"In conducting a lodestar cross-check, the court must first determine the dollar value of the proposed percentage-based fee award." *In re Portal Software, Inc. Secs. Litig*. No. C-03-5138-VRW, 2007 U.S. Dist. LEXIS 88886, at *37 (N.D. Cal. Nov. 26, 2007). The next step is to cross-check the proposed percentage fee against the lodestar. *Id*. "Three figures are salient in a lodestar calculation: (1) counsel's reasonable hours, (2) counsel's reasonable hourly rate and (3) a multiplier thought to compensate for various factors (including unusual skill or experience of counsel, or the

ex ante risk of nonrecovery in the litigation)." *In re HPL Tech., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 919 (N.D. Cal. 2005).

The multiplier is calculated from the ratio of the proposed percentage fee to the computed lodestar fee and is assessed for reasonableness. *Portal Software*, 2007 U.S. Dist. LEXIS 88886, at *38. Where the use of the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) ('The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting."); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ("Although counsel have not provided a detailed cataloging of hours spent, the Court finds the information provided to be sufficient for purposes of lodestar cross-check."); *Sutter Health Uninsured Pricing Cases,* 171 Cal. App. 4th 495, 512 (2009) (where lodestar used to cross-check percentage approach, documentation of the lodestar figure is often submitted in summary or declaration form, without submission of full time records).

As discussed below, an award of 25% of the common fund is reasonable and warranted in light of the contingency risk and difficulty of the representation here, as well as the excellent result achieved. Furthermore, the "Lodestar-Multiplier" cross-check supports the reasonableness of Plaintiff's fee request

## IV.   THE BENCHMARK FEE OF 25% OF THE TOTAL SETTLEMENT AMOUNT IS FAIR AND REASONABLE UNDER THE COMMON FUND DOCTRINE

### A.   The substantial benefit provided to the Class justifies the fee award requested

Here, the final settlement fund figure of $5 million represents an substantial result for the Class.  Even after the attorneys' fees and costs that Plaintiff seeks here, the highest service awards permitted under the Settlement Agreement, the PAGA allocation, the estimated costs of settlement administration, and the modest set aside for the Reserve Fund (to pay any late or anticipated claims), an estimated Net Settlement Amount of approximately $3,437,669 would be distributed to the members of the Settlement Classes. This works out to an average *net* share of approximately $8,871 per individual for the members of the Motor Carrier Class and an average share of approximately

$1,074 per individual for the members of the Non-Carrier Class. *See* Konecky PA Decl. (Dkt. No. 26-2) at ¶ 29. These recoveries will bring meaningful relief to the Class.

These average recoveries compare favorably to wage-and-hour class action settlements in this District. *See, e.g., Cooley v. Indian River Transp. Co*., No. 1:18-cv-00491-WBS, 2019 U.S. Dist. LEXIS 79587, at *20 (E.D. Cal. May 10, 2019) (reasoning that average recovery of over $450.14 per truck driver class member was a "favorable" result); *Osegueda v. N. Cal. InAlliance*, No. 18-cv-00835 WBS EFB, 2020 U.S. Dist. LEXIS 7107, at *10 (E.D. Cal. Jan. 15, 2020) (preliminary approval of a wage and hour class action settlement with an approximate recovery of $328.06 per class member); *Garnett v. ADT, LLC*, No. 2:14-02851 WBS AC, 2016 U.S. Dist. LEXIS 84006, at *9 (E.D. Cal. June 27, 2016); *Ontiveros v. Zamora*, No. 2:08-567 WBS DAD, 2014 U.S. Dist. LEXIS 91964, at *41 (E.D. Cal. July 7, 2014) (observing that average recovery of $6,000 was "a generous amount" and citing cases approving lower per-class member averages of $601.91 and $1,000.00); *Garnett v. ADT, LLC*, 2016 U.S. Dist. LEXIS 84006, at *9 (E.D. Cal. June 28, 2016) (approving a class action settlement in an employment case of approximately $1.6 million ($2.7 million gross) to be distributed among a class of 831 people).

The value Counsel has brought to the Class here is excellent in comparison to these benchmarks. In addition, Counsel was able to achieve this excellent result before the parties became entrenched in years of contentious litigation, ensuring that class members will not only receive a strong recovery that outstrips average recoveries in analogous wage-and-hour settlements, but also that they will receive this recovery without the years of delay that come with extensive litigation, trial, and appeals. Despite this highly favorable outcome in comparison to other wage-and-hour settlements, Plaintiffs' Counsel are not seeking an upward adjustment from the 25% benchmark. Given the excellent result, a fee award of 25% of the common fund is well-justified here.

### B. The risks presented by the contingent nature of the recovery and complex nature of the case justify the fee award requested

The risks associated with the contingent nature of this action justify the requested fees. "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."

1    *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002). By

2    undertaking a class action on a contingency fee basis, counsel not only must turn away other

3    income-generating opportunities but must take on a substantial risk of "never receiving

4    compensation at all." *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1217-18 (2008).

5        Counsel take their cases on a contingent fee basis and rely on attorneys' fee awards to

6    continue their work for the enforcement of labor standards. Konecky Decl. at ¶ 49. Indeed, Counsel

7    did not charge the Plaintiff or the Class Members any fees or costs to litigate and bring this case to

8    a successful conclusion. *Id*. As of November 19, 2020, Counsel has invested a total of 468.00

9    attorney and paralegal hours in this case and have not yet received any payment for them. *Id*. at ¶

10   47.  In addition, Counsel have to date incurred $15,525.10 in out-of-pocket costs, which have not

11   yet recouped. *Id*. at ¶ 61. During the course of this case, Counsel also had to forego requests by

12   other prospective clients to bring other cases with merit to ensure that they could continue to

13   adequately and successfully represent the Plaintiff and the class in this matter. *Id*. at ¶ 49.

14       Like other important and complex employment class actions, this case carried a risk of no

15   recovery at all for either the class or the attorneys representing them.  *Id*. at ¶ 55. Examples of the

16   specific risks faced here included whether Plaintiff would prevail on a contested motion for class

17   certification; whether Plaintiff would prove that all Class Members were misclassified as

18   independent contractors; whether Plaintiff would be able to prove up damages across the Class; and

19   whether Defendants would prevail on any number of their affirmative defenses, such as the asserted

20   preemption defenses under the California Motor Carrier Act and/or Federal Motor Carrier Safety

21   Administration (FMCSA). *Id*. at ¶ 55.  Despite these layers of contingent risk, Plaintiff's Counsel

22   committed their time and resources into vigorously representing the Class over the course of several

23   years, holding out until they could achieve an excellent result, even though a lesser settlement would

24   still have been reasonable under the circumstances.

25       As is the nature of contingency work, Plaintiff's Counsel sometimes recover very little or

26   nothing at all, even for cases that may be meritorious, due to a variety of factors that may or may

27   not have anything to do with the merits. Konecky Decl. at ¶ 55.  This is particularly so in cases

28

involving independent contractor misclassification in the transportation industry, which are often hard fought. *Id*. at ¶ 54. When Counsel do succeed in vindicating statutory and employment rights on behalf a class of employees, such as in this case, they depend upon reasonable percentage-of-the-fund fee awards to enable them to take on similar risks in future cases. *Id*. Otherwise, they could not continue to represent employees who are denied wages, but whose cases may be time-consuming and difficult to prove. *Id*. at ¶ 55.

The instant case is one in which Plaintiff's Counsel's skill, efforts, and patient representation of the Class over a three-year period secured substantial benefits for the Class Members.  From the first meetings with the core group of drivers in 2017, through the filing of the case and early discovery in 2018-2019, through the complex mediation and settlement process in 2019-2020, Plaintiff's Counsel worked hard to ensure that the relief being sought by the case would be realized. *Id*. at ¶¶ 7-27. They did so on a wholly contingent basis, effectively loaning their services to the Class Members during this time and taking on the risk of recovering nothing or close to nothing in light of the difficulties and uncertainties of class litigation. *Id*. at ¶ 49.   Given all these considerations, a fee award amounting to the 25% benchmark for common fund settlements is fair and reasonable.

### C.   The requested fees are well within the range of attorneys' fee awarded in similar wage and hour class action settlements

As this Court recently noted, "a review of California cases . . . reveals that courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fun[d] under $10 million." *Watson v. Tennant Co*., No. 2:18-cv-02462 WBS DB, 2020 U.S. Dist. LEXIS 166823, at \*17 (E.D. Cal. Sep. 10, 2020) (citations omitted). Moreover, courts in this district routinely approve fee awards in common fund cases at or above 30%. *See e.g. Osegueda v. N. Cal. Inalliance*, No. 18-cv-00835 WBS EFB, 2020 U.S. Dist. LEXIS 128626, at \*16 (E.D. Cal. July 20, 2020) (award of 33.33% of the common settlement fund); *Watson v. Tennant Co*., No. 2:18-cv-02462 WBS DB, 2020 U.S. Dist. LEXIS 166823, at \*17 (E.D. Cal. Sep. 10, 2020) (same); *Cooley v. Indian River Transp. Co*., No. 1:18-cv-00491, 2019 U.S. Dist. LEXIS 79587, at \*20 (E.D. Cal. May 10, 2019) (fee award of 33% of the common fund in class action alleging missed meal

and rest breaks for a class of truck drivers); *Romero v. Producers Dairy Foods, Inc*., No. 1:05-cv-0484-DLB, 2007 U.S. Dist. LEXIS 86270, 2007 WL 3492841, at * 4 (E.D. Cal. Nov. 14, 2007) (approving fee award of 33% of the class recovery in wage and hour class action involving allegations of unpaid wages and missed meal and rest breaks for a class of delivery drivers); *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482 (E.D. Cal. 2010) (wage-and-hour action putative class-action settlement where court approved award of attorneys' fees in the amount of 33.3 percent of the common fund); *Barbosa v. Cargill Meat Sols. Corp.,* 297 F.R.D. 431, 450 (E.D. Cal. 2013) (approving fee award of 33% and collating nine wage and hour cases approving fee awards of 30-33.3%); *Bond v. Ferguson Enters., Inc*., No. 1:09-cv-1662 OWW MJS, 2011 U.S. Dist. LEXIS 70390, 2011 WL 2648879, at *9 (E.D. Cal. June 30, 2011); *Miller v. CEVA Logistics USA*, Inc., No. 2:13-cv-01321-TLN, 2015 U.S. Dist. LEXIS 104704 at *18-19, 2015 WL 4730176, (E.D. Cal. Aug. 10, 2015).

Fee Awards of 30% or more are also common in cases that resolve at a similar stage of litigation. *See, e.g., Cooley v. Indian River Transp. Co*., No. 1:18-cv-00491 WBS, 2019 U.S. Dist. LEXIS 79587, at *2-3, 21 (E.D. Cal. May 10, 2019) (33%); *Watson v. Tennant Co*., No. 2:18-cv-02462 WBS DB, 2020 U.S. Dist. LEXIS 166823, at *2-3, 17 (E.D. Cal. Sep. 10, 2020) (33 1/3 %); *Cifuentes v. Ceva Logistics U.S., Inc.,* No. 3:16-cv-01957-H-DHB, 2017 U.S. Dist. LEXIS 176279, at *1, 22 (S.D. Cal. Oct. 23, 2017) (33%).

Here, Plaintiff is seeking a fee award of 25% of the common fund, despite achieving a settlement that is superior to many of the cases in which the courts have awarded fees of 30% or higher. That Plaintiff seeks less in percentage-based fees than those typically awarded in analogous cases further supports the reasonableness of the fee request here.

**D.     The "Lodestar-Multiplier" cross-check confirms the reasonableness of the fee award**

As discussed above, the lodestar method may be used to "cross-check" the reasonableness of a percentage award. *Ontiveros v. Zamora*, No. 2:08-567 WBS DAD, 2014 U.S. Dist. LEXIS 91964, at *45 (E.D. Cal. July 7, 2014) (citing *Vizcaino*, 290 F.3d at 1050-51). As the California Supreme Court explained in the seminal case of *Ketchum v. Moses*, 24 Cal.4th 1122 (2001), "fee

awards should be fully compensatory" as well as "adjusted in some manner to reflect the fact that the fair market value of legal services provided on that basis [of the fair market value] is greater than the equivalent noncontingent hourly rate." *Id.* at 1132-1133.[2] Thus, attorneys' fee awards often include significant lodestar enhancements through the application of multipliers.

In class actions, "[m]ultipliers can range from *2 to 4 or even higher*." *Wershba v. Apple Computer, Inc.* 91 Cal.App.4th 224, 255 (2001) (emphasis added); *Jones v. Dominion Res. Servs.,* 601 F.Supp. 2d 756 (W.Va. 2009) ("Courts have generally held that lodestar multipliers between 2 and 4.5 demonstrate a reasonable attorneys' fee"); *see also Vizcaino,* 290 F.3d at 1052 n.6, appx. (collecting cases and finding the risk multiplier fell between 1.0 and 4.0 in 83% of cases, with a range of 0.6-19.6), and at 1050 n.5 (noting class counsel should not necessarily "receive a lesser fee for settling a case quickly"); *Been v. O.K. Industries, Inc.*, 2011 WL 4478766, at *11 (E.D. Okla. 2011) (citing a study "reporting [an] average multiplier of 3.89 in survey of 1,120 class action cases" and finding that a multiplier of 2.43 would be "per se reasonable"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding 3.97 multiplier, and observing that "[i]n recent years multipliers of between 3 and 4.5 have become common."); *Rabin v. Concord Assets Group*, 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (awarding 4.4 multiplier and observing that "multipliers of between 3 and 4.5 have been common"); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.,* No. 16-cv-03698-NC, 2018 U.S. Dist. LEXIS 80219, at *20 (N.D. Cal. May 11, 2018) (finding multiplier of 4.37 to be reasonable); *In re NCAA Ath. Grant-In-Aid Cap Antitrust Litig.*, 2017 U.S. Dist. LEXIS 201108, at *21 (N.D. Cal. Dec. 6, 2017) (finding multiplier of 3.66 to be "well within the range of awards in other cases.").

### 1.    Counsel's time was reasonably spent

Generally, hours are reasonable if they were "reasonably expended in pursuit of the ultimate

---

[2] Federal courts incorporate California state law on deciding an appropriate multiplier when the claims are brought under California state law. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002), *cert. denied*, 537 U.S. 1018 (2002). Here, all Plaintiff's causes of action are brought under California state law, as the case was removed to this Court based on diversity jurisdiction and the Class Action Fairness Act, rather than federal question jurisdiction. *See* Defendant's Notice of Removal (Dkt. 1).

result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client." *Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983). Counsel's work on this case included in-person meetings and fact-intensive interviews with Plaintiff and Class Members at the beginning, middle and end of the case; the drafting and filing of pleadings; legal research on complex issues; preparing written discovery; preparing and responding to mediation discovery; preparing a substantial mediation brief and exposure analysis; a lengthy in-person mediation; prolonged post-mediation negotiations to agree on the detailed terms of the actual settlement agreement; drafting of the settlement papers and approval motions; working with the Settlement Administrator on the settlement notice and various administrative issues; and communications with putative class members throughout the pendency of this case.  Konecky Decl. at ¶¶ 7-27.

As of November 19, 2019, Counsel has invested approximately 468.00 hours of work into this case, for a total lodestar of approximately $334,692.00. A breakdown of the hours and corresponding lodestar on a timekeeper by timekeeper basis is present in Counsel's declaration. *See* Konecky Decl. at ¶ 47.  Counsel's declaration further shows that the time reported was devoted to projects and tasks that were necessary components of the litigation and important to achieving the class action settlement. *Id.* at ¶¶ 36-41.  As discussed below, the billing rates used by Plaintiff's Counsel are within the market range and have been consistently approved by the courts.

2.  **Counsel's hourly rates are within the market range and have been consistently approved by the courts**

The general principle for determining the reasonableness of hourly rates is that they "are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008). This rule applies even when, as here, the attorneys representing the plaintiffs performed the work on a contingent fee basis.  *See, e.g., Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989).  Plaintiff's Counsel sets their rates on an annual basis through a process of continual monitoring of prevailing market rates charged by both defense and plaintiffs' law firms, for individuals with similar levels of skill and experience who are doing comparable work as our attorneys and staff. *See* Konecky Decl. at ¶ 43.

Federal and state courts in California have consistently approved the rates charged by Schneider Wallace Cottrell Konecky LLP. *See, e.g.*, *Helmick v. Air Methods Corp.*, No. RG13-665373 (Alameda Cty. Sup Ct.) at. p. 6 (approving 2020 rates); *Nevarez v. Forty Niners Football Co., LLC*, Case No. 16-CV-07013-LHK (N.D. Cal. July 23, 2020) (approving 2019 rates); *Shaw v. AMN Services LLC et al.*, No. 3:16-cv-02816-JCS (N.D. Cal. May 31, 2019) (approving 2018 rates); *Knapp v. Art.com, Inc.*, No. 3:16-cv-00768-WHO (N.D. Cal. October 24, 2018) (approving 2018 rates); *Janssen v. Square, Inc.*, Case No. CGC-16-549980, Superior Court of California, County of San Francisco, Order dated September 26, 2018 (approving 2018 rates); *Bartoni v. American Medical Response*, Case No. RG08382130 Superior Court of California, County of Alameda, Order dated September 17, 2019 (approving 2018 rates after contested fee petition); *Marine v. Interstate Distributor Co.*, Case No. RG07358277, Superior Court of California, County of Alameda, Order dated November 19, 2016 (approving 2016 rates); *Villalpando v. Exel Direct Inc.*, 2016 WL 7740854, at *1 (N.D. Cal. Dec. 12, 2016) (approving 2016 rates and observing that "the hourly rates of Lead Counsel Schneider Wallace Cottrell Konecky [] have consistently and recently been approved as reasonable by the courts."); *Carnes v. Atria Senior Living Inc.*, Case No. 14-cv-02727-VC, ECF 115, at 4-5 (N.D. Cal. July 12, 2016); *Meza v. S.S. Skikos, Inc.*, Case No. 3:15-cv-01889-TEH, ECF 58, at 4 (N.D. Cal. May 25, 2016); *Jeter-Polk v. Casual Male Store, LLC*, Case No. EDCV 14-891-VAP (DTBx), ECF 60, at 17 (C.D. Cal. June 29, 2016); *Perez, et al., v. rue21*, Case No. CISCV167815. Superior Court of California, County of Santa Cruz, Order filed March 22, 2013 (approving 2013 rates); *Williams, et al. v. H&R Block Enterprises, Inc.*, Case No. RG08366506, Superior Court of California, County of Alameda, Order filed November 8, 2012 (approving 2012 rates); *Ortiz, et al., v. Home Depot U.S.A., Inc.*, Case No.: 5:09-cv-03485-LHK (N.D. Cal.), Order filed February 2, 2012 (approving 2011 rates); *Bond-Hatch v. Quest Diagnostics, Inc.*, Case No. CGC-06-450274, Superior Court of California, County of San Francisco, Order filed April 28, 2011 (approving 2011 rates); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *22 (N.D. Cal. 2011) (approving 2010 rates); *National Federation of the Blind v. Target Corporation*, Case No. C 06-01802 (N.D. Cal.), Order filed August 3, 2009 (approving 2009 rates

1  in a contested fee petition); *Chery v. City College of San Francisco*, Case No. C 04-4981 WHA

2  (N.D. Cal.) (approving 2006 rates).

3  Moreover, Plaintiff's Counsel are among the leading employment and class action attorneys

4  in California and nationwide. *See* Konecky Decl. at ¶¶ 32-41, Exhs. A & B. They have extensive

5  experience in wage and hour class actions, including independent contractor misclassification

6  cases. *Id.* Their billing rates are within the market range for attorneys' of comparable experience

7  and skill.

8  **3.    A multiplier is warranted**

9  Courts have long recognized that the contingent and deferred nature of fee awards in cases

10  with statutory attorney fees "requires that the fee be adjusted in some manner to reflect the fact that

11  the fair market value of legal services provided on that basis is greater than the equivalent

12  noncontingent hourly rate." *Horsford v. Bd. of Trustees of California State Univ.*, 132 Cal. App.

13  4th 359, 394–95 (2005) (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-33 (2001)); *see also*

14  *Fischel v. Equitable Life Assurance Soc'y of the United States*, 307 F.3d 997, 1008 (9th Cir. 2002).

15  Thus, fee awards often require significant lodestar enhancements through the application of

16  multipliers. *See id.* "A lawyer who both bears the risk of not being paid and provides legal services

17  is not receiving the fair market value of his work if he is paid only for the second of these functions.

18  If he is paid no more, competent counsel will be reluctant to accept fee award cases." *Ketchum*, 24

19  Cal.4th at 1133. A risk enhancement is "earned compensation; unlike a windfall, it is neither

20  unexpected nor fortuitous. Rather it is intended to approximate market-level compensation for such

21  services which typically pay a premium for the risk of nonpayment or delay in payment of

22  attorney's fees." *Id.* at 1138.

23  While Plaintiffs seek a multiplier of approximately 3.7 here, the overall reasonableness of

24  Plaintiff's request is underscored by the fact that a higher multiplier would be justified under

25  applicable law as well.

26  As discussed above, multipliers normally range from two to four or higher. *Wershba*, 91

27  Cal.App.4th at 255; *Jones v. Dominion Res. Servs.*, 601 F.Supp. 2d 756 (W.Va. 2009) ("Courts

28

have generally held that lodestar multipliers between 2 and 4.5 demonstrate a reasonable attorneys' fee"); *see also Vizcaino*, 290 F.3d at 1052 n.6, appx. (collecting cases and finding the risk multiplier fell between 1.0 and 4.0 in 83% of cases, with a range of 0.6-19.6), and at 1050 n.5 (noting class counsel should not necessarily "receive a lesser fee for settling a case quickly"); *Been v. O.K. Industries, Inc.*, 2011 WL 4478766, at *11 (E.D. Okla. 2011) (citing a study "reporting [an] average multiplier of 3.89 in survey of 1,120 class action cases" and finding that a multiplier of 2.43 would be "per se reasonable"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding 3.97 multiplier, and observing that "[i]n recent years multipliers of between 3 and 4.5 have become common."); *Rabin v. Concord Assets Group*, 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (awarding 4.4 multiplier and observing that "multipliers of between 3 and 4.5 have been common"); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.,* No. 16-cv-03698-NC, 2018 U.S. Dist. LEXIS 80219, at *20 (N.D. Cal. May 11, 2018) (finding multiplier of 4.37 to be reasonable); *In re NCAA Ath. Grant-In-Aid Cap Antitrust Litig*., 2017 U.S. Dist. LEXIS 201108, at *21 (N.D. Cal. Dec. 6, 2017) (finding multiplier of 3.66 to be "well within the range of awards in other cases.").

Factors considered in determining the appropriate lodestar multiplier generally include: (1) the risks presented by the contingent nature of the case; (2) the difficulty of the questions involved and the skill requisite to perform the legal service properly; (3) the nature of the opposition; (4) the preclusion of other employment by the attorney from accepting the case; and (5) the result obtained. *Ketchum v. Moses* 24 Cal.4th 1122, 1132 (2001); *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 582 (2004); *Serrano v. Priest*, 20 Cal.3d 25, 48-49 (1977). All these factors favor approval of a multiplier higher than the 3.7 multiplier that Plaintiff's Counsel seeks here. *See supra* Sections IV.A-D. above.

A multiplier is further warranted to recognize Counsel's ability to achieve a high value settlement at a relatively early stage of the litigation.  As the Court in *Lealao* reasoned:

> [T]he promptness of settlement cannot be used to justify the refusal to apply a
> multiplier to reflect the size of the class recovery without exacerbating the disincentive
> to settle promptly inherent in the lodestar methodology.  Considering that our Supreme
> Court has placed and extraordinarily high value on settlement (*see, e.g., Neary v.*

*Regents of University of California (*1992) 3 Cal.4th 273, citing, inter alia, *McClure v. McClure* (1893) 100 Cal. 339, 343), it would seem counsel should be rewarded, not punished, for helping to achieve that goal, as in federal courts. (*Merola v. Atlantic Richfield Co.* (3d Cir.1975) 515 F.2d 165, 168 [lodestar approach "permits the court to recognize and reward achievements of a particularly resourceful attorney who secures a substantial benefit for his clients with a minimum of time invested"]; (citations omitted.) While, as our Supreme Court recognized in *Serrano v. Priest* (1977) 20 Cal.3d 25, 48, fn. 23, class action fee awards that are unjustifiably large create problems for the bench and bar, awards that are too small can also be problematic, as they chill the private enforcement essential to the vindication of many legal rights and obstruct the representative actions that often relieve the courts of the need to separately adjudicate numerous claims.

*Lealao v. Beneficial Cal., Inc.,* 82 Cal.App.4th 19, 52-53 (2000).

Indeed, while Plaintiff's Counsel were able to achieve the settlement before more time-consuming events such as summary judgment, trial and appeal, the case still presented a variety of moving parts and contingencies, which in turn demanded skill, attentiveness, patience and creativity to resolve. Konecky Decl. at ¶¶ 59-60. Further, awarding an appropriate multiplier in a successful case such as this one will enable Plaintiff's Counsel to continue to represent employees who are denied lawful wages, but whose cases may be time-consuming and difficult to prove. As discussed above, Counsel generally take their cases on a contingent fee basis and therefore rely on awards for attorneys' fees with appropriate multipliers to continue their work for the enforcement of labor standards. *Id*. at ¶¶ 54-55..

The challenges that Counsel had to confront and the risks they had to fully absorb on behalf of the class here are precisely the reasons for multipliers in contingency fee cases. As the California Supreme Court explained in *Ketchum*:

> A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans.

*Ketchum, supra*, 24 Cal.4th at pp. 1132-33 (quoting Posner, Economic Analysis of the Law, 534, 567 (4th ed. 1992)).

Here, Counsel committed themselves and their firm to developing and pressing important but risk-laden claims to enforce the Class Members' rights and maximize the class recovery for

over three years. Konecky Decl. at ¶¶ 54-60. Counsel also displayed considerable skill in effectively prosecuting and favorably resolving this case. Counsel's legal analysis and presentation, both prior to and during the mediation, was critical to securing substantial relief for the class. *Id*. at ¶ 54. Further, Counsel's skill in prosecuting and resolving this case is evidenced by the terms of the settlement they ultimately achieved. The Settlement Agreement is for a non-reversionary common settlement fund of $5 Million. As discussed above, this is an excellent result that will result in significant recoveries for the individual Class Members.

In light of the foregoing, the Court should grant the request for a fee award of $1,250,000 which would result in a multiplier of 3.7 of Counsel's lodestar.

## V.   PLAINTIFF'S REQUESTED COST REIMBURSEMENTS ARE REASONABLE

Plaintiff's Counsel are entitled to recover the out-of-pocket costs and litigation expenses they reasonably incurred in investigating, prosecuting, and resolving the case. *Staton v. Boeing Co*., 327 F.3d 938, 974 (9th Cir. 2003); *In re Media Vision Tech. Sec. Litig.*, 913 F.Supp. 1362, 1366 (N.D. Cal. 1996); *see also* 29 U.S.C. § 216(b); Fed. R. Civ. P. 54(d)(1) ("Costs Other Than Attorney's Fees"); Fed. R. Civ. P. 54(d)(2)(A) ("A claim for attorney's fees and *related nontaxable expenses*….") (emphasis added)). Even though not normally taxable as costs, out-of-pocket expenses incurred by an attorney that would normally be charged to a fee-paying client are recoverable as attorneys' fees. *Chalmers v. City of L.A.*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986), amended by 808 F.2d 1373 (9th Cir. 1987). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." *Rutti v. Lojack Corp*., 2012 U.S. Dist. LEXIS 107677, at *34 (C.D. Cal. July 31, 2012).

Here, as set forth in the accompanying Konecky Declaration, Plaintiff's reimbursable out-of-pocket expenses include the following: (1) filing fees, court fees, and service of process; (2) mediation fees; (3) legal research; (4) overnight and bulk mail; and (5) copies and postage. Konecky Decl. at ¶ 62. The total reimbursable costs incurred by Plaintiffs' Counsel in this case amount to $15,525.10. Konecky Decl. at ¶ 61, Exh. C (item-by-item listing of costs). The expenses set forth

above were reasonable, were necessary to the prosecution of the case, and are customarily billed to fee-paying clients.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiffs' motion for attorneys' fees and costs.

Dated:  November 19, 2020                    */s/ Joshua G. Konecky*
                                             Joshua G. Konecky
                                             SCHNEIDER WALLACE
                                             COTTRELL KONECKY LLP

                                             Attorneys for Plaintiffs