Joshua G. Konecky (SBN 182897)
Leslie H. Joyner (SBN 262705)
Nathan Piller (SBN 300569)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel:  (415) 421-7100
Fax:  (415) 421-7105
jkonecky@schneiderwallace.com
ljoyner@schneiderwallace.com
npiller@schneiderwallace.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSEPH KIMBO, an individual; on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MXD GROUP, INC., a California corporation; RYDER SYSTEM, INC., a Florida Corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:19-CV-00166-WBS-KJN<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SERVICE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:   February 8, 2021**<br>**Time:   1:30 p.m.**<br>**Location: Courtroom 5, 14th Floor** |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on February 8, 2021 at 1:30 p.m. or as soon thereafter as the parties may be heard, Plaintiff will move, and hereby does move, this Court for an Order granting a service award in the amount of $15,000 to the named Plaintiff Joseph Kimbo.  The service award sought is warranted in light Mr. Kimbo's time and efforts in this case, the personal risks he took on in bringing the lawsuit, Mr. Kimbo's agreement to a broader release than that applicable to the other Class Members under the Settlement Agreement, and the important public policies underlying the Plaintiff's claims. The requested service award for Mr. Kimbo also falls comfortably within the range of service awards granted by the courts in comparable litigation.

Pursuant to the Joint Stipulation of Settlement and Release ("Settlement Agreement") (Dkt. No. 26-2), Plaintiff is authorized to apply for a service award of up to $15,000. Defendants Ryder Last Mile, Inc. (f/n/a MXD Group, Inc.) and Ryder System, Inc. ("Defendants" or "Ryder/MXD") do not oppose Plaintiff's requested service award.

This motion is based on the accompanying Memorandum of Points and Authorities; the Declaration of Joseph Kimbo; such oral argument as may be heard by the Court; and all other papers on file in this action.

Respectfully submitted,

Dated:  November 19, 2020

SCHNEIDER WALLACE
COTTRELL KONECKY LLP

/s/ *Joshua G. Konecky*

Joshua G. Konecky
Counsel for Plaintiffs

I.    INTRODUCTION ........................................................................................................1

II.   SUMMARY OF PLAINTIFF'S WORK ON THIS CASE ......................................2

III.  LEGAL STANDARD................................................................................................4

IV.   THE SERVICE AWARD TO PLAINTIFF IS REASONABLE..............................6

      A.    Plaintiff invested substantial time and effort for the benefit of the class
            members ........................................................................................................6

      B.    The Class Members received a substantial benefit from Plaintiff's service ....................6

      C.    The Service Award is justified by the duration of the litigation.....................................7

      D.    Plaintiff acted in the best interests of the class ..............................................8

      E.    Plaintiff took a substantial risk in bringing this class action ...........................................8

      F.    The proposed service award is a small fraction of the settlement amount ......................9

      G.    The requested service award promotes the public policies underlying the
            Labor Code.................................................................................................11

V.    CONCLUSION.........................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Alberto v. GMRI, Inc.*
   252 F.R.D. 652 (E.D. Cal. 2008) ........................................................................... 10

*Asare v. Change Grp. N.Y., Inc.*
   2013 U.S. Dist. LEXIS 165935 (S.D.N.Y. 2013) ...................................................... 9

*Clark v. American Residential Services LLC*
   175 Cal. App. 4th 785 (2009) .................................................................................. 5

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*
   2008 WL 7863877 (N.D. Cal. 2008) ........................................................................ 5

*DeWitt v. Darlington Cty*
    2013 U.S. Dist. LEXIS 172624 (D.S.C. 2013) ........................................................ 9

*Dynamex Operations W. v. Superior Court*
   4 Cal. 5th 903 (2018) ............................................................................................. 11

*Earley v. Superior Court*
   79 Cal.App.4th 1423 (Cal. 2000) ........................................................................... 11

*Glass v. UBS Fin. Servs., Inc.*
   2007 WL 221862 (N.D. Cal. 2007) .......................................................................... 5

*In re Toys R Us – Del., Inc. – Fair & Accurate Credit Transactions (FACTA) Litig.*
   295 F.R.D. 438 (C.D. Cal. 2014) ......................................................................... 8, 9

*Lazarin v. Superior Court*
   188 Cal.App.4th 1560 (Cal. 2010) ......................................................................... 11

*Mego Fin. Corp. Sec. Litig.*
   213 F.3d 454 (9th Cir. 2000) .................................................................................. 10

*Millan v. Cascade Water Servs., Inc.*
   2016 WL 3077710 (E.D. Cal. 2016) ......................................................................... 9

*Murphy v. Kenneth Cole Prods. Inc.*
   40 Cal. 4th 1094 (Cal. 2007) .................................................................................. 11

*Ontiveros v. Zamora*
   303 F.R.D. 356 (E.D. Cal. 2014) ............................................................................. 5

*Radcliffe v. Experian Info. Solutions, Inc.*
   715 F.3d 1157 (9th Cir. 2013) ................................................................................ 10

*Rodriguez v. West Publ'g Corp.*
   563 F.3d 948 (9th Cir. 2009) .................................................................................... 4

*Sandoval v. Tharaldson Employee Mgt., Inc.*
   2010 WL 2486346 (C.D. Cal. 2010) ...................................................................... 10

*Sav-On v. Superior Court*
   34 Cal. 4th 319 (Cal. 2004) .................................................................................... 11

*Schaffer v. Litton Loan Servicing, LP,*
   2012 U.S. Dist. LEXIS 189830 (C.D. Cal. 2012) ........................................................ 6, 8

*Singer v. Becton Dickinson & Co.*
   2009 WL 4809646 (S.D. Cal. 2009) .............................................................................. 5

*Staton v. Boeing Co.*
   327 F.3d 938 (9th Cir. 2003) .............................................................................. 4, 5, 6, 9

*Trujillo v. City of Ontario*
   2009 WL 2632723 (C.D. Cal. 2009) .............................................................................. 8

*Watson v. Tennant Co.*
   2020 U.S. Dist. LEXIS 166823 (E.D. Cal. 2020) ..................................................... 5, 10

*Wren v. RGIS Inventory Specialists*
   2011 WL 1230826 (N.D. Cal. 2011) .............................................................................. 9

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiff requests that this Court approve a service award to named Plaintiff Joseph Kimbo for his important and substantial contributions to the Class in both the litigation and settlement of this matter. Plaintiff seeks a service award for Mr. Kimbo in the amount of $15,000. The requested service award is warranted in light of Mr. Kimbo's time and efforts in helping Counsel to develop and prosecute this case; the personal risks he undertook in bringing this lawsuit; his commitment to prosecuting the case in the best interest of the Class; the fact that he has nonetheless executed a broader release than the other Class Members; and the important public policies that he helped to vindicate by stepping forward to be the class representative.  Mr. Kimbo agreed to the proposed settlement without any condition of receiving a service award because he was committed to bringing relief to the Class.  Furthermore, the requested service award falls well within the range of service awards granted by the courts.

Defendants Ryder Last Mile, Inc. (f/n/a MXD Group, Inc.) and Ryder System, Inc. ("Defendants" or "Ryder/MXD")) do not oppose the requested service award, which will be paid from the $5 million Gross Settlement Fund. The requested service award represents only 0.3% of the total settlement amount (and 0.4% of the net settlement amount to be distributed to the other Class Members), further underscoring its reasonableness.

Mr. Kimbo has submitted a declaration in support of the settlement and the requested service award, which attests to his efforts and goals in bringing this case and helping Class Counsel to litigate it effectively on behalf of the Class. Mr. Kimbo worked diligently with Counsel to represent the interests of this class of modest-wage individuals who worked for Defendants to deliver furniture and appliances while classified as independent contractors. Mr. Kimbo put aside his personal interests and the individual claims he might otherwise have made so that he could represent the best interests of the Class and make the significant relief secured by this case a reality for hundreds of other Class Members. He deserves a reasonable award in consideration of the significant benefit that he has conferred on the Class Members by working with Counsel to bring

1    about a strong result, the considerable personal risks he took to serve as a class representative, and

2    his agreement to a broader release of claims than the unnamed Class Members.  For the reasons

3    stated herein, Plaintiff respectfully requests that this Court approve the proposed service award of

4    $15,000 to Mr. Kimbo.

5    **II.    SUMMARY OF PLAINTIFF'S WORK ON THIS CASE**

6         The procedural history of this case has been well-documented in Plaintiff's motion for

7    preliminary approval of the proposed settlement and Plaintiff's motion for reasonable attorneys'

8    fees, which are being filed contemporaneously with this motion. The following is a brief, non-

9    exhaustive summary that details the work Mr. Kimbo performed.

10        Mr. Kimbo worked for Defendants transporting and delivering consumer goods to

11   Defendants' customers until Defendants terminated his employment in March 2018.  He was one

12   of the core group of drivers who met with Counsel in September 2017 and November 2017 to share

13   their hardships and concerns over the way Defendants' were controlling their work assignments

14   and limiting their compensation. Kimbo Decl. at ¶ 4. Mr. Kimbo's complaints were very similar to

15   the wage and hour complaints of his co-workers.  *Id*. at ¶¶ 4-5. They formed the basis for the

16   eventual class action complaint in this case, which alleged wage and hour violations arising from

17   the classification of Mr. Kimbo and the other drivers as independent contractors rather than

18   employees. *Id*. at ¶ 3; *see also* Complaint (Dkt. No. 1-2).

19        After the initial meetings with Counsel in September and November 2017, Mr. Kimbo

20   stepped forward to be the representative plaintiff to pursue this class action complaint on behalf of

21   his co-workers.  In doing so, Mr. Kimbo chose to forego other potential individual claims he had

22   against Defendants so that he would not risk having a conflict with the class members he would be

23   representing.  For example, while working for Defendants, Mr. Kimbo complained that his manager

24   would regularly mock his African accent and assign him the least favorable routes, even though he

25   was one of the top performers in Defendants' ranking system. Kimbo Decl. at ¶ 7.  Nonetheless,

26   Mr. Kimbo did not pursue these potential individual claims of harassment and discrimination, but

27   instead remained committed to the class wage and hour claims that he had in common with the

28

1   other class members.

2        In his role as the class representative, Mr. Kimbo stayed in steady contact with Counsel and

3   provided them with valuable information and assistance in the prosecution of the case at each major

4   stage.. *Id*. at ¶ 10; *see also* Declaration of Joshua Konecky ISO Motion for Reasonable Attorneys'

5   Fees, Costs and Service Award ("Konecky Decl.") at ¶ 66.  At the initial stage, Mr. Kimbo provided

6   valuable information during lengthy telephonic interviews to assist Counsel in drafting the

7   pleadings. Kimbo Decl. at ¶ 10.  Thereafter, he reviewed the Private Attorneys General Act Notice

8   to the California Labor Workforce Development Agency (LWDA) before it was submitted on

9   August 16, 2018, and the class action complaint before it was filed in Superior Court on December

10  12, 2018. *Id.*

11       On January 25, 2019, Defendants removed the matter to this Court. (Dkt. No. 1). Shortly

12  thereafter, Mr. Kimbo worked with Counsel to prepare written discovery requests focused on facts

13  relevant to the criteria for class certification, such as Defendants' policies and procedures. Kimbo

14  Decl. at ¶ 10. After the parties agreed to mediation, the discovery requests were revised to focus on

15  the categories of data, documents, and other information that were needed to prepare for a

16  productive mediation. Konecky Decl. at ¶ 18.

17       Mr. Kimbo also searched for and produced 331 pages of documents on several subjects to

18  respond to Defendants' discovery requests and prepare for mediation. Kimbo Decl. at ¶ 12. As part

19  of this process, Mr. Kimbo spent considerable time poring over his bank statements from 2015 to

20  2018 to identify and isolate income from Defendants and the out of pocket expenses he incurred in

21  the scope of his work, including for labor, fuel, truck rental costs and other expenses. *Id.* Mr. Kimbo

22  also devoted significant time to communicating with Counsel about this project, which played an

23  important role in building a model for estimating Defendants' exposure for unreimbursed expenses

24  across the class. *Id.* He also reviewed documents and data produced by Defendants for mediation

25  and worked with Counsel to develop the settlement strategy. *Id.* at ¶ 13.

26       On December 9, 2019, the parties participated in a full-day mediation session before a highly

27  regarded mediator experienced in the area of wage-and-hour class actions, Antonio Piazza. Mr.

28

1    Kimbo traveled from his home in Elk Grove, California to San Francisco to personally appear at
2    the mediation. Kimbo Decl. at ¶ 14. He remained at the mediation the entire day, working with
3    Counsel and communicating directly with the mediator to provide a first-hand account of his
4    experiences. *Id.* at ¶¶ 14-15. After considerable effort, the mediation resulted in an agreement on
5    the overarching terms for a class action settlement.

6         Over the months that followed, the parties negotiated the remaining details of the
7    settlement—many significant—and finalized a long-form settlement agreement and notice to the
8    class. Kimbo Decl. at ¶ 15. Throughout the process, Mr. Kimbo remained in regular communication
9    with Counsel. *Id.* Once the settlement documents were complete, Mr. Kimbo executed them after
10   careful review and consultation with Counsel. *Id.*

11        Under Paragraph 101 of the Settlement Agreement, Mr. Kimbo has agreed to a broader
12   release that encompasses all claims he may have against Ryder/MXD. *See* Settlement Agreement
13   at ¶ 101.  This stands in contrast to the narrower release for unnamed Class Members, who waive
14   only those wage-and-hour claims that were pled or could have been pled based on the allegations
15   in the Complaint. *Id.* at 99.

16        Mr. Kimbo was a current employee of Defendants when he first reached out to Counsel.
17   Kimbo Decl. at ¶¶ 3-4. Serving as a class representative therefore came with the risk of exposing
18   Mr. Kimbo in a public forum to his current employer and managers as someone willing to lead a
19   major legal challenge to their policies and practices. *Id.* at ¶ 8. Mr. Kimbo was also aware that
20   Defendants might have been able to recover costs from him if they prevailed on his claims. *Id.*
21   These risks, however, did not stop Mr. Kimbo from stepping forward and putting his personal
22   interests aside to represent the class. *Id.*

23   **III.   LEGAL STANDARD**

24        Service awards are common in class action cases. *Rodriguez v. West Publ'g Corp.*, 563 F.3d
25   948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action cases."); *see also Staton*
26   *v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) ("named plaintiffs … are eligible for reasonable
27   incentive payments."). The purpose of such awards is "to compensate class representatives for work

28

1   done on behalf of the class [and] make up for financial or reputational risk undertaken in bringing

2   the action….” *Rodriguez*, 563 F.3d at 958-59; *Staton*, 327 F.3d at 977.

3         Numerous courts in the Ninth Circuit have approved service awards of $15,000 or more,

4   including in cases which resolved at a similar stage of litigation. *See, e.g., Watson v. Tennant Co.,*

5   No. 2:18-cv-02462 WBS DB, 2020 U.S. Dist. LEXIS 166823, at *19 (E.D. Cal. Sep. 10, 2020)

6   (Shubb, J.) (approving incentive payment of $25,000 to a single named plaintiff); *Singer v. Becton*

7   *Dickinson & Co.*, 2009 WL 4809646, at *9 (S.D. Cal. Dec. 9, 2009) (approving $25,000 service

8   award in two-and-a-half-year litigation in part because plaintiff spent considerable time on the

9   action, conducted extensive informal discovery and engaged in day-long mediation); *Curtis-Bauer*

10   *v. Morgan Stanley & Co., Inc.*, 2008 WL 7863877, at * 1 (N.D. Cal. Oct. 22, 2008) (approving

11   $25,000 service award because plaintiff took risks in her career by coming forward and for effort

12   she devoted to case); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at * 17 (N.D. Cal. Jan. 26,

13   2007) (approving $25,000 service award to each of four class representatives because of risk

14   incurred by putting their names on complaint and engaging in extensive informal discovery); *see*

15   *also Ontiveros v. Zamora*, 303 F.R.D. 356, 366 (E.D. Cal. 2014) (Shubb, J.) (approving $15,000

16   service award).

17         In evaluating the appropriateness of service awards, courts consider the following relevant

18   factors: (1) the amount of time and effort spent by the class representative on the litigation; (2) the

19   degree to which the class representative's efforts benefitted the class; (3) the personal difficulties

20   encountered by the class representative; (4) the duration of the litigation; (5) the personal benefit,

21   or lack thereof, enjoyed by the class representative as a result of the litigation; and (6) the risk to

22   the class representative in commencing suit, both financial and otherwise. *See Staton*, 327 F.3d at

23   977; *Watson v. Tennant Co.*, No. 2:18-cv-02462 WBS DB, 2020 U.S. Dist. LEXIS 166823, at *19

24   (E.D. Cal. Sep. 10, 2020); *Clark v. American Residential Services LLC*, 175 Cal. App. 4th 785,

25   804-07 (2009). As discussed below, application of these factors demonstrates that the service award

26   requested in the Settlement for Mr. Kimbo is warranted here.

27

28

**IV.   THE SERVICE AWARD TO PLAINTIFF IS REASONABLE**

> **A.   Plaintiff invested substantial time and effort for the benefit of the class members**

"An incentive award is appropriate where…the 'class representatives remained fully involved and expended considerable time and energy during the course of the litigation.'" *Schaffer v. Litton Loan Servicing, LP*, 2012 U.S. Dist. LEXIS 189830, at *61 (C.D. Cal. Nov. 13, 2012).

Here, Mr. Kimbo devoted many hours to this case and made invaluable contributions to its effective prosecution. Mr. Kimbo provided important information to Counsel, engaged in lengthy interviews with Counsel, attended several in-person meetings, and engaged in numerous other communications with Counsel throughout the case. Kimbo Decl. at ¶¶ 4-6, 9-10. Mr. Kimbo also assisted in the drafting of pleadings; reviewed the PAGA notice and the Complaint before they were filed; conducted a close review of his bank records over a period of three years to assist in the calculation of damages for unreimbursed expenses; produced 331 pages of documents in mediation discovery; traveled to and participated in a full day of mediation in San Francisco; participated actively in the mediation and provided a first-hand account of his experience to the mediator; communicated regularly with Counsel following the mediation during the drafting of the long-form settlement agreement, and reviewed and approved the final settlement papers. *Id.* at ¶¶ 3-13, 17.

Mr. Kimbo's dedication and involvement has been a fundamental and essential element of this case. There would be no case or settlement without his contributions and service.

> **B.   The Class Members received a substantial benefit from Plaintiff's service**

In addition to weighing the amount of time and effort expended by the named plaintiffs, courts also consider the degree to which their efforts benefitted the class. *Staton*, 327 F.3d at 977 (internal citation omitted).

Here, Mr. Kimbo's numerous contributions to this litigation will significantly benefit the Class. First, the case would not have been filed but for Mr. Kimbo's time and effort in bringing the class complaints to the attention of Plaintiffs' Counsel. Second, Mr. Kimbo put his personal interests aside and committed himself to representing the interests of the Class as a whole, rather than maximizing just his own personal recovery or asserting other individual claims that were

beyond the scope of the class action complaint. Third, Mr. Kimbo provided important information to support the claims asserted and Plaintiff's exposure analysis for mediation. Kimbo Decl. at ¶ 12. Fourth, as discussed in the papers in support of Plaintiff's Motion for Preliminary Approval (Dkt. No. 26), the Class Members stand to receive a substantial benefit from Plaintiff's efforts. Indeed, the Motor Carrier Class Members are estimated to receive an average settlement share of approximately $8,871 per person the Non-Carrier Class Members are estimated to receive an average share of approximately $1,074 per person. *See* Declaration of Joshua Konecky in Support of Motion for Preliminary Approval ("Konecky PA Decl.") (Dkt. No. 26-2) at ¶ 29.[1] These awards will provide real and substantial monetary relief to hardworking drivers who have performed difficult physical labor for modest wages. The substantial benefit Plaintiff's efforts have secured for the Class weigh in favor of granting the requested service award.

**C.     The Service Award is justified by the duration of the litigation**

Perseverance in pursuing litigation on behalf of a class over the course of several years supports the approval of reasonable service awards. Service awards are especially warranted where named plaintiffs persevere through litigation for a number of years. *In re Toys R Us – Del., Inc. –*

---

[1] As discussed in Plaintiff's Preliminary Approval Motion, individual shares within each Class will go up or down in proportion to the Settlement Class Member's total workweeks during the relevant time period. An estimate of each Settlement Class Member's individual share is provided in the Notice of Settlement, and tailored to each individual, based on the individual's total workweeks and whether the individual is a Motor Carrier or Non-Carrier. *See* proposed Notice to Class, Exhibit 1 to Settlement Agreement (Exh. 1 to Konecky PA Decl.). As discussed in paragraphs 21-29 of the Konecky PA Declaration (Dkt. No. 26-2), Motor Carrier Class Members contracted directly with Defendants and were responsible for incurring the truck, fuel, insurance, maintenance, repair and other costs that arise directly from being a "carrier." Defendants deduct some of these costs directly from the Motor Carrier's pay, while the Motor Carriers incur other costs from their own pockets. In contrast, Non-Carriers are by definition not "carriers," and generally are not responsible for such costs. The Non-Carriers do not contract directly with Defendants and are not paid directly by Defendants, nor do they have money deducted from their compensation by Defendants. While the Non-Carriers are similarly situated to the Motor Carriers with respect to the delivery services they perform, the underlying misclassification issue, and the wage claims they assert, the Non-Carriers have significantly less damages because the Motor Carriers were the ones who incurred the unreimbursed expenses. Moreover, not only do these expense reimbursement claims carry higher damages amounts, but they are not subject to the pre-emption and exemption defenses that Defendants have asserted for the overtime and meal and rest period claims.

1   *Fair & Accurate Credit Transactions (FACTA) Litig.*, 295 F.R.D. 438, 471 (C.D. Cal. 2014); *see*

2   *also Trujillo v. City of Ontario*, 2009 WL 2632723, *1, *5 (C.D. Cal. Aug. 24, 2009) (awarding

3   $30,000 each to six class representatives following five years of litigation).   A service award of

4   $15,000 is commensurate with litigation that last several years and is less than some of the higher

5   amounts awarded for litigation that lasts in the range of five or more years. *See Trujillo, supra.*

6          Here, Mr. Kimbo has worked for the benefit of the class for over three years. *See* Kimbo

7   Decl. at ¶ 17. Prior to the filing of the complaint, Mr. Kimbo participated in two group meetings

8   with other drivers and Counsel, and then engaged with Counsel in subsequent meetings and

9   communications as the representative of the group.  He provided lengthy interviews, searched for

10  documents, reviewed materials and traveled to the mediation to actively participate in person. *Id.*

11  at ¶ 3-13. Mr. Kimbo also was committed to persevere through further litigation and trial had the

12  Settlement had not been reached. *Id.* at ¶ 14. For these reasons, the "duration" factor weighs in favor

13  of the requested service award.

14          **D.      Plaintiff acted in the best interests of the class**

15          In stepping forward to represent the class, Mr. Kimbo put his individual concerns aside and

16  acted in the best interests of the class. Kimbo Decl. ¶ 7. He did not pursue individual claims, but

17  just those that were shared by the other class members. *Id.* Moreover, when Mr. Kimbo accepted

18  the proposed settlement on behalf of the Class, he did so without any condition that he would receive

19  a service award. *See id.* at ¶ 20. His support for the proposed settlement is in no way conditioned

20  upon the promise of a service award.  *Id.*

21          Additionally, Mr. Kimbo has agreed to a broader release that encompasses all claims he may

22  have against Defendants, not just the wage and hour claims more narrowly released by the other

23  Class Members. *See* Settlement Agreement at ¶ 101.

24          **E.      Plaintiff took a substantial risk in bringing this class action**

25          Another factor supporting the award of service payment is whether the class representatives'

26  service resulted in personal difficulties and/or whether they undertook significant risks to serve as

27  class representatives. *See, e.g., Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM

28  (JCx), 2012 U.S. Dist. LEXIS 189830, at *59 (C.D. Cal. Nov. 13, 2012); *Millan v. Cascade Water*

*Servs., Inc.* 2016 WL 3077710, at *12 (E.D. Cal. May 31, 2016) (reasoning that service awards "are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their present or former employers."). "When a class representative shoulders some degree of personal risk in joining the litigation, such as workplace retaliation or financial liability, an incentive award is especially important." *In re Toys R Us,* 295 F.R.D. at 470. Examples of risks to the plaintiff in commencing the litigation "includ[e] reasonable fears of workplace retaliation, personal difficulties, and financial risks." *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *32 (N.D. Cal. Apr. 1, 2011).

Further, it is well established that plaintiffs in the employment context "face[] the risk that new employers would learn that they were class representatives in a lawsuit against their former employer and take adverse action against them. Moreover, each time they change jobs, they will risk retaliation in the hiring process." *Asare v. Change Grp. N.Y., Inc.*, 2013 U.S. Dist. LEXIS 165935, at *40 (S.D.N.Y. Nov. 15, 2013); *DeWitt v. Darlington Cty.,* 2013 U.S. Dist. LEXIS 172624, at *38 (D.S.C. Dec. 6, 2013) (noting that incentive payments are especially warranted "where the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers").

Here, Mr. Kimbo was a current employee of Defendants when he first decided to lead this major legal challenge of their policies. Kimbo Decl. at ¶¶ 3-4. He risked his reputation in the community and with regard to future employment opportunities as a result of stepping forward publicly as the named representative in a class action. *Id*. at ¶ 8. He has had to devote his own time and expenses to participating in the case. *Id*. at ¶ 10. Furthermore, he bore the risk that he might have to pay defense costs if he lost the case. *Id*. at ¶ 8.

**F.    The proposed service award is a small fraction of the settlement amount**

In evaluating proposed service awards, courts compare the overall settlement benefits and the range of recovery available to the class members to the representative plaintiffs' proposed service awards. *See, e.g., Staton*, 327 F.3d at 976-77; *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669

(E.D. Cal. 2008). The purpose of the inquiry is to ensure that the service awards have not compromised the ability of the representative plaintiff to act in the best interest of the class. *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (courts must scrutinize "the awards so that they do not undermine the adequacy of the class representatives"). Courts view more favorably those service awards which constitute "only a tiny fraction" of the total settlement amount. *See, e.g.*, *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457-63 (9th Cir. 2000) (approving combined service awards constituting 0.57% of the $1.725 million settlement); *Sandoval v. Tharaldson Employee Mgt., Inc.*, 2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010) (approving service award of $7,500 where average class member received $749.60, but service award was 1% of gross settlement).

Here, the aggregate amount of the proposed service awards is quite modest in comparison to the overall benefits of the settlement and recovery to the class. The proposed service award of $15,000 to Mr. Kimbo represents only 0.3% of the total settlement amount (and 0.4% of the net settlement amount to be distributed to the other Class Members). The requested award is also less than twice the expected average award of approximately $8,871 to the other members of the Motor Carrier Class (Mr. Kimbo is a member of the Motor Carrier Class, not the Non-Carrier Class). *See* Konecky PA Decl. (Dkt. No. 26-2) at ¶ 29. And while the proposed service award of $15,000 is almost fourteen times the estimated average award of $1,074 to the members of the Non-Carrier Class (*id.*),[2] it is just over three times the estimated mean award ($8,871 + $1,074 / 2 = $4,972.5) across both classes, further underscoring its reasonableness. *See e.g. Watson v. Tennant Co.,* No. 2:18-cv-02462 WBS DB, 2020 U.S. Dist. LEXIS 166823, at *12, 19 (E.D. Cal. Sep. 10, 2020) (approving service award of $25,000 to named plaintiff where average recovery per class member was estimated to be $8,830.14 and noting that "[t]his service award is less than three times the average award to individual class members, which is low relative to similar settlements.").

In addition, the Notice of Class Action Settlement specified that Plaintiff would seek a service award of up to $15,000 and the Class Members have an opportunity to comment on it before

---

[2] *See supra*, note 1.

the final fairness hearing. Either way, the amount of the requested service award in relation to the total settlement amount weighs strongly in favor of its appropriateness.

**G.   The requested service award promotes the public policies underlying the Labor Code**

Approving the requested service award will promote important public policies underlying Plaintiff's wage-and-hour claims. Plaintiff's claims are brought under the California Labor Code, a remedial statute reflecting a strong remedial scheme and public policy of robust employee rights. *Murphy v. Kenneth Cole Prods. Inc.*, 40 Cal. 4th 1094, 1103 (Cal. 2007). Furthermore, the State's strong public policy in favor of strict enforcement of minimum wage and overtime laws is well-established and fundamental to the Labor Code's protective purpose. *See Sav-On v. Superior Court*, 34 Cal. 4th 319, 340 (Cal. 2004) (citing *Earley v. Superior Court*, 79 Cal.App.4th 1423, 1429-30 (Cal. 2000)) (confirming "'a clear public policy ... that is specifically directed at the enforcement of California's minimum wage and overtime laws for the benefit of workers.'"). Likewise, California's meal and rest period requirements also were designed to protect workers from substantial health and safety risks resulting from employer abuses. *See Lazarin v. Superior Court*, 188 Cal.App.4th 1560, 1582-83 (Cal. 2010).

Here, Mr. Kimbo's efforts and service helped to vindicate the important public policies underlying the State's wage and hours laws.  These include the pressing concern of enforcing adequate wage standards and protections to workers in the transportation industry, as recently highlighted by the California Supreme Court in *See Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903 (2018).  Accordingly, this factor weighs heavily in favor of the requested service award.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

## V.    CONCLUSION

2

For the foregoing reasons, Plaintiff respectfully requests that this Court approve the

3

requested service award.

4

5

Dated:  November 19, 2020                    /s/ Joshua Konecky

6                                                                      Joshua G. Konecky
                                                                         SCHNEIDER WALLACE
7                                                                      COTTRELL KONECKY LLP

8                                                                      Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28