1  Joshua G. Konecky (SBN 182897)
   Leslie H. Joyner (SBN 262705)
2  Nathan Piller (SBN 300569)
   SCHNEIDER WALLACE
3  COTTRELL KONECKY LLP
   2000 Powell Street, Suite 1400
4  Emeryville, California 94608
   Tel:  (415) 421-7100
5  Fax:  (415) 421-7105
   jkonecky@schneiderwallace.com
6  ljoyner@schneiderwallace.com
   npiller@schneiderwallace.com
7

8  Attorneys for Plaintiffs

9

10              **UNITED STATES DISTRICT COURT**

11             **EASTERN DISTRICT OF CALIFORNIA**

12

13

14  JOSEPH KIMBO, an individual; on behalf of    Case No.: 2:19-CV-00166-WBS-KJN
    himself and all others similarly situated,

15                    Plaintiff,                  **PLAINTIFFS' NOTICE OF MOTION AND**
                                                  **MOTION FOR FINAL APPROVAL OF**
16          vs.                                   **CLASS ACTION SETTLEMENT;**
                                                  **MEMORANDUM OF POINTS AND**
17  MXD GROUP, INC., a California corporation;    **AUTHORITIES IN SUPPORT THEREOF**
18  RYDER SYSTEM, INC., a Florida Corporation;
    and DOES 1-10, inclusive,                     **Date:  February 8, 2021**
19                                                **Time:  1:30 p.m.**
                     Defendants.                  **Location: Courtroom 5, 14th Floor**
20

21

22

23

24

25

26

27

28

---

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on February 8, 2021 at 1:30 p.m., or as soon thereafter as the parties may be heard, Plaintiff will move, and hereby does move, this Court for the relief as follows:

1.   To grant final approval of the Stipulated Joint Settlement Agreement (the "Settlement Agreement") between Plaintiff and Defendants Ryder Last Mile, Inc. (f/n/a MXD Group, Inc.) and Ryder System, Inc. ("Defendants"), as fair, reasonable and adequate;

2.   To permanently certify under Fed. R. Civ. P. 23(a) & (b)(3), for settlement purposes, the settlement class comprised of all Motor Carrier Class Members and Non-Carrier Class Members, except the Motor Carriers and Non-Carriers that performed delivery services at the warehouse located at or out of 21508 Baker Parkway, City of Industry, California 91789.[1]  Motor Carrier Class Members and Non-Carrier Class Members are defined as follows:

> *Motor Carrier Class Members*: All owners of all motor carriers who directly contracted with Defendants in their individual capacity or through a business entity and provided transportation services to Defendants in California at any time from December 12, 2014 through the earlier of preliminary approval or July 26, 2020.
>
> The Motor Carrier Class Members include (1) all motor carrier owners responsible for the day-to-day operations of their businesses that engaged one or more workers to operate their commercial motor vehicles to deliver goods; and (2) all motor carrier owners that also performed delivery services as the driver of their commercial motor vehicles.
>
> *Non-Carrier Class Members*: All individuals who did not contract with Ryder Last Mile, Inc. (f/k/a MXD Group, Inc.) and are non-owner drivers and helpers authorized to provide transportation services for Defendants in California at any time from December 12, 2014 through the earlier of preliminary approval or July 26, 2020.  The Non-Carrier Class includes drivers and helpers engaged by motor carrier companies to operate their commercial motor vehicles and perform delivery services for

---

[1] As explained in Plaintiff's motion for preliminary approval, the reason for this carve-out is that there is another case, *Espinoza v. Williams-Sonoma, Inc., et al.*, Los Angeles Superior Court Case No. BC693245, filed on or about February 13, 2018, pending in the Los Angeles Superior Court in front of Judge Kenneth R. Freeman, which also involves Defendant Ryder Last Mile, Inc. f/k/a MXD Group, Inc.  That case brings analogous claims on behalf of individuals who currently provide and formerly provided transportation services to defendants out of the warehouse located at 21508 Baker Parkway, City of Industry, California at any time from February 13, 2014, and continuing while the action is pending. The claims of the individuals who have worked out of the City of Industry location are being addressed in that case, rather than in this proposed Settlement.

Defendants in connection with contracts Defendants had with the owners of the motor carrier companies.

3.   To confirm the appointment of the named Plaintiff as Settlement Class Representative and Plaintiffs' attorneys as Settlement Class Counsel;

4.   To approve the motion for attorneys' fees and costs, pursuant to the motion papers filed November 19, 2020 (Dkt. 35), and the separate proposed order submitted with that motion;

5.   To approve the motion for service awards to the Class Representative, pursuant to the motion papers filed November 19, 2020 (Dkt. 37), and the separate proposed order submitted with that motion; and

6.   To enter judgment accordingly and retain continuing jurisdiction over the implementation of the settlement.

This motion is based on the accompanying memorandum of points and authorities; the Declaration of Scott Fenwick Regarding Settlement Administration Services; the previously filed Declaration of Joshua Konecky in Support of Plaintiff's Motion for Preliminary Approval (Dkt. 26-2) ("Konecky PA Decl."); the Settlement Agreement, attached as Exhibit 1 to the Konecky Declaration (Dkt. 26-2 at p. 16); the Notice of Class Action Settlement, Exhibit B to the Fenwick (Admin) Declaration, filed herewith; such oral argument as may be heard by the Court; and all other papers on file in this action.

Respectfully submitted,

Dated:  January 11, 2021

SCHNEIDER WALLACE
COTTRELL KONECKY LLP

/s/ *Joshua G. Konecky*

Joshua G. Konecky
Counsel for Plaintiffs

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   KEY TERMS OF THE PROPOSED SETTLEMENT ..........................................2

III.  ARGUMENT ........................................................................................................5

    A.    Class Certification is Appropriate for Settlement Purposes ...........................5

        1.    The elements of Rule 23(a) are satisfied...............................................5

        2.    The elements of Rule 23(b)(3) are satisfied..........................................7

    B.    Overview of the Class Action Settlement Process..........................................8

    C.    The Court should grant final approval .............................................................9

        1.    The Settlement meets the standard for court approval...........................9

        2.    The Settlement is entitled to a presumption of fairness.......................11

        3.    The positive reaction from the class further supports settlement approval ...........12

        4.    The Settlement is fair given the Settlement benefits and the risks associated with continued litigation.........................................................12

        5.    The Service Award to the Class Representative is Fair and Reasonable...............14

        6.    Plaintiff is entitled to reasonable attorneys' fees and costs ..................15

IV.   CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Adoma v. Univ. of Phoenix, Inc.*
  913 F. Supp. 2d 964 (E.D. Cal. 2012) ........................................................ 13

*Alexander v. FedEx Ground Package System, Inc.*
  765 F.3d 981 (2014)............................................................................ 8

*Amchem Prods., Inc. v. Windsor*
  521 U.S. 591 (1997).............................................................................7

*Antemate v. Estenson Logistics, LLC*
  2017 U.S. Dist. LEXIS 184502 (C.D. Cal. 2017)........................................ 14

*Brown v. Hain Celestial Grp., Inc.*
  2016 WL 631880 (N.D. Cal. 2016) ................................................... 11, 12

*Churchill Vill. L.L.C. v. Gen. Elec.*
  361 F.3d 566 (9th Cir. 2004) ............................................................... 10

*Class Plaintiffs v. City of Seattle*
  955 F.2d 1268 (9th Cir. 1992) ............................................................. 10

*Dynamex Operations W. v. Superior Court*
  4 Cal. 5th 903 (2018) ......................................................................... 8

*Edwards v. Aramark Unif. & Career Apparel, LLC*
  2016 WL 236241 (N.D. Ill. 2016) ......................................................... 14

*Fernandez v. Victoria Secret Stores, LLC*
  2008 WL 8150856 (C.D. Cal. 2008) ...................................................... 11

*Garner v. State Farm Auto Ins. Co.*
  2010 U.S. Dist. LEXIS 49477 (N.D. Cal. 2010) ....................................... 11

*Garnett v. ADT, LLC*
  2016 U.S. Dist. LEXIS 84006 (E.D. Cal. 2016).......................................... 13

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) .........................................................passim

*In re Heritage Bond Litig.*
  2005 WL 1594403 (C.D. Cal. 2005) ...................................................... 12

*In re Synocor ERISA Litig.*
  516 F.3d 1095 (9th Cir. 2008) ............................................................. 10

*Khanna v. Intercon Sec. Sys., Inc.*
  2014 WL 1379861 (E.D. Cal. 2014)........................................................ 13

*Montoya v. 3PD, Inc.*
  2015 WL 1469752 (D. Ariz. 2015)........................................................ 14

*Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.,*
  221 F.R.D. 523 (C.D. Cal. 2004)...................................................... 12, 14

*O'Connor v. Uber Techs., Inc.*
    2019 U.S. Dist. LEXIS 54608 (N.D. Cal. 2019) ............................................................. 8

*Officers for Justice v. Civil Serv. Comm'n*
    688 F.2d 615 (9th Cir. 1982) ................................................................................. 10, 12

*Ontiveros v. Zamora*
    2014 WL 3057506 (E.D. Cal. 2014) ........................................................................... 13

*Osegueda v. N. Cal. Inalliance,*
    2020 U.S. Dist. LEXIS 128626 (E.D. Cal. 2020) ......................................................... 13

*Rannis v. Recchia*
    380 Fed. Appx. 646 (9th Cir. 2010) ............................................................................. 5

*Rodriguez v. Penske Logistics, LLC*
    2017 U.S. Dist. LEXIS 152379 (E.D. Cal. 2017) ........................................................... 5

*Ruiz v. Affinity Logistics Corp.*
    754 F.3d 1093 (9th Cir. 2014) ..................................................................................... 8

*Singh v. Roadrunner Intermodal Servs., LLC*
    2018 U.S. Dist. LEXIS 89308 (E.D. Cal. May 2018) ...................................................... 8

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) ....................................................................................... 9

*Torrisi v. Tucson Elec. Power Co.*
    8 F.3d 1370 (9th Cir. 1993) ....................................................................................... 10

*Van Brokhorst v. Safeco Corp.*
    529 F.2d 943 (9th Cir. 1976) ..................................................................................... 10

*Villalpando v. Exel Direct Inc.*
    303 F.R.D. 588 (N.D. Cal. 2014) ............................................................................. 7, 8

*Weeks v. Kellogg Co.*
    2013 WL 6531177 (C.D. Cal. 2013) .......................................................................... 10

*Wren v. RGIS Inventory Specialist*
    256 F.R.D. 180 (N.D. Cal. 2009) ................................................................................. 8

**Statutes**

Cal. Labor Code § 2698, *et seq.* .................................................................................. 3, 4, 5

Cal. Labor Code § 2802 ................................................................................................. 4, 13

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................. 1, 5, 6, 7

Fed. R. Civ. P. 23(b)(3) .......................................................................................... 1, 7, 8

Fed. R. Civ. P. 23(e) ................................................................................................... 11

**<u>Other Authorities</u>**

Manual for Complex Litigation
  (Fourth) (2004) ....................................................................................................9, 10

Newberg on Class Actions
  (4th ed. 2002).......................................................................................................9, 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiff Joseph Kimbo seeks final approval of the $5,000,000 non-reversionary, class-action settlement that the Court preliminarily approved on August 6, 2020. (Dkt. 30).  The settlement is to resolve this wage and hour case brought on behalf of individuals performing delivery, driving and related services for Defendants Ryder Last Mile (f/k/a MXD Group, Inc.) and Ryder System, Inc. (collectively, "Defendants").

Since preliminary approval, the Court-appointed Settlement Administrator, Heffler Claims Group LLC, issued the Court approved Settlement Notice (in English and Spanish), to the Settlement Class Members, using the most recent mail and email contact information held by the parties, as updated through data from the National Change of Address (NCOA) database and skip-trace databases. *See* Fenwick (Admin.) Decl. at ¶¶ 10.  Class Members had forty-five (45) days to object to the settlement, raise disputes regarding the calculation of their awards, or opt-out of the Settlement.  To date, not a single Class Member has objected to any terms of the settlement, or the attorneys' fees and costs sought. Similarly, no Class Members have disputed the information provided to them concerning their workweeks (from which the individual payment amounts are calculated) and no Class Members have sought to opt-out of the settlement agreement. The lack of any objection, opt out or dispute reflects the strong benefits the Settlement brings to the class and further supports final approval.

Aside from the widespread support from the Class Members themselves, the proposed Settlement satisfies all the criteria for settlement approval under Federal Rule of Civil Procedure 23. Indeed, as further demonstrated in the previous motion for preliminary approval, the proposed Settlement presents a very strong result for the class in relation to the potential value of the claims, the delays of further litigation, and the complexities and risks of the case. Accordingly, Plaintiff requests that the Court grant final approval of the proposed Settlement.[2]

---

[2] Plaintiff also has separately moved for an award of attorneys' fees and costs, and service awards to the named Plaintiff. (Dkt. 35 & 37). Plaintiff filed these motions on November 19, 2020, over five weeks before the deadline for objections and exclusions. The Court-approved Class Notice, which was issued on November 13, 2020, informed Class Members of Plaintiff's motion for a

## II.   KEY TERMS OF THE PROPOSED SETTLEMENT

Plaintiff's motion for preliminary approval and motion for attorneys' fees and costs provide a detailed history of the claims and litigation history of this case. *See* Motion for Preliminary Approval (Dkt. 26) at pp. 3-4; Motion for Attorneys' Fees and Costs (Dkt. 35) at pp. 2-6. Plaintiff will not repeat that history in detail here.

As previously discussed, the proposed Settlement was reached after the conclusion of a lengthy mediation with Mediator Antonio Piazza, an experienced and well-regarded mediator in this area of law. Under the Settlement Agreement, Defendants will pay $5,000,000 to resolve this litigation. *See* Declaration of Joshua Konecky in Support of Motion for Preliminary Approval (Dkt. 26-2) Exh. 1 (Settlement Agreement). This Gross Settlement Amount is all-inclusive, with the exception of payments to cover the employer's share of payroll taxes on any wage payments, which will be paid separately by Defendants in addition to the Gross Settlement Amount. The entire Gross Settlement Amount will be disbursed pursuant to the terms of the Settlement Agreement, and <u>none</u> of it will revert to Defendants. *Id*. at ¶¶ 2, 15, 42, 78-89.

The key terms of the Settlement Agreement include:

- <u>Gross Settlement Amount</u>: The Gross Settlement Amount is $5,000,000. It is the sum Defendants agree to pay in exchange for Plaintiff's and the Settlement Class Members' releases to fully and finally settle this matter. It does not include the employer's portion of any payroll taxes owed to the government authorities as a result of the settlement payments, which Defendants will pay in addition to the Gross Settlement Amount. Settlement Agreement (Dkt. 26-2) at ¶¶ 15, 100-102.

- <u>No Reversion</u>: All settlement funds will be paid out, and none will revert to Defendants. *Id.* at ¶¶ 2, 15, 42, 78-89.

- <u>Released Class Claims</u>: The Released Class Claims with respect to the Settlement Class Members are limited to the wage and hour claims that were pled or could have been pled based on the alleged facts in the Complaint and pre-complaint letter to the California Labor Workforce Development Agency (LWDA). *Id*. at ¶ 99.

- <u>Settlement Class</u>: The Settlement Class Members consist of all Motor Carrier Class Members and Non-Carrier Class Members who did not submit a timely and valid Opt Out. As used herein, "Motor Carrier Class Members" includes all individuals who

---

service award and for attorneys' fees and costs, and how to obtain a copy of those motions to review. No Class Members have objected to the service award or the attorneys' fees and costs sought. Accordingly, for the reasons discussed in those motions, Plaintiff also separately requests approval of his previously filed motions for attorneys' fees and costs, and service award.

contracted directly with Defendants as individuals or through a formal business entity that did not submit a timely and valid Opt Out.  "Non-Carrier Class Members" includes all individuals engaged by the motor carriers to help operate their commercial motor vehicles and perform delivery services for Defendants. *Id.* at ¶¶ 18, 20.

- Net Settlement Amount: The Net Settlement Amount is the amount that remains and that shall be paid to Settlement Class Members, after the following amounts are subtracted: (1) the fees and costs of the third party administrator charged with administering the settlement (estimated to be $49,701.50); (2) The $150,000 PAGA Payment to be paid to the California LWDA (75% of which will be paid to the LWDA and the remaining 25% of which shall be paid to the PAGA Group, the subset of Class Members who worked for Defendants during the PAGA Period); (3) $125,000.00 to be put aside in the Reserve Fund in the event there are Settlement Class Members who are not identified until after the initial mailing of settlement checks, but who are eligible to participate in the settlement; (4) any service award approved by the Court for the Class Representative, Mr. Kimbo; and (5) any attorneys' fees and costs approved by the Court.  *Id.* at ¶ 19.

- Direct Payments to Settlement Class Members/No Claim Forms: Settlement Class Members will not need to submit claims to receive their pro-rata settlement payment. Rather, Individual Settlement Payments (i.e., settlement checks) will be automatically sent to all Class Members for whom a valid address was located either through Defendants' records, and/or address searches by the Settlement Administrator. *Id.* at ¶¶ 65-66.

- Distribution Formula: Each Settlement Class Member's individual share of the Settlement will be proportional to the number of weeks the Class Member worked for Defendants during the applicable time period, in comparison to the aggregate number of weeks all Settlement Class Members combined worked for Defendants during the same period. Settlement Agreement (Dkt. 26-2) at ¶¶ 68, 81; Konecky PA Decl. (Dkt. 26-2) at ¶ 22. Additionally, the workweeks for Motor Carrier Class Members will be calculated at 4 times the Workweek Payment Rate for Class Members whereas the workweeks for Non-Carrier Class Members shall be calculated at the single Workweek Payment Rate for Class Members. Settlement Agreement (Dkt. 26-2) at ¶ 81(d); Konecky PA Decl. (Dkt. 26-2) at ¶ 23.  As discussed in Plaintiff's motion for Preliminary Approval (Dkt. 26), the parties allocated the workweeks in this fashion to account for the relative strength and value of the Motor Carrier Class Members' and Non-Carrier Class Members' claims.  The exact formula is set forth in the Settlement Agreement as well as the Class Notice.  Settlement Agreement (Dkt. 26-2) at ¶¶ 80, 81; Notice to Class, Exhibit B to the Fenwick (Admin) Declaration.

- Reserve Fund: 2.5% of the Settlement Fund will be placed in a Reserve Fund. Settlement Agreement (Dkt. 26-2) at ¶¶ 42, 81(a), 88.  The purpose of the Reserve Fund is to have money left over to pay for any late or unexpected claims (e.g., from Class Members who for unanticipated reasons may not have been on the class list prepared by Defendants, or who may not have been located through the initial notice process).  The Reserve Fund also will include the amount of any checks that are sent but remain uncashed after 60 days. After expiration of the 60-day period, the Reserve Fund will be used to pay unanticipated or late claims.  Any residual still remaining after this will be donated to the Parties' designated *cy pres* beneficiary.

- <u>PAGA Payment</u>: the Parties have agreed to pay to the California Labor and Workforce Development Agency ("LWDA") and the PAGA Group in connection with the California Labor Code Private Attorneys General Act of 2004, Cal. Labor Code § 2698, *et seq.* ("PAGA"). Settlement Agreement (Dkt. 26-2) at ¶ 28. The Parties have agreed that One Hundred and Fifty Thousand Dollars and No Cents ($150,000.00) of the Gross Settlement Amount will be allocated to the resolution of all claims arising under PAGA. Pursuant to Labor Code Section 2699(i), it will be distributed as follows: 25%, or $37,500, to the PAGA Group and 75%, or $112,500, to the LWDA. *Id.*

- <u>Tax Allocation</u>: The proposed tax allocation for the Individual Settlement Payments reflects Plaintiff's counsel's assessment that the strongest and most valuable claims relate to expense reimbursement under Labor Code § 2802, penalties and interest. Specifically, the proposed tax allocation is as follows: (a) Forty Percent (40%) of the amount of each Individual Settlement Payment shall be allocated to expense reimbursement; (b) Forty Percent (40%) of the amount of each Individual Settlement Payment shall be allocated to alleged penalties and interest; and (c) Twenty Percent (20%) of the amount of each Individual Settlement Payment shall be allocated to the unpaid wage claims. In addition, the PAGA Payment Shares will be allocated entirely as penalties. Settlement Agreement (Dkt. 26-2) at ¶ 84.

- <u>Service Award</u>: The Settlement provides that Plaintiff may seek a service payment to the Class Representative, not to exceed $15,000 (subject to Court approval), which Defendants do not oppose. *Id.* at ¶ 93. The proposed service payment is approximately 0.3% of the Settlement. Plaintiff filed a separate motion for a service award on November 19, 2020 (Dkt. 37).

- <u>Attorney's Fees and Costs</u>: Plaintiff's attorneys' fees and costs are included in the gross settlement amount of $5,000,000. The Settlement provides that Defendants do not oppose a fee application of up to twenty-five percent (25%) of the Gross Settlement Fund, and costs not to exceed $20,000.00. *Id.* at ¶ 94. Plaintiff made a separate motion for attorneys' fees and costs on November 19, 2020 (Dkt. 35).

- <u>Notice of Class Action and PAGA Settlement</u>: Settlement Class Members were notified by first class mail of the settlement, and by email where available. Settlement Agreement (Dkt. 26-2) at ¶ 65; Fenwick (Admin) Decl. at ¶¶ 10. The Settlement Notice contained a statement of case, the terms of Settlement, the approximate amount of attorneys' fees, costs, and the service award being sought, and an explanation of how the settlement allocations are calculated. *See* Notice to Class, Exhibit B to the Fenwick (Admin) Declaration. Each Notice also was individually tailored to provide each Class Member her or his own credited workweeks and the amount of his or her estimated settlement share. *Id.* at § 8. The Notice to the Class was translated into Spanish, and both the English and Spanish versions were mailed to the Settlement Class Members on November 13, 2020. Heffler Claims Group, the Parties' selected Settlement Administrator, undertook its best efforts to ensure that the notice was provided to the current addresses of Class Members, including by conducting a national change of address search and re-mailing the notice to updated addresses. Settlement Agreement (Dkt 26-2) at ¶ 66; Fenwick (Admin) Decl. at ¶¶ 10-12. The Settlement Administrator also set up a website and posted the Notice to the Class and other important case documents. Fenwick (Admin) Decl. at ¶ 7.

- <u>Right to Object</u>. The Notice stated that Settlement Class Members who wished to object to the Settlement needed to mail the Settlement Administrator a written statement of objection ("Notice of Objection") by the Response Deadline, which was 45 days following the date the Settlement Administrator mailed the Notice of Class Action and PAGA Settlement to Class Members on November 13, 2020.  Settlement Agreement (Dkt. 26-2) at ¶¶ 74-76.  No Class Members have objected to the Settlement. Fenwick (Admin) Decl. at ¶ 14.

- <u>Right to Opt Out</u>. The Notice stated that Class Members who wished to exclude themselves from the Settlement Class and Settlement needed to submit a written Request for Exclusion to the Settlement Administrator by the 45-day Response Deadline. Settlement Agreement (Dkt. 26-2) at ¶ 70. No Class Members have opted out of the Settlement. Fenwick (Admin) Decl. at ¶ 13.

- <u>Right to Challenge Defendants' Workweek Records</u>. Class Members had the opportunity, had they disagreed with Defendant's records regarding the dates of employment stated on their Class Notice, to provide documentation and/or an explanation to show contrary employment dates. Settlement Agreement (Dkt. 26-2) at ¶ 92. No Class Members have disputed Defendants' workweek records. Fenwick (Admin) Decl. at ¶ 16.

### III.   ARGUMENT

#### A.   Class Certification is Appropriate for Settlement Purposes

##### 1.   The elements of Rule 23(a) are satisfied

###### a)   *Rule 23(a)(1): Numerosity*

The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members would be "impracticable."  *See* Fed. R. Civ. P. 23(a)(1). Here, there are approximately 922 Class Members, all of whom are identifiable from Defendants' records. Fenwick (Admin) Decl. at ¶ 5.  This easily satisfies numerosity under Fed. R. Civ. P. 23(a)(1).  *See, e.g.*, *Rodriguez v. Penske Logistics,* LLC, 2017 U.S. Dist. LEXIS 152379, at *13 (E.D. Cal. Sept. 19, 2017) (citing *Rannis v. Recchia,* 380 Fed. Appx. 646, 651 (9th Cir. 2010) for the proposition that numerosity is generally satisfied by 40 class members).

###### b)   *Rule 23(a)(2): Commonality*

Rule 23(a) also requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit permissively construes the commonality requirement such that the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998).  Plaintiff meets the criteria of Rule 23(a)(2) because the claims

of the Settlement Class Members turn upon answers to overarching common questions regarding Defendants' policies and procedures that are capable of class-wide resolution for settlement purposes.

The central common question in this case, from which all liability flows, is whether Defendants misclassified the Class Members as independent contractors under California law. The common questions raised by the Settlement Class Members, include: whether they have been misclassified as independent contractors; and whether, as a result, Defendants denied them the benefits and protections to which they were entitled under the California Labor Code and IWC Wage Order No. 9. Because all members of the proposed Settlement Class were subject to the same policies and assert the same types of injury arising from the same conduct by Defendants, these common questions establish Rule 23(a) commonality.

### c) Rule 23(a)(3): Typicality

A representative plaintiff must establish that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23 (a)(3). This is a permissive standard that is met so long as the representative claims "are reasonably coextensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. Here, the named Plaintiff seeking to represent the proposed Settlement Class satisfies the typicality requirement because he asserts the same types of injuries arising from the same conduct by Defendants as the absent Class Members. All Class Members, including Motor-Carrier Class Members and Non-Carrier Class Members, performed the same or similar delivery work for Defendants, but did not receive employment benefits or employment protections from Defendants.

### d) Rule 23(a)(4): Adequacy of Representation

Rule 23 also requires that "the representative parties fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement is satisfied where, as here, the class representative (1) has common, and not antagonistic, interests with unnamed class members; and (2) will vigorously prosecute the interests of the class through qualified counsel. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997); *Hanlon,* 150 F.3d at 1021. Here, the

named Plaintiff shares common injuries with the class and is typical of Class Members because he performed the same delivery work for Defendants as the other Class Members and was classified by Defendants as an independent contractor.  His interests are aligned with those of the other Class Members.   Furthermore, Plaintiff's counsel are well-qualified and committed to vigorously prosecuting the class claims.  Konecky PA Decl. (Dkt. 26-2) at ¶¶ 3-6.

2. The elements of Rule 23(b)(3) are satisfied

Having met the four prerequisites for class certification in Rule 23(a), Plaintiff submits that the proposed Settlement Class also satisfies Rule 23(b)(3).  Rule 23(b)(3) certification is proper when common questions "predominate over any questions affecting only individual members" and class resolution is "superior to other available methods for the fair and efficient resolution of the controversy."  Fed. R. Civ. P. 23(b)(3).  Both Rule 23(b)(3)'s predominance and superiority requirements are satisfied for purposes of certifying the proposed Settlement Class.

a) *Common Questions Predominate*

"The Rule 23(b)(3) predominance inquiry tests whether proposed class [is] sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 623 (1997).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis."  *Hanlon,* 150 F.3d at 1022. Here, the claims brought by the proposed Settlement Class all arise from the same conduct— Defendants' classification of all of the Class Members as independent contractors, and the common core of policies governing the Class Members' work, which applied to all members of the proposed Settlement Class. Accordingly, the predominance requirement is met because the threshold question as to all of Plaintiff's claims—whether the putative Class Members are employees or independent contractors—is susceptible to common proof.  *See Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 608 (N.D. Cal. 2014) (granting class certification in highly analogous action against previous owner of Defendants' business). In addition, the elements of the specific wage and hour claims asserted by Plaintiff lend themselves to class treatment because of the common policies and

1    practices that apply to all drivers.  *See id.*

2        For these reasons, the issues raised by Plaintiff's misclassification claims are well-suited for

3    class treatment.  *See O'Connor v. Uber Techs., Inc.*, 2019 U.S. Dist. LEXIS 54608, at *17 (N.D.

4    Cal. Mar. 29, 2019) (noting that "every (or nearly every) consideration under the California

5    common-law test of employment c[ould] be adjudicated with common proof on a classwide basis"

6    before the seminal case *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903 (2018), and that

7    "the misclassification question is arguably more amenable to classwide resolution" after that case).

8    Courts in the Ninth Circuit routinely grant class certification and/or class-wide adjudication of the

9    merits on analogous independent contractor misclassification claims.  *See, e.g.*, *Alexander v. FedEx

10   Ground Package System, Inc.*, 765 F.3d 981, 988 (2014) (finding on a class-wide basis, after a

11   bench trial, that analogous class of delivery drivers were misclassified as independent contractors);

12   *Ruiz v. Affinity Logistics Corp.*, 754 F.3d 1093, 1099 (9th Cir. 2014) (same, at summary judgment);

13   *see also Villalpando*, *supra,* 303 F.R.D. at 608-09; *Singh v. Roadrunner Intermodal Servs., LLC*,

14   2018 U.S. Dist. LEXIS 89308, at *21, *23 (E.D. Cal. May 25, 2018) (finding predominance for

15   settlement purposes in analogous case); *McCulloch*, 2017 U.S. Dist. LEXIS 78367, at *20-*21

16   (same).

17                        b)        *A Class Action is Superior*

18       Rule 23(b)(3)'s final requirement is "that the class action be superior to other methods of

19   adjudication."  This requirement is satisfied because there is no indication that Class Members seek

20   to individually control their cases, that individual litigation is already pending in other forums, or

21   that this particular forum is undesirable for any reason. Fed. R. Civ. P. 23(b)(3)(A)-(D).  In addition,

22   the alternative of hundreds of individual actions "is not realistic."  *See Wren v. RGIS Inventory

23   Specialists,* 256 F.R.D. 180, 210 (N.D. Cal. 2009).  Accordingly, certification of the Settlement

24   Class is superior to any other method of resolving this matter, since it will promote economy,

25   expediency, and efficiency.

26   **B.     Overview of the Class Action Settlement Process**

27   A class action settlement like the one proposed here must be approved by the Court to be

28

effective.  *See* Fed. R. Civ. P. 23 (e). The process for court approval is comprised of three principal steps:

1.    A preliminary approval hearing, at which the court considers whether the proposed settlement is within the range of reasonableness possibly meriting final approval;

2.    Dissemination of notice of the proposed settlement to Class Members for comment; and

3.    A formal "fairness hearing," or final approval hearing, during which the Court decides whether the proposed settlement should be approved as fair, adequate, and reasonable to the class.

*See* Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004). This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.  *See* Newberg on Class Actions, § 11.22, *et seq*. (4th ed. 2002) ("*Newberg*").

On August 6, 2020, the Court granted preliminary approval of the Settlement, after considering the terms of the Settlement, the declaration of counsel, and the history of this litigation. (Dkt. 30). On November 13, 2020, the Court-appointed Settlement Administrator effectuated notice in compliance with the Court's preliminary approval Order. (Dkt. 30). No Class Members submitted any objections to the Settlement, and none have elected to opt out. Fenwick (Admin.) Decl. at ¶¶ 13-14. For the reasons presented at preliminary approval, which are reiterated below, as well as the overwhelming support of the Class, Plaintiff now requests that the Court complete the third step of the process and grant final approval.

**C.    The Court should grant final approval**

1.    <u>The Settlement meets the standard for court approval</u>

When faced with a motion for final approval of a class action settlement under Rule 23 of the Federal Rules of Civil Procedure, a court's inquiry is whether the settlement is "fair, adequate, and reasonable." *Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003). A settlement merits final approval when "the interests of the class as a whole are better served by the settlement than by further litigation." Manual for Complex Litigation (Fourth) ("MCL 4th") § 21.61, at 480 (2010).

The law favors the compromise and settlement of class-action suits. *See, e.g., Churchill Vill.*

*L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), *cert denied*, 506 U.S. 953 (1992); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Indeed, the Ninth Circuit recognizes the "overriding public interest in settling and quieting litigation … particularly … in class action suits …" *Van Brokhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Weeks v. Kellogg Co.*, 2013 WL 6531177, at *10 (C.D. Cal. Nov. 23, 2013) (quoting *In re Synocor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)) ("'[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'").

"[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." *Hanlon*, 150 F.3d at 1026 (internal citations and quotations omitted). A settlement should be approved if "it is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993) (citing *Class Plaintiffs*, 944 F.2d at 1276)). "This determination requires

> 'a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'"

*Torrisi,* 8 F.3d at 1375-1376 (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir.1982), *cert. denied,* 459 U.S. 1217 (1983)). This list is not exclusive and different factors may predominate in different factual contexts. *Id.*

The courts give "proper deference to the private consensual decision of the parties … [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (internal citations omitted); Fed. R. Civ. P. 23(e).

The Ninth Circuit has "long deferred to the private consensual decision of the parties." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1027). "[I]n evaluating whether the settlement is fair and adequate, the Court's function is not to second guess the settlement's terms." *Garner v. State Farm Auto Ins. Co.*, 2010 U.S. Dist. LEXIS 49477, *21 (N.D. Cal. April 22, 2010).  In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."  *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998).

2.    The Settlement is entitled to a presumption of fairness

"Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair."  *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) (citations omitted); *see also Garner v. State Farm Auto Ins. Co.*, *35 (N.D. Cal. April 22, 2010) ("Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable.").  Thus, where a settlement is the product of arms-length negotiations conducted by experienced class counsel and follows sufficient discovery, the Court begins its analysis with a presumption that the settlement is fair and reasonable. *See* 4 Newberg § 11.41; *Brown v. Hain Celestial Grp., Inc.*, 2016 WL 631880, at *5 (N.D. Cal. Feb. 17, 2016); *see also Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *4 (C.D. Cal. July 21, 2008).   This is certainly the case here.

The Settlement was reached after informed, arms-length settlement negotiations supervised by a well-respected mediator experienced in wage-and-hour class action cases, Antonio Piazza. Konecky PA Decl. (Dkt. 26-2) at ¶¶ 14-15.  Before the mediation, counsel vetted the claims through rigorous legal analysis, both on the class certification and merits issues. *Id.* at ¶¶ 12-13.  Counsel also evaluated class data provided by Defendants showing the number of workweeks and routes, which allowed for further vetting of the claims and preparation of an exposure analysis.  *Id.* at ¶ 12. Counsel also drew upon their extensive experience litigating, trying, and settling complex wage and hour class actions, including independent contractor misclassification cases similar to this one.  *Id.*

at ¶¶ 3-6, 13.  The parties then participated in a day-long mediation before a very experienced and highly regarded mediator.  *Id.* at ¶¶ 14, 15.  Although respectful, the negotiations were rigorous and at arms-length.  *Id.* at ¶ 15.

Accordingly, the fact that qualified and well-informed counsel endorse the proposed settlement as being fair, reasonable, and adequate weighs heavily in favor of approval.  *See Hain Celestial Grp.* 2016 WL 631880, at *5.

### 3.   The positive reaction from the class further supports settlement approval

Reaction to the Settlement from the Class has been overwhelmingly positive. As shown by the Declaration of the Settlement Administrator, no Class Members have objected to, disputed, or sought to exclude themselves from the Settlement. Fenwick (Admin.) Decl. at ¶¶ 13-14, 16; *see Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness"). The fact that there were no objections, disputes, or exclusions is indicative of the excellent value and fairness of the settlement here.

### 4.   The Settlement is fair given the Settlement benefits and the risks associated with continued litigation

A proposed settlement is not to be measured against a hypothetical ideal result that might have been achieved.  *See, e.g., In re Heritage Bond Litig.*, 2005 WL 1594403, at * 2 (C.D. Cal. June 10, 2005) (quoting *Officers for Justice*, 688 F.2d at 625) (a proposed settlement should not "'be judged against a hypothetical or speculative measure of what might have been achieved.'"); *Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the Class Members at trial.").

The Settlement provides a very beneficial result for the Class.  As discussed above, even after estimated attorneys' fees and costs, the proposed service award, the LWDA payment, and the estimated costs of settlement administration, there will be an estimated $3,437,669 for distribution to the Settlement Class Members. Konecky PA Decl. (Dkt 26-2) at ¶ 19.  There are approximately

310 Motor Carrier Class Members and an estimated 640 members of the Non-Carrier Class. *Id.* at ¶ 17. Under the distribution formula, Plaintiff's counsel estimates that Motor Carrier Class Members will receive an average share of approximately $8,871 and Non-Carrier Class Members will receive an average share of approximately $1,074. *Id.* at ¶ 29. As explained in Plaintiff's motion for preliminary approval filed on November 19, 2020 (Dkt. 35), the claims of the Motor Carrier Class Members are of substantially higher value because they are the Settlement Class Members who have the lion's share of expense reimbursement claims under Labor Code § 2802. *Id.* at ¶ 23-25. Not only do these expense reimbursement claims carry higher damages amounts, but they are not subject to the exemption and pre-emption defenses that Defendants have asserted for the overtime and meal and rest period claims. *Id.* at ¶ 23.

These average recoveries compare favorably to wage-and-hour class action settlements in this Circuit. *See, e.g., Osegueda v. N. Cal. Inalliance,* No. 18-cv-00835 WBS EFB, 2020 U.S. Dist. LEXIS 128626, at *1 (E.D. Cal. July 20, 2020) (final approval of a wage and hour class action settlement with an approximate recovery of $406.79 per Class Member); *Garnett v. ADT, LLC*, 2016 U.S. Dist. LEXIS 84006, at *9 (E.D. Cal. June 28, 2016) (approving a class action settlement in an employment case of approximately $1.6 million to be distributed among a class of 831 people); *Ontiveros v. Zamora*, 2014 WL 3057506, at *14 (E.D. Cal. July 7, 2014) (observing that average recovery of $6,000 was "a generous amount", and citing cases approving lower per-Class Member averages of $609.91 and $1,000.00); *Adoma v. Univ. of Phoenix, Inc*., 913 F. Supp. 2d 964, 982 (E.D. Cal. 2012) (reasoning that average recovery of over $2,000 per Plaintiff was a "favorable" result); *Khanna v. Intercon Sec. Sys., Inc*., 2014 WL 1379861, at *12 (E.D. Cal. Apr. 8, 2014).

The potential risks attending further litigation also support final approval. Courts have long recognized the inherent risks and "vagaries of litigation," and emphasized the comparative benefits of "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecomm,* 221 F.R.D. at 526. Proceeding to trial (and the inevitable appeals) could add many more years to the resolution of this case.

1   Moreover, developments in the law after this case was filed created substantial risks to

2   Plaintiff's chances of securing a strong recovery.  For example, on December 21, 2018, the Federal

3   Motor Carrier Safety Administration (FMCSA) determined that California's meal and rest period

4   claims are preempted as to property-carrying commercial motor vehicle drivers covered by the

5   FMCSA's hours of service regulations.  *See* Order Granting Petition for Determination of

6   Preemption, 83 Fed. Reg. 67470, 67470 (Dec. 28, 2018) (docket No. FMCSA-2018-0304)

7   (https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/regulations/440601/california-meal-

8   and-rest-break-rules-preemption-determination.pdf). The Ninth Circuit is currently considering this

9   issue on appeal.  *See, e.g.*, *Cal. Labor Comm'r v. FMCSA* (9th Cir. Dkt. No. 19-703290); *Int'l*

10  *Brotherhood of Teamsters et al. v.* FMCSA (9th Cir. Dkt. No. 19-73488).  An unsuccessful appeal

11  would potentially result in Plaintiffs' meal and rest period claims being wiped out entirely.

12  As another example, district courts have held that analogous workers were precluded from

13  asserting claims for overtime because they were exempt from receiving overtime pay under the

14  Motor Carrier Act exemption.  *See, e.g., Antemate v. Estenson Logistics, LLC*, 2017 U.S. Dist.

15  LEXIS 184502, at *21-*22 (C.D. Cal. Nov. 7, 2017), *Montoya v. 3PD, Inc.*, 2015 WL 1469752, at

16  *5 (D. Ariz. Mar. 31, 2015); *Edwards v. Aramark Unif. & Career Apparel, LLC*, 2016 WL 236241,

17  at *13 (N.D. Ill. Jan. 19, 2016).

18  Given these issues, the potential for appeals, and the potential for years of delayed recovery

19  is a significant concern.  Delay is also a significant concern as the Class Members in this case are

20  modest wage workers for whom receiving speedy remuneration is particularly important.

21  Considered against the risks of continued litigation, and the importance of the employment rights

22  and a speedy recovery to Class Members, the totality of relief provided under the proposed

23  Settlement is well within the range of reasonableness.

24          5.      The Service Award to the Class Representative is Fair and Reasonable

25  On November 19, 2020, Plaintiff filed a separate motion in support of the service award.

26  (Dkt. 37). The notice disclosed the amount of the service award sought. Ex. B to Fenwick (Admin)

27  Decl. No Class Member has opposed or objected to the proposed service award. Fenwick (Admin)

28

1  Decl. at ¶ 14.  For the reasons discussed in Plaintiff's motion for a service award, Plaintiff requests

2  that the Court approve the service award sought.

3           6.      Plaintiff is entitled to reasonable attorneys' fees and costs

4       On November 19, 2020, Plaintiff filed a separate motion for attorneys' fees and costs. (Dkt.

5  35). The Class Notice provided Class Members with an explanation of how the attorneys would be

6  paid and information about how to obtain a copy of this motion for attorneys' fees and costs. Ex. B

7  to Fenwick (Admin) Decl. at § 17. Class Members had until December 28, 2020 to submit

8  objections. As discussed above, no Class Member has objected to the attorneys' fees and costs, nor

9  to any other aspect of the Settlement. Fenwick (Admin) Decl. at ¶ 14.  For the reasons discussed in

10  Plaintiff's separate motion for reasonable fees and costs, the fees and costs that Plaintiff seeks are

11  fair, reasonable and in line with applicable law.

12  **IV.   CONCLUSION**

13       For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's

14  motion for final approval of class action settlement. Plaintiff also requests that the Court grant

15  Plaintiff's separate motions for attorneys' fees and costs, and for a service award to the Class

16  Representative, for the reasons discussed in those motions.

17

18       Dated:  January 11, 2021                    */s/ Joshua G. Konecky*
                                                    _____
19                                                   Joshua G. Konecky
                                                     SCHNEIDER WALLACE
20                                                   COTTRELL KONECKY LLP

21                                                   Attorneys for Plaintiffs

22

23

24

25

26

27

28