1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12   JOSEPH KIMBO, an individual; on      No. 2:19-cv-00166 WBS KJN
     behalf of himself and all others
13   similarly situated,

14              Plaintiff,

                                          MEMORANDUM AND ORDER RE:
15       v.                               MOTION FOR FINAL APPROVAL OF
                                          CLASS ACTION SETTLEMENT AND
16   MXD GROUP, INC., a California        MOTION FOR ATTORNEYS' FEES,
     corporation; RYDER SYSTEM, INC.,     COSTS, AND REPRESENTATIVE
17   a Florida Corporation; and DOES      SERVICE PAYMENT
     1-10, inclusive,

18
                Defendants.
19

20                         ----oo0oo----

21
                 Plaintiff Joseph Kimbo, individually and on behalf of
22
     all other similarly situated employees, brought this putative
23
     class action against defendants MXD Group, Inc. and Ryder System,
24
     Inc. (collectively, "defendants"), alleging various violations of
25
     the California Labor Code.  (Compl. (Docket No. 1-2).)  On August
26
     6, 2020, the court granted plaintiff's unopposed motion for
27
     preliminary approval of class action settlement.  (See Order
28
                                 1

1  Granting Preliminary Approval (Docket No. 30).)  Plaintiff now

2  moves unopposed for final approval of the parties' class action

3  settlement and attorneys' fees, costs, and a class representative

4  service payment.  (See Docket Nos. 35-38.)

5  I.   Discussion[1]

6      The Ninth Circuit has declared a strong judicial policy

7  favoring settlement of class actions.  Class Plaintiffs v. City

8  of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); see also

9  Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009)

10 ("We put a good deal of stock in the product of an arms-length,

11 non-collusive, negotiated resolution[.]") (citation omitted).

12 Rule 23(e) provides that "[t]he claims, issues, or defenses of a

13 certified class may be settled . . . only with the court's

14 approval."  Fed. R. Civ. P. 23(e).

15     "Approval under 23(e) involves a two-step process in

16 which the Court first determines whether a proposed class action

17 settlement deserves preliminary approval and then, after notice

18 is given to class members, whether final approval is warranted."

19 Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523,

20 525 (C.D. Cal. 2004) (citing Manual for Complex Litig. (Third),

21 § 30.41 (1995)).  This court satisfied step one by granting

22 plaintiff's unopposed motion for preliminary approval of class

23 action settlement on August 6, 2020.  (Docket No. 30.)  Now,

24 following notice to the class members, the court will consider

25

26     [1]   The court already recited the factual and procedural
   background in its order granting plaintiff's unopposed motion for
27 preliminary approval of the class action settlement.  (See Order
   Granting Preliminary Approval at 2-3.)  Accordingly, the court
28 will refrain from doing so again.

1   whether final approval is merited by evaluating: (1) the

2   treatment of this litigation as a class action and (2) the terms

3   of the settlement.  See Diaz v. Tr. Territory of Pac. Islands,

4   876 F.2d 1401, 1408 (9th Cir. 1989).

5        A.   Class Certification

6        A class action will be certified only if it meets the

7   requirements of Rule 23(a)'s four prerequisites and fits within

8   one of Rule 23(b)'s three subdivisions.  Fed. R. Civ. P. 23(a)-

9   (b).  Although a district court has discretion in determining

10  whether the moving party has satisfied each Rule 23 requirement,

11  the court must conduct a rigorous inquiry before certifying a

12  class.  See Califano v. Yamasaki, 442 U.S. 682, 701 (1979); Gen.

13  Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982).

14        1.   Rule 23(a)

15        Rule 23(a) restricts class actions to cases where:
          (1) the class is so numerous that joinder of all
16        members is impracticable; (2) there are questions
          of law or fact common to the class; (3) the claims
17        or defenses of the representative parties are
          typical of the claims or defenses of the class;
18        and (4) the representative parties will fairly and
          adequately protect the interests of the class.
19

20  Fed. R. Civ. P. 23(a).  These requirements are commonly referred

21  to as numerosity, commonality, typicality, and adequacy of

22  representation.  In the court's order granting preliminary

23  approval of the settlement, the court found that the putative

24  class satisfied the Rule 23(a) requirements.  (See Order Granting

25  Preliminary Approval at 5-12.)  Since granting preliminary

26  approval, the court has learned that plaintiff, and plaintiff

27  alone, has submitted a Proof of Costs for approximately $19,000

28

3

1   to the Settlement Administrator, as contemplated by the

2   Settlement Agreement.  (See Konecky PA Decl., Ex. 1 ("Settlement

3   Agreement") ¶¶ 81(c) (Docket No. 26-2).)  As discussed more fully

4   below, in Section I.E., though this information will affect the

5   court's analysis of Kimbo's request for a service award, it does not

6   alter the court's conclusion that Kimbo is an adequate

7   representative of the class under Rule 23(a)(4).

8          The court is unaware of any other changes that would

9   affect its conclusion that the putative class satisfies the Rule

10  23(a) requirements, and the parties have not indicated that they

11  are aware of any such developments.  (Mot. for Final Approval at

12  5-8 (Docket No. 38).)  The court therefore finds that the class

13  definition proposed by plaintiff meets the requirements of Rule

14  23(a).

15          2.   Rule 23(b)

16          An action that meets all the prerequisites of Rule

17  23(a) may be certified as a class action only if it also

18  satisfies the requirements of one of the three subdivisions of

19  Rule 23(b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th

20  Cir. 2013).  In its order granting preliminary approval of the

21  settlement, the court found that both the predominance and

22  superiority prerequisites of Rule 23(b)(3) were satisfied, but

23  requested that plaintiff address why a substantially similar

24  case pending before the Los Angeles Superior Court, Espinoza v.

25  Williams-Sonoma, Inc., Case No. BC69245 does not detract from

26  judicial economy.  (Order Granting Preliminary Approval at 12-

27  15.)  Plaintiff represents in its motion for final approval that

28  members of the class represented in Espinoza have been expressly

4

carved out of the Settlement Agreement here.  (See Pl.'s Mot. for Final Approval at 4 n.1 (Docket No. 38-2).)  Espinoza brings analogous claims on behalf of individuals who currently and formerly provided transportation services to defendants out of the warehouse located at 21508 Baker Parkway, City of Industry, CA any time since February 13, 2014.  (See id.)  The Settlement Agreement here expressly excludes individuals who worked at or out of the 21508 Baker Parkway warehouse.  Accordingly, the court is satisfied that the risk of class certification here "creat[ing] one more action" that subjects defendants to a multiplicity of litigation or inconsistent judgments is low.  See Zinser v. Accufix Res. Inst., Inc., 253 F.3d 1180, 1191 (9th Cir. 2001).  The court is unaware of any other changes that would affect its conclusion that Rule 23(b)(3) is satisfied.  Because the settlement class satisfies both Rule 23(a) and 23(b)(3), the court will grant final class certification of this action.

### 3.   Rule 23(c)(2) Notice Requirements

If the court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D. 651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 172–77 (1974)).  Although that notice must be "reasonably certain to inform the absent members of the plaintiff class," actual notice is not required.  Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994) (citation omitted).

1    The parties selected Heffler Claims Group LLC

2  ("Heffler") to serve as the Settlement Administrator.  (Decl. of

3  Scott M. Fenwick in Supp. of Final Approval ("Fenwick Decl.") ¶ 3

4  (Docket No. 38-1).)  Defendants timely provided Heffler with the

5  class list, including the class members' names, social security

6  numbers, last known addresses, and total number of applicable

7  workweeks worked.[2]  (Id. ¶¶ 3-5.)

8    To ensure delivery of the notice packets, Heffler

9  requested and obtained updated class list data sets through an

10  iterative process with defense counsel to ensure that class

11  member information was aligned and de-duplicated, and ran the

12  data through the United States Postal Service's National Change

13  of Address Database.  (Id. ¶¶ 5, 10.)  Notice packets were mailed

14  to the 898 class members for whom Heffler received social

15  security number data by First Class Mail on November 13, 2020.

16  (Id. ¶ 10.)  Heffler mailed notice packets to twelve additional

17  class members by First Class Mail on November 19, 2020, upon

18  receiving social security number data from the parties.  (Id.)

19  Heffler has calculated the settlement shares pertaining to the

20  twelve class members for whom a social security number has not

21  been identified and has set them aside in a "Reserve Fund."

22  (Id.)  Heffler represents that it is working with Plaintiffs'

23  counsel to notify these Class Members of the Settlement and their

24  _____

25  [2]    Plaintiff originally anticipated there would be "more
   than 900" class members identifiable from defendants' records.
26  (See Order Granting Preliminary Approval at 5.)  Following the
   preliminary approval motion, defendants confirmed 922 class
27  members after a diligent record search, 910 of which they were
   able to provide Heffler with a social security number.  (Fenwick
28  Decl. ¶ 10.)

settlement awards, and the need to obtain their Social Security

Numbers in a secure manner before payment can be made.  (See id.)

        As of January 11, 2021, Heffler has received nine

notices returned by the USPS with a forwarding address and 103

notices returned by the USPS as undeliverable as addressed.  (Id.

at ¶¶ 11-12.)  Heffler has re-mailed the nine notices with

provided forwarding addresses to those addresses, and sent 87

records through a skip trace process with LexisNexis.  (Id.)

Heffler obtained 77 updated addresses through the skip trace

process and remailed notices to those addresses.  (Id.)  The

deadline to request exclusion from the settlement has passed

without any class member opting out, objecting, or disputing his

or her calculated number of workweeks.  (Id. at ¶¶ 13-16.)

Heffler has received one "Proof of Costs" from a class member.

(See id.)

        "Notice is satisfactory if it 'generally describes the

terms of the settlement in sufficient detail to alert those with

adverse viewpoints to investigate and to come forward and be

heard.'"  Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566,

575 (9th Cir. 2004) (quoting Mendoza v. Tucson Sch. Dist. No. 1,

623 F.2d 1338, 1352 (9th Cir. 1980)).  The notice identifies the

parties, explains the nature of the proceedings, defines the

class, provides the terms of the settlement, and explains the

procedure for objecting or opting out of the class. (Fenwick

Decl. ¶ 9, Ex. B.)  The notice also explains how class members'

individual settlement awards will be calculated, the amount that

class members can expect to receive, and how members of the Motor

Carrier Class could submit Proofs of Costs to the Settlement

7

1    Administrator.  (Id.)  Accordingly, the notice complies with Rule

2    23(c)(2)(B)'s requirements.

3        B.    Rule 23(e): Fairness, Adequacy, and Reasonableness of
              Proposed Settlement

4

5            Having determined that class treatment is warranted,

6    the court must now address whether the terms of the parties'

7    settlement appear fair, adequate, and reasonable.  See Fed. R.

8    Civ. P. 23(e)(2).  To determine the fairness, adequacy, and

9    reasonableness of the agreement, Rule 23(e) requires the court to

10   consider four factors: "(1) the class representatives and class

11   counsel have adequately represented the class; (2) the proposal

12   was negotiated at arm's length; (3) the relief provided for the

13   class is adequate; and (4) the proposal treats class members

14   equitably relative to each other."  Id.  The Ninth Circuit has

15   also identified eight additional factors the court may consider,

16   many of which overlap substantially with Rule 23(e)'s four

17   factors:

         The strength of the plaintiff's case; the risk,
18       expense, complexity, and likely duration of
         further litigation; the risk of maintaining class
19       action status throughout the trial; the amount
         offered in settlement; the extent of discovery
20       completed and the stage of the proceedings; the
         experience and views of counsel; the presence of
21       a governmental participant; and the reaction of
         the class members to the proposed settlement.
22

23   Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).[3]

24        [3]    Because claims under PAGA are "a type of qui tam
     action" in which an employee brings a claim as an agent or proxy
25   of the state's labor law enforcement agencies, the court must
     also "review and approve" settlement of plaintiff's and other
26   class members' PAGA claims along with their class claims.  See
     Cal. Lab. Code § 2669(k)(2); Sakkab v. Luxottica Retail N. Am.,
27   Inc., 803 F.3d 425, 435-36 (9th Cir. 2015).
         Though "[the] PAGA does not establish a standard for
28

                                    8

1          1.    Adequate Representation

2          The court must first consider whether "the class

3    representatives and class counsel have adequately represented the

4    class."  Fed. R. Civ. P. 23(e)(2)(A).  This analysis is

5    "redundant of the requirements of Rule 23(a)(4) . . . ."  Hudson

6    v. Libre Tech., Inc., No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060,

7    at *5 (S.D. Cal. May 13, 2020) (quoting Rubenstein, 4 Newberg on

8    Class Actions § 13:48 (5th ed.)) see also In re GSE Bonds Antitr.

9    Litig., 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting

10   similarity of inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A)).

11         Because the Court has found that the proposed class

12   satisfies Rule 23(a)(4) for purposes of class certification, the

13   adequacy factor under Rule 23(e)(2)(A) is also met.  See Hudson,

14   2020 WL 2467060, at *5.

15         2.    Negotiation of the Settlement Agreement

16         Counsel for both sides appear to have diligently

17   pursued settlement after thoughtfully considering the strength of

18   their arguments and potential defenses.  The parties participated

19   in an arms-length mediation before an experienced employment

20   litigation mediator, Antonio Piazza, on December 19, 2019,

21

22   evaluating PAGA settlements," Rodriguez, 2019 WL 331159 at *4
     (citing Smith v. H.F.D. No. 55, Inc., No. 2:15-CV-01293 KJM KJN,
23   2018 WL 1899912, at *2 (E.D. Cal. Apr. 20, 2018)), a number of
     district courts have applied the eight Hanlon factors, listed
24   above, to evaluate PAGA settlements.  See, e.g., Smith, 2018 WL
     1899912, at *2; Ramirez, 2017 WL 3670794, at *3; O'Connor v. Uber
25   Techs., 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016).  "Many of
     these factors are not unique to class action lawsuits and bear on
26   whether a settlement is fair and has been reached through an
     adequate adversarial process."  See Ramirez, 2017 WL 3670794, at
27   *3.  Thus, the court finds that these factors will also govern
     its review of the PAGA settlement.  See id.
28
                                  9

1  ultimately agreeing to the principal terms of a settlement and

2  executing a Memorandum of Understanding to memorialize the

3  agreement at the close of mediation.  (Decl. of Joshua Konecky in

4  Support of Motion for Preliminary Approval ("Konecky PA Decl.")

5  ¶¶ 14-15 (Docket No. 26-2).)  Given the sophistication and

6  experience of plaintiff's counsel and the parties' representation

7  that the settlement reached was the product of arms-length

8  bargaining, the court does not question that the proposed

9  settlement is in the best interest of the class.  See Fraley v.

10  Facebook, Inc., 966 F. Supp. 2d 939, 942 (N.D. Cal. 2013)

11  (holding that a settlement reached after informed negotiations

12  "is entitled to a degree of deference as the private consensual

13  decision of the parties" (citing Hanlon, 150 F.3d at 1027)).

14          3.  Adequate Relief

15          In determining whether a settlement agreement provides

16  adequate relief for the class, the court must "take into account

17  (i) the costs, risks, and delay of trial and appeal; (ii) the

18  effectiveness of any proposed method of distributing relief to

19  the class, including the method of processing class-member

20  claims; (iii) the terms of any proposed award of attorney's fees,

21  including timing of payment; and (iv) any [other] agreement[s]"

22  made in connection with the proposal.  See Fed. R. Civ. P.

23  23(e)(2)(C); Baker v. SeaWorld Entm't, Inc., No. 14-cv-02129-MMA-

24  AGS, 2020 WL 4260712, at *6-8 (S.D. Cal. Jul. 24, 2020).

25          The court notes that, in evaluating whether the

26  settlement provides adequate relief, it must consider

27  several of the same factors as outlined in Hanlon,

28  including the strength of the plaintiff's case, the risk,

1   expense, complexity, and likely duration of further

2   litigation, the risk of maintaining class action status

3   throughout the trial, and the amount offered in settlement.

4   See Hanlon, 150 F.3d at 1026.

5            In determining whether a settlement agreement is

6   substantively fair to class members, the court must balance

7   the value of expected recovery against the value of the

8   settlement offer.   See In re Tableware Antitrust Litig., 484

9   F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  Here, plaintiff's

10  counsel estimates that motor carrier class members will

11  receive an average of approximately $8,871, while non-carrier

12  class members will receive an average of approximately $1,074.

13  (Konecky PA Decl. ¶ 29.)  Each class member's individual share

14  of the settlement is proportional to the number of weeks the

15  class member worked for defendants during the time period

16  covered by the Settlement Agreement.  (See Konecky PA Decl.,

17  Ex. 1 ("Settlement Agreement") ¶¶ 68, 81 (Docket No. 26-2);

18  Konecky PA Decl. ¶ 22; Order Granting Stipulation to Amend the

19  Class Action Settlement Agreement ("Amendment to Settlement

20  Agreement") (Docket No. 34).)  Additionally, the workweeks for

21  Motor Carrier Class Members will be calculated at 4 times the

22  workweek payment rate for class members whereas the workweeks

23  for Non-Carrier Class Members shall be calculated at the

24  single workweek payment rate for class members.  (Settlement

25  Agreement ¶ 81(d); Konecky PA Decl. ¶ 23; Amendment to

26  Settlement Agreement.)  The parties state that they have

27  allocated the workweeks in this fashion to account for the

28  relative strength and value of the Motor Carrier Class

Members' and Non-Carrier Class Members' claims, given that the Motor Class Carrier Members have claims for unreimbursed expenses and unlawful deductions that are of significantly higher value than the claims of the Non-Carrier Class Members. Because the amount class members receive is based on the number of workweeks each class member worked for defendants during the period covered by the Settlement Agreement and accounts for the relative strength of each class member's claim, the court finds that it is an effective method of distributing relief to the class.

The Settlement Agreement also sets aside $150,000 of the common fund for civil penalties under PAGA, $37,500 of which will be distributed evenly to the PAGA Group, the subset of class members who worked for defendants during the PAGA period.  (See Settlement Agreement ¶ 19.)  While plaintiff's counsel remained confident and committed to the merits of plaintiffs' case throughout litigation, counsel recognizes that defendants had legitimate defenses to these claims that risked reducing the amount plaintiff and the class could recover at trial, including that (1) plaintiff's meal and rest period claims were preempted by the Federal Motor Carrier Safety Administration's hours of service regulations; (2) that drivers traveling in the stream of interstate commerce cannot recover for overtime violations under the Motor Carrier Act exemption, and (3) that even if plaintiff were to prevail on the issues of liability, that he would not be entitled to the amount of damages claimed in his complaint.  (See Konecky PA Decl. ¶¶

1  40-47.)  Because the amount of penalties plaintiff would be
2  entitled to under the PAGA depends on how many violations
3  of the California Labor Code defendants committed, these
4  defenses also potentially apply to plaintiff's PAGA claim.
5  (See id.)

6        Plaintiff's counsel also represents that, absent
7  settlement, the parties most likely would have had to
8  litigate class certification and summary judgment, both of
9  which would cause additional expense and substantially
10 reduce, delay, or eliminate class members' recovery.  (See
11 id. ¶¶ 41, 45.)  Furthermore, defendant would have been
12 likely to appeal a favorable judgment for plaintiff,
13 resulting in further expense and exacerbating defendant's
14 potential bankruptcy.  (Id. ¶¶ 64-65.)  Given the strength
15 of plaintiff's claims and defendants' potential exposure, as
16 well as the risk, expense, and complexity involved in further
17 litigation, the court is satisfied that the settlement and
18 resulting distribution provides a strong result for the class.
19 (Id.)  While the settlement amount represents "more than the
20 defendants feel those individuals are entitled to" and will
21 potentially be "less than what some class members feel they
22 deserve," the settlement offers class members the prospect of
23 some recovery, instead of none at all.  See Officers for
24 Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir.
25 1982).  In light of the claims at issue and the defendants'
26 potential exposure, the court finds that the substance of the
27 settlement is fair to class members and thereby "falls within
28 the range of possible approval."  See Tableware, 484 F. Supp.

1  2d at 1079.

2         The Settlement Agreement further provides for an award
3  of attorney's fees totaling 25% of the $5,000,000 Gross
4  Settlement Amount.  (See Settlement Agreement ¶ 94.)  If a
5  negotiated class action settlement includes an award of
6  attorney's fees, then the court "ha[s] an independent obligation
7  to ensure that the award, like the settlement itself, is
8  reasonable, even if the parties have already agreed to an
9  amount."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d
10 935, 941 (9th Cir. 2011).

11        Plaintiff's counsel has filed a separate motion for
12 attorneys' fees and costs pursuant to Federal Rule 23(h).  (See
13 Settlement Agreement ¶ 21.)  Though the court will address the
14 reasonableness of counsel's fees in additional detail below, in
15 Section C, the court is satisfied that counsel's fees are
16 reasonable and support approval of the settlement.

17        In light of the claims at issue, defendants' potential
18 exposure, the risk to plaintiff and to the class of proceeding to
19 trial, and the fact that the court finds counsel's request for
20 attorneys' fees to be reasonable (as discussed below), the court
21 finds that the substance of the settlement is fair to class
22 members and thereby "falls within the range of possible
23 approval," both for plaintiff's California Labor Code claims and
24 his PAGA claim.  See Tableware, 484 F. Supp. 2d at 1079; Ramirez,
25 2017 WL 3670794, at *3.  Counsel has not directed the court to
26 any other relevant agreements that would alter this analysis.
27 The court therefore finds that Rule 23(e)'s third factor is
28 satisfied.  See Fed. R. Civ. P. 23(e)(C).

14

1               4.   Equitable Treatment of Class Members

2           Finally, the court must consider whether the Settlement

3 Agreement "treats class members equitably relative to each

4 other."  See Fed. R. Civ. P. 23(e)(2)(D).  In doing so, the Court

5 determines whether the settlement "improperly grant[s]

6 preferential treatment to class representatives or segments of

7 the class."  Hudson, 2020 WL 2467060, at *9 (quoting Tableware,

8 484 F. Supp. at 1079.

9           Here, the Settlement Agreement does not improperly

10 discriminate between any segments of the class, as all class

11 members are entitled to monetary relief based on the number of

12 compensable workweeks they spent working for defendants, the

13 relative strength of their claims, and whether they incurred any

14 costs or had judgments entered against them as a result of

15 defendants' misclassification.  (See Settlement Agreement ¶ 81(d);

16 Konecky PA Decl. ¶ 23; Amendment to Settlement Agreement.)  The

17 distribution formula reflects the reality that the Motor Class

18 Carrier Members have claims for unreimbursed expenses and unlawful

19 deductions that are of significantly higher value than the claims of

20 the Non-Carrier Class Members.  (See Konecky PA Decl. ¶ 23.)  No

21 class members have objected to the parties' workweek calculations

22 or to the use of multipliers in calculating the amount of

23 individual recovery for each class member.  (See Fenwick Decl. ¶¶

24 13-16.)

25           While the Settlement Agreement allows plaintiff to seek

26 an incentive award of $15,000, plaintiff has submitted additional

27 evidence documenting his time and effort spent on this case,

28 which, as discussed further below, in Section E, has satisfied

1   the court that his additional compensation above other class

2   members is justified.  See Hudson, 2020 WL 2467060, at *9.  The

3   court therefore finds that the Settlement Agreement treats class

4   members equitably.  See Fed. R. Civ. P. 23(e)(D).

5             5.   Remaining Staton Factors

6             In addition to the Staton factors already considered as

7   part of the court's analysis under Rule 23(e)(A)-(D), the court

8   must also take into account "the extent of the discovery

9   completed . . . the presence of government participation, and the

10  reaction of class members to the proposed settlement."  Staton,

11  327 F.3d at 959.

12            Through initial disclosures and informal discovery,

13  defendants provided a substantial amount of information that

14  appears to have allowed the parties to adequately assess the

15  value of plaintiff's and the class' claims.  (See Konecky PA

16  Decl. ¶¶ 11-13.)  Defendants provided plaintiffs with data that

17  showed the approximate number of workweeks and routes driven

18  during the liability period.  (Id.)  Plaintiff's counsel was also

19  able to review extensive documentation that had already been

20  obtained from an analogous case against defendants' previous

21  iteration, Exel Direct, Inc., Villalpando v. Exel Direct, Inc.,

22  No. 3:12-cv-04137-JCS (N.D. Cal.), which further allowed them to

23  evaluate the strength of plaintiffs' and the class' case.  (See

24  id. ¶¶ 5, 8, 13.)  This factor weighs in favor of final approval

25  of the settlement.

26            The seventh Staton factor, pertaining to government

27  participation, also weighs in favor of approval.  Staton, 327

28  F.3d at 959.  Under PAGA, "[t]he proposed settlement [must be]

1  submitted to the [LWDA] at the same time that it is submitted to

2  the court." Cal. Lab. Code § 2669(k)(2). Here, plaintiff

3  provided a copy of the proposed settlement agreement to the LWDA

4  on January 6, 2021. (Decl. of Leslie Joyner ¶ 3 (Docket No. 39.)

5  As of the date of this order, the LWDA has not sought to

6  intervene or otherwise objected to the PAGA settlement. This

7  factor therefore weights in favor of final approval of the

8  settlement.

9        The eighth Staton factor, the reaction of the class

10  members to the proposed settlement, also weighs in favor of final

11  approval. See Staton, 327 F.3d at 959. No class members have

12  objected to or sought to opt out of the settlement. See id.

13       The court therefore finds that the remaining Staton

14  factors weigh in favor of preliminary approval of the Settlement

15  Agreement. See Ramirez, 2017 WL 3670794, at *3.

16       In sum, the four factors that the court must evaluate

17  under Rule 23(e) and the eight Staton factors, taken as a whole,

18  appear to weigh in favor of the settlement. The court will

19  therefore grant final approval of the Settlement Agreement.

20       C.   Attorneys' Fees

21       Federal Rule of Civil Procedure 23(h) provides, "[i]n a

22  certified class action, the court may award reasonable attorney's

23  fees and nontaxable costs that are authorized by law or by the

24  parties' agreement." Fed. R. Civ. P. 23(h). If a negotiated

25  class action settlement includes an award of attorneys' fees,

26  that fee award must be evaluated in the overall context of the

27  settlement. Knisley v. Network Assocs., 312 F.3d 1123, 1126 (9th

28  Cir. 2002); Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443,

455 (E.D. Cal. 2013) (England, J.).  The court "ha[s] an
independent obligation to ensure that the award, like the
settlement itself, is reasonable, even if the parties have
already agreed to an amount."  Bluetooth Headset, 654 F.3d at
941.

"Under the 'common fund' doctrine, 'a litigant or a
lawyer who recovers a common fund for the benefit of persons
other than himself or his client is entitled to a reasonable
[attorneys'] fee from the fund as a whole.'"  Staton v. Boeing
Co., 327 F.3d 938, 969 (9th Cir. 2003) (quoting Boeing Co. v. Van
Gemert, 444 U.S. 472, 478 (1980)).  In common fund cases, the
district court has discretion to determine the amount of
attorneys' fees to be drawn from the fund by employing either the
percentage method or the lodestar method.  Id.  The court may
also use one method as a "cross-check[ ]" upon the other method.
See Bluetooth Headset, 654 F.3d at 944.

As part of the settlement, the parties agreed to an
award of attorneys' fees of $1,250,000, which constitutes 25% of
the gross settlement fund.  (Konecky Decl. in Supp. of Mot. for
Attorneys' Fees ("Konecky AF Decl.") ¶ 28 (Docket No. 36).)  Once
attorneys' fees and costs, the plaintiff's service award, the
PAGA allocation, the estimated costs of settlement
administration, and the money set aside for the Reserve Fund (to
pay any late or anticipated claims) have been distributed, an
estimated Net Settlement Amount of approximately $3,437,669 will
be distributed to the members of the settlement classes.  This
works out to an average net share of approximately $8,871 per
individual for members of the Motor Carrier Class and an average

18

share of approximately $1,074 per individual for members of the Non-Carrier Class. (See Konecky PA Decl. ¶ 29.) Counsel represents that this award represents a "substantial" result for the class that will bring meaningful relief. (Mot. for Attorneys' Fees and Costs at 9-10 (Docket No. 35).) A review of wage and hour class action settlements in this district confirms that this appears to be a favorable recovery for class members that will be available without further delay. See, e.g., Cooley v. Indian River Transp. Co., No. 1:18-cv-00491 WBS, 2019 WL 2077029 (E.D. Cal. May 10, 2019) (finding that $450.14 recovery per truck driver class member was a "favorable" result); Ontiveros v. Zamora, No. 2:08-cv-00567 WBS DAD, 2014 WL 3057506 (E.D. Cal. July 7, 2014) (observing that an average recovery of $6,000 was "a generous amount" and citing cases approving lower per-class-member averages $601.91 and $1,000.00).

Like other complex employment class actions, this case presented both counsel and the class with a risk of no recovery at all. (Konecky AF Decl. ¶ 55.) Plaintiff here faced a risk that he would not prevail on a contested motion for class certification, that he would not be able to prove that all class members were misclassified as independent contractors, that he would not be able to prove up damages across the class, and that defendants would prevail on one or more of their affirmative defenses, including the asserted preemption defenses under the California Motor Carrier Act and/or the Federal Motor Carrier Safety Administration. (Id.) Plaintiff's counsel represents that, because his firm works on contingency, it sometimes recovers very little to nothing at all, even for cases that may

1  be meritorious.  (See id.)  Where counsel do succeed in

2  vindicating statutory and employment rights on behalf of a class

3  of employees, they depend on recovering a reasonable percentage-

4  of-the-fund fee award to enable them to take on similar risks in

5  future cases.  (See id. ¶ 54.)  Plaintiff's counsel argues that,

6  in light of the strong result and substantial risk taken in this

7  case, a 25% fee, as requested here, is reasonable.

8        The Ninth Circuit has established 25% of the fund as

9  the "benchmark" award that should be given in common fund cases.

10  Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301,

11  1311 (9th Cir. 1990).  As this court recently noted, "a review of

12  California cases . . . reveals that courts usually award

13  attorneys' fees in the 30-40% range in wage and hour class

14  actions that result in recovery of a common fun[d] under $10

15  million."  Watson v. Tennant Co., No. 2:18-cv-02462 WBS DB, 2020

16  WL 5502318, at *7 (E.D. Cal. Sep. 11, 2020) (awarding 33.33% of

17  settlement fund); see also Osegueda v. N. Cal. Inalliance, No.

18  18-cv-00835 WBS EFB, 2020 WL 4194055, at *16 (E.D. Cal. July 21,

19  2020) (same); Cooley, 2019 WL 2077029, at *20 (fee award of 33%

20  of the common fund in class action alleging missed meal and rest

21  breaks for class of truck drivers).  Given that the requested fee

22  is in line with the Ninth Circuit's benchmark for reasonable fee

23  requests in common fund cases, and, if anything, seems to be

24  lower than the percentage that is routinely awarded in cases of

25  this type, the court agrees that plaintiff's counsel's requested

26  percentage of the common fund is reasonable, especially when

27  viewed in light of the substantial recovery obtained on behalf of

28  class members and the risks undertaken by plaintiff's counsel in

1   this case.

2          A "lodestar-multiplier" cross-check confirms the

3   reasonableness of the requested award.  Plaintiff's counsel has

4   calculated a lodestar figure in this case of $334,692.00.[4]  (See

5   Konecky AF Decl. ¶ 29.)  Plaintiff's counsel maintains

6   contemporaneous billing logs which reflect time billed in one-

7   tenth of an hour increments.  (Id. ¶ 46.)  Over the span of a

8   year and a half, partners, associates, paralegals, and  law

9   clerks at the firm have dedicated 468.00 hours of work to this

10  case.[5]  (Id. ¶¶ 47.)  The firm is highly specialized in wage and

11  hour matters and class action cases, and the firm's hourly rates

12  have been approved by a number of federal and state courts in

13  California.  (Id. ¶¶ 33-45.)

14         Based on plaintiff's counsel's calculated lodestar

15  figure, plaintiff seeks a lodestar multiplier of approximately

16  3.7.  In class actions, "[m]ultipliers can range from 2 to 4 or

17  even higher."  Wershba v. Apple Computer, Inc., 91 Cal. App. 4th

18  224, 255 (2001).[6]  "Indeed, 'courts have routinely enhanced the

19  lodestar to reflect the risk of non-payment in common fund

20  cases.'"  Vizcaino, 290 F.3d at 1051 (approving fee award where

21  lodestar cross-check resulted in multiplier of 3.65); see also

22  ───────────────────

23         [4]   The court expresses no opinion as to the proper
    lodestar amount in this case.

24         [5]   The firm's hourly rate for partners is $925 per hour;
25  associates, between $680 and $775 per hour; paralegals and law
    clerks, between $250 and $350 per hour.  (Konecky AF Decl. ¶ 47.)

26         [6]   Federal courts incorporate California state law on
27  deciding an appropriate multiplier when the claims are brought
    under California state law.  Vizcaino v. Microsoft Corp., 290
28  F.3d 1043, 1047 (9th Cir. 2002).

1  id. at 1052 n.6, appx. (collecting cases and finding that risk

2  multiplier fell between 1.0 and 4.0 in 83% of cases); In re

3  NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465, 489

4  (S.D.N.Y. 1998) (awarding 3.97 multiplier and observing that

5  "[i]n recent years multipliers of between 3 and 4.5 have become

6  more common").

7          Factors considered in determining the appropriate

8  lodestar multiplier generally include: (1) the risks presented by

9  the contingent nature of the case; (2) the difficulty of the

10  questions involved and the skill requisite to perform the legal

11  service properly; (3) the nature of the opposition; (4) the

12  preclusion of other employment by the attorney from accepting the

13  case; and (5) the result obtained.  Ketchum v. Moses, 24 Cal. 4th

14  1122, 1132 (Cal. 2001); Graham v. DaimlerChrysler Corp., 34 Cal.

15  4th 553, 582 (Cal. 2004); Serrano v. Priest, 20 Cal.3d 25, 48-49

16  (Cal. 1977).  Given the risks undertaken by plaintiff's counsel,

17  the defenses likely to be raised by defendant, the strong result

18  for the class, as well as plaintiff's counsel's representation

19  that his firm had to forego requests by other prospective clients

20  to bring other cases with merit to ensure that it would be able

21  to adequately and successfully represent plaintiff and the class

22  in this matter (Konecky AF Decl. ¶ 49), the court finds that

23  these factors support a multiplier of 3.7 in this case.  See

24  Johnson v. Fujitsu Tech. & Bus. of Am., Inc., No. 16-cv-03698-NC,

25  2018 U.S. Dist. LEXIS 80219, at *20 (N.D. Cal. May 11, 2018)

26  (finding multiplier of 4.37 to be reasonable); In re NCAA Ath.

27  Grant-In-Aid Cap Antitrust Litig., 2017 U.S. Dist. LEXIS 201108,

28  at *21 (N.D. Cal. Dec. 6, 2017) (finding multiplier of 3.66 to be

1  "well within the range of awards in other cases.").

2         Accordingly, the court finds the requested fees to be

3  reasonable and will approve counsel's motion for attorneys' fees.

4      D.   Costs

5         "There is no doubt that an attorney who has created a

6  common fund for the benefit of the class is entitled to

7  reimbursement of reasonable litigation expenses from that fund."

8  In re Heritage Bond Litig., Civ. No. 02-1475, 2005 WL 1594403, at

9  *23 (C.D. Cal. June 10, 2005).  Here, the parties agreed that

10 plaintiff's counsel shall be entitled to recover reasonable

11 litigation costs, not to exceed $20,000.  (Konecky PA Decl.

12 ¶ 19.)  Counsel's litigation expenses and costs are $15,525.10.

13 (Konecky AF Decl. ¶ 61.)  These expenses include filing fees,

14 court fees, service of process, mediation fees, legal research,

15 overnight and bulk mail, and copies and postage.  (Id. at ¶ 62.)

16 The legal research charges correspond to the actual costs

17 incurred in conducting legal research specific to this case,

18 rather than a pro-rata or other share of plaintiff's counsel's

19 firm's generalized legal research costs.  (Id. at ¶ 63.)  The

20 court finds these are reasonable litigation expenses.  Therefore,

21 the court will grant class counsel's request for costs in the

22 amount of $15,525.10.

23      E.   Representative Service Award

24         "Incentive awards are fairly typical in class action

25 cases."  Rodriguez, 563 F.3d at 958.  "[They] are intended to

26 compensate class representatives for work done on behalf of the

27 class, to make up for financial or reputational risk undertaken

28 in bringing the action, and, sometimes, to recognize their

1    willingness to act as a private attorney general." <u>Id.</u> at 958-

2    59.

3           Nevertheless, the Ninth Circuit has cautioned that

4    "district courts must be vigilant in scrutinizing all incentive

5    awards to determine whether they destroy the adequacy of the

6    class representatives . . . ." <u>Radcliffe v. Experian Info.</u>

7    <u>Solutions, Inc.</u>, 715 F.3d 1157, 1164 (9th Cir. 2013).  In

8    assessing the reasonableness of incentive payments, the court

9    should consider "the actions the plaintiff has taken to protect

10   the interests of the class, the degree to which the class has

11   benefitted from those actions" and "the amount of time and effort

12   the plaintiff expended in pursuing the litigation." <u>Staton</u>, 327

13   F.3d at 977 (citation omitted).  The court must balance "the

14   number of named plaintiffs receiving incentive payments, the

15   proportion of the payments relative to the settlement amount, and

16   the size of each payment." <u>Id.</u>

17          In the Ninth Circuit, an incentive award of $5,000 is

18   presumptively reasonable. <u>Davis v. Brown Shoe Co., Inc.</u>, No.

19   1:13-01211 LJO BAM, 2015 WL 6697929, at *11 (E.D. Cal. Nov. 3,

20   2015) (citing <u>Harris v. Vector Marketing Corp.</u>, No. C-08-5198

21   EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting

22   cases).  The single named plaintiff, Joseph Kimbo, seeks an

23   incentive payment of $15,000, an amount that is significantly

24   higher.  (Konecky AF Decl. ¶ 67.)  Kimbo represents that he has

25   devoted significant time and resources to the case over a period

26   of three years, risking both his finances and his reputation.

27   (Decl. of Joseph Kimbo ("Kimbo Decl.") ¶¶ 6-15 (Docket No. 37-

28   1).)  As set forth in his declaration, Kimbo provided information

1  and engaged in lengthy interviews with his counsel, some of which

2  were in person.  (Kimbo Decl. ¶¶ 4-6, 9-10.)  Kimbo also assisted

3  in the drafting of pleadings, reviewed the PAGA notice and the

4  Complaint before they were filed, conducted a close review of his

5  bank records over a period of three years to assist in the

6  calculation of damages for unreimbursed expenses, produced 331

7  pages of documents in mediation discovery, traveled to and

8  participated in a full day of mediation in San Francisco,

9  participated actively in the mediation and provided a first-hand

10 account of his experience to the mediator, communicated regularly

11 with his counsel following the mediation, during the drafting of

12 the long-form settlement agreement, and reviewed and approved the

13 final settlement papers.  (Id. at ¶¶ 3-13, 17.)  These efforts by

14 Kimbo appear to be significant, and support awarding him with an

15 incentive payment.  See Staton, 327 F.3d at 977.

16         In addition, Kimbo's contributions to the litigation

17 will significantly benefit the class.  Kimbo appears to have

18 played a key role in coordinating with other drivers to bring

19 this case to the attention of class counsel.  (See Kimbo Decl.

20 ¶ 3.)  Kimbo's efforts in bringing the case, along with the

21 professional risk he exposed himself to by volunteering to act as

22 a class representative, have resulted in a strong result for the

23 class--Motor Carrier Class Members are estimated to receive an

24 average settlement share of approximately $8,871 per person, and

25 Non-Carrier Class Members are estimated to receive an average

26 share of approximately $1,074 per person.  (See Konecky PA Decl.

27 ¶ 29.)

28         Kimbo further represents that he had potential

1    individual discrimination claims against defendants, but
2    personally agreed to release all claims he may have had against
3    defendants--not just those related to this case--when he accepted
4    the proposed settlement on behalf of the class  (Id.)  This
5    release was therefore broader than that which applies to other
6    class members.  (Id. at ¶ 16; Konecky AF Decl. ¶ 65.)  The
7    substantial benefit plaintiff's efforts have secured for the
8    class, as well as the professional risks he has taken and the
9    broader release he has signed, further weigh in favor of granting
10   a service award.  See Staton, 327 F.3d at 977.

11           However, concerns raised by the court at oral argument
12   regarding Kimbo's ability to recover approximately $19,000 in
13   costs from the common fund weigh against authorizing the full
14   service award he has requested.  The Settlement Agreement permits
15   Motor Carrier class members who have had to personally pay
16   "costs, charges, fees, or expenses and/or have an enforceable
17   judgment against them on claims made against them arising out of
18   providing transportation and delivery services for Defendants in
19   California during the Class Period" to receive compensation from
20   a "Claims Compensation Fund" totaling $100,000, as long as the
21   class member submits sufficient proof of those costs or the
22   existence of an enforceable judgment to the Settlement
23   Administrator ("Proof of Costs").  (See Settlement Agreement
24   ¶ 81(c).)  If the total amount of costs on claims submitted by
25   class members to the Settlement Administrator is less than
26   $100,000, the Settlement Agreement provides that the remainder of
27   the Claims Compensation Fund will be distributed to class members
28   as part of the Net Settlement Amount.  (See id.)

1          Here, the Settlement Administrator represents that it

2    only received a Proof of Costs from one Motor Carrier class

3    member.  (See Fenwick Decl. ¶ 15.)  Neither the Settlement

4    Administrator's declaration nor plaintiff's moving papers

5    indicated which class member submitted the Proof of Costs, or how

6    much it was for.  (See id.; see also generally Pl.'s Mot. for

7    Final Approval.)  Only once the court asked plaintiff's counsel

8    for additional details at oral argument did counsel reveal that

9    the Proof of Costs had been submitted by Kimbo himself, for

10   approximately $19,000.  In a "Statement of Clarification

11   Regarding Proof of Costs," filed with the court following oral

12   argument, plaintiff's counsel now represents that Kimbo's request

13   for costs stems from an approximately $19,000 judgment entered

14   against him in connection with a wage claim made against him by

15   his "helper" while he was working for defendants and that, had

16   Kimbo not been misclassified by defendants, the helper's claims

17   would have been properly made against defendants instead of him.

18   (See Docket No. 41.)  Counsel argues that this claim should not

19   affect the court's analysis regarding Kimbo's requested service

20   payment because the claim, if approved by the court as part of

21   the overall Settlement Agreement, would be paid directly to the

22   worker who obtained the judgment against Kimbo, rather than to

23   Kimbo himself.  (See id.)

24        However, given the size of Kimbo's submitted claim

25   (more than double what he will recover as a member of the Motor

26   Carrier class, and more than the amount of his requested service

27   payment), the fact that Kimbo was the only class member to submit

28   a Proof of Claim, and the fact that neither Kimbo nor his counsel

1   were forthcoming with details regarding the claim until pressed

2   by the court at oral argument, the court cannot help but note the

3   possibility that Kimbo used his position as class representative

4   to tailor the Settlement Agreement such that his obligation would

5   be satisfied out of the common fund.  Kimbo therefore stands to

6   benefit from his ability to shape the ultimate structure of the

7   class settlement, regardless of whether his claim will be paid to

8   him or directly to the judgment payee.  (See Docket No. 41.)

9        Because district courts must "be vigilant in

10  scrutinizing all incentive awards to determine whether they

11  destroy the adequacy of the class representatives," especially

12  where "the proposed service fees greatly exceed the payments to

13  absent class members," the court retains the discretion to reduce

14  the amount of Kimbo's requested service award if it finds that

15  the award would be excessive when compared to the expected

16  recovery of absent class members.  See Esomonu v. Omnicare, Inc.,

17  No. 15-cv-02003-HSG, 2019 WL 499750, at *8 (N.D. Cal. Feb. 8,

18  2019) (reducing $20,000 incentive payment to $5,000 because it

19  was disproportionate to the average recovery projected for absent

20  class members).  The court may even deny approval of the class

21  action settlement entirely if it finds that the requested service

22  award would give rise to a conflict of interest that would render

23  Kimbo an inadequate representative of the class.  See Radcliffe,

24  715 F.3d at 1166 (reversing district court's approval of class

25  settlement because the interests of class representatives who

26  would get incentive awards diverged from the interests of absent

27  class members).

28       Kimbo's role in approving the Settlement Agreement does

1    not go so far as to suggest a conflict of interest that would

2    preclude him from adequately representing the class, given that

3    all members of the Motor Carrier class were eligible to file

4    similar claims with the Settlement Administrator under the terms

5    Settlement Agreement.  (See Settlement Agreement ¶ 81(c).)

6    However, the court finds that the presumptively reasonable

7    service award amount of $5,000 more appropriately captures the

8    value Kimbo added to the class action while accounting for the

9    benefit that Kimbo has already gained from shaping the form of

10   the settlement via his role as class representative.  See

11   Esomonu, 2019 WL 499750, at *8.  In light of this benefit, the

12   court is not convinced that it is necessary or appropriate to

13   authorize a service award that, on its own, would be

14   disproportionately larger than the projected recovery for absent

15   class members.  See id.  The court will therefore authorize

16   payment of a $5,000 service award.

17   II.  Conclusion

18        Based on the foregoing, the court will grant final

19   certification of the settlement class and will approve the

20   settlement set forth in the settlement agreement as fair,

21   reasonable, and adequate.  The settlement agreement shall be

22   binding upon all participating class members who did not exclude

23   themselves.

24        IT IS THEREFORE ORDERED that plaintiff's unopposed

25   motions for final approval of the parties' class action

26   settlement and attorneys' fees, costs, and a class representative

27   service payment (Docket Nos. 35-38) be, and the same hereby are,

28   GRANTED.

1    IT IS FURTHER ORDERED THAT:

2    (1) Solely for the purpose of this settlement, and

3  pursuant to Federal Rule of Civil Procedure 23, the court hereby

4  certifies the following class:

5    (a) all motor carrier owners who directly contracted

6  with defendants in his or her individual capacity or through a

7  business entity and provided transportation services to defendants

8  in California at any time from December 12, 2014 through the earlier

9  of July 26, 2020 or the date of this Order ("motor carrier class");

10  and

11    (b) all individuals who did not contract with

12  defendants and are non-owner drivers and helpers authorized to

13  provide transportation services for defendants in California at

14  any time from December 12, 2014 through the earlier of July 26,

15  2020 or the date of this Order ("non-carrier class").

16    (2) The court appoints the named plaintiff Joseph

17  Kimbo as class representative and finds that he meets the

18  requirements of Rule 23;

19    (3) The court appoints law firm of Schneider Wallace

20  Cottrell Konecky LLP as class counsel and finds that it meets the

21  requirements of Rule 23;

22    (4) The settlement agreement's plan for class notice is

23  the best notice practicable under the circumstances and satisfies

24  the requirements of due process and Rule 23.  The plan is

25  approved and adopted. The notice to the class complies with Rule

26  23(c)(2) and Rule 23(e) and is approved and adopted;

27    (5) The court finds that the parties and their counsel

28  took appropriate efforts to locate and inform all class members

of the settlement.  Given that no class member filed an objection to the settlement, the court finds that no additional notice to the class is necessary;

(6) As of the date of the entry of this order, plaintiff and all class members who have not timely opted out of this settlement herby do and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished, and discharged defendants of and from any and all settled claims, pursuant to the release provisions stated in the parties' settlement agreement;

(7) Plaintiff's counsel is entitled to fees in the amount of $1,250,000, and litigation costs in the amount of $15,525.10;

(8) Heffler Claims Group LLC is entitled to administration costs in the amount of $49,701.50;

(9)  Plaintiff Joseph Kimbo is entitled to an inventive award in the amount of $5,000;

(10) $112,500 from the gross settlement amount shall be paid to the California Labor and Workforce Development Agency in satisfaction of defendants' alleged penalties under the Labor Code Private Attorneys General Act;

(11) $125,000 from the gross settlement amount shall be set aside in a reserve fund in the event there are settlement class members who are not identified until after the initial mailing of settlement checks, but who are eligible to participate in the settlement.  The reserve fund will also include the amount of any checks that are sent but remain uncashed after 60 days. After expiration of the 60-day period, the reserve fund will be

1   used to pay unanticipated or late claims.  Any residual still

2   remaining will then be donated to the parties' designated <u>cy pres</u>

3   beneficiary, St. Christopher's Fund.  The court finds that St.

4   Christopher's Fund is an appropriate selection because its

5   mission of providing financial assistance to truck drivers who

6   have been injured on the job or are ill aligns with the remedial

7   aims of this case and the California Labor Code, and addresses

8   similar harms for a similar group of workers.  (<u>See</u> Konecky PA

9   Decl. ¶ 32, Ex. 3.)  This mission also directly addresses the

10  particular harms facing drivers during the COVID-19 pandemic.

11  (<u>See</u> <u>id.</u>)

12       (12) The remaining settlement funds shall be paid to

13  participating class members in accordance with the terms of the

14  settlement agreement; and

15       (13) This action is dismissed with prejudice.  However,

16  without affecting the finality of this Order, the court shall

17  retain continuing jurisdiction over the interpretation,

18  implementation, and enforcement of the Settlement Agreement with

19  respect to all parties to this action and their counsel of

20  record.

21       The clerk is instructed to enter judgment accordingly.

22  Dated:  February 10, 2021

23  WILLIAM B. SHUBB

24  UNITED STATES DISTRICT JUDGE

25

26

27

28